
voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: | ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC<br>☐ Independent contractor ☐ Self-employed individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization<br>☐ 501(c)(19) veterans organization<br>☐ Other 501(c) organization ☐ Housing cooperative<br>☐ Tribal business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|---|
| | | Fairpark Health and Rehabilitation | **2019-07-01** |

| Business Legal Name | NAICS Code | Applicant (including affiliates, if applicable) Meets Size Standard (check one): |
|---|---|---|
| MARYVILLE FAIRPARK OPCO LLC | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ☐ No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies<br>☐ SBA industry size standards<br>☑ SBA alternative size standard |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN, ITIN) | Business Phone |
|---|---|---|
| 440 Sylvan Av Suite 240<br>Englewood Cliffs<br>NJ        07632 | ███████ | 718-551-8491 |
| | **Primary Contact** | **Email Address** |
| | Marc Elias | marc@theportopiccologroup.com |

| Average Monthly Payroll: | $ 140000.00 | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ 350000.00 | Number of Employees: | 65 |
|---|---|---|---|---|---|
| **Purpose of the loan (select all that apply):** | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | ☑ Covered Operations Expenditures | |
| | ☐ Covered Property Damage | ☐ Covered Supplier Costs | ☐ Covered Worker Protection Expenditures | ☐ Other (explain): _____ | |

### Applicant Ownership
List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Simcha Hyman | Manager | 50 | | ███████████████████ |
| Naftali Zanziper | Manager | 50 | ████████ | ████████████████ |

### PPP Applicant Demographic Information (Optional)

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| Simcha Hyman | Manager |

| | Select Response Below: |
|---|---|
| Veteran | Non-Veteran |
| Gender | Male |
| Race (more than 1 may be selected) | White |
| Ethnicity | Not Hispanic or Latino |



### Paycheck Protection Program
### Borrower Application Form Revised March 18, 2021

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | No |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | No |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | Yes | |
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | No |
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 5 → | | No |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 6 → | | No |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | Yes | |
| 8. Is the Applicant a franchise? | | No |
| 9. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | No |



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

 The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

 Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

DocuSigned by:
Simcha Hyman
27162F4C55824ED

3/25/2021

_____
Signature of Authorized Representative of Applicant
**Simcha Hyman**

_____
Date

_____
Print Name

_____
Title



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and **submitted to your SBA Participating Lender**. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

**Instructions for completing this form:**

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**



| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| MARYVILLE FAIRPARK OPCO LLC | |

| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| 307 N 5TH ST<br><br>MARYVILLE, TN, 37802, US | 623110-Nurs<br>ing Care<br>Facilities<br>(Skilled<br>Nursing<br>Facilities) | ▮▮▮▮▮▮▮ | 718 551-8491<br>( ) - |
| | | **Primary Contact** | **E-mail Address** |
| | | Simcha Hyman | ishulman@axgsolutions.com |

☒ **First Draw PPP Loan** ☐ **Second Draw PPP Loan** (check one)

SBA PPP Loan Number: 1470638709

Lender PPP Loan Number: ACBS0001347632

PPP Loan Amount: 350000.00

PPP Loan Disbursement Date: 2021-04-13

Employees at Time of Loan Application: 65

Employees at Time of Forgiveness Application: 77

Covered Period: 2021-04-13 to 2021-09-27

If Borrower (Together with Affiliates, if Applicable) Received First Draw PPP Loans of $2 million or More or Second Draw PPP Loans of $2 Million or More, check here: ☒

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs: 447713.34

Line 2.  Business Mortgage Interest Payments: 140000

Line 3.  Business Rent or Lease Payments: 0

Line 4.  Business Utility Payments: 0

Line 5.  Covered Operations Expenditures: .00

Line 6.  Covered Property Damage Costs: .00

Line 7.  Covered Supplier Costs: .00

Line 8.  Covered Worker Protection Expenditures: .00

Potential Forgiveness Amounts
Line 9.  Sum the amounts on lines 1 through 8: 587713.34

Line 10. PPP Loan Amount: 350000.00

Line 11.    Payroll Cost 60% Requirement (divide Line 1 by 0.60): 746188.90

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11): 350000.00

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

### By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.



The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes payroll costs equal to at least 60% of the forgiveness amount;  and
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.



I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.



The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period.  For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.



The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.



I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.



If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.



The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects.  I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.



The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency.  I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.



I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:



The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).



The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application.  SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

USA-000510

DocuSign Envelope ID: BCD51014-BB71-45D1-8344-9981FA126E40

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

_Simcha Hyman_

8/4/2022

Signature of Authorized Representative of Borrower    Date

Simcha Hyman

Authorized Representative

Print Name    Title

USA-000511

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

### PPP LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS

### Checklist for Using SBA Form 3508EZ

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

☑ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

#### AND

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.

- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See 85 FR 33004, 33007 (June 1, 2020) for more details.

-------------------------------------------------------------------------------------------------------------------

☐ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

#### AND

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

### Instructions for PPP Loan Forgiveness Calculation Form 3508EZ

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**SBA PPP Loan Number:** Enter the loan number assigned by SBA at the time of loan approval. Request this number from the Lender if necessary.

**Lender PPP Loan Number:** Enter the loan number assigned to the PPP loan by the Lender.

**PPP Loan Amount:** Enter the disbursed principal amount of the PPP loan (the total loan amount you received from the Lender).

**PPP Loan Disbursement Date:** Enter the date that you received the PPP loan proceeds from the Lender. If loan proceeds were received on more than one date, enter the first date on which you received PPP loan proceeds. If you received an authorized increase on your First Draw PPP Loan after December 27, 2020, you must enter the date on which you received the original disbursement of your PPP loan proceeds.

**Employees at Time of Loan Application:** Enter the total number of employees at the time of the PPP loan application.

**Employees at Time of Forgiveness Application:** Enter the total number of employees at the time the Borrower is applying for loan forgiveness.

**Covered Period:** The Covered Period begins on the date the loan was originally disbursed. It ends on a date selected by the Borrower that is at least 8 weeks following the date of loan disbursement and not more than 24 weeks after the date of loan disbursement. For example, if the Borrower received their PPP loan proceeds on Monday, April 20, 2020, the first day of the Covered Period is Monday, April 20, 2020 and the final day of the Covered Period is any date selected by the Borrower between Sunday, June 14, 2020 and Sunday, October 4, 2020.

**If Borrower, Together with Affiliates, if Applicable, Received First Draw PPP Loans of $2 Million or More or Second Draw PPP Loans of $2 Million or More:** Check the box if the Borrower, together with its affiliates (to the extent required under subsection D.3. of SBA's interim final rule posted on January 6, 2021 (86 FR 3692) and not waived under 15 U.S.C. 636(a)(36)(D)(iv)), received (a) First Draw PPP Loans with an original principal amount of $2 million or more (if this is a First Draw PPP Loan forgiveness application), or (b) Second Draw PPP Loans with an original principal amount of $2 million or more (if this is a Second Draw PPP Loan forgiveness application).

**<u>Forgiveness Amount Calculation (see Summary of Costs Eligible for Forgiveness below):</u>**

**Line 1:** Enter total eligible payroll costs incurred or paid during the Covered Period. To calculate these costs, add the following:

<u>Cash Compensation</u>: The sum of gross salary, gross wages, gross tips, gross commissions, paid leave (vacation, family, medical or sick leave, not including leave covered by the Families First Coronavirus Response Act), and allowances for dismissal or separation paid or incurred during the Covered Period. Do not include qualified wages taken into account in determining the Employer Retention Credit. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. For example, for an 8-week Covered Period, the maximum is $15,385, for a 24-week Covered Period, the maximum is $46,154. You can only include compensation of employees who were employed by the Borrower at any point during the Covered Period and whose principal place of residence is in the United States.

<u>Employee Benefits</u>: The total amount paid by the Borrower for:
1. Employer contributions for employee group health, life, disability, vision, or dental insurance, including employer contributions to a self-insured, employer-sponsored group health plan, but excluding any pre-tax or after-tax contributions by employees. Do not add contributions for these benefits made on behalf of a self-employed individual, general partners, or owner-employees of an S-corporation, because such payments are already included in their compensation.
2. Employer contributions to employee retirement plans, excluding any pre-tax or after-tax contributions by employees. Do not add employer retirement contributions made on behalf of a self-employed individual or general partners, because such payments are already included in their compensation.
3. Employer state and local taxes paid by the borrower and assessed on employee compensation (e.g., state unemployment insurance tax), excluding any taxes withheld from employee earnings.

<u>Owner Compensation</u>: Any amounts paid to owners (owner-employees (with an ownership stake of 5% or more), a self-employed individual, or general partners). For each individual owner in total across all businesses, this amount is capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower.

**Line 2:** Enter the amount of business mortgage interest payments paid or incurred during the Covered Period on business


mortgage obligation on real or personal property in force before February 15, 2020. Do not include prepayments.

**Line 3:** Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:** Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:** Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:** Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:** Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:** Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE: For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:** Add lines 1 through 8 enter the total.

**Line 10:** Enter the PPP Loan Amount.

**Line 11:** Divide the amount on line 1 by 0.60, and enter the amount. This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:** Enter the smallest of lines 9, 10, or 11.

## Summary of Costs Eligible for Forgiveness:

Borrowers are eligible for loan forgiveness for the following costs:

1. **Eligible payroll costs.** Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs"). Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction. Payroll costs are considered incurred on the day that the employee's pay is earned. Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular payroll date. Otherwise, payroll costs must be paid during the Covered Period. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. Count payroll costs that were both paid and incurred only once. Include only payroll costs for employees whose principal place of residence is in the United States. For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

2. **Eligible nonpayroll costs.** Nonpayroll costs eligible for forgiveness consist of:
   (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments");
   (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
   (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
   (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting of tracking of supplies, inventory, records, and expenses;
   (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
   (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
   (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business



activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

### Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ

**PPP Loan Forgiveness Calculation Form 3508EZ**

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:
   a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
   b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
      i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
      ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
   c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
   d. If you checked only the second box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020 and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.
   a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
   b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.
   c. Business utility payments: Copy of invoices from February 2020 and those paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   d. Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   e. Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related to property damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.
   f. Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (except for perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   g. Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditures were used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

### Documents that Each Borrower Must Maintain but is Not Required to Submit

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during the Covered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,

DocuSign Envelope ID: BCD51014-BB71-45D1-8344-9981FA126E40


voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



## Paycheck Protection Program
### Borrower Application Form Revised March 18, 2021

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: ☐Sole proprietor ☐Partnership ☐C-Corp ☐S-Corp ☒LLC<br>☐Independent contractor ☐Self-employed individual<br>☐501(c)(3) nonprofit ☐501(c)(6) organization<br>☐501(c)(19) veterans organization<br>☐Other 501(c) organization ☐Housing cooperative<br>☐Tribal business ☐Other | DBA or Tradename (if applicable)<br><br>Foothills Transitional Care and Rehabilitation | Year of Establishment (if applicable)<br><br>**2019-07-01** |
|---|---|---|
| **Business Legal Name** | **NAICS Code** | **Applicant (including affiliates, if applicable) Meets Size Standard (check one):** |
| MARYVILLE JAMESTOWN OPCO LLC | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ☐No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies<br>☐SBA industry size standards<br>☒SBA alternative size standard |
| **Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed)** | **Business TIN (EIN, SSN, ITIN)** | **Business Phone** |
| 1012 JAMESTOWN WAY<br>MARYVILLE<br>TN          37803 | ███████ | 718-551-8491 |
| | **Primary Contact** | **Email Address** |
| | Marc Elias | marc@theportopiccologroup.com |

| Average Monthly Payroll: | $ 234179.53 | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ 585448.81 | Number of Employees: | 67 |
|---|---|---|---|---|---|
| **Purpose of the loan (select all that apply):** | ☒Payroll Costs | ☒Rent / Mortgage Interest | ☒Utilities | ☒Covered Operations Expenditures | |
| | ☐Covered Property Damage | ☐Covered Supplier Costs | ☐Covered Worker Protection Expenditures | ☐Other (explain): _____ | |

### Applicant Ownership
List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Simcha Hyman | Manager | 50 | | ████████████ |
| Naftali Zanziper | Manager | 50 | ████████ | ████████████ |

### PPP Applicant Demographic Information (Optional)

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| Simcha Hyman | Manager |

| | Select Response Below: |
|---|---|
| Veteran | Non-Veteran |
| Gender | Male |
| Race (more than 1 may be selected) | White |
| Ethnicity | Not Hispanic or Latino |



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| | Question | Yes | No |
|---|---|---|---|
| 1. | Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | No |
| 2. | Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | No |
| 3. | Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | Yes | |
| 4. | Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | No |
| 5. | Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 5 → [SH] | | No |
| 6. | Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 6 → [SH] | | No |
| 7. | Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | Yes | |
| 8. | Is the Applicant a franchise? | | No |
| 9. | Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | No |



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

### By Signing Below, You Make the Following Representations, Authorizations, and Certifications

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:



The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.



The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.



The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

USA-000519



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_Simcha Hyman_
DocuSigned by:
27182F4C55824ED...

3/26/2021

_____                    _____
Signature of Authorized Representative of Applicant              Date

**Simcha Hyman**

_____                    _____
Print Name                                          Title



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

**Instructions for completing this form:**

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

DocuSign Envelope ID: 990E5EC1-ABFC-4C7C-92E2-B3B4127BF3CB



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

For purposes of reporting (optional) demographic information:
1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

USA-000522

SBA Form 2483 (3/21)                                             6

DocuSign Envelope ID: 990E5EC1-ABFC-4C7C-92E2-B3B4127BF3CB



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.



OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| MARYVILLE JAMESTOWN OPCO LLC | |

| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| 1012 JAMESTOWN WAY | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ▮▮▮▮▮▮▮ | 718 551-8491 |
| MARYVILLE, TN, 37803, US | | **Primary Contact** | **E-mail Address** |
| | | Simcha Hyman | ishulman@axgsolutions.com |

☒ **First Draw PPP Loan** ☐ **Second Draw PPP Loan** (check one)

**SBA PPP Loan Number:** 2382638703          Lender PPP Loan Number: ACBS0001347347

**Lender PPP Loan Number:** _____

**PPP Loan Amount:** 585448.81          **PPP Loan Disbursement Date:** 2021-04-12

**Employees at Time of Loan Application:** 67          **Employees at Time of Forgiveness Application:** 84

**Covered Period:** 2021-04-12 to 2021-09-26

If Borrower (Together with Affiliates, if Applicable) Received First Draw PPP Loans of $2 million or More or Second Draw PPP Loans of $2 Million or More, check here: ☒

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.   Payroll Costs:          636705.09

Line 2.   Business Mortgage Interest Payments:          234179.52

Line 3.   Business Rent or Lease Payments:          0

Line 4.   Business Utility Payments:          0

Line 5.   Covered Operations Expenditures:          .00

Line 6.   Covered Property Damage Costs:          .00

Line 7.   Covered Supplier Costs:          .00

Line 8.   Covered Worker Protection Expenditures:          .00

Potential Forgiveness Amounts
Line 9.   Sum the amounts on lines 1 through 8:          870884.61

Line 10. PPP Loan Amount:          585448.81

Line 11.   Payroll Cost 60% Requirement (divide Line 1 by 0.60):          1061175.15

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11):          585448.81

USA-000524

SBA Form 3508EZ (01/21)
Page 1

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

### By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.



The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes payroll costs equal to at least 60% of the forgiveness amount; and
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.



I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.



The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.



The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.



I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.



If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.



The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.



The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.



I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:



The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).



The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

DocuSign Envelope ID: 73FD0EB0-47B7-4E5F-B283-87433FEE944C

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

_____          8/4/2022
Signature of Authorized Representative of Borrower          _____
                                                            Date

Simcha Hyman                                                Authorized Representative
_____          _____
Print Name                                                  Title

DocuSign Envelope ID: 73FD0EB0-47B7-4E5F-B283-87433FEE944C

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

## PPP LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS

### Checklist for Using SBA Form 3508EZ

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

### AND

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.

- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See 85 FR 33004, 33007 (June 1, 2020) for more details.

-------------------------------------------------------------------------------------------------------

☐ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

### AND

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

### Instructions for PPP Loan Forgiveness Calculation Form 3508EZ

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.

USA-000527

SBA Form 3508EZ (01/21)
Page 1

DocuSign Envelope ID: 73FD0EB0-47B7-4E5F-B283-87433FEE944C



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**SBA PPP Loan Number:** Enter the loan number assigned by SBA at the time of loan approval. Request this number from the Lender if necessary.

**Lender PPP Loan Number:** Enter the loan number assigned to the PPP loan by the Lender.

**PPP Loan Amount:** Enter the disbursed principal amount of the PPP loan (the total loan amount you received from the Lender).

**PPP Loan Disbursement Date:** Enter the date that you received the PPP loan proceeds from the Lender. If loan proceeds were received on more than one date, enter the first date on which you received PPP loan proceeds. If you received an authorized increase on your First Draw PPP Loan after December 27, 2020, you must enter the date on which you received the original disbursement of your PPP loan proceeds.

**Employees at Time of Loan Application:** Enter the total number of employees at the time of the PPP loan application.

**Employees at Time of Forgiveness Application:** Enter the total number of employees at the time the Borrower is applying for loan forgiveness.

**Covered Period:** The Covered Period begins on the date the loan was originally disbursed. It ends on a date selected by the Borrower that is at least 8 weeks following the date of loan disbursement and not more than 24 weeks after the date of loan disbursement. For example, if the Borrower received their PPP loan proceeds on Monday, April 20, 2020, the first day of the Covered Period is Monday, April 20, 2020 and the final day of the Covered Period is any date selected by the Borrower between Sunday, June 14, 2020 and Sunday, October 4, 2020.

**If Borrower, Together with Affiliates, if Applicable, Received First Draw PPP Loans of $2 Million or More or Second Draw PPP Loans of $2 Million or More:** Check the box if the Borrower, together with its affiliates (to the extent required under subsection D.3. of SBA's interim final rule posted on January 6, 2021 (86 FR 3692) and not waived under 15 U.S.C. 636(a)(36)(D)(iv)), received (a) First Draw PPP Loans with an original principal amount of $2 million or more (if this is a First Draw PPP Loan forgiveness application), or (b) Second Draw PPP Loans with an original principal amount of $2 million or more (if this is a Second Draw PPP Loan forgiveness application).

**Forgiveness Amount Calculation (see Summary of Costs Eligible for Forgiveness below):**

**Line 1:** Enter total eligible payroll costs incurred or paid during the Covered Period. To calculate these costs, add the following:

Cash Compensation: The sum of gross salary, gross wages, gross tips, gross commissions, paid leave (vacation, family, medical or sick leave, not including leave covered by the Families First Coronavirus Response Act), and allowances for dismissal or separation paid or incurred during the Covered Period. Do not include qualified wages taken into account in determining the Employer Retention Credit. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. For example, for an 8-week Covered Period, the maximum is $15,385, for a 24-week Covered Period, the maximum is $46,154. You can only include compensation of employees who were employed by the Borrower at any point during the Covered Period and whose principal place of residence is in the United States.

Employee Benefits: The total amount paid by the Borrower for:
1. Employer contributions for employee group health, life, disability, vision, or dental insurance, including employer contributions to a self-insured, employer-sponsored group health plan, but excluding any pre-tax or after-tax contributions by employees. Do not add contributions for these benefits made on behalf of a self-employed individual, general partners, or owner-employees of an S-corporation, because such payments are already included in their compensation.
2. Employer contributions to employee retirement plans, excluding any pre-tax or after-tax contributions by employees. Do not add employer retirement contributions made on behalf of a self-employed individual or general partners, because such payments are already included in their compensation.
3. Employer state and local taxes paid by the borrower and assessed on employee compensation (e.g., state unemployment insurance tax), excluding any taxes withheld from employee earnings.

Owner Compensation: Any amounts paid to owners (owner-employees (with an ownership stake of 5% or more), a self-employed individual, or general partners). For each individual owner in total across all businesses, this amount is capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower.

**Line 2:** Enter the amount of business mortgage interest payments paid or incurred during the Covered Period on any business



mortgage obligation on real or personal property in force before February 15, 2020. Do not include prepayments.

**Line 3:** Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:** Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:** Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:** Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:** Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:** Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE: For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:** Add lines 1 through 8 enter the total.

**Line 10:** Enter the PPP Loan Amount.

**Line 11:** Divide the amount on line 1 by 0.60, and enter the amount. This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:** Enter the smallest of lines 9, 10, or 11.

**<u>Summary of Costs Eligible for Forgiveness:</u>**

Borrowers are eligible for loan forgiveness for the following costs:

1.  **Eligible payroll costs.** Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs"). Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction. Payroll costs are considered incurred on the day that the employee's pay is earned. Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular payroll date. Otherwise, payroll costs must be paid during the Covered Period. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. Count payroll costs that were both paid and incurred only once. Include only payroll costs for employees whose principal place of residence is in the United States. For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

2.  **Eligible nonpayroll costs.** Nonpayroll costs eligible for forgiveness consist of:
    (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments");
    (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
    (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
    (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting of tracking of supplies, inventory, records, and expenses;
    (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
    (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
    (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business



DocuSign Envelope ID: 73FD0EB0-47B7-4E5F-B283-87433FEE944C

activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

**Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ**

**PPP Loan Forgiveness Calculation Form 3508EZ**

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:
   a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
   b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
      i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
      ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
   c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
   d. If you checked only the second box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020 and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.
   a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
   b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.
   c. Business utility payments: Copy of invoices from February 2020 and those paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   d. Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   e. Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related to property damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.
   f. Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (except for perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   g. Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditures were used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

**Documents that Each Borrower Must Maintain but is Not Required to Submit**

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during the Covered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



## Paycheck Protection Program
### Borrower Application Form Revised March 18, 2021

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|
| ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC ☐ Independent contractor ☐ Self-employed individual ☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization ☐ 501(c)(19) veterans organization ☐ Other 501(c) organization ☐ Housing cooperative ☐ Tribal business ☐ Other | Mayfield Health and Rehabilitation | **2019-10-01** |

| Business Legal Name | NAICS Code | Applicant (including affiliates, if applicable) Meets Size Standard (check one): |
|---|---|---|
| MAYFIELD KY OPCO LLC | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ☐ No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies ☐ SBA industry size standards ☑ SBA alternative size standard |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN, ITIN) | Business Phone |
|---|---|---|
| 401 INDIANA AVE MAYFIELD KY 42066 | ▮▮▮▮▮ | 718-551-8491 |
| | Primary Contact | Email Address |
| | Marc Elias | marc@theportopiccologroup.com |

| Average Monthly Payroll: | $ 133551.00 | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ 333877.40 | Number of Employees: | 49 |
|---|---|---|---|---|---|
| **Purpose of the loan (select all that apply):** | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | | ☐ Covered Operations Expenditures |
| | ☐ Covered Property Damage | ☐ Covered Supplier Costs | ☐ Covered Worker Protection Expenditures | | ☐ Other (explain): _____ |

### Applicant Ownership
List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Simcha Hyman | Manage | 50 | | ▮▮▮▮▮ |
| Naftali Zanziper | Manager | 50 | ▮▮▮▮▮ | ▮▮▮▮▮ |

### PPP Applicant Demographic Information (Optional)

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| Simcha Hyman | Manager |

| | Select Response Below: |
|---|---|
| Veteran | Non-Veteran |
| Gender | Male |
| Race (more than 1 may be selected) | White |
| Ethnicity | Not Hispanic or Latino |



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | No |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | No |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | Yes | |
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | No |
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 5 → | | No |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 6 → | | No |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | Yes | |
| 8. Is the Applicant a franchise? | | No |
| 9. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | No |



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

## By Signing Below, You Make the Following Representations, Authorizations, and Certifications

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

SH   The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

SH   Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.


SH   The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

SH   I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.


SH   The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

SH   The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.


SH   The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

SH   The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

USA-000534

DocuSign Envelope ID: 23DFB9A8-C6F0-4EB0-886E-D7A516ABD0BB



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_Simcha Hyman_ _____     3/26/2021
Signature of Authorized Representative of Applicant          Date

**Simcha Hyman**
Print Name                                                                      Title



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and **submitted to your SBA Participating Lender**. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

**Instructions for completing this form:**

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

For purposes of reporting (optional) demographic information:

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

DocuSign Envelope ID: 23DFB9A8-C6F0-4EB0-886E-D7A516ABD0BB



**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

USA-000538



OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| MAYFIELD KY OPCO LLC | |

| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| 401 INDIANA AVE | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ▆▆▆▆ | 718 551-8491 ( ) - |
| MAYFIELD, KY, 42066, US | | **Primary Contact** | **E-mail Address** |
| | | Simcha Hyman | ishulman@axgsolutions.com |

☒ **First Draw PPP Loan** ☐ **Second Draw PPP Loan** (check one)

SBA PPP Loan Number: 1635078706

Lender PPP Loan Number: ACBS0001347316

PPP Loan Amount: 333877.40

PPP Loan Disbursement Date: 2021-04-12

Employees at Time of Loan Application: 49

Employees at Time of Forgiveness Application: 0

Covered Period: 2021-04-12 to 2021-09-26

If Borrower (Together with Affiliates, if Applicable) Received First Draw PPP Loans of $2 million or More or Second Draw PPP Loans of $2 Million or More, check here: ☒

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs: 409444.97

Line 2.  Business Mortgage Interest Payments: 133550.96

Line 3.  Business Rent or Lease Payments: 0

Line 4.  Business Utility Payments: 0

Line 5.  Covered Operations Expenditures: .00

Line 6.  Covered Property Damage Costs: .00

Line 7.  Covered Supplier Costs: .00

Line 8.  Covered Worker Protection Expenditures: .00

Potential Forgiveness Amounts
Line 9.  Sum the amounts on lines 1 through 8: 542995.93

Line 10. PPP Loan Amount: 333877.40

Line 11.   Payroll Cost 60% Requirement (divide Line 1 by 0.60): 682408.28

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11): 333877.40

USA-000539

SBA Form 3508EZ (01/21)
Page 1

DocuSign Envelope ID: 26DD2481-B5F3-4856-9EF3-6762C6B11D68



# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

## By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.



The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes payroll costs equal to at least 60% of the forgiveness amount; and
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.



I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.



The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.



The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.



I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.



If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.



The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.



The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.



I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:



The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).



The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

Case 1:23-cv-00129-MR     Document 24-3     Filed 11/28/23     Page 40 of 300

USA-000540

DocuSign Envelope ID: 26DD2481-B5F3-4856-9EF3-6762C6B11D68

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

DocuSigned by:

*Simcha Hyman*

2CE898C0216947f6

_____                    8/2/2022
Signature of Authorized Representative of Borrower            _____
                                                             Date

Simcha Hyman                                                 Authorized Representative
_____                    _____
Print Name                                                   Title

DocuSign Envelope ID: 26DD2481-B5F3-4856-9EF3-6762C6B11D68

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

## PPP LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS

### Checklist for Using SBA Form 3508EZ

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

☑ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

**AND**

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.

- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See 85 FR 33004, 33007 (June 1, 2020) for more details.

-----------------------------------------------------------------------------------------------------------------

☐ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

**AND**

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

### Instructions for PPP Loan Forgiveness Calculation Form 3508EZ

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.

USA-000542
Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 42 of 300



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**SBA PPP Loan Number:** Enter the loan number assigned by SBA at the time of loan approval. Request this number from the Lender if necessary.

**Lender PPP Loan Number:** Enter the loan number assigned to the PPP loan by the Lender.

**PPP Loan Amount:** Enter the disbursed principal amount of the PPP loan (the total loan amount you received from the Lender).

**PPP Loan Disbursement Date:** Enter the date that you received the PPP loan proceeds from the Lender. If loan proceeds were received on more than one date, enter the first date on which you received PPP loan proceeds. If you received an authorized increase on your First Draw PPP Loan after December 27, 2020, you must enter the date on which you received the original disbursement of your PPP loan proceeds.

**Employees at Time of Loan Application:** Enter the total number of employees at the time of the PPP loan application.

**Employees at Time of Forgiveness Application:** Enter the total number of employees at the time the Borrower is applying for loan forgiveness.

**Covered Period:** The Covered Period begins on the date the loan was originally disbursed. It ends on a date selected by the Borrower that is at least 8 weeks following the date of loan disbursement and not more than 24 weeks after the date of loan disbursement. For example, if the Borrower received their PPP loan proceeds on Monday, April 20, 2020, the first day of the Covered Period is Monday, April 20, 2020 and the final day of the Covered Period is any date selected by the Borrower between Sunday, June 14, 2020 and Sunday, October 4, 2020.

**If Borrower, Together with Affiliates, if Applicable, Received First Draw PPP Loans of $2 Million or More or Second Draw PPP Loans of $2 Million or More:** Check the box if the Borrower, together with its affiliates (to the extent required under subsection D.3. of SBA's interim final rule posted on January 6, 2021 (86 FR 3692) and not waived under 15 U.S.C. 636(a)(36)(D)(iv)), received (a) First Draw PPP Loans with an original principal amount of $2 million or more (if this is a First Draw PPP Loan forgiveness application), or (b) Second Draw PPP Loans with an original principal amount of $2 million or more (if this is a Second Draw PPP Loan forgiveness application).

**Forgiveness Amount Calculation (see Summary of Costs Eligible for Forgiveness below):**

**Line 1:** Enter total eligible payroll costs incurred or paid during the Covered Period. To calculate these costs, add the following:

Cash Compensation: The sum of gross salary, gross wages, gross tips, gross commissions, paid leave (vacation, family, medical or sick leave, not including leave covered by the Families First Coronavirus Response Act), and allowances for dismissal or separation paid or incurred during the Covered Period. Do not include qualified wages taken into account in determining the Employer Retention Credit. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. For example, for an 8-week Covered Period, the maximum is $15,385, for a 24-week Covered Period, the maximum is $46,154. You can only include compensation of employees who were employed by the Borrower at any point during the Covered Period and whose principal place of residence is in the United States.

Employee Benefits: The total amount paid by the Borrower for:
1. Employer contributions for employee group health, life, disability, vision, or dental insurance, including employer contributions to a self-insured, employer-sponsored group health plan, but excluding any pre-tax or after-tax contributions by employees. Do not add contributions for these benefits made on behalf of a self-employed individual, general partners, or owner-employees of an S-corporation, because such payments are already included in their compensation.
2. Employer contributions to employee retirement plans, excluding any pre-tax or after-tax contributions by employees. Do not add employer retirement contributions made on behalf of a self-employed individual or general partners, because such payments are already included in their compensation.
3. Employer state and local taxes paid by the borrower and assessed on employee compensation (e.g., state unemployment insurance tax), excluding any taxes withheld from employee earnings.

Owner Compensation: Any amounts paid to owners (owner-employees (with an ownership stake of 5% or more), a self-employed individual, or general partners). For each individual owner in total across all businesses, this amount is capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower.

**Line 2:** Enter the amount of business mortgage interest payments paid or incurred during the Covered Period. and business



mortgage obligation on real or personal property in force before February 15, 2020. Do not include prepayments.

**Line 3:** Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:** Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:** Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:** Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:** Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:** Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE: For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:** Add lines 1 through 8 enter the total.

**Line 10:** Enter the PPP Loan Amount.

**Line 11:** Divide the amount on line 1 by 0.60, and enter the amount. This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:** Enter the smallest of lines 9, 10, or 11.

<u>**Summary of Costs Eligible for Forgiveness:**</u>

Borrowers are eligible for loan forgiveness for the following costs:

1. **Eligible payroll costs.** Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs"). Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction. Payroll costs are considered incurred on the day that the employee's pay is earned. Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular payroll date. Otherwise, payroll costs must be paid during the Covered Period. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. Count payroll costs that were both paid and incurred only once. Include only payroll costs for employees whose principal place of residence is in the United States. For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

2. **Eligible nonpayroll costs.** Nonpayroll costs eligible for forgiveness consist of:
   (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments");
   (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
   (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
   (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting of tracking of supplies, inventory, records, and expenses;
   (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
   (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
   (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business

Yes





activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

## Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ

### PPP Loan Forgiveness Calculation Form 3508EZ

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:

a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
    i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
    ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
d. If you checked only the second box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020 and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.

a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.
c. Business utility payments: Copy of invoices from February 2020 and those paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
d. Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
e. Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related to property damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.
f. Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (except for perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
g. Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditures were used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

## Documents that Each Borrower Must Maintain but is Not Required to Submit

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during the Covered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,

voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: ☐Sole proprietor ☐Partnership ☐C-Corp ☐S-Corp ☒LLC ☐Independent contractor ☐Self-employed individual ☐501(c)(3) nonprofit ☐501(c)(6) organization ☐501(c)(19) veterans organization ☐Other 501(c) organization ☐Housing cooperative ☐Tribal business ☐Other | DBA or Tradename (if applicable) Mt. Pleasant Health and Rehabilitation | Year of Establishment (if applicable) 2019-12-01 |
|---|---|---|
| **Business Legal Name** | **NAICS Code** | **Applicant (including affiliates, if applicable) Meets Size Standard (check one):** |
| MOUNT PLEASANT TN OPCO LLC | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ☐No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies ☐SBA industry size standards ☒SBA alternative size standard |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN, ITIN) | Business Phone |
|---|---|---|
| 904 HIDDEN ACRES DR MOUNT PLEASANT TN 38474 | ███████ | 718-551-8491 |
| | **Primary Contact** | **Email Address** |
| | Marc Elias | marc@theportopiccologroup.com |

| Average Monthly Payroll: | $ 140254.42 | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ 350636.04 | Number of Employees: | 46 |
|---|---|---|---|---|---|
| **Purpose of the loan (select all that apply):** | ☒Payroll Costs | ☒Rent / Mortgage Interest | ☒Utilities | ☒Covered Operations Expenditures |
| | ☐Covered Property Damage | ☐Covered Supplier Costs | ☐Covered Worker Protection Expenditures | ☐Other (explain): _____ |

### Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Simcha Hyman | Manager | 50 | | ████████████ |
| Naftali Zanziper | Manager | 50 | ██████ | ████████████ |

### PPP Applicant Demographic Information (Optional)

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| Simcha Hyman | Manager |
| | Select Response Below: |
| Veteran | Non-Veteran |
| Gender | Male |
| Race (more than 1 may be selected) | White |
| Ethnicity | Not Hispanic or Latino |

USA-000547



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | No |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | No |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | Yes | |
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | No |
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 5 → | | No |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 6 → | | No |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | Yes | |
| 8. Is the Applicant a franchise? | | No |
| 9. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | No |

USA-000548

Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 48 of 300

SBA Form 2483 (3/21)                                          2



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

<u>**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

 The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

 Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).



DocuSign Envelope ID: 5EEAF046-24FF-44A8-8900-C2DB2D75698E

**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_Simcha Hyman_

3/26/2021

_____
Signature of Authorized Representative of Applicant

Date

**Simcha Hyman**

_____
Print Name

Title

USA-000550



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and **_submitted to your SBA Participating Lender_**. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

**Instructions for completing this form:**

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

For purposes of reporting (optional) demographic information:

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

USA-000552

DocuSign Envelope ID: 5EEAF046-24FF-44A8-8900-C2DB2D75698E



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| MOUNT PLEASANT TN OPCO LLC | |

| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| 904 HIDDEN ACRES DR | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ▓▓▓▓▓▓ | 718 551-8491 |
| MOUNT PLEASANT, TN, 38474, US | | **Primary Contact** | **E-mail Address** |
| | | Simcha Hyman | ishulman@axgsolutions.com |

☒ **First Draw PPP Loan** ☐ **Second Draw PPP Loan** (check one)

SBA PPP Loan Number: 1703648703        Lender PPP Loan Number: ACBS0001347295

PPP Loan Amount: 350636.04        PPP Loan Disbursement Date: 2021-04-12

Employees at Time of Loan Application: 46        Employees at Time of Forgiveness Application: 40

Covered Period: 2021-04-12 to 2021-09-26

If Borrower (Together with Affiliates, if Applicable) Received First Draw PPP Loans of $2 million or More or Second Draw PPP Loans of $2 Million or More, check here: ☒

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs: 435733.48

Line 2.  Business Mortgage Interest Payments: 140254.42

Line 3.  Business Rent or Lease Payments: 0

Line 4.  Business Utility Payments: 0

Line 5.  Covered Operations Expenditures: .00

Line 6.  Covered Property Damage Costs: .00

Line 7.  Covered Supplier Costs: .00

Line 8.  Covered Worker Protection Expenditures: .00

Potential Forgiveness Amounts
Line 9.  Sum the amounts on lines 1 through 8: 575987.90

Line 10. PPP Loan Amount: 350636.04

Line 11.   Payroll Cost 60% Requirement (divide Line 1 by 0.60): 726222.47

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11): 350636.04

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

### By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.

 The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes payroll costs equal to at least 60% of the forgiveness amount; and
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.

 I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

 The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.

 The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

 I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.

 If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.

 The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

 The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

 I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:

 The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).

 The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

DocuSign Envelope ID: 967699BE-9552-4F9A-B305-1370020BF810

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

DocuSigned by:

_Simcha Hyman_

2CE89B2021694476

8/5/2022

Signature of Authorized Representative of Borrower                 Date

Simcha Hyman                                                        Authorized Representative

Print Name                                                         Title

USA-000556



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

## PPP LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS

### Checklist for Using SBA Form 3508EZ

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

☒ (DS initials) The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

**AND**

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.

- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See 85 FR 33004, 33007 (June 1, 2020) for more details.

------------------------------------------------------------------------------------------------------------

☐ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

**AND**

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

### Instructions for PPP Loan Forgiveness Calculation Form 3508EZ

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.

DocuSign Envelope ID: 967699BE-9552-4F9A-B305-1370020BF810

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**SBA PPP Loan Number:** Enter the loan number assigned by SBA at the time of loan approval. Request this number from the Lender if necessary.

**Lender PPP Loan Number:** Enter the loan number assigned to the PPP loan by the Lender.

**PPP Loan Amount:** Enter the disbursed principal amount of the PPP loan (the total loan amount you received from the Lender).

**PPP Loan Disbursement Date:** Enter the date that you received the PPP loan proceeds from the Lender. If loan proceeds were received on more than one date, enter the first date on which you received PPP loan proceeds. If you received an authorized increase on your First Draw PPP Loan after December 27, 2020, you must enter the date on which you received the original disbursement of your PPP loan proceeds.

**Employees at Time of Loan Application:** Enter the total number of employees at the time of the PPP loan application.

**Employees at Time of Forgiveness Application:** Enter the total number of employees at the time the Borrower is applying for loan forgiveness.

**Covered Period:** The Covered Period begins on the date the loan was originally disbursed. It ends on a date selected by the Borrower that is at least 8 weeks following the date of loan disbursement and not more than 24 weeks after the date of loan disbursement. For example, if the Borrower received their PPP loan proceeds on Monday, April 20, 2020, the first day of the Covered Period is Monday, April 20, 2020 and the final day of the Covered Period is any date selected by the Borrower between Sunday, June 14, 2020 and Sunday, October 4, 2020.

**If Borrower, Together with Affiliates, if Applicable, Received First Draw PPP Loans of $2 Million or More or Second Draw PPP Loans of $2 Million or More:** Check the box if the Borrower, together with its affiliates (to the extent required under subsection D.3. of SBA's interim final rule posted on January 6, 2021 (86 FR 3692) and not waived under 15 U.S.C. 636(a)(36)(D)(iv)), received (a) First Draw PPP Loans with an original principal amount of $2 million or more (if this is a First Draw PPP Loan forgiveness application), or (b) Second Draw PPP Loans with an original principal amount of $2 million or more (if this is a Second Draw PPP Loan forgiveness application).

**Forgiveness Amount Calculation (see Summary of Costs Eligible for Forgiveness below):**

**Line 1:** Enter total eligible payroll costs incurred or paid during the Covered Period. To calculate these costs, add the following:

Cash Compensation: The sum of gross salary, gross wages, gross tips, gross commissions, paid leave (vacation, family, medical or sick leave, not including leave covered by the Families First Coronavirus Response Act), and allowances for dismissal or separation paid or incurred during the Covered Period. Do not include qualified wages taken into account in determining the Employer Retention Credit. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. For example, for an 8-week Covered Period, the maximum is $15,385, for a 24-week Covered Period, the maximum is $46,154. You can only include compensation of employees who were employed by the Borrower at any point during the Covered Period and whose principal place of residence is in the United States.

Employee Benefits: The total amount paid by the Borrower for:
1. Employer contributions for employee group health, life, disability, vision, or dental insurance, including employer contributions to a self-insured, employer-sponsored group health plan, but excluding any pre-tax or after-tax contributions by employees. Do not add contributions for these benefits made on behalf of a self-employed individual, general partners, or owner-employees of an S-corporation, because such payments are already included in their compensation.
2. Employer contributions to employee retirement plans, excluding any pre-tax or after-tax contributions by employees. Do not add employer retirement contributions made on behalf of a self-employed individual or general partners, because such payments are already included in their compensation.
3. Employer state and local taxes paid by the borrower and assessed on employee compensation (e.g., state unemployment insurance tax), excluding any taxes withheld from employee earnings.

Owner Compensation: Any amounts paid to owners (owner-employees (with an ownership stake of 5% or more), a self-employed individual, or general partners). For each individual owner in total across all businesses, this amount is capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower.

**Line 2:** Enter the amount of business mortgage interest payments paid or incurred during the Covered Period on any business

SBA Form 3508EZ (01/21)
Page 2

Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 58 of 300

USCA 00 0058



mortgage obligation on real or personal property in force before February 15, 2020. Do not include prepayments.

**Line 3:** Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:** Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:** Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:** Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:** Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:** Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE: For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:** Add lines 1 through 8 enter the total.

**Line 10:** Enter the PPP Loan Amount.

**Line 11:** Divide the amount on line 1 by 0.60, and enter the amount. This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:** Enter the smallest of lines 9, 10, or 11.

### Summary of Costs Eligible for Forgiveness:

Borrowers are eligible for loan forgiveness for the following costs:

1. **Eligible payroll costs.** Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs"). Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction. Payroll costs are considered incurred on the day that the employee's pay is earned. Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular payroll date. Otherwise, payroll costs must be paid during the Covered Period. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. Count payroll costs that were both paid and incurred only once. Include only payroll costs for employees whose principal place of residence is in the United States. For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

2. **Eligible nonpayroll costs.** Nonpayroll costs eligible for forgiveness consist of:
   (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments"); Yes
   (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
   (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
   (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting of tracking of supplies, inventory, records, and expenses;
   (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
   (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
   (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

### Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ

**PPP Loan Forgiveness Calculation Form 3508EZ**

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:
   a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
   b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
      i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
      ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
   c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
   d. If you checked only the second box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020 and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.
   a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
   b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.
   c. Business utility payments: Copy of invoices from February 2020 and those paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   d. Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   e. Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related to property damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.
   f. Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (except for perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   g. Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditures were used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

### Documents that Each Borrower Must Maintain but is Not Required to Submit

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during the Covered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,



voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



## Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|
| ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC<br>☐ Independent contractor ☐ Self-employed individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization<br>☐ 501(c)(19) veterans organization<br>☐ Other 501(c) organization ☐ Housing cooperative<br>☐ Tribal business ☐ Other | Stonecreek Health and Rehabilitation | **2018-04-01** |

| Business Legal Name | NAICS Code | Applicant (including affiliates, if applicable) Meets Size Standard (check one): |
|---|---|---|
| PADUCAH CENTER FOR HEALTH AND REHABILITATION LLC | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ☐ No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies<br>☐ SBA industry size standards<br>☑ SBA alternative size standard |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN, ITIN) | Business Phone |
|---|---|---|
| 4747 ALBEN BARKLEY DR<br>PADUCAH<br>KY          42001 | ▋▋▋▋▋ | 718-551-8491 |
| | **Primary Contact** | **Email Address** |
| | Marc Elias | marc@theportopiccologroup.com |

| Average Monthly Payroll: | $ 170900.38 | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ 427250.95 | Number of Employees: | 68 |
|---|---|---|---|---|---|
| **Purpose of the loan (select all that apply):** | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | | ☐ Covered Operations Expenditures |
| | ☐ Covered Property Damage | ☐ Covered Supplier Costs | ☐ Covered Worker Protection Expenditures | | ☐ Other (explain): _____ |

### Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Simcha Hyman | Manager | 50 | | ▋▋▋▋▋ |
| Naftali Zanziper | Manager | 50 | ▋▋▋▋ | ▋▋▋▋▋ |

### PPP Applicant Demographic Information (Optional)

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| Simcha Hyman | Manager |

| | Select Response Below: |
|---|---|
| Veteran | Non-Veteran |
| Gender | Male |
| Race (more than 1 may be selected) | White |
| Ethnicity | Not Hispanic or Latino |



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | No |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | No |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | Yes | |
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | No |
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 5 → SH | | No |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 6 → SH | | No |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | Yes | |
| 8. Is the Applicant a franchise? | | No |
| 9. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | No |

USA-000563

SBA Form 2483 (3/21)

2



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

 The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

 The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

 The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

USA-000564



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

DocuSigned by:
*Simcha Hyman*
27182F4C55824ED...

3/26/2021

_____          _____
Signature of Authorized Representative of Applicant              Date
**Simcha Hyman**

_____          _____
Print Name                                          Title



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

**Instructions for completing this form:**

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

USA-000566

# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

For purposes of reporting (optional) demographic information:

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

USA-000567

SBA Form 2483 (3/21)                                                                                                6

DocuSign Envelope ID: B024E226-21FA-413F-8296-3C789CEEF40C



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| PADUCAH CENTER FOR HEALTH AND | |

| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| 4747 ALBEN BARKLEY DR | 623110-Nurs ing Care Facilities (Skilled Nursing | ████████ | 718 551-8491 |
| PADUCAH, KY, 42001, US | | **Primary Contact** | **E-mail Address** |
| | | Simcha Hyman | ishulman@axgsolutions.com |

☒ **First Draw PPP Loan** ☐ **Second Draw PPP Loan** (check one)

SBA PPP Loan Number: 1299808700

Lender PPP Loan Number: ACBS0001347263

PPP Loan Amount: 427250.95

PPP Loan Disbursement Date: 2021-04-12

Employees at Time of Loan Application: 68

Employees at Time of Forgiveness Application: 98

Covered Period: 2021-04-12 to 2021-09-26

If Borrower (Together with Affiliates, if Applicable) Received First Draw PPP Loans of $2 million or More or Second Draw PPP Loans of $2 Million or More, check here: ☒

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs: 474178.03

Line 2.  Business Mortgage Interest Payments: 105808.95

Line 3.  Business Rent or Lease Payments: 0

Line 4.  Business Utility Payments: 0

Line 5.  Covered Operations Expenditures: .00

Line 6.  Covered Property Damage Costs: .00

Line 7.  Covered Supplier Costs: .00

Line 8.  Covered Worker Protection Expenditures: .00

Potential Forgiveness Amounts
Line 9.  Sum the amounts on lines 1 through 8: 579986.98

Line 10. PPP Loan Amount: 427250.95

Line 11.   Payroll Cost 60% Requirement (divide Line 1 by 0.60): 790296.72

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11): 427250.95

USA-000569

SBA Form 3508EZ (01/21)
Page 1

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

### By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.



The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes payroll costs equal to at least 60% of the forgiveness amount; and
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.





I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.



The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.



The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.



I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.



If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.



The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.



The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.



I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:



The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).



The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

USA-000570

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

_DocuSigned by:_
_Simcha Hyman_
2CE89B202769476...

8/2/2022

Signature of Authorized Representative of Borrower                    Date

Simcha Hyman                                                          Authorized Representative

Print Name                                                           Title

USA-000571

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration: 7/31/2021

## PPP LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS

### Checklist for Using SBA Form 3508EZ

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

☑ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

#### AND

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.

- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See 85 FR 33004, 33007 (June 1, 2020) for more details.

-----------------------------------------------------------------------------------------------------------

☐ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

#### AND

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

### Instructions for PPP Loan Forgiveness Calculation Form 3508EZ

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**SBA PPP Loan Number:** Enter the loan number assigned by SBA at the time of loan approval. Request this number from the Lender if necessary.

**Lender PPP Loan Number:** Enter the loan number assigned to the PPP loan by the Lender.

**PPP Loan Amount:** Enter the disbursed principal amount of the PPP loan (the total loan amount you received from the Lender).

**PPP Loan Disbursement Date:** Enter the date that you received the PPP loan proceeds from the Lender. If loan proceeds were received on more than one date, enter the first date on which you received PPP loan proceeds. If you received an authorized increase on your First Draw PPP Loan after December 27, 2020, you must enter the date on which you received the original disbursement of your PPP loan proceeds.

**Employees at Time of Loan Application:** Enter the total number of employees at the time of the PPP loan application.

**Employees at Time of Forgiveness Application:** Enter the total number of employees at the time the Borrower is applying for loan forgiveness.

**Covered Period:** The Covered Period begins on the date the loan was originally disbursed. It ends on a date selected by the Borrower that is at least 8 weeks following the date of loan disbursement and not more than 24 weeks after the date of loan disbursement. For example, if the Borrower received their PPP loan proceeds on Monday, April 20, 2020, the first day of the Covered Period is Monday, April 20, 2020 and the final day of the Covered Period is any date selected by the Borrower between Sunday, June 14, 2020 and Sunday, October 4, 2020.

**If Borrower, Together with Affiliates, if Applicable, Received First Draw PPP Loans of $2 Million or More or Second Draw PPP Loans of $2 Million or More:** Check the box if the Borrower, together with its affiliates (to the extent required under subsection D.3. of SBA's interim final rule posted on January 6, 2021 (86 FR 3692) and not waived under 15 U.S.C. 636(a)(36)(D)(iv)), received (a) First Draw PPP Loans with an original principal amount of $2 million or more (if this is a First Draw PPP Loan forgiveness application), or (b) Second Draw PPP Loans with an original principal amount of $2 million or more (if this is a Second Draw PPP Loan forgiveness application).

**Forgiveness Amount Calculation (see Summary of Costs Eligible for Forgiveness below):**

**Line 1:** Enter total eligible payroll costs incurred or paid during the Covered Period. To calculate these costs, add the following:

Cash Compensation: The sum of gross salary, gross wages, gross tips, gross commissions, paid leave (vacation, family, medical or sick leave, not including leave covered by the Families First Coronavirus Response Act), and allowances for dismissal or separation paid or incurred during the Covered Period. Do not include qualified wages taken into account in determining the Employer Retention Credit. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. For example, for an 8-week Covered Period, the maximum is $15,385, for a 24-week Covered Period, the maximum is $46,154. You can only include compensation of employees who were employed by the Borrower at any point during the Covered Period and whose principal place of residence is in the United States.

Employee Benefits: The total amount paid by the Borrower for:
1. Employer contributions for employee group health, life, disability, vision, or dental insurance, including employer contributions to a self-insured, employer-sponsored group health plan, but excluding any pre-tax or after-tax contributions by employees. Do not add contributions for these benefits made on behalf of a self-employed individual, general partners, or owner-employees of an S-corporation, because such payments are already included in their compensation.
2. Employer contributions to employee retirement plans, excluding any pre-tax or after-tax contributions by employees. Do not add employer retirement contributions made on behalf of a self-employed individual or general partners, because such payments are already included in their compensation.
3. Employer state and local taxes paid by the borrower and assessed on employee compensation (e.g., state unemployment insurance tax), excluding any taxes withheld from employee earnings.

Owner Compensation: Any amounts paid to owners (owner-employees (with an ownership stake of 5% or more), a self-employed individual, or general partners). For each individual owner in total across all businesses, this amount is capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower.

**Line 2:** Enter the amount of business mortgage interest payments paid or incurred during the Covered Period on business



mortgage obligation on real or personal property in force before February 15, 2020. Do not include prepayments.

**Line 3:** Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:** Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:** Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:** Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:** Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:** Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE: For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:** Add lines 1 through 8 enter the total.

**Line 10:** Enter the PPP Loan Amount.

**Line 11:** Divide the amount on line 1 by 0.60, and enter the amount. This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:** Enter the smallest of lines 9, 10, or 11.

**<u>Summary of Costs Eligible for Forgiveness:</u>**

Borrowers are eligible for loan forgiveness for the following costs:

1. **Eligible payroll costs.** Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs"). Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction. Payroll costs are considered incurred on the day that the employee's pay is earned. Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular payroll date. Otherwise, payroll costs must be paid during the Covered Period. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. Count payroll costs that were both paid and incurred only once. Include only payroll costs for employees whose principal place of residence is in the United States. For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

2. **Eligible nonpayroll costs.** Nonpayroll costs eligible for forgiveness consist of:
    (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments");
    (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
    (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
    (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting or tracking of supplies, inventory, records, and expenses;
    (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
    (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
    (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

### Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ

**PPP Loan Forgiveness Calculation Form 3508EZ**

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:
   a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
   b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
      i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
      ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
   c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
   d. If you checked only the second box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020 and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.
   a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
   b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.
   c. Business utility payments: Copy of invoices from February 2020 and those paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   d. Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   e. Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related to property damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.
   f. Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (except for perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   g. Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditures were used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

### Documents that Each Borrower Must Maintain but is Not Required to Submit

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during the Covered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,



voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



## Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☒ LLC ☐ Independent contractor ☐ Self-employed individual ☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization ☐ 501(c)(19) veterans organization ☐ Other 501(c) organization ☐ Housing cooperative ☐ Tribal business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|
| | | **2019-10-01** |

| Business Legal Name | NAICS Code | Applicant (including affiliates, if applicable) Meets Size Standard (check one): |
|---|---|---|
| PELICAN HEALTH RANDOLPH LLC | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ☐ No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies ☐ SBA industry size standards ☒ SBA alternative size standard |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN, ITIN) | Business Phone |
|---|---|---|
| 4801 RANDOLPH RD CHARLOTTE NC 28211 | ███████ | (718)551-8491 |
| | Primary Contact | Email Address |
| | Marc Elias | marc@theportopiccologroup.com |

| Average Monthly Payroll: | $ 197271.21 | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ 493178.00 | Number of Employees: | 42 |
|---|---|---|---|---|---|

| Purpose of the loan (select all that apply): | ☒ Payroll Costs | ☒ Rent / Mortgage Interest | ☒ Utilities | ☒ Covered Operations Expenditures |
|---|---|---|---|---|
| | ☐ Covered Property Damage | ☐ Covered Supplier Costs | ☐ Covered Worker Protection Expenditures | ☐ Other (explain): _____ |

### Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Simcha Hyman | Manager | 50 | | ███████ |
| Naftali Zanziper | Manager | 50 | ███████ | ███████ |

### PPP Applicant Demographic Information (Optional)

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| Simcha Hyman | Manager |

| | Select Response Below: |
|---|---|
| Veteran | Non-Veteran |
| Gender | Male |
| Race (more than 1 may be selected) | White |
| Ethnicity | Not Hispanic or Latino |

USA-000577

SBA Form 2483 (3/21)

1



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | No |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | No |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | Yes | |
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | No |
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 5 → | | No |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 6 → | | No |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | Yes | |
| 8. Is the Applicant a franchise? | | No |
| 9. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | No |

USA-000578



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

### By Signing Below, You Make the Following Representations, Authorizations, and Certifications

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

[SH]  The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

[SH]  Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

[SH]  The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

[SH]  I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

[SH]  The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

[SH]  The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.

[SH]  The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

[SH]  The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

USA-000579



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

DocuSigned by:
*Simcha Hyman*
27182F4C55824ED

3/26/2021

_____
Signature of Authorized Representative of Applicant

**Simcha Hyman**

_____
Print Name

_____
Date

_____
Title

USA-000580



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

**Instructions for completing this form:**

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

For purposes of reporting (optional) demographic information:

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

DocuSign Envelope ID: 509689C0-FC1B-4B2A-A8C8-EDAC6818B70C



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.



OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| PELICAN HEALTH RANDOLPH LLC | |

| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| 4801 RANDOLPH RD | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ▮▮▮▮▮▮ | 718 551-8491 ( ) - |
| CHARLOTTE, NC, 28211, US | | **Primary Contact** | **E-mail Address** |
| | | Simcha Hyman | ishulman@axgsolutions.com |

☒ **First Draw PPP Loan** ☐ **Second Draw PPP Loan** (check one)

SBA PPP Loan Number: 1535178704

Lender PPP Loan Number: ACBS0001347244

PPP Loan Amount: 493178.00

PPP Loan Disbursement Date: 2021-04-12

Employees at Time of Loan Application: 42

Employees at Time of Forgiveness Application: 52

Covered Period: 2021-04-12 to 2021-09-26

If Borrower (Together with Affiliates, if Applicable) Received First Draw PPP Loans of $2 million or More or Second Draw PPP Loans of $2 Million or More, check here: ☒

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs: 580432.63

Line 2.  Business Mortgage Interest Payments: 197271.2

Line 3.  Business Rent or Lease Payments: 0

Line 4.  Business Utility Payments: 0

Line 5.  Covered Operations Expenditures: .00

Line 6.  Covered Property Damage Costs: .00

Line 7.  Covered Supplier Costs: .00

Line 8.  Covered Worker Protection Expenditures: .00

Potential Forgiveness Amounts
Line 9.  Sum the amounts on lines 1 through 8: 777703.83

Line 10. PPP Loan Amount: 493178.00

Line 11.   Payroll Cost 60% Requirement (divide Line 1 by 0.60): 967387.72

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11): 493178.00

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

### By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.



The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes payroll costs equal to at least 60% of the forgiveness amount; and
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.



I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.



The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.



The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.



I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.



If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.



The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.



The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.



I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:



The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).



The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

USA-000585

Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 85 of 300

DocuSign Envelope ID: FAC37E6F-9373-4C8E-96FC-1413F94D7931

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

DocuSigned by:
Simcha Hyman
2CE698702169476...

Signature of Authorized Representative of Borrower

8/4/2022

Date

Simcha Hyman

Print Name

Authorized Representative

Title

USA-000586
SBA Form 3508EZ (01/21)
Page 3

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

## PPP LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS

### Checklist for Using SBA Form 3508EZ

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

☐ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

**AND**

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.

- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See 85 FR 33004, 33007 (June 1, 2020) for more details.

-----------------------------------------------------------------------------------------------------------------

☐ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

**AND**

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

### Instructions for PPP Loan Forgiveness Calculation Form 3508EZ

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.



mortgage obligation on real or personal property in force before February 15, 2020. Do not include prepayments.

**Line 3:** Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:** Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:** Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:** Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:** Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:** Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE: For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:** Add lines 1 through 8 enter the total.

**Line 10:** Enter the PPP Loan Amount.

**Line 11:** Divide the amount on line 1 by 0.60, and enter the amount. This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:** Enter the smallest of lines 9, 10, or 11.

## Summary of Costs Eligible for Forgiveness:

Borrowers are eligible for loan forgiveness for the following costs:

1. **Eligible payroll costs.** Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs"). Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction. Payroll costs are considered incurred on the day that the employee's pay is earned. Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular payroll date. Otherwise, payroll costs must be paid during the Covered Period. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. Count payroll costs that were both paid and incurred only once. Include only payroll costs for employees whose principal place of residence is in the United States. For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

2. **Eligible nonpayroll costs.** Nonpayroll costs eligible for forgiveness consist of:
   (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments");
   (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
   (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
   (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting of tracking of supplies, inventory, records, and expenses;
   (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
   (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
   (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business


activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

### Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ

**PPP Loan Forgiveness Calculation Form 3508EZ**

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:
 a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
 b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
  i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
  ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
 c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
 d. If you checked only the second box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020 and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.
 a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
 b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.
 c. Business utility payments: Copy of invoices from February 2020 and those paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
 d. Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
 e. Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related to property damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.
 f. Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (except for perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
 g. Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditures were used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

### Documents that Each Borrower Must Maintain but is Not Required to Submit

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during the Covered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



## Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC ☐ Independent contractor ☐ Self-employed individual ☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization ☐ 501(c)(19) veterans organization ☐ Other 501(c) organization ☐ Housing cooperative ☐ Tribal business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable) **2019-10-01** |
|---|---|---|
| **Business Legal Name** | **NAICS Code** | **Applicant (including affiliates, if applicable) Meets Size Standard (check one):** |
| PELICAN HEALTH REIDSVILLE LLC | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ☐ No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies ☐ SBA industry size standards ☑ SBA alternative size standard |
| **Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed)** | **Business TIN (EIN, SSN, ITIN)** | **Business Phone** |
| 543 MAPLE AVE REIDSVILLE NC 27320 | ▮▮▮▮▮▮ | (718)551-8491 |
|  | **Primary Contact** | **Email Address** |
|  | Marc Elias | marc@theportopiccologroup.com |

| Average Monthly Payroll: | $ 211132.99 | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ 527832.47 | Number of Employees: | 76 |
|---|---|---|---|---|---|
| **Purpose of the loan (select all that apply):** | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | | ☐ Covered Operations Expenditures |
| | ☐ Covered Property Damage | ☐ Covered Supplier Costs | ☐ Covered Worker Protection Expenditures | | ☐ Other (explain): _____ |

### Applicant Ownership
List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Simcha Hyman | Manager | 50 | | ▮▮▮▮▮▮ |
| Naftali Zanziper | Manager | 50 | ▮▮▮▮▮ | ▮▮▮▮▮▮ |

### PPP Applicant Demographic Information (Optional)

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| Simcha Hyman | Manager |
| | Select Response Below: |
| Veteran | Non-Veteran |
| Gender | Male |
| Race (more than 1 may be selected) | White |
| Ethnicity | Not Hispanic or Latino |



## Paycheck Protection Program
### Borrower Application Form Revised March 18, 2021

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | No |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | No |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | Yes | |
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | No |
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? <br> Initial here to confirm your response to question 5 → ⬚ | | No |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? <br> Initial here to confirm your response to question 6 → ⬚ | | No |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | Yes | |
| 8. Is the Applicant a franchise? | | No |
| 9. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | No |

DocuSign Envelope ID: 3AD5F017-4526-4211-8AF9-4DAC68B5E873



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

 The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

 Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

 I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

USA-000594

SBA Form 2483 (3/21)                                    3



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

DocuSigned by:
*Simcha Hyman*
27182F4C55824ED...

3/26/2021

_____
Signature of Authorized Representative of Applicant

_____
Date

**Simcha Hyman**
_____
Print Name

_____
Title



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and **submitted to your SBA Participating Lender**. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

**Instructions for completing this form:**

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

For purposes of reporting (optional) demographic information:

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

USA-000597



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

DocuSign Envelope ID: B6530476-851C-4109-882D-6F0BF7F9269C



OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| PELICAN HEALTH REIDSVILLE LLC | |

| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| 543 MAPLE AVE<br><br>REIDSVILLE, NC, 27320, US | 623110-Nurs ing Care Facilities (Skilled Nursing Facilities) | ████████ | 718 551-8491<br>( ) - |
| | | **Primary Contact** | **E-mail Address** |
| | | Simcha Hyman | ishulman@axgsolutions.com |

☒ **First Draw PPP Loan** ☐ **Second Draw PPP Loan** (check one)

SBA PPP Loan Number: 1581268708

Lender PPP Loan Number: ACBS0001347378

PPP Loan Amount: 527832.47

PPP Loan Disbursement Date: 2021-04-12

Employees at Time of Loan Application: 76

Employees at Time of Forgiveness Application: 87

Covered Period: 2021-04-12 to 2021-09-26

If Borrower (Together with Affiliates, if Applicable) Received First Draw PPP Loans of $2 million or More or Second Draw PPP Loans of $2 Million or More, check here: ☒

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs: 626793.19

Line 2.  Business Mortgage Interest Payments: 211132.99

Line 3.  Business Rent or Lease Payments: 0

Line 4.  Business Utility Payments: 0

Line 5.  Covered Operations Expenditures: .00

Line 6.  Covered Property Damage Costs: .00

Line 7.  Covered Supplier Costs: .00

Line 8.  Covered Worker Protection Expenditures: .00

Potential Forgiveness Amounts
Line 9.  Sum the amounts on lines 1 through 8: 837926.18

Line 10. PPP Loan Amount: 527832.47

Line 11.   Payroll Cost 60% Requirement (divide Line 1 by 0.60): 1044655.32

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11): 527832.47



OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

### By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.



The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes payroll costs equal to at least 60% of the forgiveness amount; and
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.



I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.



The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.



The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.



I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.



If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.



The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.



The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.



I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:



The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).

The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

DocuSign Envelope ID: B6530476-851C-4109-882D-6F0BF7F9269C

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

8/4/2022
_____          _____
Signature of Authorized Representative of Borrower          Date

Simcha Hyman          Authorized Representative
_____          _____
Print Name          Title

DocuSign Envelope ID: B6530476-851C-4109-882D-6F0BF7F9269C

**PPP LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS**

**Checklist for Using SBA Form 3508EZ**

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

☑ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

**AND**

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.

- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See 85 FR 33004, 33007 (June 1, 2020) for more details.

---------------------------------------------------------------------------------------------------------

☐ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

**AND**

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

**Instructions for PPP Loan Forgiveness Calculation Form 3508EZ**

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.

USA-000602
Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 102 of 300



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**SBA PPP Loan Number:** Enter the loan number assigned by SBA at the time of loan approval. Request this number from the Lender if necessary.

**Lender PPP Loan Number:** Enter the loan number assigned to the PPP loan by the Lender.

**PPP Loan Amount:** Enter the disbursed principal amount of the PPP loan (the total loan amount you received from the Lender).

**PPP Loan Disbursement Date:** Enter the date that you received the PPP loan proceeds from the Lender. If loan proceeds were received on more than one date, enter the first date on which you received PPP loan proceeds. If you received an authorized increase on your First Draw PPP Loan after December 27, 2020, you must enter the date on which you received the original disbursement of your PPP loan proceeds.

**Employees at Time of Loan Application:** Enter the total number of employees at the time of the PPP loan application.

**Employees at Time of Forgiveness Application:** Enter the total number of employees at the time the Borrower is applying for loan forgiveness.

**Covered Period:** The Covered Period begins on the date the loan was originally disbursed. It ends on a date selected by the Borrower that is at least 8 weeks following the date of loan disbursement and not more than 24 weeks after the date of loan disbursement. For example, if the Borrower received their PPP loan proceeds on Monday, April 20, 2020, the first day of the Covered Period is Monday, April 20, 2020 and the final day of the Covered Period is any date selected by the Borrower between Sunday, June 14, 2020 and Sunday, October 4, 2020.

**If Borrower, Together with Affiliates, if Applicable, Received First Draw PPP Loans of $2 Million or More or Second Draw PPP Loans of $2 Million or More:** Check the box if the Borrower, together with its affiliates (to the extent required under subsection D.3. of SBA's interim final rule posted on January 6, 2021 (86 FR 3692) and not waived under 15 U.S.C. 636(a)(36)(D)(iv)), received (a) First Draw PPP Loans with an original principal amount of $2 million or more (if this is a First Draw PPP Loan forgiveness application), or (b) Second Draw PPP Loans with an original principal amount of $2 million or more (if this is a Second Draw PPP Loan forgiveness application).

**Forgiveness Amount Calculation (see Summary of Costs Eligible for Forgiveness below):**

**Line 1:** Enter total eligible payroll costs incurred or paid during the Covered Period. To calculate these costs, add the following:

Cash Compensation: The sum of gross salary, gross wages, gross tips, gross commissions, paid leave (vacation, family, medical or sick leave, not including leave covered by the Families First Coronavirus Response Act), and allowances for dismissal or separation paid or incurred during the Covered Period. Do not include qualified wages taken into account in determining the Employer Retention Credit. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. For example, for an 8-week Covered Period, the maximum is $15,385, for a 24-week Covered Period, the maximum is $46,154. You can only include compensation of employees who were employed by the Borrower at any point during the Covered Period and whose principal place of residence is in the United States.

Employee Benefits: The total amount paid by the Borrower for:
1. Employer contributions for employee group health, life, disability, vision, or dental insurance, including employer contributions to a self-insured, employer-sponsored group health plan, but excluding any pre-tax or after-tax contributions by employees. Do not add contributions for these benefits made on behalf of a self-employed individual, general partners, or owner-employees of an S-corporation, because such payments are already included in their compensation.
2. Employer contributions to employee retirement plans, excluding any pre-tax or after-tax contributions by employees. Do not add employer retirement contributions made on behalf of a self-employed individual or general partners, because such payments are already included in their compensation.
3. Employer state and local taxes paid by the borrower and assessed on employee compensation (e.g., state unemployment insurance tax), excluding any taxes withheld from employee earnings.

Owner Compensation: Any amounts paid to owners (owner-employees (with an ownership stake of 5% or more), a self-employed individual, or general partners). For each individual owner in total across all businesses, this amount is capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower.

**Line 2:** Enter the amount of business mortgage interest payments paid or incurred during the Covered Period on business



mortgage obligation on real or personal property in force before February 15, 2020.  Do not include prepayments.

**Line 3:**  Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:**  Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:**  Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:**  Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:**  Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:**  Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE:  For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:**  Add lines 1 through 8 enter the total.

**Line 10:**  Enter the PPP Loan Amount.

**Line 11:**  Divide the amount on line 1 by 0.60, and enter the amount.  This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:**  Enter the smallest of lines 9, 10, or 11.

### Summary of Costs Eligible for Forgiveness:

Borrowers are eligible for loan forgiveness for the following costs:

1. **Eligible payroll costs.**  Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs").  Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction.  Payroll costs are considered incurred on the day that the employee's pay is earned.  Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular pay date.  Otherwise, payroll costs must be paid during the Covered Period.  For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period.  Count payroll costs that were both paid and incurred only once.  Include only payroll costs for employees whose principal place of residence is in the United States.  For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

2. **Eligible nonpayroll costs.**  Nonpayroll costs eligible for forgiveness consist of:
   (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments");
   (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
   (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
   (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting of tracking of supplies, inventory, records, and expenses;
   (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
   (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
   (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business

DocuSign Envelope ID: B6530476-851C-4109-882D-6F0BF7F9269C



activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

<u>**Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ**</u>

**PPP Loan Forgiveness Calculation Form 3508EZ**

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:
a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
    i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
    ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
d. If you checked only the second box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020 and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.
a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.
c. Business utility payments: Copy of invoices from February 2020 and those paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
d. Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
e. Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related to property damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.
f. Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (except for perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
g. Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditures were used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

<u>**Documents that Each Borrower Must Maintain but is Not Required to Submit**</u>

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during the Covered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



## Paycheck Protection Program
### Borrower Application Form Revised March 18, 2021

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC<br>☐ Independent contractor ☐ Self-employed individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization<br>☐ 501(c)(19) veterans organization<br>☐ Other 501(c) organization ☐ Housing cooperative<br>☐ Tribal business ☐ Other | DBA or Tradename (if applicable) | Year of Establishment (if applicable)<br>**2019-10-01** |
|---|---|---|

| Business Legal Name | NAICS Code | Applicant (including affiliates, if applicable) Meets Size Standard (check one): |
|---|---|---|
| PELICAN HEALTH THOMASVILLE LLC | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ☐ No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies<br>☐ SBA industry size standards<br>☑ SBA alternative size standard |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN, ITIN) | Business Phone |
|---|---|---|
| 1028 BLAIR ST 540N<br>THOMASVILLE<br>NC 27360 | ▓▓▓▓ | (718)551-8491 |
| | **Primary Contact** | **Email Address** |
| | Marc Elias | marc@theportopiccologroup.com |

| Average Monthly Payroll: | $ 166037.83 | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ 415094.00 | Number of Employees: | 35 |
|---|---|---|---|---|---|
| **Purpose of the loan (select all that apply):** | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | | ☑ Covered Operations Expenditures |
| | ☐ Covered Property Damage | ☐ Covered Supplier Costs | ☐ Covered Worker Protection Expenditures | | ☐ Other (explain): _____ |

### Applicant Ownership
List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Simcha Hyman | Manager | 50 | | ▓▓▓▓ |
| Naftali Zanziper | Manager | 50 | ▓▓▓ | ▓▓▓▓ |

### PPP Applicant Demographic Information (Optional)

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| Simcha Hyman | Manager |

| | Select Response Below: |
|---|---|
| Veteran | Non-Veteran |
| Gender | Male |
| Race (more than 1 may be selected) | White |
| Ethnicity | Not Hispanic or Latino |



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | No |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | No |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | Yes | |
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | No |
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 5 → | | No |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 6 → | | No |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | Yes | |
| 8. Is the Applicant a franchise? | | No |
| 9. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | No |



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

<u>**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

- The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.
- Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.
- The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.
- I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.
- The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).
- The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.
- The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.
- The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).





# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

DocuSigned by:

*Simcha Hyman*

27182F4C5582AED...

3/26/2021

_____        _____
Signature of Authorized Representative of Applicant        Date

**Simcha Hyman**

_____        _____
Print Name        Title



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

**Instructions for completing this form:**

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).

USA-000611

DocuSign Envelope ID: 618D4AA1-1FDD-4B2E-B342-B6FF14A04661



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

For purposes of reporting (optional) demographic information:

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| PELICAN HEALTH THOMASVILLE LLC | |

| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| 1028 BLAIR ST 540N | 623110-Nurs ing Care Facilities (Skilled Nursing Facilities) | ▓▓▓▓▓ | 718 551-8491 ( ) - |
| THOMASVILLE, NC, 27360, US | | **Primary Contact** | **E-mail Address** |
| | | Simcha Hyman | ishulman@axgsolutions.com |

[X] **First Draw PPP Loan** [ ] **Second Draw PPP Loan** (check one)

SBA PPP Loan Number: 1935708707

Lender PPP Loan Number: ACBS0001347353

PPP Loan Amount: 415094.00

PPP Loan Disbursement Date: 2021-04-12

Employees at Time of Loan Application: 35

Employees at Time of Forgiveness Application: 56

Covered Period: 2021-04-12 to 2021-09-26

If Borrower (Together with Affiliates, if Applicable) Received First Draw PPP Loans of $2 million or More or Second Draw PPP Loans of $2 Million or More, check here: [X]

## Forgiveness Amount Calculation:

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs: 507258.68

Line 2.  Business Mortgage Interest Payments: 166037.6

Line 3.  Business Rent or Lease Payments: 0

Line 4.  Business Utility Payments: 0

Line 5.  Covered Operations Expenditures: .00

Line 6.  Covered Property Damage Costs: .00

Line 7.  Covered Supplier Costs: .00

Line 8.  Covered Worker Protection Expenditures: .00

Potential Forgiveness Amounts
Line 9.  Sum the amounts on lines 1 through 8: 673296.28

Line 10. PPP Loan Amount: 415094.00

Line 11.   Payroll Cost 60% Requirement (divide Line 1 by 0.60): 845431.13

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11): 415094.00

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

### By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.



The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes payroll costs equal to at least 60% of the forgiveness amount; and
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.



I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.



The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.



The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.



I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.



If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.



The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.



The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.



I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:



The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).

The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

DocuSign Envelope ID: D5B5797B-CE1D-47EC-8C53-B688B454F783

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

_Simcha Hyman_
DocuSigned by:
2CE898202704476

8/4/2022

Signature of Authorized Representative of Borrower | Date

Simcha Hyman

Authorized Representative

Print Name | Title

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration: 7/31/2021

**PPP LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS**

**Checklist for Using SBA Form 3508EZ**

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

**AND**

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.
- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See 85 FR 33004, 33007 (June 1, 2020) for more details.
-----------------------------------------------------------------------------------------------
The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

**AND**

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

**Instructions for PPP Loan Forgiveness Calculation Form 3508EZ**

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**SBA PPP Loan Number:** Enter the loan number assigned by SBA at the time of loan approval. Request this number from the Lender if necessary.

**Lender PPP Loan Number:** Enter the loan number assigned to the PPP loan by the Lender.

**PPP Loan Amount:** Enter the disbursed principal amount of the PPP loan (the total loan amount you received from the Lender).

**PPP Loan Disbursement Date:** Enter the date that you received the PPP loan proceeds from the Lender. If loan proceeds were received on more than one date, enter the first date on which you received PPP loan proceeds. If you received an authorized increase on your First Draw PPP Loan after December 27, 2020, you must enter the date on which you received the original disbursement of your PPP loan proceeds.

**Employees at Time of Loan Application:** Enter the total number of employees at the time of the PPP loan application.

**Employees at Time of Forgiveness Application:** Enter the total number of employees at the time the Borrower is applying for loan forgiveness.

**Covered Period:** The Covered Period begins on the date the loan was originally disbursed. It ends on a date selected by the Borrower that is at least 8 weeks following the date of loan disbursement and not more than 24 weeks after the date of loan disbursement. For example, if the Borrower received their PPP loan proceeds on Monday, April 20, 2020, the first day of the Covered Period is Monday, April 20, 2020 and the final day of the Covered Period is any date selected by the Borrower between Sunday, June 14, 2020 and Sunday, October 4, 2020.

**If Borrower, Together with Affiliates, if Applicable, Received First Draw PPP Loans of $2 Million or More or Second Draw PPP Loans of $2 Million or More:** Check the box if the Borrower, together with its affiliates (to the extent required under subsection D.3. of SBA's interim final rule posted on January 6, 2021 (86 FR 3692) and not waived under 15 U.S.C. 636(a)(36)(D)(iv)), received (a) First Draw PPP Loans with an original principal amount of $2 million or more (if this is a First Draw PPP Loan forgiveness application), or (b) Second Draw PPP Loans with an original principal amount of $2 million or more (if this is a Second Draw PPP Loan forgiveness application).

**Forgiveness Amount Calculation (see Summary of Costs Eligible for Forgiveness below):**

**Line 1:** Enter total eligible payroll costs incurred or paid during the Covered Period. To calculate these costs, add the following:

Cash Compensation: The sum of gross salary, gross wages, gross tips, gross commissions, paid leave (vacation, family, medical or sick leave, not including leave covered by the Families First Coronavirus Response Act), and allowances for dismissal or separation paid or incurred during the Covered Period. Do not include qualified wages taken into account in determining the Employer Retention Credit. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. For example, for an 8-week Covered Period, the maximum is $15,385, for a 24-week Covered Period, the maximum is $46,154. You can only include compensation of employees who were employed by the Borrower at any point during the Covered Period and whose principal place of residence is in the United States.

Employee Benefits: The total amount paid by the Borrower for:
1. Employer contributions for employee group health, life, disability, vision, or dental insurance, including employer contributions to a self-insured, employer-sponsored group health plan, but excluding any pre-tax or after-tax contributions by employees. Do not add contributions for these benefits made on behalf of a self-employed individual, general partners, or owner-employees of an S-corporation, because such payments are already included in their compensation.
2. Employer contributions to employee retirement plans, excluding any pre-tax or after-tax contributions by employees. Do not add employer retirement contributions made on behalf of a self-employed individual or general partners, because such payments are already included in their compensation.
3. Employer state and local taxes paid by the borrower and assessed on employee compensation (e.g., state unemployment insurance tax), excluding any taxes withheld from employee earnings.

Owner Compensation: Any amounts paid to owners (owner-employees (with an ownership stake of 5% or more), a self-employed individual, or general partners). For each individual owner in total across all businesses, this amount is capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower.

**Line 2:** Enter the amount of business mortgage interest payments paid or incurred during the Covered Period for any business



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

mortgage obligation on real or personal property in force before February 15, 2020. Do not include prepayments.

**Line 3:** Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:** Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:** Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:** Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:** Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:** Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE: For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:** Add lines 1 through 8 enter the total.

**Line 10:** Enter the PPP Loan Amount.

**Line 11:** Divide the amount on line 1 by 0.60, and enter the amount. This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:** Enter the smallest of lines 9, 10, or 11.

**<u>Summary of Costs Eligible for Forgiveness:</u>**

Borrowers are eligible for loan forgiveness for the following costs:

1. **Eligible payroll costs.** Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs"). Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction. Payroll costs are considered incurred on the day that the employee's pay is earned. Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular payroll date. Otherwise, payroll costs must be paid during the Covered Period. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. Count payroll costs that were both paid and incurred only once. Include only payroll costs for employees whose principal place of residence is in the United States. For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

2. **Eligible nonpayroll costs.** Nonpayroll costs eligible for forgiveness consist of:
    (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments");
    (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
    (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
    (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting of tracking of supplies, inventory, records, and expenses;
    (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
    (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
    (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business



activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

### Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ

**PPP Loan Forgiveness Calculation Form 3508EZ**

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:
   a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
   b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
      i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
      ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
   c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
   d. If you checked only the second box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020 and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.
   a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
   b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.
   c. Business utility payments: Copy of invoices from February 2020 and those paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   d. Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   e. Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related to property damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.
   f. Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (except for perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
   g. Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditures were used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

### Documents that Each Borrower Must Maintain but is Not Required to Submit

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during the Covered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

| **Check One:** Limited Liability Company | **DBA or Tradename (if Applicable)** | |
|---|---|---|
| **Business Legal Name** | **NAICS Code** | **Year of Establishment (if applicable)** |
| PRINCETON KY OPCO LLC | 623110 | 10/1/2019 |
| **Business Address** **(Street, City, State, Zip Code - No P.O. Box addresses allowed)** | **Applicant (including affiliates, if applicable)** **Meets Size Standard (check one):** | |
| 1333 W MAIN ST, PRINCETON, KY, 42445 | SBA industry size standards | |

| **Business TIN (EIN, SSN)** | **Business Phone** | **Primary Contact** | **Email Address** |
|---|---|---|---|
| ███████ | (201) 928-7800 | SIMCHA HYMAN | marc@theportopiccologroup.com |

| **Average Monthly Payroll:** | $147,390.00 | **x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount:** | $368,400.00 | **Number of Employees:** | 100 |
|---|---|---|---|---|---|
| **Purpose of loan (select all that apply):** | Payroll Costs;Rent / Mortgage Interest;Utilities;Covered Operations Expenditures;Covered Property Damage;Covered Suppliers Cost;Covered Worker Protection Expenditures Other: | | | | |

## Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| SIMCHA HYMAN | Owner | 50.000% | ███████ | ████████ |
| NAFTALI ZANZIPER | Co-Owner | 50.000% | ███████ | ████████ |

_If questions (1) or (2) below are answered "Yes," the loan will not be approved._

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | X |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | X |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | X | |



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

| | Yes | No |
|---|---|---|
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | X |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?<br><br>Initial here to confirm your response to question 5 → | | X |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?<br><br>Initial here to confirm your response to question 6 → | | X |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | X | |
| 8. Is the Applicant a franchise? | | X |
| 9. Is the franchise listed in the SBA's Franchise Directory? If yes, enter the SBA Franchise Identifier Code: | | |



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

## By Signing Below, You Make the Following Representations, Authorizations, and Certifications

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, eligible 501(c)(6) organization, or eligible destination marketing organization, employs no more than 300 employees; (4) if NAICS 72, employs no more than 500 employees per physical location; (5) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (6) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant

The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

SBA Form 2483 (01/21)



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

DocuSigned by:

_____
7D9DA3532C5F489...

Signature of Authorized Representative of Borrower          Date 3/16/2021 9:13 PM

Print Name: Simcha Hyman                                    Title Manager

SBA Form 2483 (01/21)

DocuSign Envelope ID: A887439A-AE38-47C6-9463-2D0D7F6A8945



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and submitted to your SBA Participating Lender. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

**Instructions for completing this form:**

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one).

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

USA-000626

SBA Form 2483 (01/21)

DocuSign Envelope ID: A887439A-AE38-47C6-9463-2D0D7F6A8945



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Credit Act**.**

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant nor any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

## PPP Borrower Demographic Information Form (Optional)

Instructions

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.

2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.

3. **Definition of Principal.** The term "Principal" means:

- For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.

- For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.

- For a corporation, all owners of 20% or more of the Borrower, and each officer and director.

- For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.

- Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").

- Any trustor (if the Borrower is owned by a trust).

- For a nonprofit organization, the officers and directors of the Borrower.

4. **Principal Name**. Insert the full name of the Principal.

5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position |
|---|---|---|
| SIMCHA HYMAN | | Manager |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | 1=Non-Veteran |
| Gender | M=Male; F=Female; X=Not Disclosed | M=Male |
| Race | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | 5=White |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | N=Not Hispanic or Latino |

DocuSign Envelope ID: A887439A-AE38-47C6-9463-2D0D7F6A8945



# NOTE

| SBA Loan # | 6580538609 |
|---|---|
| SBA Loan Name | PRINCETON KY OPCO LLC |
| Date | March 24, 2021 |
| Loan Amount | $368,400.00 |
| Interest Rate | 1% |
| Borrower | PRINCETON KY OPCO LLC |
| Operating Company | N/A |
| Lender | ConnectOne Bank |

1.  PROMISE TO PAY:

    In return for the Loan, Borrower promises to pay to the order of Lender the amount of Three Hundred Sixty Eight Thousand Four Hundred, interest on the unpaid principal balance, and all other amounts required by this Note.

2.  DEFINITIONS:

    "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

    "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

    "Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3.    PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

**Maturity:** This Note will mature in 5 years from the date of initial disbursement.

**Repayment Terms:**

**PAYMENT SCHEDULE.** Beginning one month from the date of the Note and continuing for 5 months thereafter (total of 6 months from the date of the Note) payments of $0 shall be due.  Beginning 7 months from the date of this Note, unless extended by Lender in its sole discretion under the terms of the PPP, and continuing the same day of each month thereafter, payments of principal and interest shall be due on the outstanding principal balance of the Note [subject to any amount of forgiveness approved the SBA]. The monthly principal and interest payment will be calculated based on a 54 month amortization. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date.

The interest rate is 1.00% per year.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

**Borrower may prepay this Note.** Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

  A.   Give Lender written notice;

  B.   Pay all accrued interest; and

  C.   If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 2 years from date of initial disbursement.

4.    DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;

B.  Defaults on any other loan with Lender;

C.  Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.  Fails to pay any taxes when due;

H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.  Has a receiver or liquidator appointed for any part of their business or property;

J.  Makes an assignment for the benefit of creditors;

K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.  LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;

B.  Collect all amounts owing from any Borrower or Guarantor;

C.  File suit and obtain judgment;

D.  Take possession of any Collateral; or

E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.  LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

SBA Loan # 0123CW-00129
SBA 7A Promissory Note - DL4044
Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 131 of 300
Page 3 of 7
USA-000631
Page 3 of 7

B. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C. Release anyone obligated to pay this Note;

D. Compromise, release, renew, extend or substitute any of the Collateral; and

E. Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. **STATE-SPECIFIC PROVISIONS:**

The following provision applies when a borrower is a resident of WISCONSIN: **Each Borrower who is married represents that this obligation is incurred in the interest of his or her marriage or family**.

The following Confession of Judgment provision applies when a borrower is a resident of DELAWARE: **WARRANT OF ATTORNEY/CONFESSION OF JUDGMENT. In addition to any other remedies Lender may possess, Borrower knowingly, voluntarily and intentionally authorizes any attorney to appear on behalf of Borrower, from time to time, in any court of record possessing jurisdiction over this Note and to waive issuance and service of process and to confess judgment in favor of Lender against Borrower, for the unpaid principal, accrued interest, accrued charges, reasonable attorney fees and court costs and such other amount due under this Note.**

The following Confession of Judgment provision applies when a borrower is a resident of MARYLAND: **WARRANT OF ATTORNEY/CONFESSION OF JUDGMENT. Borrower authorizes an attorney to appear in a court of record and confess judgment, without process, against Borrower in favor of Lender for all indebtedness owed in connection with the loan, including but not limited to service charges, other charges and reasonable attorney's fees.**

The following Confession of Judgment provision applies when a borrower is a resident of OHIO: **WARRANT OF ATTORNEY/CONFESSION OF JUDGMENT. In addition to any other remedies Lender may possess, Borrower knowingly, voluntarily and intentionally authorizes any attorney to appear on behalf of Borrower, from time to time, in any court of record possessing jurisdiction over this Note and to waive issuance and service of process and to confess judgment in favor of Lender against Borrower, for the unpaid principal, accrued interest, accrued charges, reasonable attorney fees and court costs and such other amount due under this Note. WARNING: BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF THE COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT OR ANY OTHER CAUSE**.

The following Confession of Judgment provision applies when a borrower is a resident of PENNSYLVANIA: **WARRANT OF ATTORNEY/CONFESSION OF JUDGMENT. Borrower irrevocably authorizes and empowers the prothonotary, any attorney or any clerk of any court of record, upon default, to appear for and confess judgment against Borrower for such sums as are due and/or may become due under this Note including costs of suit, without stay of execution, and for attorney's fees and costs as set forth in this Note and knowingly, voluntarily and intentionally waives any and all rights Borrower may have to notice and hearing under the state and federal laws prior to entry of a judgment. To the extent permitted by law, Borrower releases all errors in such proceedings. If a copy of this Note, verified by or on behalf of the holder shall have been filed in such action, it shall not be necessary to file the original Note as a warrant of attorney. The authority and power to appear for and confess judgment against Borrower shall not be exhausted by the initial exercise thereof and may be exercised as often as the holder shall find it necessary and desirable and this Note shall be a sufficient warrant for such authority and power.**

The following Confession of Judgment provision applies when a borrower is a resident of VIRGINIA: **IMPORTANT NOTICE: THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE. WARRANT OF ATTORNEY/CONFESSION OF JUDGMENT.**

In addition to any other remedies Lender may possess, Borrower knowingly, voluntarily, and intentionally authorizes Lender to appear on behalf of Borrower, from time to time, in any court in Virginia having jurisdiction over this Note and to waive issuance and service of process and to confess judgment in favor of Lender against Borrower, for the unpaid principal, accrued interest, accrued charges, reasonable attorney fees and court costs and such other amount due under this Note.

The following Oral Agreements Disclaimer provision applies when the borrower is a resident of MISSOURI: **Oral or unexecuted agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement. To protect you (Borrowers(s)) and us (Creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

The following Oral Agreements Disclaimer provision applies when the borrower is a resident of OREGON**: UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY [BENEFICIARY]/ US CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY GRANTOR'S/ BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY [AN AUTHORIZED REPRESENTATIVE OF BENEFICIARY]/US TO BE ENFORCEABLE.**

The following Oral Agreements Disclaimer provision applies when the borrower is a resident of WASHINGTON: **Oral agreements or oral commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt are not enforceable under Washington law.**

The following provision applies when the borrower is a resident of ALASKA: **The Mortgagor or Trustor (Borrower) is personally obligated and fully liable for the amount due under the Note. The Mortgagee or Beneficiary (Lender) has the right to sue on the Note and obtain a personal judgment against the Mortgagor or Trustor for the satisfaction of the amount due under the Note either before or after a judicial foreclosure of the Mortgage or Deed of Trust as under AS 09.45.170-09.45.220.**

The following Oral Agreements Disclaimer provision applies when the borrower is a resident of IOWA: **IMPORTANT: READ BEFORE SIGNING. The terms of this agreement should be read carefully because only those terms in writing are enforceable. No other terms or oral promises not contained in this written contract may be legally enforced. You may change the terms of this agreement only by another written agreement**.

The following Oral Agreements Disclaimer provision applies when the borrower is a resident of UTAH: **This is a final expression of the agreement between the creditor and debtor and the written agreement may not be contradicted by evidence of any alleged oral agreement.**

The following provision applies for all states, to the extent permitted by law:
**WAIVER OF JURY TRIAL. To the fullest extent permitted by law, all parties to this Note hereby knowingly and voluntarily waive any right to trial by jury of any dispute, whether in contract, tort, or otherwise, arising out of, in connection with, related to, or incidental to the relationship established between them in this Note or any other instrument,  document, or agreement executed or delivered in connection with this Note.**

USA-000634

SBA Form 147 (05/23) Version 2.1    Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 134 of 300    Page 6 of 7
SBA 7A Promissory Note - DL4044                                                                    Page 6 of 7

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

PRINCETON KY OPCO LLC

DocuSigned by:

_____
7D9DA3532C5F489...

SIMCHA HYMAN, Member

DocuSigned by:

*Naftali Zanziper*
_____
33A65A94D5574E2...

NAFTALI ZANZIPER, Member

DocuSign Envelope ID: A887439A-AE38-47C6-9463-2D0D7F6A8945

| **RESOLUTION** | **ConnectOne Bank** |
|---|---|
| **LIMITED LIABILITY COMPANY** | **301 Sylvan Avenue** |
| | **Englewood Cliffs, New Jersey 07632** |
| | **(201)816-8900** |

| SBA LOAN NUMBER | RESOLUTION DATE | PRINCIPAL AMOUNT |
|---|---|---|
| 6580538609 | 3/24/2021 | $368,400.00 |

## LIMITED LIABILITY COMPANY INFORMATION

PRINCETON KY OPCO LLC

1333 W MAIN ST,

PRINCETON,KY, 42445

By signing below, I certify to ConnectOne Bank ("Lender") that: I am duly authorized by the members of the above named for profit Limited Liability Company ("Company") to manage this Company validly organized and operating under the laws of the Kentucky, and its articles were filed at the appropriate governmental office on 8/20/2019; the following is a true and complete copy of the Resolution, properly adopted at a duly called meeting held on 3/24/2021 by a quorum of all members as provided in the articles or certificate of organization or operating agreement; this Resolution is contained in the minutes of that meeting and that such Resolution is still in force and effect and has not been amended or rescinded, was and still is in accordance with the articles or certificate of organization or operating agreement of the Company; provided below are the correct titles and names and the genuine signatures of the persons authorized to exercise the powers provided in the Resolution ("Authorized Signers"); I have provided the Lender with a true and complete copy of the articles or certificate of organization or operating agreement as in effect as of the date of this Resolution; and that I have the power and authority to make this certification and to execute this Resolution.

**IT IS RESOLVED:**

**The Authorized Signers shall possess the powers indicated as contained in this Resolution. Each power has a designated Authority Code that indicates the powers available to each Authorized Signer.**

| NAME/TITLE | SIGNATURE | AUTHORITY CODE/LIMITATIONS |
|---|---|---|
| SIMCHA HYMAN, Member | DocuSigned by: *[signature]* 7D9DA3532C5F489... | L1, L2, L3, L4, L5, L6, L7, L8 |
| NAFTALI ZANZIPER, Member | DocuSigned by: *Naftali Zanziper* 33A65A04D6574E2... | L1, L2, L3, L4, L5, L6, L7, L8 |

**BORROW MONEY. [Authority Code - L1]** As in their judgment, to borrow from time to time from Lender, on such terms as may be agreed upon between the Company and Lender, such sum or sums of money without limitation. Number of signers required: 1

**EXECUTE NOTES. [Authority Code - L2]** To execute and deliver to Lender the promissory note(s), or other evidence of credit accommodations of the Corporation, on Lender's forms, at such rates of interest and on such terms as may be agreed upon evidencing the sums of money so borrowed or any indebtedness of the Corporation to Lender, and also to execute and deliver to Lender one or more renewals, extensions, modifications, refinancing, consolidations, or substitutions for one or more of the notes, any portion of the notes, or any other evidence of credit accommodations. Number of signers required: 1

**GRANT SECURITY. [Authority Code - L3]** To mortgage, pledge, transfer, endorse, hypothecate, or otherwise encumber and deliver to Lender, as security for the payment of any loans or credit accommodations so obtained, any promissory notes so executed including any amendments to or modifications, renewals, and extensions of such promissory notes, or any other or further indebtedness of the Corporation or any third party to Lender at any time owing, however the same may be evidenced, any property now or hereafter belonging to the Corporation or in which the Corporation now or hereafter may have an interest, including without limitation all real property and all personal property (tangible or intangible) of the Corporation. Such property may be mortgaged, pledged, transferred, endorsed, hypothecated, or encumbered at the time such loans are obtained or such indebtedness is incurred, or at any other time or times, and may be either in addition or in lieu of any property theretofore mortgaged, pledged, transferred, endorsed, hypothecated, or encumbered. Number of signers required: 1

**EXECUTE SECURITY DOCUMENTS. [Authority Code - L4]** To execute and deliver to Lender the forms of mortgage, deed of trust, pledge, agreement, hypothecation agreement, and other security agreements and financing statements which may be submitted by Lender, and which shall evidence the terms and conditions under and pursuant to which liens and encumbrances, or any of them are given; and also to execute and deliver to Lender any authorizations and other written instruments, any chattel paper, or any other collateral, of any kind or nature, which they may at their discretion deem reasonably necessary or proper in connection with or pertaining to the giving and perfecting of liens and encumbrances. Number of signers required: 1

**NEGOTIATE ITEMS. [Authority Code - L5]** To draw, endorse, and discount with Lender all drafts, trade acceptances, promissory notes, or other evidences of indebtedness payable to or belonging to the Corporation in which the Corporation may have an interest, and either to receive cash for the same or to cause such proceeds to be credited to the account of the Corporation with Lender, or to cause such other disposition of the proceeds derived therefrom as they may deem advisable.
Number of signers required: 1

**ADVANCE UNDER LINE OF CREDIT. [Authority Code - L6]** In the case of lines of credit, to designate additional or alternative individuals as being authorized to request advances thereunder, and in all cases, to perform such other acts and things, to pay any and all fees and costs, and to execute and deliver such other documents and agreements, (including agreements waiving the right to a trial by jury) as they may in their discretion deem reasonably necessary or proper in order to carry into effect the provisions of these Resolutions. The person indicated herein are currently authorized to request advances and authorize payments under the line of credit until Lender receives written notice or revocation of their authority. Number of signers required: 1

**GUARANTEE INDEBTEDNESS. [Authority Code - L7]** To give the guarantee of this Corporation for the debts of the Guaranteed Borrower to Lender, from time to time, on Lender's forms and upon such terms as this Corporation, Guaranteed Borrower, and Lender may deem necessary.

Number of signers required: 1

**ENTER INTO LEASE AGREEMENTS. [Authority Code - L8]** To enter into any form of personal property or fixture lease with Lender, upon such terms as this Corporation and Lender may agree. Number of signers required: 1

## IT IS FURTHER RESOLVED THAT:

**AUTHORIZED SIGNER'S POWERS.** Authorized Signers are authorized to make any and all other contracts, agreements, stipulations, and orders which the Authorized Signers may deem advisable for the effective exercise of their powers.

**SIGNATURES.** The Lender shall be indemnified and held harmless by the Company for any claims, expenses, damages or attorney fees resulting from the honoring of any signature, authorized by this Resolution, or refusing to honor any signature not so authorized, regardless of whether or not such signature was genuine, if such signature reasonably resembles the specimen provided to the Lender. The Lender shall also be permitted to rely upon non-signature security and verification codes which it provides to or receives from an Authorized Signer and shall be indemnified and held harmless by the Company for any claims, expenses, damages or attorney fees resulting from their use.

**IMPROPER ENDORSEMENT.** Any negotiable instrument, check, draft, or order for the payment of moneys not clearly endorsed by the Authorized Signer may be returned to the Company by the Lender. The Lender, in its sole discretion, alternatively may endorse on behalf of the Company any negotiable instrument, check, draft, or order for the payment of money not clearly endorsed in order to facilitate collection. Lender shall have no liability for any delay in the presentment or return of any negotiable instrument, check, draft, or order for the payment of money which is not properly endorsed.

**DISPOSITION OF FUNDS.** When withdrawal or transfer powers are granted to an Authorized Signer, the Lender is directed and authorized to act upon and honor withdrawal or transfer instructions issued and to honor, pay, transfer from and charge to any depository account(s) of the Company, all negotiable instruments, checks, drafts, or orders for the payment of money so drawn when signed consistent with the Resolution without inquiring as to the disposition of the proceeds or the circumstances surrounding the issuance of the negotiable instrument, check or order for the payment of money involved, whether such negotiable instruments, checks, drafts, or orders for the payment of money are payable to the order of, or endorsed or negotiated by any Authorized Signer signing them or any Authorized Signer in their individual capacities or not, and whether they are deposited to the individual credit of or tendered in payment of the individual obligation or account of any Authorized Signer signing them or of any other Authorized Signer.

**PRIOR ENDORSEMENTS.** All negotiable instruments, checks, drafts, or orders for the payment of money deposited with prior endorsements are guaranteed by the Company.

**PRE-RESOLUTION TRANSACTIONS.** All actions by Authorized Signers in accordance with this Resolution but before the adoption of this Resolution are approved, ratified, adopted and confirmed by the Company.

**WARRANTY.** The Lender may rely upon the certification as to the authority of the Company to execute this Resolution and make the representations in this Resolution.

**NOTIFICATION OF CHANGES.** The Company shall notify Lender in writing at its address shown above in advance of any changes which would affect the validity of any matter certified in this Resolution.

**REVOCATION AND MODIFICATION.** An act ("Act") to modify, terminate, amend or replace this Resolution will not immediately affect the ability of the Lender to rely upon this Resolution. The Act shall not affect any action by the Lender in reliance on this Resolution before the date the Act becomes effective as set forth in the next sentence. An Act will not become effective until all of the following occur: (a) Lender receives written notification of the Act in form and substance satisfactory to Lender and (b) the Lender has had a reasonable period of time to act upon such notification. Until the Act is effective, this Resolution shall remain in full force and bind the Company, its legal representatives, heirs, successors and assigns.

**FACSIMILE SIGNATURES.** The Lender shall be entitled to honor and charge the Company for all such negotiable instrument, checks, drafts, or other orders for payment of money drawn in the name of the Company, on its regular accounts, including an order for electronic debit, whether by electronic tape or otherwise, regardless of by whom or by what means facsimile signatures or other non-manual signature (collectively, "Facsimile Signatures") may have been affixed, or electronically communicated, if such Facsimile Signatures resembles the specimens duly certified to or filed with the Lender for any of the named Authorized Signers, regardless of whether any misuse is with or without the negligence of the Company. The Company agrees that the duty of maintaining the security of any such Facsimile Signatures or device by which it is affixed is solely that of the Company.

**IN WITNESS WHEREOF, we have hereunto subscribed our names as Members and hereby acknowledge that the above Authorized Signers have authority to exercise the powers provided in this Resolution on 3/24/2021.**

| | | |
|---|---|---|
| _SIMCHA HYMAN signature_ | 3/24/2021 | _Naftali Zanziper signature_ | 3/26/2021 |
| SIMCHA HYMAN, Member | Date | NAFTALI ZANZIPER, Member | Date |





**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021**

| Business Legal Name ("Borrower") | | | DBA or Tradename, if applicable | |
|---|---|---|---|---|
| PRINCETON KY OPCO LLC | | | | |
| **Business Address** | | **NAICS Code** | **Business TIN (EIN, SSN)** | **Business Phone** |
| 1333 W MAIN ST | | 623110 | ▮▮▮▮ | 2019287807 |
| PRINCETON, KY 42445 | | | **Primary Contact** | **E-mail Address** |
| | | | SIMCHA HYMAN | simcha@theportopiccologroup.com |

☒ **First Draw PPP Loan** ☐ **Second Draw PPP Loan** (check one)

**SBA PPP Loan Number:** 6580538609          **Lender PPP Loan Number:** 43936300100

**PPP Loan Amount:** $368,400.00          **PPP Loan Disbursement Date:** 3/24/2021

**Amount of PPP Loan Increase (if applicable): $  Date of PPP Loan Increase (if applicable):**

**Employees at Time of Loan Application:** 100          **Employees at Time of Forgiveness Application:** 84

**Covered Period:** 3/24/2021 to 9/8/2021

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs

Line 1. Payroll Costs:                                                    $466,284.73

Line 2. Business Mortgage Interest Payments:                            $144,800.00

Line 3. Business Rent or Lease Payments:                                $0.00

Line 4. Business Utility Payments:                                      $0.00

Line 5. Covered Operations Expenditures:                                $0.00

Line 6. Covered Property Damage Costs:                                  $0.00

Line 7. Covered Supplier Costs:                                         $0.00

Line 8. Covered Worker Protection Expenditures:                        $0.00

Potential Forgiveness Amounts
Line 9. Sum the amounts on lines 1 through 8:                          $611,084.73

Line 10. PPP Loan Amount:                                              $368,400.00

Line 11.    Payroll Cost 60% Requirement (divide Line 1 by 0.60):      $777,141.22

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11):    $368,400.00

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021**

**PPP Borrower Demographic Information Form (Optional)**

**Instructions**

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.
   - For a corporation, all owners of 20% or more of the Borrower, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.
   - Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").
   - Any trustor (if the Borrower is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Borrower.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | Principal Position | |
|---|---|---|
| SIMCHA HYMAN | | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | |
| Gender | M=Male; F=Female; X=Not Disclosed | |
| Race (more than 1 may be selected) | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | |

**Disclosure is voluntary and will have no bearing on the loan forgiveness decision**

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**
The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one. The terms "payroll" and "payroll costs" as used in the below certifications include proprietor expenses (business expenses plus owner compensation) for Borrowers that applied for loans using SBA Form 2483-C or 2483-SD-C.

SH    The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):
   - was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
   - includes payroll costs equal to at least 60% of the forgiveness amount;  and
   - for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.

SH    I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

SH    The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for this certification, during the Covered Period compared to the most recent quarter before the Covered Period. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.

SH    The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

SH    I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments,

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021**

business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.

SH    If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.

SH    The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

SH    The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.

SH    I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:

SH    The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).

SH    The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

USA-000640

*Simcha Hyman*
_____
Signature of Authorized Representative of Borrower            Date 7/8/2022

Simcha Hyman
_____
Print Name                                                   Title



OMB Control No.: 3245-0407
Expiration Date: 1/31/2022

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised July 30, 2021**

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 30 minutes. Comments about this time or the information requested should be sent to Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.

<u>LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS</u>

<u>Checklist for Using SBA Form 3508EZ</u>

---------------------------------------------------------------------------

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

☒     The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

                                          **AND**

     The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.

- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See <u>85 FR 33004</u>, 33007 (June 1, 2020) for more details.

         ------------------------------------------------------------------------------------------------------

☐     The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

                                          **AND**



USA-000642

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

### Instructions for PPP Loan Forgiveness Calculation Form 3508EZ

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN, ITIN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, SBA Form 2483-C, SBA Form 2483-SD-C, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.



**Paycheck**
~~Protection~~

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.

**SBA PPP Loan Number:** Enter the loan number assigned by SBA at the time of loan approval. Request this number from the Lender if necessary.

**Lender PPP Loan Number:** Enter the loan number assigned to the PPP loan by the Lender.

**PPP Loan Amount:** Enter the original disbursed principal amount of the PPP loan (the original loan amount you received from the Lender).

**PPP Loan Disbursement Date:** Enter the date that you received the PPP loan proceeds from the Lender. If loan proceeds were received on more than one date, enter the first date on which you received PPP loan proceeds. If you received an authorized increase on your First Draw PPP Loan after December 27, 2020, you must enter the date on which you received the original disbursement of your PPP loan proceeds.

**Amount of PPP Loan Increase:** Enter the disbursed amount of an authorized increase on your First Draw PPP Loan received after December 27, 2020 (if applicable).

**Date of PPP Loan Increase:** Enter the date that you received the proceeds of the authorized increase on your First Draw PPP Loan from the Lender (if applicable).

**Employees at Time of Loan Application:** Enter the total number of employees (including owners/partners) at the time of the PPP loan application.

**Employees at Time of Forgiveness Application:** Enter the total number of employees (including owners/partners) at the time the Borrower is applying for loan forgiveness.

**Covered Period:** The Covered Period begins on the date the loan was originally disbursed. It ends on a date selected by the Borrower that is at least 8 weeks following the date of loan disbursement and not more than 24 weeks after the date of loan disbursement. For example, if the Borrower received their PPP loan proceeds on Monday, April 20, 2020, the first day of the Covered Period is Monday, April 20, 2020 and the final day of the Covered Period is any date selected by the Borrower between Sunday, June 14, 2020 and Sunday, October 4, 2020.

**<u>Forgiveness Amount Calculation (see Summary of Costs Eligible for Forgiveness below):</u>**

**Line 1:** Enter total eligible payroll costs incurred or paid during the Covered Period. To calculate these costs, add the following:

<u>Cash Compensation</u>: The sum of gross salary, gross wages, gross tips, gross commissions, paid leave (vacation, family, medical or sick leave, not including leave covered by the Families First Coronavirus Response Act), and allowances for dismissal or separation paid or incurred during the Covered Period. Do not include qualified wages taken into account in determining (a) the Employee Retention Credit under section 2301 of the CARES Act, as amended by sections 206 and 207 of the Taxpayer Certainty and Disaster Tax Relief Act of 2020; (b) the Employee Retention Credit under section 3134 of the Internal Revenue Code of 1986, as enacted by the American Rescue Plan Act of 2021; and (c) the disaster credit under section 303 of the Taxpayer Certainty and Disaster Tax Relief Act of 2020. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. For example, for an 8-week Covered Period, the maximum is $15,385, for a 24-week Covered Period, the maximum is $46,154. You can only include compensation of employees who were employed by the Borrower at any point during the Covered Period and whose principal place of residence is in the United States.

<u>Employee Benefits</u>: The total amount paid by the Borrower for:
1. Employer contributions for employee group health, life, disability, vision, or dental insurance, including employer contributions to a self-insured, employer-sponsored group health plan, but excluding any pre-tax or after-tax contributions by employees. Do not add contributions for these benefits made on behalf of a self-employed individual, general partners, or owner-employees of an S-corporation, because such payments are already included in their compensation. Additionally, do not add premiums for COBRA continuation coverage taken into account in determining the credit under section 6432 of the Internal Revenue Code of 1986.

USA-000644




2. Employer contributions to employee retirement plans, excluding any pre-tax or after-tax contributions by employees. Do not add employer retirement contributions made on behalf of a self-employed individual or general partners, because such payments are already included in their compensation.
3. Employer state and local taxes paid by the borrower and assessed on employee compensation (e.g., state unemployment insurance tax), excluding any taxes withheld from employee earnings.

Owner Compensation: Any amounts paid to owners (owner-employees (with an ownership stake of 5% or more), a self-employed individual, or general partners).  For each individual owner in total across all businesses, this amount is capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower. If Borrower applied for the loan using SBA Form 2483-C or 2483-SD-C, owner compensation includes proprietor expenses (business expenses plus owner compensation). Proprietor expenses equal the difference between the Borrower's gross income and employee payroll costs.  The Borrower's proprietor expenses are capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the borrower's gross income in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower.

**Line 2:** Enter the amount of business mortgage interest payments paid or incurred during the Covered Period for any business mortgage obligation on real or personal property in force before February 15, 2020.  Do not include prepayments.

**Line 3:** Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:** Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:**  Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:**  Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:** Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:** Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE:  For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:**  Add lines 1 through 8 enter the total.

**Line 10:**  Enter the PPP Loan Amount.

**Line 11:** Divide the amount on line 1 by 0.60, and enter the amount. This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:**  Enter the smallest of lines 9, 10, or 11.

## Summary of Costs Eligible for Forgiveness:

Borrowers are eligible for loan forgiveness for the following costs:
1. **Eligible payroll costs.** Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs"). Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction.  Payroll costs are considered incurred on the day that the employee's pay is earned. Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular payroll date. Otherwise, payroll costs must be paid during the Covered Period. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. Count payroll costs that were both paid and incurred only once. Include only payroll costs for employees whose principal place of residence is in the United States. For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692), as amended by SBA's interim final rule posted on March 18, 2021 (86 FR 15083). For information on what qualifies as payroll costs for a Borrower that applied for the loan using SBA Form 2483-C or 2483-SD-C, see SBA's interim final rule on loan amount


calculation and eligibility posted on March 3, 2021 (86 FR 13149), as amended by SBA's interim final rule posted on March 18, 2021 (86 FR 15083).

2. **Eligible nonpayroll costs.** Nonpayroll costs eligible for forgiveness consist of:
   (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments");
   (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
   (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
   (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting of tracking of supplies, inventory, records, and expenses;
   (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
   (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
   (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

### <u>Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ</u>

**PPP Loan Forgiveness Calculation Form 3508EZ**

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:
a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
   i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
   ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
d. If you checked only the first box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020, and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.
a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.

USA-000646

Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 146 of 300



    c.  Business utility payments: Copy of invoices paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.

    d.  Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts,cancelled checks, or account statements verifying those eligible payments.

    e.  Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related toproperty damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.

    f.  Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (exceptfor perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.

    g.  Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditureswere used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

### **Documents that Each Borrower Must Maintain but is Not Required to Submit**

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during theCovered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualifiedemployees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before March 1, 2020 the last day of the Covered Period) by the Secretary of Health andHuman Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support theBorrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan isforgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



## Paycheck Protection Program
### Borrower Application Form Revised March 18, 2021

OMB Control No.: 3245-0407
Expiration Date: 9/30/2021

| Check One: | DBA or Tradename (if applicable) | Year of Establishment (if applicable) |
|---|---|---|
| ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☑ LLC<br>☐ Independent contractor ☐ Self-employed individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(6) organization<br>☐ 501(c)(19) veterans organization<br>☐ Other 501(c) organization ☐ Housing cooperative<br>☐ Tribal business ☐ Other | The Palace Healthcare & Rehabilitation Center | 2019-11-01 |

| Business Legal Name | NAICS Code | Applicant (including affiliates, if applicable) Meets Size Standard (check one): |
|---|---|---|
| Red Boiling Springs TN Opco LLC | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ☐ No more than 500 employees (or 300 employees, if applicable) unless "per location" exception applies<br>☐ SBA industry size standards<br>☑ SBA alternative size standard |

| Business Address (Street, City, State, Zip Code - No P.O. Box addresses allowed) | Business TIN (EIN, SSN, ITIN) | Business Phone |
|---|---|---|
| 440 Sylvan Ave Suite 240<br>Englewood Cliffs<br>NJ          07632 | ███████ | 718-551-8491 |
| | Primary Contact | Email Address |
| | Marc Elias | marc@theportopiccologroup.com |

| Average Monthly Payroll: | $ 150259.17 | x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount: | $ 375647.92 | Number of Employees: | 60 |
|---|---|---|---|---|---|
| Purpose of the loan (select all that apply): | ☑ Payroll Costs | ☑ Rent / Mortgage Interest | ☑ Utilities | | ☑ Covered Operations Expenditures |
| | ☐ Covered Property Damage | ☐ Covered Supplier Costs | ☐ Covered Worker Protection Expenditures | | ☐ Other (explain): _____ |

### Applicant Ownership

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN, ITIN) | Address |
|---|---|---|---|---|
| Simcha Hyman | Manager | 50 | | ████████████ |
| Naftali Zanziper | Manager | 50 | ███████ | ████████████ |

### PPP Applicant Demographic Information (Optional)

**Veteran/gender/race/ethnicity data is collected for program reporting purposes only. Disclosure is voluntary and will have no bearing on the loan application decision.**

| Principal Name | Principal Position |
|---|---|
| Simcha Hyman | Manager |

| | Select Response Below: |
|---|---|
| Veteran | Non-Veteran |
| Gender | Male |
| Race (more than 1 may be selected) | White |
| Ethnicity | Not Hispanic or Latino |



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

*If questions (1), (2), (5), or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | No |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency (other than a Federal student loan made or guaranteed through a program administered by the Department of Education) that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | No |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | Yes | |
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | No |
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction? Initial here to confirm your response to question 5 → | | No |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)? Initial here to confirm your response to question 6 → | | No |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | Yes | |
| 8. Is the Applicant a franchise? | | No |
| 9. Is the franchise listed in SBA's Franchise Directory? If yes, enter SBA Franchise Identifier Code here: _____ | | No |

USA-000649

SBA Form 2483 (3/21)                                                    2

DocuSign Envelope ID: 19B1D45F-7B59-4B16-B06B-236FEB4D6288



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

### By Signing Below, You Make the Following Representations, Authorizations, and Certifications

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, and Title V of the American Rescue Plan Act of 2021 (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, employs no more than 300 employees; (4) if an eligible 501(c)(6) organization, other eligible 501(c) organization, or eligible destination marketing organization, employs no more than 300 employees per physical location; (5) if NAICS 72 or a 501(c)(3) organization, employs no more than 500 employees per physical location; (6) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business, a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, or an Internet-only news or periodical publisher assigned NAICS code 519130 and engaged in the collection and distribution of local or regional and national news and information, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (7) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information. If the Applicant is an Internet-only news or periodical publisher that became eligible for a loan under Section 5001 of the American Rescue Plan Act of 2021, the proceeds of the loan will be used to support expenses at the component of the business or organization that supports local or regional news.
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:



The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.



The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.



The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

The Applicant has not been approved for a Shuttered Venue Operator (SVO) grant from SBA as of the date of this loan application, and the Applicant acknowledges that if the Applicant is approved for an SVO grant before SBA issues a loan number for this loan, the Applicant is ineligible for the loan and acceptance of any loan proceeds will be considered an unauthorized use.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

USA-000650



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_DocuSigned by:_
_Simcha Hyman_
_27162F4C55824E0_

3/26/2021

Signature of Authorized Representative of Applicant     Date

**Simcha Hyman**

Print Name     Title



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

**Purpose of this form:**

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using net profit must use this form. *An Applicant that files an IRS Form 1040, Schedule C, and elects to calculate the PPP loan amount using gross income cannot use this form, and instead must use SBA Form 2483-C.* An Applicant that files an IRS Form 1040, Schedule F, and calculates the PPP loan amount using gross income must also use this form.

**Instructions for completing this form:**

With respect to Purpose of the Loan, payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating Average Monthly Payroll, most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals (including single member LLCs and qualified joint ventures) and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, and elect to calculate the PPP loan amount using net profit, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees (to calculate loan amount using gross income, see SBA Form 2483-C). For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For Schedule F filers, if the Applicant is a qualified joint venture for federal income tax purposes ((1) the only members of the joint venture are a married couple who file a joint return and each file Schedule F, (2) both spouses materially participate in the trade or business, and (3) both spouses elect not to be treated as a partnership), only one spouse may submit this form on behalf of the qualified joint venture.

For purposes of calculating the loan amount using gross income (Schedule F filers only), use the sum of gross income (Schedule F, line 9) from both spouses. For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one). Applicants may use their average employment over the time period used to calculate their aggregate payroll costs to determine their number of employees. Alternatively, Applicants may elect to use the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application.

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant:
- For a sole proprietorship, the sole proprietor;
- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;
- For a corporation, all owners of 20% or more of the corporation;
- For limited liability companies, all members owning 20% or more of the company; and
- Any Trustor (if the Applicant is owned by a trust).



# Paycheck Protection Program
## Borrower Application Form Revised March 18, 2021

For purposes of reporting (optional) demographic information:

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.
2. **Description**. This form requests information about each of the Applicant's Principals. Add additional sheets if necessary.
3. **Definition of Principal**. The term "Principal" means:
   - For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.
   - For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Applicant, or any partner that is involved in the management of the Applicant's business.
   - For a corporation, all owners of 20% or more of the Applicant, and each officer and director.
   - For a limited liability company, all members owning 20% or more of the Applicant, and each officer and director.
   - Any individual hired by the Applicant to manage the day-to-day operations of the Applicant ("key employee").
   - Any trustor (if the Applicant is owned by a trust).
   - For a nonprofit organization, the officers and directors of the Applicant.
4. **Principal Name**. Insert the full name of the Principal.
5. **Principal Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act.

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

USA-000653



**Paycheck Protection Program**
**Borrower Application Form Revised March 18, 2021**

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549 (2 C.F.R. Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable |
|---|---|
| RED BOILING SPRINGS TN OPCO LLC | |

| Business Address | NAICS Code | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|---|
| 440 SYLVAN AVE | 623110-Nursing Care Facilities (Skilled Nursing Facilities) | ▆▆▆▆▆ | 718 551-8491 ( ) - |
| ENGLEWOOD CLIFFS, NJ, 07632, US | | **Primary Contact** | **E-mail Address** |
| | | Simcha Hyman | ishulman@axgsolutions.com |

☒ **First Draw PPP Loan** ☐ **Second Draw PPP Loan** (check one)

ACBS0001347713

**SBA PPP Loan Number:** 1993548705

**Lender PPP Loan Number:** _____

**PPP Loan Amount:** 375647.92

**PPP Loan Disbursement Date:** 2021-04-13

**Employees at Time of Loan Application:** 60

**Employees at Time of Forgiveness Application:** 56

**Covered Period:** 2021-04-13 to 2021-09-27

If Borrower (Together with Affiliates, if Applicable) Received First Draw PPP Loans of $2 million or More or Second Draw PPP Loans of $2 Million or More, check here: ☒

**Forgiveness Amount Calculation:**

Payroll and Nonpayroll Costs
Line 1.  Payroll Costs: 458476.23

Line 2.  Business Mortgage Interest Payments: 150259.17

Line 3.  Business Rent or Lease Payments: 0

Line 4.  Business Utility Payments: 0

Line 5.  Covered Operations Expenditures: .00

Line 6.  Covered Property Damage Costs: .00

Line 7.  Covered Supplier Costs: .00

Line 8.  Covered Worker Protection Expenditures: .00

Potential Forgiveness Amounts
Line 9.  Sum the amounts on lines 1 through 8: 608735.40

Line 10. PPP Loan Amount: 375647.92

Line 11.   Payroll Cost 60% Requirement (divide Line 1 by 0.60): 764127.05

Forgiveness Amount
Line 12. Forgiveness Amount (enter the smallest of Lines 9, 10, and 11): 375647.92

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

### By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:

The Authorized Representative of the Borrower certifies to all of the below by **initialing** next to each one.



The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);
- includes payroll costs equal to at least 60% of the forgiveness amount; and
- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.



I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.



The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period. For purposes of this certification, the term "employee" includes only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.



The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.



I have submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures.



If this application is being submitted for a Second Draw PPP Loan, the Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan.



The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects. I understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, including 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.



The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency. I also understand, acknowledge, and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of ensuring compliance with PPP requirements and all SBA reviews.



I understand, acknowledge, and agree that SBA may request additional information for the purposes of evaluating the Borrower's eligibility for the PPP loan and for loan forgiveness, and that the Borrower's failure to provide information requested by SBA may result in a determination that the Borrower was ineligible for the PPP loan or a denial of the Borrower's loan forgiveness application.

In addition, the Authorized Representative of the Borrower must certify by **initialing at least ONE** of the following two items:



The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).

_____

The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application. SBA may direct a lender to disapprove the Borrower's loan forgiveness application if SBA determines that the Borrower was ineligible for the PPP loan.

USA-000656

DocuSign Envelope ID: 0D99DC8A-24E1-4A9C-987C-6C23B4B4540E

# Paycheck Protection Program
## PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021

_Simcha Hyman_

_____          7/26/2022
Signature of Authorized Representative of Borrower          Date

Simcha Hyman                                           Authorized Representative
_____          _____
Print Name                                               Title

DocuSign Envelope ID: 0D99DC8A-24E1-4A9C-987C-6C23B4B4540E

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

### PPP LOAN FORGIVENESS APPLICATION FORM 3508EZ INSTRUCTIONS FOR BORROWERS

### Checklist for Using SBA Form 3508EZ

You (the Borrower) can apply for forgiveness of your First or Second Draw Paycheck Protection Program (PPP) Loan using this SBA Form 3508EZ if your PPP loan amount is more than $150,000 and you can check at least one of the two boxes below. If your loan amount is $150,000 or less, please use SBA Form 3508S. Do not submit this Checklist with your SBA Form 3508EZ. Each PPP loan must use a separate loan forgiveness application form. You cannot use one form to apply for forgiveness of both a First Draw PPP Loan and a Second Draw PPP loan. For a Second Draw PPP Loan in excess of $150,000, you must submit a loan forgiveness application for your First Draw PPP Loan before or simultaneously with the loan forgiveness application for your Second Draw PPP Loan, even if the calculated amount of forgiveness on your First Draw PPP Loan is zero.

☑ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000.);

### AND

The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period.

- Ignore reductions that arose from an inability to rehire individuals who were employees on February 15, 2020 if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).
- Also ignore reductions in an employee's hours that the Borrower offered to restore and the employee refused. See 85 FR 33004, 33007 (June 1, 2020) for more details.

-------------------------------------------------------------------------------------------------------------

☐ The Borrower did not reduce annual salary or hourly wages of any employee by more than 25 percent during the Covered Period compared to the most recent full quarter before the Covered Period. (For purposes of this statement, "employees" means only those employees that did not receive, during any single period during 2019, wages or salary at an annualized rate of pay in an amount more than $100,000,);

### AND

The Borrower was unable to operate during the Covered Period at the same level of business activity as before February 15, 2020, due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 and the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

If you can check at least one of the two boxes above, complete this SBA Form 3508EZ in accordance with the instructions below, and **submit it to your Lender** (or the Lender that is servicing your loan). Borrowers may also complete this application electronically through their Lender. If your loan is for more than $150,000 and you are unable to check one of the boxes above, you cannot use SBA Form 3508EZ and instead you must apply for forgiveness of your PPP loan using SBA Form 3508.

If this application is being submitted for a First Draw PPP Loan approved on or before August 8, 2020 and the Borrower is required to submit an SBA Form 3508D disclosure of a controlling interest, that disclosure must be submitted to the Lender not later than 30 days after submission of this loan forgiveness application. See subsection B.16 of SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

### Instructions for PPP Loan Forgiveness Calculation Form 3508EZ

**Business Legal Name ("Borrower")/DBA or Tradename (if applicable)/Business TIN (EIN, SSN):** Enter the same information as on your Borrower Application Form (SBA Form 2483, SBA Form 2483-SD, or lender's equivalent).

**Business Address/NAICS Code/Business Phone/Primary Contact/E-mail Address:** Enter the same information as on your Borrower Application Form, unless there has been a change in address or contact information. If NAICS Code was not on the Borrower Application Form, match the business activity code provided on IRS income tax filings, if applicable.

**First Draw PPP Loan or Second Draw PPP Loan:** Select the box that describes the PPP loan that this forgiveness application is for. If you only have one PPP loan, select First Draw PPP Loan.

**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

**SBA PPP Loan Number:** Enter the loan number assigned by SBA at the time of loan approval. Request this number from the Lender if necessary.

**Lender PPP Loan Number:** Enter the loan number assigned to the PPP loan by the Lender.

**PPP Loan Amount:** Enter the disbursed principal amount of the PPP loan (the total loan amount you received from the Lender).

**PPP Loan Disbursement Date:** Enter the date that you received the PPP loan proceeds from the Lender. If loan proceeds were received on more than one date, enter the first date on which you received PPP loan proceeds. If you received an authorized increase on your First Draw PPP Loan after December 27, 2020, you must enter the date on which you received the original disbursement of your PPP loan proceeds.

**Employees at Time of Loan Application:** Enter the total number of employees at the time of the PPP loan application.

**Employees at Time of Forgiveness Application:** Enter the total number of employees at the time the Borrower is applying for loan forgiveness.

**Covered Period:** The Covered Period begins on the date the loan was originally disbursed. It ends on a date selected by the Borrower that is at least 8 weeks following the date of loan disbursement and not more than 24 weeks after the date of loan disbursement. For example, if the Borrower received their PPP loan proceeds on Monday, April 20, 2020, the first day of the Covered Period is Monday, April 20, 2020 and the final day of the Covered Period is any date selected by the Borrower between Sunday, June 14, 2020 and Sunday, October 4, 2020.

**If Borrower, Together with Affiliates, if Applicable, Received First Draw PPP Loans of $2 Million or More or Second Draw PPP Loans of $2 Million or More:** Check the box if the Borrower, together with its affiliates (to the extent required under subsection D.3. of SBA's interim final rule posted on January 6, 2021 (86 FR 3692) and not waived under 15 U.S.C. 636(a)(36)(D)(iv)), received (a) First Draw PPP Loans with an original principal amount of $2 million or more (if this is a First Draw PPP Loan forgiveness application), or (b) Second Draw PPP Loans with an original principal amount of $2 million or more (if this is a Second Draw PPP Loan forgiveness application).

**Forgiveness Amount Calculation (see Summary of Costs Eligible for Forgiveness below):**

**Line 1:** Enter total eligible payroll costs incurred or paid during the Covered Period. To calculate these costs, add the following:

Cash Compensation: The sum of gross salary, gross wages, gross tips, gross commissions, paid leave (vacation, family, medical or sick leave, not including leave covered by the Families First Coronavirus Response Act), and allowances for dismissal or separation paid or incurred during the Covered Period. Do not include qualified wages taken into account in determining the Employer Retention Credit. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. For example, for an 8-week Covered Period, the maximum is $15,385, for a 24-week Covered Period, the maximum is $46,154. You can only include compensation of employees who were employed by the Borrower at any point during the Covered Period and whose principal place of residence is in the United States.

Employee Benefits: The total amount paid by the Borrower for:
1. Employer contributions for employee group health, life, disability, vision, or dental insurance, including employer contributions to a self-insured, employer-sponsored group health plan, but excluding any pre-tax or after-tax contributions by employees. Do not add contributions for these benefits made on behalf of a self-employed individual, general partners, or owner-employees of an S-corporation, because such payments are already included in their compensation.
2. Employer contributions to employee retirement plans, excluding any pre-tax or after-tax contributions by employees. Do not add employer retirement contributions made on behalf of a self-employed individual or general partners, because such payments are already included in their compensation.
3. Employer state and local taxes paid by the borrower and assessed on employee compensation (e.g., state unemployment insurance tax), excluding any taxes withheld from employee earnings.

Owner Compensation: Any amounts paid to owners (owner-employees (with an ownership stake of 5% or more), a self-employed individual, or general partners). For each individual owner in total across all businesses, this amount is capped at (a) $20,833 (the 2.5-month equivalent of $100,000 per year), or (b) the 2.5-month equivalent of the individual's applicable compensation in the year that was used to calculate the loan amount (2019 or 2020), whichever is lower.

**Line 2:** Enter the amount of business mortgage interest payments paid or incurred during the Covered Period on any business

USCA_00_0599

mortgage obligation on real or personal property in force before February 15, 2020. Do not include prepayments.

**Line 3:** Enter the amount of business rent or lease payments paid or incurred for real or personal property during the Covered Period, pursuant to lease agreements in force before February 15, 2020.

**Line 4:** Enter the amount of business utility payments paid or incurred during the Covered Period for business utilities for which service began before February 15, 2020.

**Line 5:** Enter the amount of covered operations expenditures paid or incurred during the Covered Period.

**Line 6:** Enter the amount of covered property damage costs paid or incurred during the Covered Period.

**Line 7:** Enter the amount of covered supplier costs paid or incurred during the Covered Period pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order shall have been in effect before or at any time during the Covered Period).

**Line 8:** Enter the amount of covered worker protection expenditures paid or incurred during the Covered Period.

*NOTE: For lines 2-8, you are not required to report payments that you do not want to include in the forgiveness amount.*

**Line 9:** Add lines 1 through 8 enter the total.

**Line 10:** Enter the PPP Loan Amount.

**Line 11:** Divide the amount on line 1 by 0.60, and enter the amount. This determines whether at least 60% of the potential forgiveness amount was used for payroll costs.

**Line 12:** Enter the smallest of lines 9, 10, or 11.

## Summary of Costs Eligible for Forgiveness:

Borrowers are eligible for loan forgiveness for the following costs:

1. **Eligible payroll costs.** Borrowers are generally eligible for forgiveness for the payroll costs paid and payroll costs incurred during the Covered Period ("payroll costs"). Payroll costs are considered paid on the day that paychecks are distributed or the Borrower originates an ACH credit transaction. Payroll costs are considered incurred on the day that the employee's pay is earned. Payroll costs incurred but not paid during the Borrower's last pay period of the Covered Period are eligible for forgiveness if paid on or before the next regular payroll date. Otherwise, payroll costs must be paid during the Covered Period. For each individual employee, the total amount of cash compensation eligible for forgiveness may not exceed an annual salary of $100,000, as prorated for the Covered Period. Count payroll costs that were both paid and incurred only once. Include only payroll costs for employees whose principal place of residence is in the United States. For information on what qualifies as payroll costs, see SBA's interim final rule posted on January 6, 2021 (86 FR 3692).

2. **Eligible nonpayroll costs.** Nonpayroll costs eligible for forgiveness consist of:
   (a) covered mortgage obligations: payments of mortgage interest (not including any prepayment or payment of principal) on any business mortgage obligation on real or personal property incurred before February 15, 2020 ("business mortgage interest payments");
   (b) covered rent obligations: business rent or lease payments pursuant to lease agreements for real or personal property in force before February 15, 2020 ("business rent or lease payments");
   (c) covered utility payments: business payments for a service for the distribution of electricity, gas, water, telephone, transportation, or internet access for which service began before February 15, 2020 ("business utility payments");
   (d) covered operations expenditures: payments for any business software or cloud computing service that facilitates business operations, product or service delivery, the processing, payment, or tracking of payroll expenses, human resources, sales and billing functions, or accounting of tracking of supplies, inventory, records, and expenses;
   (e) covered property damage costs: costs related to property damage and vandalism or looting due to public disturbances that occurred during 2020 that were not covered by insurance or other compensation;
   (f) covered supplier costs: expenditures made to a supplier of goods for the supply of goods that are essential to the operations of the Borrower at the time at which the expenditure is made, and made pursuant to a contract, order, or purchase order in effect prior to the beginning of the Covered Period (for perishable goods, the contract, order, or purchase order may have been in effect before or at any time during the Covered Period); and
   (g) covered worker protection expenditures: operating or capital expenditures that facilitate the adaptation of the business



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

activities of an entity to comply with the requirements established or guidance issued by the Department of Health and Human Services, the Centers for Disease Control, or the Occupational Safety and Health Administration, or any equivalent requirements established or guidance issued by a State or local government, during the period starting March 1, 2020 and ending on the date on which the national emergency declared by the President with respect to the Coronavirus Disease 2019 (COVID-19) expires related to maintenance standards for sanitation, social distancing, or any other worker or customer safety requirement related to COVID-19, but does not include residential real property or intangible property.

Eligible nonpayroll costs cannot exceed 40% of the total forgiveness amount. An eligible nonpayroll cost either must be paid during the Covered Period or incurred during the Covered Period and paid on or before the next regular billing date, even if the billing date is after the Covered Period. Count nonpayroll costs that were both paid and incurred only once.

### <u>Documents that Each Borrower Must Submit with its PPP Loan Forgiveness Application Form 3508EZ</u>

**PPP Loan Forgiveness Calculation Form 3508EZ**

**Payroll:** Documentation verifying the eligible cash compensation and non-cash benefit payments from the Covered Period consisting of each of the following:
a. Bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees.
b. Tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period:
    i. Payroll tax filings reported, or that will be reported, to the IRS (typically, Form 941); and
    ii. State quarterly business and individual employee wage reporting and unemployment insurance tax filings reported, or that will be reported, to the relevant state.
c. Payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee group health, life, disability, vision or dental insurance and retirement plans that the Borrower included in the forgiveness amount.
d. If you checked only the second box on the checklist on page 1 of these instructions, the average number of full-time equivalent employees on payroll employed by the Borrower on January 1, 2020 and at the end of the Covered Period.

**Nonpayroll:** For categories a-c, documentation verifying existence of the obligations/services prior to February 15, 2020 and, for all categories, eligible payments from the Covered Period.
a. Business mortgage interest payments: Copy of lender amortization schedule and receipts or cancelled checks verifying eligible payments from the Covered Period; or lender account statements from February 2020 and the months of the Covered Period through one month after the end of the Covered Period verifying interest amounts and eligible payments.
b. Business rent or lease payments: Copy of current lease agreement and receipts or cancelled checks verifying eligible payments from the Covered Period; or lessor account statements from February 2020 and from the Covered Period through one month after the end of the Covered Period verifying eligible payments.
c. Business utility payments: Copy of invoices from February 2020 and those paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
d. Covered operations expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
e. Covered property damage costs: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the costs were related to property damage and vandalism or looting due to public disturbances that occurred during 2020 and such costs were not covered by insurance or other compensation.
f. Covered supplier costs: Copy of contracts, orders, or purchase orders in effect at any time before the Covered Period (except for perishable goods), copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments.
g. Covered worker protection expenditures: Copy of invoices, orders, or purchase orders paid during the Covered Period and receipts, cancelled checks, or account statements verifying those eligible payments, and documentation that the expenditures were used by the Borrower to comply with applicable COVID-19 guidance during the Covered Period.

### <u>Documents that Each Borrower Must Maintain but is Not Required to Submit</u>

Documentation supporting the certification that annual salaries or hourly wages were not reduced by more than 25 percent during the Covered Period relative to the most recent full quarter before the Covered Period. This documentation must include payroll records that separately list each employee and show the amounts paid to each employee during the most recent full quarter before the Covered Period, and the amounts paid to each employee during the Covered Period.

Documentation regarding any employee job offers and refusals, refusals to accept restoration of reductions in hours, firings for cause,



**Paycheck Protection Program**
**PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

voluntary resignations, written requests by any employee for reductions in work schedule, and any inability to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period).

Documentation supporting the certification, if applicable, that the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, the last day of the Covered Period). This documentation must include payroll records that separately list each employee and show the amounts paid to each employee between January 1, 2020 and the end of the Covered Period.

Documentation supporting the certification, if applicable, that the Borrower was unable to operate between February 15, 2020 and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued between March 1, 2020 the last day of the Covered Period) by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19. This documentation must include copies of the applicable requirements for each borrower location and relevant borrower financial records.

All records relating to the Borrower's PPP loan, including documentation submitted with its PPP loan application, documentation supporting the Borrower's certifications as to the necessity of the loan request and its eligibility for a PPP loan (including the Borrower's gross receipt reduction certification for a Second Draw PPP Loan, if applicable), documentation necessary to support the Borrower's loan forgiveness application, and documentation demonstrating the Borrower's material compliance with PPP requirements.

**Records Retention Requirement:** The Borrower must retain all such documentation in its files for six years after the date the loan is forgiven or repaid in full, and permit authorized representatives of SBA, including representatives of its Office of Inspector General, to access such files upon request. The Borrower must provide documentation independently to a lender to satisfy relevant Federal, State, local or other statutory or regulatory requirements or in connection with an SBA loan review or audit.



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

| **Check One:** Limited Liability Company | **DBA or Tradename (if Applicable)** |
|---|---|

| **Business Legal Name** | **NAICS Code** | **Year of Establishment (if applicable)** |
|---|---|---|
| ACCORDIUS HEALTH AT RIVER POINTE LLC | 623110 | 7/1/2019 |

| **Business Address** (Street, City, State, Zip Code - No P.O. Box addresses allowed) | **Applicant (including affiliates, if applicable) Meets Size Standard (check one):** |
|---|---|
| 4142 BONNEY ROAD VIRGINIA BEACH, VA, 23452 | SBA alternative size standard |

| **Business TIN (EIN, SSN)** | **Business Phone** | **Primary Contact** | **Email Address** |
|---|---|---|---|
| ██████ | (201) 928-7800 | SIMCHA HYMAN | marc@theportopiccologroup.com |

| **Average Monthly Payroll:** | $224,545.00 | **x 2.5 + EIDL (Do Not Include Any EIDL Advance) equals Loan Request Amount:** | $561,300.00 | **Number of Employees:** | 52 |
|---|---|---|---|---|---|
| **Purpose of loan (select all that apply):** | Payroll Costs;Rent / Mortgage Interest;Utilities;Covered Operations Expenditures;Covered Property Damage;Covered Suppliers Cost;Covered Worker Protection Expenditures Other: | | | | |

## Applicant Ownership
List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| SIMCHA HYMAN | Owner | 50.000% | ██████ | ██████ |
| NAFTALI ZANZIPER | Co-Owner | 50.000% | ██████ | ██████ |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | | X |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is (a) currently delinquent, or (b) has defaulted in the last 7 years and caused a loss to the government? | | X |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management (including a management agreement) with any other business? If yes, list all such businesses (including their TINs if available) and describe the relationship on a separate sheet identified as addendum A. | X | |



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

| | Yes | No |
|---|---|---|
| 4. Did the Applicant receive an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | | X |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?<br><br>Initial here to confirm your response to question 5 → | | X |
| 6. Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, or within the last year, for any other felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; or 4) commenced any form of parole or probation (including probation before judgment)?<br><br>Initial here to confirm your response to question 6 → | | X |
| 7. Is the United States the principal place of residence for all employees included in the Applicant's payroll calculation above? | X | |
| 8. Is the Applicant a franchise? | | X |
| 9. Is the franchise listed in the SBA's Franchise Directory? If yes, enter the SBA Franchise Identifier Code: | | |



<p align="center"><b>Paycheck Protection Program Borrower</b><br/>
<b>Application Form Revised January 8, 2021</b></p>

<u><b>By Signing Below, You Make the Following Representations, Authorizations, and Certifications</b></u>

<u>CERTIFICATIONS AND AUTHORIZATIONS</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Paycheck Protection Program Rules).
- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) if not a housing cooperative, eligible 501(c)(6) organization, or eligible destination marketing organization, employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry; (3) if a housing cooperative, eligible 501(c)(6) organization, or eligible destination marketing organization, employs no more than 300 employees; (4) if NAICS 72, employs no more than 500 employees per physical location; (5) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 500 employees (or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry) per location; or (6) is a small business under the applicable revenue-based size standard established by SBA in 13 C.F.R. 121.201 for the Applicant's industry or under the SBA alternative size standard.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. If Applicant is a news organization that became eligible for a loan under Section 317 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, proceeds of the loan will be used to support expenses at the component of the business concern that produces or distributes locally focused or emergency information
- I understand that SBA encourages the purchase, to the extent feasible, of American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any EIDL loan received by the Applicant (Section 7(b)(2) of the Small Business Act) between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses for loans under the Paycheck Protection Program Rules.

For Applicants who are individuals: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

<u>CERTIFICATIONS</u>

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

  The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

  Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant

  The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud

  I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs. If required, the Applicant will provide to the Lender and/or SBA documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of eligible expenses for the covered period following this loan.

USA-000665

SBA Form 2483 (01/21)



OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

The Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)).

The Applicant has not and will not receive a Shuttered Venue Operator grant from SBA.

The President, the Vice President, the head of an Executive department, or a Member of Congress, or the spouse of such person as determined under applicable common law, does not directly or indirectly hold a controlling interest in the Applicant, with such terms having the meanings provided in Section 322 of the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act.

The Applicant is not an issuer, the securities of which are listed on an exchange registered as a national securities exchange under section 6 of the Securities Exchange Act of 1934 (15 U.S.C. 78f).

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

I acknowledge that the Lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge, and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

DocuSigned by:

_____
7D9DA3532C5F489...

Signature of Authorized Representative of Borrower

Date 3/16/2021 8:12 PM

Print Name: Simcha Hyman

Title Manager



**Paycheck Protection Program Borrower**
**Application Form Revised January 8, 2021**

OMB Control No.: 3245-0407
Expiration Date: 7/31/2021

### Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and submitted to your SBA Participating Lender. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

### Instructions for completing this form:

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave (except those paid leave amounts for which a credit is allowed under FFCRA Sections 7001 and 7003); allowance for separation or dismissal; payment for the provision of employee benefits (including insurance premiums) consisting of group health care coverage, group life, disability, vision, or dental insurance, and retirement benefits; payment of state and local taxes assessed on compensation of employees; and, for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019 or 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For seasonal businesses, the Applicant may elect to instead use average total monthly payroll for any twelve-week period selected by the Applicant between February 15, 2019 and February 15, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make the payments is incurred, for each employee. For farmers and ranchers that operate as a sole proprietorship or as an independent contractor, or who are eligible self-employed individuals and report farm income or expenses on a Schedule F (or any equivalent successor IRS form), payroll costs are computed using eligible payroll costs for employees, if any, plus the lesser of $100,000 and the difference between gross income and any eligible payroll costs for employees, as reported on a Schedule F. For Applicants that file IRS Form 1040, Schedule C, payroll costs are computed using line 31 net profit amount, limited to $100,000, plus any eligible payroll costs for employees. For Applicants that are partnerships, payroll costs are computed using net earnings from self-employment of individual general partners, as reported on IRS Form 1065 K-1, reduced by section 179 expense deduction claimed, unreimbursed partnership expenses claimed, and depletion claimed on oil and gas properties, multiplied by 0.9235, that is not more than $100,000, plus any eligible payroll costs for employees.

For purposes of reporting Number of Employees, sole proprietors, self-employed individuals, and independent contractors should include themselves as employees (i.e., the minimum number in the box Number of Employees is one).

For purposes of reporting Year of Establishment, self-employed individuals and independent contractors may enter "NA".

For purposes of reporting NAICS Code, applicants must match the business activity code provided on their IRS income tax filings, if applicable.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020 to Loan Request as indicated on the form. Do not add the amount of any EIDL Advance.

All parties listed below are considered owners of the Applicant, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to: Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416, and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503. **PLEASE DO NOT SEND FORMS TO THESE ADDRESSES.**

DocuSign Envelope ID: 771DED3E-FF5B-4939-9A0F-39A37F68622A



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 U.S.C. Section 636(a)(1)(B) of the Small Business Act

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Program using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – This law provides, with some exceptions, that SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that is generally released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers, the amount of the loan, and the type of the loan. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined and required to abate the hazards in their workplaces. They may also be ordered to cease operations posing an imminent danger of death or serious injury until employees can be protected. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Protection Act**.**

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant nor any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

DocuSign Envelope ID: 771DED3E-FF5B-4939-9A0F-39A37F68622A



# Paycheck Protection Program Borrower
## Application Form Revised January 8, 2021

### PPP Borrower Demographic Information Form (Optional)

Instructions

1. **Purpose**. Veteran/gender/race/ethnicity data is collected for program reporting purposes only.

2. **Description**. This form requests information about each of the Borrower's Principals. Add additional sheets if necessary.

3. **Definition of Principal.** The term "Principal" means:

- For a self-employed individual, independent contractor, or a sole proprietor, the self-employed individual, independent contractor, or sole proprietor.

- For a partnership, all general partners and all limited partners owning 20% or more of the equity of the Borrower, or any partner that is involved in the management of the Borrower's business.

- For a corporation, all owners of 20% or more of the Borrower, and each officer and director.

- For a limited liability company, all members owning 20% or more of the Borrower, and each officer and director.

- Any individual hired by the Borrower to manage the day-to-day operations of the Borrower ("key employee").

- Any trustor (if the Borrower is owned by a trust).

- For a nonprofit organization, the officers and directors of the Borrower.

4. **Principal Name**. Insert the full name of the Principal.

5. **Position**. Identify the Principal's position; for example, self-employed individual; independent contractor; sole proprietor; general partner; owner; officer; director; member; or key employee.

| Principal Name | | Position | |
|---|---|---|---|
| SIMCHA HYMAN | | Manager | |
| Veteran | 1=Non-Veteran; 2=Veteran; 3=Service-Disabled Veteran; 4=Spouse of Veteran; X=Not Disclosed | 1=Non-Veteran | |
| Gender | M=Male; F=Female; X=Not Disclosed | M=Male | |
| Race | 1=American Indian or Alaska Native; 2=Asian; 3=Black or African-American; 4=Native Hawaiian or Pacific Islander; 5=White; X=Not Disclosed | 5=White | |
| Ethnicity | H=Hispanic or Latino; N=Not Hispanic or Latino; X=Not Disclosed | N=Not Hispanic or Latino | |

USA-000669

SBA Form 2483 (01/21)

# Affiliate Narrative Worksheet

Overview:
**Affiliation Family**: Naftali Simcha et al
**Affiliate Family #:** 217
**Draw Type:** First Draw
**Number of PPP loans:** 84
**Total PPP loans:** $44,983,180.44
Total EE count: 5,880

*Revised and Updated 10/17/2022*

- On September 29, 2022, 23 loans (highlighted below) were notified of a potential denial and a lender request was sent to each borrower. The lender uploaded the borrower's response on October 14, 2022.
- The borrower's response and the documentation provided does not resolve the denial recommendation for exceeding the limitation in aggregate to a single corporate group of $20,000,000. <u>Hold Code 37 and 54 are valid for these loans.</u> Two loans (#1635078706 and #1993548705) will have a Hold Code 37 added.
- These loans are notated with yellow highlights in Section III – Updated Hold Codes. While the note says deny on 10/28, this date is 20 business days after the request (the last day for any response from the borrower.) Since the borrower has responded to the lender request and potential denial, it is acceptable to proceed with the denial today, October 17, 2022.

Reviewer:                                      Acceptor:
Christopher Jenkins 10/17/2022          Stephen Bowman 10/17/2022

*Revised and Updated 9/26/2022*

## I.    <u>Updated:</u> Summary & Recommendation

- Naftali Simcha et al Family consist of 343 entities, of which 84 entities received First Draw PPP loans totaling $44,983,180.44.
    - All 84 entities meet SBA's alternative size standard and were eligible for PPP financing.
    - However, the 84 loans within the Naftali Simcha Family et al comprise of one single corporate group of Naftali Zanziper and Simcha Hyman. This corporate group exceeded the PPP loan limitation of $20,000,000 in aggregate.

As of 9/26/2022:
- 49 Loans are in Accepted Status
    - 48 of the Accepted loans exceed the limitation of $20,000,000 in aggregate to a single corporate group and were disbursed after April 30, 2020. <u>It is recommended that these 48 loans be denied.</u>
        - ❖ 25 of the 48 loans to be denied had the first lender request, notifying the borrower of a potential denial, sent on Aug 15, 2022. The 20 days to submit documentation has passed and SBA can proceed with the denial immediately.
        - ❖ 23 of these 48 borrowers were not notified of a potential denial until September 29, 2022. SBA cannot proceed with the denial until the borrower has been given 20 business to respond. On October 20, 2022, the 20 will have expired and SBA can proceed with a denial after that date.

1

❖ See the hold code chart for each individual loan's status and date of notification.

○ 1 Loan (#5506547406) is eligible for forgiveness based on meeting the alternative size standard and the corporate group having not exceeded the limitation of $20,000,000 in aggregate at the time the loan was disbursed. <u>Therefore, Hold Code 37 can be cleared.</u>

❖ <u>However, this loan has an open Hold Code 36</u> for a potential criminal record of one of the principal owners (Naftali Zanziper 50% equity.) <u>Until this hold code is resolved, a final approval/denial cannot be recommended.</u> The Hold Code Team requested documentation on September 6, and September 20, 2022. The Affiliation Team requested documentation again on 10/2/22. No documentation has been received to date.

❖ This loan is not part of SBA's original sample. Should Hold Code 36 be cleared, then the loan may be processed as full approval recommendations without further review.

- 1 loan has yet to be submitted.
- 34 loans have a current status of Payment Confirmed.
  ○ 31 meet SBA size standards and corporate group limitations
  ○ 3 exceed the limitation to a single corporate group.
    ❖ Should Hold Code 36 NOT be cleared for loan #5506547406, then Hold Code 70 will be added to all 34 paid loans.

## II. <u>Updated:</u> Loan Limitation to a Single Corporate Group

- The original narrative contains an error to the $20,000,000 limitation to a single corporate group. The error was both in the aggregate calculations, and the chronological order loans were disbursed.
- The corporate group of Naftali Zanziper and Simcha Hyman accumulated $19,610,909.24 in First Draw PPP loans with the distribution of nine separate PPP loans on June 5, 2020.
- The next loan disbursed was loan #4302027810 for $480,046.08 on June 8,2020, which gave the corporate group of Naftali Zanziper and Simcha Hyman in aggregate, PPP First Draw loans of $20,090,955.32, exceeding the limitation to a single corporate group. Therefore, this loan/entity, and all other loans/entities associated with this corporate group progressing forward, were ineligible for additional PPP financing as described in IFR #7 - Interim Final Rule on Corporate Groups and NonBank and NonInsured Depository Institution Lenders.
- 5 Paid loans with Hold Code 54's need to be cleared. 3 of these loans in Payment Confirmed status were incorrectly identified in the original narrative as exceeding the corporate limitations (#5507767404, #5506217401, #4300017803.) The recommendation was to add Hold Code 70. This is incorrect. These 3 loans should have had no further action taken. As of 9/26/2022, Hold Code 70 has not been added, but instead Hold Code 54 has been added for exceeding the Corporate Maximum loan limitations. Two others had Hold Code 54 added (#5506827407, #5507417404). All 5 of these loans above are recommended to have Code 54 cleared.
- 3 loans currently are in a status of Payment Confirmed that did exceed the loan limitations to a single corporate group and have no open hold codes. It is recommended that Hold Code 70 be added to these 3 loans (#4302027810, #5466647809, #5699257800.)

| Naftali Simcha et al. 1st Draw PPP Loans | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PPP Loan # | Status | Borrower | NAICS | Hold Codes | Ownership | Employees | Loan Amount | Date Disbursed |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 4007707200 | Payment Confirmed | Accordius Health LLC | 623110 | (54) | N. Zanziper 50% S. Hyman 50% | 70 | $602,700.00 | 04/30/20 |
| 2 | 4445407204 | Payment Confirmed | The Portopiccolo Group LLC | 623110 | (33) | N. Zanziper 50% S. Hyman 50% | 64 | $475,600.00 | 05/01/20 |
| 3 | 4037827202 | Payment Confirmed | Clearview Healthcare Management KY LLC | 623110 | (33,45) | N. Zanziper 50% S. Hyman 50% | 29 | $229,800.00 | 05/04/20 |
| 4 | 4080027204 | Payment Confirmed | Clearview Healthcare Management TN LLC | 531110 | (33,45) | N. Zanziper 50% S. Hyman 50% | 17 | $142,400.00 | 05/04/20 |
| 5 | 3606874401 | Payment Confirmed | Midtown Center for Health & Rehab. LLC | 623110 | (17,33) | N. Zanziper 50% S. Hyman 50% | 129 | $1,083,227.87 | 05/13/20 |
| 6 | 5506827407 | Payment Confirmed | Accordius Health at Clemmons LLC | 623110 | (33) | N. Zanziper 50% S. Hyman 50% | 76 | $587,560.85 | 05/15/20 |
| 7 | 5507307406 | Payment Confirmed | Jeffersontown Opco LLC | 623110 | (33) 54 | N. Zanziper 50% S. Hyman 50% | 71 | $534,492.86 | 05/15/20 |
| 8 | 5507807403 | Payment Confirmed | Down East Living and Rehab Center LLC | 623110 | (33) | N. Zanziper 50% S. Hyman 50% | 39 | $338,230.72 | 05/15/20 |
| 9 | 5507917401 | Payment Confirmed | Accordius Health at Scotland Manor LLC | 623110 | (33) | N. Zanziper 50% S. Hyman 50% | 41 | $337,440.70 | 05/15/20 |
| 10 | 5508087403 | Payment Confirmed | Westwood Nursing & Rehabilitation LLC | 623110 | (17,33, 54) | N. Zanziper 50% S. Hyman 50% | 86 | $580,074.21 | 05/15/20 |
| 11 | 5507417404 | Payment Confirmed | Birchwood Nursing and Rehab. LLC | 623110 | (17, 33) 54 | N. Zanziper 50% S. Hyman 50% | 61 | $460,066.65 | 05/15/20 |
| 12 | 5506547406 | Accepted | Accordius Health at Salisbury LLC | 623110 | (17,33) 36, 37 | N. Zanziper 50% S. Hyman 50% | 91 | $785,943.87 | 05/15/20 |
| 13 | 5507767404 | Payment Confirmed | Fulton Nursing and Rehabilitation LLC | 623110 | (33) 54 | N. Zanziper 50% S. Hyman 50% | 45 | $331,073.22 | 05/15/20 |
| 14 | 5506687402 | Payment Confirmed | Accordius Health at Gastonia LLC | 621999 | (33) | N. Zanziper 50% S. Hyman 50% | 74 | $675,300.49 | 05/18/20 |
| 15 | 5727427409 | Payment Confirmed | Accordius Health at Lexington LLC | 623110 | (33) | N. Zanziper 50% S. Hyman 50% | 80 | $784,804.12 | 05/18/20 |
| 16 | 5506767402 | Payment Confirmed | Accordius Health at Wilmington LLC | 623312 | (33,54) | N. Zanziper 50% S. Hyman 50% | 84 | $722,585.19 | 05/18/20 |
| 17 | 5506707406 | Payment Confirmed | Cherokee Park Rehabilitation LLC | 621498 | (17,33, 54) | N. Zanziper 50% S. Hyman 50% | 75 | $655,700.22 | 05/18/20 |
| 18 | 5506217401 | Payment Confirmed | Accordius Health at Creekside Care LLC | 623110 | (33) 54 | N. Zanziper 50% S. Hyman 50% | 100 | $916,559.67 | 05/22/20 |
| 19 | 1958947803 | Payment Confirmed | Accordius Health at Waynesboro LLC | 623110 | (33,54) | N. Zanziper 50% S. Hyman 50% | 88 | $548,893.85 | 06/02/20 |
| 20 | 4306187809 | Payment Confirmed | Pelican Health Henderson LLC | 623110 | (33,54) | N. Zanziper 50% S. Hyman 50% | 52 | $388,978.78 | 06/02/20 |
| 21 | 5471747809 | Payment Confirmed | Silver Spring MD Opco LLC | 623110 | (33,54) | N. Zanziper 50% S. Hyman 50% | 49 | $386,872.83 | 06/02/20 |
| 22 | 1682267809 | Payment Confirmed | Collierville Nursing & Rehabilitation LLC | 623110 | (17,33, 54) | N. Zanziper 50% S. Hyman 50% | 87 | $773,379.95 | 06/02/20 |
| 23 | 4300017803 | Payment Confirmed | Liberty Rd Randallstown MD Opco | 623110 | (7,8,9,1 8,33) 54 | N. Zanziper 50% S. Hyman 50% | 137 | $898,648.03 | 06/02/20 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 24 | 7130027806 | Payment Confirmed | THE CITADEL MOORESVILLE LLC | 623110 | (9,33, 54) | N. Zanziper 50% S. Hyman 50% | 81 | $548,802.50 | 06/03/20 |
| 25 | 3328747807 | Payment Confirmed | Accordius Health at Harrisonburg LLC | 623110 | (33,54) | N. Zanziper 50% S. Hyman 50% | 72 | $571,549.72 | 06/05/20 |
| 26 | 5034827800 | Payment Confirmed | Accordius Health at Nans Pointe LLC | 623110 | (33,54) | N. Zanziper 50% S. Hyman 50% | 116 | $856,804.00 | 06/05/20 |
| 27 | 5170897804 | Payment Confirmed | Carthage Opco LLC | 623110 | (33,54) | N. Zanziper 50% S. Hyman 50% | 67 | $472,100.03 | 06/05/20 |
| 28 | 2358897802 | Payment Confirmed | Accordius Health at Aberdeen LLC | 623110 | (17,33, 54) | N. Zanziper 50% S. Hyman 50% | 91 | $573,023.00 | 06/05/20 |
| 29 | 3322967802 | Payment Confirmed | CV Louisville Opco I LLC | 623110 | (17,33, 54) | N. Zanziper 50% S. Hyman 50% | 70 | $516,710.48 | 06/05/20 |
| 30 | 3384257807 | Payment Confirmed | Emporia VA Opco LLC | 623110 | (17,33, 54) | N. Zanziper 50% S. Hyman 50% | 53 | $483,125.22 | 06/05/20 |
| 31 | 5111387804 | Payment Confirmed | Dunn Loring VA Opco LLC | 623110 | (17,33, 54) | N. Zanziper 50% S. Hyman 50% | 139 | $1,357,873.73 | 06/05/20 |
| 32 | 7808967800 | Payment Confirmed | Accordius Health at Roanoke LLC | 623110 | (9,17,33 54) | N. Zanziper 50% S. Hyman 50% | 62 | $425,563.45 | 06/05/20 |
| 33 | 1964527802 | Not Yet Submitted | The Citadel Salisbury LLC | 623110 | 17,33, 54 | N. Zanziper 50% S. Hyman 50% | 92 | $565,023.03 | 06/05/20 |
| | | | *Subtotal* | | | | | *$19,610,909.24* | |
| 34 | 4302027810 | Payment Confirmed | Beck Mayfield KY Opco LLC | 623110 | (33,54) | N. Zanziper 50% S. Hyman 50% | 79 | $480,046.08 | 06/08/20 |
| 35 | 5466647809 | Payment Confirmed | The Citadel Virginia Beach LLC | 623110 | (17,33, 54) | N. Zanziper 50% S. Hyman 50% | 90 | $733,646.50 | 06/12/20 |
| 36 | 5699257800 | Payment Confirmed | Fayetteville GA Opco LLC | 623110 | (9,33, 54) | N. Zanziper 50% S. Hyman 50% | 117 | $873,710.00 | 06/16/20 |
| 37 | 3097548608 | Accepted | CAROLINA PINES AT GREENSBORO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 100 | $431,300.00 | 03/16/21 |
| 38 | 3200798601 | Accepted | ACCORDIUS HEALTH AT CHARLOTTE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 63 | $593,100.00 | 03/16/21 |
| 39 | 3015918609 | Accepted | ACCORDIUS HEALTH AT CONCORD LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 54 | $544,600.00 | 03/16/21 |
| 40 | 3124028601 | Accepted | ACCORDIUS HEALTH AT GREENSBORO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 55 | $448,200.00 | 03/16/21 |
| 41 | 3123528607 | Accepted | ACCORDIUS HEALTH AT BAY POINTE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 63 | $462,700.00 | 03/17/21 |
| 42 | 3308138604 | Accepted | THE CITADEL ELIZABETH CITY LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 67 | $439,100.00 | 03/17/21 |
| 43 | 5035908602 | Accepted | ACCORDIUS HEALTH AT MIDWOOD LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 76 | $473,900.00 | 03/22/21 |
| 44 | 5169688603 | Accepted | ACCORDIUS HEALTH AT HENDERSONVILLE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 39 | $428,600.00 | 03/22/21 |
| 45 | 5975278603 | Accepted | ACCORDIUS HEALTH AT LYNCHBURG LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 60 | $552,100.00 | 03/22/21 |
| 46 | 4967028604 | Accepted | COVINGTON TN OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 95 | $640,700.00 | 03/23/21 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 47 | 6531908606 | Accepted | ACCORDIUS HEALTH AT RIVER POINTE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 52 | $561,300.00 | 03/24/21 |
| 48 | 6580538609 | Accepted | PRINCETON KY OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 100 | $368,400.00 | 03/24/21 |
| 49 | 7659928605 | Accepted | KNOXVILLE OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 51 | $383,900.00 | 03/24/21 |
| 50 | 8162528602 | Accepted | ACCORDIUS HEALTH AT MOORESVILLE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 54 | $487,200.00 | 03/24/21 |
| 51 | 8192158610 | Accepted | ACCORDIUS HEALTH AT MONROE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 46 | $330,100.00 | 03/24/21 |
| 52 | 6327628608 | Accepted | ACCORDIUS HEALTH AT ROSE MANOR LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 60 | $568,600.00 | 03/24/21 |
| 53 | 6581038603 | Accepted | FAIR OAKS HEALTH & REHABILITATION LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 66 | $382,800.00 | 03/24/21 |
| 54 | 8306238609 | Accepted | ACCORDIUS HEALTH AT BREVARD LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 51 | $525,800.00 | 03/24/21 |
| 55 | 7988958604 | Accepted | ACCORDIUS HEALTH AT WINSTON SALEM LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 43 | $279,900.00 | 03/25/21 |
| 56 | 8074818606 | Accepted | ACCORDIUS HEALTH AT STATESVILLE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 69 | $526,800.00 | 03/25/21 |
| 57 | 8192688605 | Accepted | COUNTRYSIDE CENTER FOR REHAB. & NURS | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 65 | $232,800.00 | 03/26/21 |
| 58 | 4336458510 | Accepted | ACCORDIUS HEALTH AT ASHEVILLE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 50 | $355,800.00 | 03/29/21 |
| 59 | 1299808700 | Accepted | PADUCAH CENTER FOR HEALTH & REHAB. LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 68 | $427,250.95 | 04/09/21 |
| 60 | 1383928704 | Accepted | LOUDON OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 93 | $752,898.52 | 04/09/21 |
| 61 | 1472948701 | Accepted | MADISONVILLE HEALTH & REHAB. LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 68 | $512,810.29 | 04/09/21 |
| 62 | 1535178704 | Accepted | PELICAN HEALTH RANDOLPH LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 42 | $493,178.00 | 04/09/21 |
| 63 | 1581268708 | Accepted | PELICAN HEALTH REIDSVILLE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 76 | $527,832.47 | 04/09/21 |
| 64 | 1635078706 | Accepted | MAYFIELD KY OPCO LLC | 623110 | 54 | N. Zanziper 50% S. Hyman 50% | 49 | $333,877.40 | 04/09/21 |
| 65 | 1703648703 | Accepted | MOUNT PLEASANT TN OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 46 | $350,636.04 | 04/09/21 |
| 66 | 1825438708 | Accepted | ACCORDIUS HEALTH AT WILSON LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 54 | $418,140.80 | 04/09/21 |
| 67 | 1935708707 | Accepted | PELICAN HEALTH THOMASVILLE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 35 | $415,094.00 | 04/09/21 |
| 68 | 1946638705 | Accepted | ACCORDIUS HEALTH AT WILKESBORO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 50 | $438,938.00 | 04/09/21 |
| 69 | 2382638703 | Accepted | MARYVILLE JAMESTOWN OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 67 | $585,448.81 | 04/09/21 |
| 70 | 1325888707 | Accepted | PELICAN HEALTH AT CHARLOTTE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 68 | $512,810.29 | 04/12/21 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 71 | 1470638709 | Accepted | MARYVILLE FAIRPARK OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 65 | $350,000.00 | 04/12/21 |
| 72 | 1484288701 | Accepted | RUSSELLVILLE KY OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 87 | $483,437.20 | 04/12/21 |
| 73 | 1729098702 | Accepted | Pelican Health Rutherfordton LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 62 | $423,579.91 | 04/12/21 |
| 74 | 1993548705 | Accepted | Red Boiling Springs TN Opco LLC | 623110 | 54 | N. Zanziper 50% S. Hyman 50% | 60 | $375,647.92 | 04/12/21 |
| 75 | 2056778704 | Accepted | Pelican Health at Asheville LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 48 | $445,659.00 | 04/12/21 |
| 76 | 2614148709 | Accepted | GREENVILLE KY OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 87 | $518,970.00 | 04/12/21 |
| 77 | 2614318701 | Accepted | HOPKINSVILLE KY OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 66 | $497,500.00 | 04/12/21 |
| 78 | 2617258702 | Accepted | LEITCHFIELD KY OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 53 | $409,421.52 | 04/12/21 |
| 79 | 1819628710 | Accepted | Pelican Health Norfolk LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 42 | $277,550.79 | 04/13/21 |
| 80 | 2780028801 | Accepted | THE CITADEL AT MYERS PARK LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 70 | $718,000.00 | 04/15/21 |
| 81 | 2869798805 | Accepted | ANDERSON SC OPCO LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 132 | $895,000.00 | 04/15/21 |
| 82 | 2986638802 | Accepted | THE CITADEL AT WINSTON SALEM LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 135 | $1,248,367.79 | 04/15/21 |
| 83 | 3383808800 | Accepted | CAROLINA PINES AT ASHEVILLE LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 65 | $516,400.00 | 04/19/21 |
| 84 | 2971158808 | Accepted | Farthing Mayfield KY Opco LLC | 623110 | 37,54 | N. Zanziper 50% S. Hyman 50% | 48 | $338,718.92 | 04/20/21 |
| | | | | | | TOTALS | 5,889 | $44,983,180.44 | - |

## III.   Update Hold Codes

- There is an open Hold Code 54 for many of the borrowers within the Naftali Simcha Family.  Per the Guidehouse report, Hold Code 54 was added to these loans for exceeding the limitation of $20,000,000 to a single corporate group.
- See the chart below for which hold codes are valid and which hold codes are recommended to be cleared; along with any further actions to be taken for each borrower.

| PPP Loan # | Status | Borrower | Open HCs | Recommendation | Accepted Loans - HC Docs Original Request Date |
|---|---|---|---|---|---|

6

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | 4007707200 | Payment Confirmed | Accordius Health LLC | No Open HCs | No Further Action | |
| 2 | 4445407204 | Payment Confirmed | The Portopiccolo Group LLC | No Open HCs | No Further Action | |
| 3 | 4037827202 | Payment Confirmed | Clearview Healthcare Management KY LLC | No Open HCs | No Further Action | |
| 4 | 4080027204 | Payment Confirmed | Clearview Healthcare Management TN LLC | No Open HCs | No Further Action | |
| 5 | 3606887401 | Payment Confirmed | Midtown Center for Health & Rehab. LLC | No Open HCs | No Further Action | |
| 6 | 5506827407 | Payment Confirmed | Accordius Health at Clemmons LLC | No Open HCs | No Further Action | |
| 7 | 5507307406 | Payment Confirmed | Jeffersontown Opco LLC | 54 | Clear HC 54 | |
| 8 | 5507807403 | Payment Confirmed | Down East Living and Rehab Center LLC | No Open HCs | No Further Action | |
| 9 | 5507917401 | Payment Confirmed | Accordius Health at Scotland Manor LLC | No Open HCs | No Further Action | |
| 10 | 5508087403 | Payment Confirmed | Westwood Nursing & Rehabilitation LLC | No Open HCs | No Further Action | |
| 11 | 5507417404 | Payment Confirmed | Birchwood Nursing and Rehab. LLC | 54 | Clear HC 54 | |
| 12 | 5506547406 | Accepted | Accordius Health at Salisbury LLC | 37 | Clear HC 37, HC 36 needs resolution. Not in Sample | |
| 13 | 5507767404 | Payment Confirmed | Fulton Nursing and Rehabilitation LLC | 54 | Clear HC 54 | |
| 14 | 5506687402 | Payment Confirmed | Accordius Health at Gastonia LLC | No Open HCs | No Further Action | |
| 15 | 5727427409 | Payment Confirmed | Accordius Health at Lexington LLC | No Open HCs | No Further Action | |
| 16 | 5506767402 | Payment Confirmed | Accordius Health at Wilmington LLC | No Open HCs | No Further Action | |
| 17 | 5506707406 | Payment Confirmed | Cherokee Park Rehabilitation LLC | No Open HCs | No Further Action | |
| 18 | 5506217401 | Payment Confirmed | Accordius Health at Creekside Care LLC | 54 | Clear HC 54 | |
| 19 | 1958947803 | Payment Confirmed | Accordius Health at Waynesboro LLC | No Open HCs | No Further Action | |
| 20 | 4306187809 | Payment Confirmed | Pelican Health Henderson LLC | No Open HCs | No Further Action | |
| 21 | 5471747809 | Payment Confirmed | Silver Spring MD Opco LLC | No Open HCs | No Further Action | |
| 22 | 1682267809 | Payment Confirmed | Collierville Nursing & Rehabilitation LLC | No Open HCs | No Further Action | |
| 23 | 4300017803 | Payment Confirmed | Liberty Rd Randallstown MD Opco | 54 | Clear HC 54 | |

| 24 | 7130027806 | Payment Confirmed | THE CITADEL MOORESVILLE LLC | No Open HCs | No Further Action | |
| 25 | 3328747807 | Payment Confirmed | Accordius Health at Harrisonburg LLC | No Open HCs | No Further Action | |
| 26 | 5034827800 | Payment Confirmed | Accordius Health at Nans Pointe LLC | No Open HCs | No Further Action | |
| 27 | 5170897804 | Payment Confirmed | Carthage Opco LLC | No Open HCs | No Further Action | |
| 28 | 2358897802 | Payment Confirmed | Accordius Health at Aberdeen LLC | No Open HCs | No Further Action | |
| 29 | 3322967802 | Payment Confirmed | CV Louisville Opco I LLC | No Open HCs | No Further Action | |
| 30 | 3384257807 | Payment Confirmed | Emporia VA Opco LLC | No Open HCs | No Further Action | |
| 31 | 5111387804 | Payment Confirmed | Dunn Loring VA Opco LLC | No Open HCs | No Further Action | |
| 32 | 7808967800 | Payment Confirmed | Accordius Health at Roanoke LLC | No Open HCs | No Further Action | |
| 33 | 1964527802 | Not Yet Submitted | The Citadel Salisbury LLC | 17,33,54 | Clear HC 54, Refer to HC Team | |
| 34 | 4302027810 | Payment Confirmed | Beck Mayfield KY Opco LLC | No Open HCs | Add HC 70, Exceed Corp Limits | |
| 35 | 5466647809 | Payment Confirmed | The Citadel Virginia Beach LLC | No Open HCs | Add HC 70, Exceed Corp Limits | |
| 36 | 5699257800 | Payment Confirmed | Fayetteville GA Opco LLC | No Open HCs | Add HC 70, Exceed Corp Limits | |
| 37 | 3097548608 | Accepted | CAROLINA PINES AT GREENSBORO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 38 | 3200798601 | Accepted | ACCORDIUS HEALTH AT CHARLOTTE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 39 | 3015918609 | Accepted | ACCORDIUS HEALTH AT CONCORD LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 40 | 3124028601 | Accepted | ACCORDIUS HEALTH AT GREENSBORO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 41 | 3123528607 | Accepted | ACCORDIUS HEALTH AT BAY POINTE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 42 | 3308138604 | Accepted | THE CITADEL ELIZABETH CITY LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 43 | 5035908602 | Accepted | ACCORDIUS HEALTH AT MIDWOOD LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 44 | 5169688603 | Accepted | ACCORDIUS HEALTH AT HENDERSONVILLE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 45 | 5975278603 | Accepted | ACCORDIUS HEALTH AT LYNCHBURG LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 46 | 4967028604 | Accepted | COVINGTON TN OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |

| 47 | 6531908606 | Accepted | ACCORDIUS HEALTH AT RIVER POINTE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
|----|------------|----------|--------------------------------------|-------|--------------------------------|--------------------|
| 48 | 6580538609 | Accepted | PRINCETON KY OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 49 | 7659928605 | Accepted | KNOXVILLE OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 50 | 8162528602 | Accepted | ACCORDIUS HEALTH AT MOORESVILLE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 51 | 8192158610 | Accepted | ACCORDIUS HEALTH AT MONROE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 52 | 6327628608 | Accepted | ACCORDIUS HEALTH AT ROSE MANOR LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 53 | 6581038603 | Accepted | FAIR OAKS HEALTH & REHABILITATION LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 54 | 8306238609 | Accepted | ACCORDIUS HEALTH AT BREVARD LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 55 | 7988958604 | Accepted | ACCORDIUS HEALTH AT WINSTON SALEM LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 56 | 8074818606 | Accepted | ACCORDIUS HEALTH AT STATESVILLE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 57 | 8192628605 | Accepted | COUNTRYSIDE CENTER FOR REHAB. & NURS | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 58 | 4336458510 | Accepted | ACCORDIUS HEALTH AT ASHEVILLE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 59 | 1299808700 | Accepted | PADUCAH CENTER FOR HEALTH & REHAB. LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 60 | 1383928704 | Accepted | LOUDON OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 61 | 1472948701 | Accepted | MADISONVILLE HEALTH & REHAB. LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 62 | 1535178704 | Accepted | PELICAN HEALTH RANDOLPH LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 63 | 1581268708 | Accepted | PELICAN HEALTH REIDSVILLE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 64 | 1635078706 | Accepted | MAYFIELD KY OPCO LLC | 54 | Exceeded Corp Limits –Add HC 37 | 9/29/2022, Deny 10/28 |
| 65 | 1703648703 | Accepted | MOUNT PLEASANT TN OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 66 | 1825438708 | Accepted | ACCORDIUS HEALTH AT WILSON LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 67 | 1935708707 | Accepted | PELICAN HEALTH THOMASVILLE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 68 | 1946638705 | Accepted | ACCORDIUS HEALTH AT WILKESBORO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 69 | 2382638703 | Accepted | MARYVILLE JAMESTOWN OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |

9

| 70 | 1325888707 | Accepted | PELICAN HEALTH AT CHARLOTTE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
|---|---|---|---|---|---|---|
| 71 | 1470638709 | Accepted | MARYVILLE FAIRPARK OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 72 | 1484288701 | Accepted | RUSSELLVILLE KY OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 73 | 1729098702 | Accepted | Pelican Health Rutherfordton LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 74 | 1993548705 | Accepted | Red Boiling Springs TN Opco LLC | 54 | Exceeded Corp Limits – Add HC 37 | 9/29/2022, Deny 10/28 |
| 75 | 2056778704 | Accepted | Pelican Health at Asheville LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 76 | 2614148709 | Accepted | GREENVILLE KY OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 77 | 2614318701 | Accepted | HOPKINSVILLE KY OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 78 | 2617258702 | Accepted | LEITCHFIELD KY OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 79 | 1819638710 | Accepted | Pelican Health Norfolk LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 80 | 2780028801 | Accepted | THE CITADEL AT MYERS PARK LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 81 | 2869798805 | Accepted | ANDERSON SC OPCO LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 82 | 2986638802 | Accepted | THE CITADEL AT WINSTON SALEM LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |
| 83 | 3383808800 | Accepted | CAROLINA PINES AT ASHEVILLE LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 8/15/2022 Deny Now |
| 84 | 2971158808 | Accepted | Farthing Mayfield KY Opco LLC | 37,54 | Valid HCs, Exceeded Corp Limits | 9/29/2022, Deny 10/28 |

Update
Reviewer & Submitted:
Christopher Jenkins
10/4/2022

Update
Approver:
Stephen Bowman
10/4/2022

## Original Narrative

Overview:

**Affiliation Family**: Naftali Simcha et al
**Affiliate Family #:** 217
**Number of loans:** 84

**Total PPP loan amount:** $38,575,105.66
**Total EE count: 5,889**

## Introduction Summary

- The review for the Naftali Simcha et al Family of Loans, consist of 343 entities, of which 84 received PPP loans totaling $38,575,105.66. A list of all the loans as Addendum 1.
    - 6 loans have a current status of Accepted. ○ 4 loans have a current status of Pending Validation ○ 49 loans have a current status of Not Yet Submitted. ○ 25 loans have a current status of Payment Confirmed.
- Naftali Zanziper and Simcha Hyman each owns 50% of each business directly or indirectly and combined they have a majority ownership for the corporate group which overlaps in all 86 loans.
- All information was obtained from the 2483s, ETRAN, 3511, Guidehouse reports, and other information contained in the loan files.
- The focus of concern is that the employee count for all entities combined exceeds the employee based size standard of 500 employees and the loan amount in aggregate exceeds $20,000,000.
- The majority of the entities that received loans were nursing care facilities under NAICS code 623110, with the remaining being other type of healthcare-related entities.
- None of these entities receiving PPP loans qualify for an affiliation waiver for a NAICS Code, SBA Franchise Identifier Code, or religious organization.
- Based on the review, the 84 loans within the Naftali Simcha Family et al comprise of one single corporate group of Naftali Zanziper and Simcha Hyman when evaluating the PPP loan limitation of $20,000,000 in aggregate per a single corporate group.

## Findings:

- All 84 entities which received PPP loans were eligible for financing based on the Alternative Size Standard.
- However, the $20,000,000 limitation to a single corporate group was exceeded.
    - 42 loans, totaling $19,781,373 were eligible when disbursed.
    - 42 loans, totaling $18,793,732, and disbursed after April 30, 2020 are ineligible as described in *IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and NonInsured Depository Institution Lenders.*

## Affiliation Through Common Ownership

- The 343 entities are affiliated through common ownership of Naftali Zanziper and Simcha Hyman through direct or indirect ownership based on *IFR #2, Interim Final Rule on Applicable Affiliation Rules.*
- Naftali Zanziper and Simcha Hyman have 50% ownership each.

## SBA Form 3511 Review and Results

- 343 entities (84 PPP loans) with affiliation to Naftali Zanziper and Simcha Hyman are one affiliated group based on common ownership.
- While the affiliated group exceeds the employee-based size standard of 500 employees cumulative for all affiliated entities, a form 3511 was submitted to qualify based on the Alternative Size Standard.

- When using the alternative size standard, the borrower (along with affiliates) must meet both requirements of a maximum tangible net worth (TNW) of not more than $15 million and the average net income after Federal income taxes (ANI) of not more than $5 million based on *IFR #2, Interim Final Rule on Applicable Affiliation Rules*.
- The 3511 submitted has multiple entities that have no dollar amount for TNW and/or ANI, but instead have DRE entered. These are disregarded entities and as such have their assets and/or income flow through to a parent company. For the Naftali Simcha Family, disregarded entities have their assets and income flow through, and are reported within the figures for, The Portopiccolo Group or PPG Fund. This was confirmed with the lender via email. See addendum 1.
- Additionally, multiple entities have $0 for their TNW and/or ANI. These companies are real estate holding companies and are part of a REIT, having their income and assets flow through and are reported as part of The Portopiccolo Group or PPG Fund.
- All assets and income for disregarded entities and holding companies have been included and reported on the 3511. This too was confirmed with the lender via email.
- The tangible net worth (TNW) for the affiliated group is ($265,289,399) and the average annual net income (ANI) from the past 2 years is ($58,402,134.) See Addendum 2. The original submitted 3511 is attached in the platform.
- The entities within the affiliated group meet the Alternative Size Standard.

## Loan Limitation to a Single Corporate Group
- The Naftali Simcha Family et al has one single corporate group via Naftali Zanziper and Simcha Hyman.
- A corporate group is defined as having a majority ownership by a common parent **directly or indirectly**. A common parent, for the purposes of PPP financing, can be defined as a being a corporation, trust or person(s.) When a corporation or trust has ownership, an in-depth review of the ownership of the corporation or trust should be completed to determine if an individual(s) has an indirect ownership that establishes a corporate group.
- Naftali Zanziper and Simcha Hyman each owns 50% of each business directly or indirectly and combined they have a majority ownership for the corporate group which overlaps in all 84 loans.
- While the affiliated group of Naftali Zanziper and Simcha Hyman are eligible for PPP financing based on the Alternative Size Standard, they exceed the limit of $20,000,000 for a single corporate group established in *IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and NonInsured Depository Institution Lenders.*
- All PPP loans within this corporate group total $38,575,105.66
- 42 Loans, totaling $19,781,373, were disbursed and are eligible for PPP financing. See the hold code section of this narrative for a list of individual loans and recommendations.
    - 22 of these loans have payments confirmed. It is recommended that no further action is needed.
    - 6 of these loans are currently in Accepted status and have Hold Code 33. It is recommended that Hold Code 33 be cleared, and the loans be moved forward.
        - All 6 loans are not part of SBA's sample and therefore a manual review is not required. o 4 of these loans are currently in Pending Validation status
        - 1 entity has Hold Code 33, which should be cleared
        - 3 entities have hold codes 33 and 17 (Borrower with High-Risk Associates.) It is recommended that Hold Code 33 be cleared. Hold Code 17 will be addressed

through the validation process or full review at a later date via the platform ○ 10 Loans have not yet been submitted.  None of the 10 currently have any hold codes, nor do they require any affiliate hold codes.

- The corporate group of Naftali Zanziper and Simcha Hyman exceeded the limitation for PPP financing to a single corporate group with the distribution of loan #6580538609. On March 23, 2021 a loan amount of $368,400 was disbursed for this loan. Therefore this loan/entity, and all other loans/entities associated with this corporate group progressing forward, were ineligible for additional PPP financing as described in *IFR #7 - Interim Final Rule on Corporate Groups and NonBank and NonInsured Depository Institution Lenders*.
- In total, entities associated with the corporate group received 42 PPP loans equaling $18,793,783, that exceeded the corporate limitation. Each of these loans were disbursed after the effective date of April 30, 2020 for the limitation set by SBA in *IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and NonInsured Depository Institution Lenders*.
- All 42 entities exceeded the limitation for a single corporate group and were ineligible for PPP loans at the time funds were disbursed. See the hold code section of this narrative for a list of individual loans and recommendations.
  - ○ 3 loans have a status of Payment Confirmed.  It is recommended that Hold Code 70 be added to each loan along with the appropriate Chron notes added to CAFS.
  - ○ 39 loans have yet to be submitted.
    - ■ 38 loans **have no hold codes**.  It is recommended that Hold Code 36 and 37 be added along with the appropriate Chron notes added to CAFS.
    - ■ One loan, #1964527802, has yet to be submitted and has an open Hold Code 33. This hold code is valid. It is recommended that HC 36 be added along with the appropriate Chron notes.

## Hold Codes

- All 7 loans in the table below were disbursed prior to the corporate group exceeding the limitation of $20,000,000. It is recommended that Hold Code 33 be cleared.  All 7 loans are not part of SBA's sample and therefore a manual review is not required.

| SBA Loan # | Borrower | Current Status | Hold Code | Sample |
|---|---|---|---|---|
| 4037827202 | Clearview Healthcare Management KY LLC | Accepted | Clear HC 33 | False |
| 5506827407 | Accordius Health at Clemmons LLC | Accepted | Clear HC 33 | False |
| 5507307406 | Jeffersontown Opco LLC | Accepted | Clear HC 33 | False |
| 5507807403 | Down East Living and Rehab Center LLC | Accepted | Clear HC 33 | False |
| 5727427409 | Accordius Health at Lexington LLC | Accepted | Clear HC 33 | False |
| 5506687402 | Accordius Health at Gastonia LLC | Accepted | Clear HC 33 | False |
| 4445407204 | The Portopiccolo Group LLC *(Pending Valid.)* | Accepted | Clear HC 33 | False |

- All 3 loans in the table below were disbursed prior to the corporate group exceeding the limitation of $20,000,000. It is recommended that Hold Code 33 be cleared. Because the loans are not yet in

the platform for review, the Hold Code 17s will remain on the loans because Affiliate Reviewer is unable to clear them

| SBA Loan # | Borrower | Current Status | Hold Code |
|---|---|---|---|
| 3606887401 | Midtown Center for Health and Rehabilitation LLC | Pending Validation | Clear HC 33 & refer to HC Team for HC 17 |
| 5506547406 | Accordius Health at Salisbury LLC | Pending Validation | Clear HC 33 & refer to HC Team for HC 17 |
| 5507417404 | Birchwood Nursing and Rehabilitation LLC | Pending Validation | Clear HC 33 & refer to HC Team for HC 17 |

- One loan has not yet been submitted and has an open Hold Code 33 and 17. This loan exceeded the limitation for a single corporate group of $20,000,000. Hold Code 33 is valid, and it is recommended that the appropriate Chron notes be added to CAFS. Because the loan is not yet in the platform for review, the Hold Code 17 will remain on the loans because Affiliate Reviewer is unable to clear them

| SBA Loan # | Borrower | Current Status | Hold Code |
|---|---|---|---|
| 1964527802 | The Citadel Salisbury LLC | Not Yet Submitted | Valid HC 33. Add Chron notes |

- Three loans have payments confirmed. These loans exceeded the limitation for a single corporate group of $20,000,000. It is recommended that Hold Code 70 be added along with the appropriate Chron notes.

| SBA Loan # | Borrower | Current Status | Hold Code |
|---|---|---|---|
| 5507767404 | Fulton Nursing and Rehabilitation LLC | Payment Confirmed | Add HC 70 |
| 5506217401 | Accordius Health at Creekside Care LLC | Payment Confirmed | Add HC 70 |
| 4300017803 | Liberty Rd Randallstown MD Opco LLC | Payment Confirmed | Add HC 70 |

- 38 loans have yet to be submitted and have no hold codes. These loans exceeded the limitation for a single corporate group of $20,000,000. It is recommended that Hold Codes 36 and 37 be added along with the appropriate Chron notes.

| SBA Loan # | Borrower | Current Status | Hold Code |
|---|---|---|---|
| 6580538609 | Princeton Ky Opco LLC | Not Yet Submitted | Add HC 36, 37 |

| | | | |
|---|---|---|---|
| 7659928605 | Knoxville Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 8162528602 | Accordius Health at Mooresville LLC | Not Yet Submitted | Add HC 36, 37 |
| 8192158610 | Accordius Health at Monroe LLC | Not Yet Submitted | Add HC 36, 37 |
| 7988958604 | Accordius Health at Winston Salem LLC | Not Yet Submitted | Add HC 36, 37 |
| 8074818606 | Accordius Health at Statesville LLC | Not Yet Submitted | Add HC 36, 37 |
| 8192688605 | Countryside Center for Rehabilitation and Nursing LLC | Not Yet Submitted | Add HC 36, 37 |
| 4336458510 | Accordius Health at Asheville LLC | Not Yet Submitted | Add HC 36, 37 |
| 1299808700 | Paducah Center for Health and Rehabilitation LLC | Not Yet Submitted | Add HC 36, 37 |
| 1383928704 | Loudon Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 1472948701 | Madisonville Health and Rehabilitation LLC | Not Yet Submitted | Add HC 36, 37 |
| 1535178704 | Pelican Health Randolph LLC | Not Yet Submitted | Add HC 36, 37 |
| 1581268708 | Pelican Health Reidsville LLC | Not Yet Submitted | Add HC 36, 37 |
| 1635078706 | Mayfield Ky Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 1703648703 | Mount Pleasant Tn Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 1825438708 | Accordius Health at Wilson LLC | Not Yet Submitted | Add HC 36, 37 |
| 1935708707 | Pelican Health Thomasville LLC | Not Yet Submitted | Add HC 36, 37 |

| | | | |
|---|---|---|---|
| 1946638705 | Accordius Health at Wilkesboro LLC | Not Yet Submitted | Add HC 36, 37 |
| 2382638703 | Maryville Jamestown Opco LLC | Not Yet Submitted | Add HC 36, 37 |

| | | | |
|---|---|---|---|
| 1325888707 | Pelican Health at Charlotte LLC | Not Yet Submitted | Add HC 36, 37 |
| 1470638709 | Maryville Fairpark Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 1484288701 | Russellville Ky Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 1729098702 | Pelican Health Rutherfordton LLC | Not Yet Submitted | Add HC 36, 37 |
| 1993548705 | Red Boiling Springs Tn Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 2056778704 | Pelican Health At Asheville LLC | Not Yet Submitted | Add HC 36, 37 |
| 2614148709 | Greenville Ky Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 2614318701 | Hopkinsville Ky Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 2617258702 | Leitchfield Ky Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 1819628710 | Pelican Health Norfolk LLC | Not Yet Submitted | Add HC 36, 37 |
| 2780028801 | The Citadel at Myers Park LLC | Not Yet Submitted | Add HC 36, 37 |

USA-000685

| | | | |
|---|---|---|---|
| 2869798805 | Anderson Sc Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 3383808800 | Carolina Pines at Asheville LLC | Not Yet Submitted | Add HC 36, 37 |
| 2971158808 | Farthing Mayfield Ky Opco LLC | Not Yet Submitted | Add HC 36, 37 |
| 6327628608 | Accordius Health at Rose Manor LLC | Not Yet Submitted | Add HC 36, 37 |
| 6581038603 | Fair Oaks Health and Rehabilitation LLC | Not Yet Submitted | Add HC 36, 37 |
| | | | |
| 8306238609 | Accordius Health at Brevard LLC | Not Yet Submitted | Add HC 36, 37 |
| 2986638802 | The Citadel at Winston Salem LLC | Not Yet Submitted | Add HC 36, 37 |
| 3097548608 | Carolina Pines at Greensboro LLC | Not Yet Submitted | Add HC 36, 37 |

## Conclusion and Recommendation

- The 84 entities which received PPP loans met the size standards and were eligible based on the Alternative Size Standard.
- However, the $20,000,000 limitation to a single corporate group was exceeded.

o 42 loans, totaling $19,781,373 were eligible when disbursed.

- 22 loans have payments confirmed and no further action is needed.
- 6 loans are in Accepted status, and it is recommended that Hold Code 33 be cleared. None of these 8 loans are part of SBA's sample and a manual review is not needed.
- 4 loans are Pending Validation and have Hold Codes 33 and 17. It is recommended that Hold Code 33 be cleared, and the loan be sent to the Hold Code Team for further evaluation regarding Hold Code 17.
- 10 loans have yet to be submitted.

o 42 loans, totaling $18,793,783, were disbursed after April 30, 2020 and exceeded the limitation for a single corporate group. As such these loans were ineligible for PPP financing as described in *IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and NonInsured Depository Institution Lenders.*

- 3 loans have a status of Payment Confirmed.  It is recommended that Hold Code 70 be added to each loan along with the appropriate Chron notes added to CAFS.
- 39 loans have yet to be submitted.
- 38 loans **have no hold codes**.  It is recommended that Hold Code 36 and 37 be added along with the appropriate Chron notes added to CAFS.
- One loan, #1964527802, has yet to be submitted and has an open Hold Code 33.  This hold code is valid. It is recommended that HC 36 be added along with the appropriate Chron notes.

Reviewed and Submitted by: C. Jenkins 3/2/2022
Approved by: D. Iserson and A. Moselle 3/3/2022

## Addendum 1

| PPP LOAN # | BORROWER NAME | MAJORITY OWNERSHIP | # EES | LOAN $ | NAICS |
|---|---|---|---|---|---|
| 4037827202 | Clearview Healthcare Management KY LLC | Naftali Zanziper 50% Simcha Hyman 50% | 29 | $229,800.00 | 623110 |
| 5506687402 | Accordius Health at Gastonia LLC | Naftali Zanziper 50% Simcha Hyman 50% | 74 | $675,300.49 | 621999 |
| 5506827407 | Accordius Health at Clemmons LLC | Naftali Zanziper 50% Simcha Hyman 50% | 76 | $587,560.85 | 623110 |
| 5507307406 | Jeffersontown Opco LLC | Naftali Zanziper 50% Simcha Hyman 50% | 71 | $534,492.86 | 623110 |
| 5507807403 | Down East Living and Rehab Center LLC | Naftali Zanziper 50% Simcha Hyman 50% | 39 | $338,230.72 | 623110 |
| 5727427409 | Accordius Health at Lexington LLC | Naftali Zanziper 50% Simcha Hyman 50% | 80 | $784,804.12 | 623110 |
| 1299808700 | PADUCAH CENTER FOR HEALTH AND REHABILITATION LLC | Naftali Zanziper 50% Simcha Hyman 50% | 68 | $427,250.95 | 623110 |
| 1325888707 | PELICAN HEALTH AT CHARLOTTE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 68 | $512,810.29 | 623110 |
| 1383928704 | LOUDON OPCO LLC | Naftali Zanziper 50% Simcha Hyman 50% | 93 | $752,898.52 | 623110 |
| 1470638709 | MARYVILLE FAIRPARK OPCO LLC | Naftali Zanziper 50% Simcha Hyman 50% | 65 | $350,000.00 | 623110 |
| 1472948701 | MADISONVILLE HEALTH AND REHABILITATION LLC | Naftali Zanziper 50% Simcha Hyman 50% | 68 | $512,810.29 | 623110 |

| | | | | | |
|---|---|---|---|---|---|
| 1484288701 | RUSSELLVILLE KY OPCO LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 87 | $483,437.20 | 623110 |
| 1535178704 | PELICAN HEALTH RANDOLPH LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 42 | $493,178.00 | 623110 |
| 1581268708 | PELICAN HEALTH REIDSVILLE LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 76 | $527,832.47 | 623110 |
| 1635078706 | MAYFIELD KY OPCO LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 49 | $333,877.40 | 623110 |
| 1703648703 | MOUNT PLEASANT TN OPCO LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 46 | $350,636.04 | 623110 |
| 1729098702 | Pelican Health Rutherfordton LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 62 | $423,579.91 | 623110 |
| 1819628710 | Pelican Health Norfolk LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 42 | $277,550.79 | 623110 |
| 1825438708 | ACCORDIUS HEALTH AT WILSON LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 54 | $418,140.80 | 623110 |
| 1935708707 | PELICAN HEALTH THOMASVILLE LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 35 | $415,094.00 | 623110 |
| 1946638705 | ACCORDIUS HEALTH AT WILKESBORO LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 50 | $438,938.00 | 623110 |
| 1964527802 | The Citadel Salisbury LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 92 | $565,023.03 | 623110 |
| 1993548705 | Red Boiling Springs TN Opco LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 60 | $375,647.92 | 623110 |
| 2056778704 | Pelican Health at Asheville LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 48 | $445,659.00 | 623110 |
| 2382638703 | MARYVILLE JAMESTOWN OPCO LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 67 | $585,448.81 | 623110 |
| 2614148709 | GREENVILLE KY OPCO LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 87 | $518,970.00 | 623110 |
| 2614318701 | HOPKINSVILLE KY OPCO LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 66 | $497,500.00 | 623110 |
| 2617258702 | LEITCHFIELD KY OPCO LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 53 | $409,421.52 | 623110 |
| 2780028801 | THE CITADEL AT MYERS PARK LLC | Naftali Zanziper 50%<br>Simcha Hyman 50% | 70 | $718,000 | 623110 |

| | | | | | |
|---|---|---|---|---|---|
| 2869798805 | ANDERSON SC OPCO LLC | Naftali Zanziper 50% Simcha Hyman 50% | 132 | $895,000.00 | 623110 |
| 2971158808 | Farthing Mayfield KY Opco LLC | Naftali Zanziper 50% Simcha Hyman 50% | 48 | $338,718.92 | 623110 |
| 2986638802 | THE CITADEL AT WINSTON SALEM LLC | Naftali Zanziper 50% Simcha Hyman 50% | 135 | $1,248,367.79 | 623110 |
| 3015918609 | ACCORDIUS HEALTH AT CONCORD LLC | Naftali Zanziper 50% Simcha Hyman 50% | 54 | $544,600.00 | 623110 |
| 3097548608 | CAROLINA PINES AT GREENSBORO LLC | Naftali Zanziper 50% Simcha Hyman 50% | 100 | $431,300.00 | 623110 |
| 3123528607 | ACCORDIUS HEALTH AT BAY POINTE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 63 | $462,700.00 | 623110 |
| 3124028601 | ACCORDIUS HEALTH AT GREENSBORO LLC | Naftali Zanziper 50% Simcha Hyman 50% | 55 | $448,200.00 | 623110 |
| 3200798601 | ACCORDIUS HEALTH AT CHARLOTTE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 63 | $593,100.00 | 623110 |
| 3308138604 | THE CITADEL ELIZABETH CITY LLC | Naftali Zanziper 50% Simcha Hyman 50% | 67 | $439,100.00 | 623110 |
| 3383808800 | CAROLINA PINES AT ASHEVILLE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 65 | $516,400.00 | 623110 |
| 4336458510 | ACCORDIUS HEALTH AT ASHEVILLE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 50 | $355,800.00 | 623110 |
| 4967028604 | COVINGTON TN OPCO LLC | Naftali Zanziper 50% Simcha Hyman 50% | 95 | $640,700.00 | 623110 |
| 5035908602 | ACCORDIUS HEALTH AT MIDWOOD LLC | Naftali Zanziper 50% Simcha Hyman 50% | 76 | $473,900.00 | 623110 |
| 5169688603 | ACCORDIUS HEALTH AT HENDERSONVILLE LL | Naftali Zanziper 50% Simcha Hyman 50% | 39 | $428,600.00 | 623110 |
| 5975278603 | ACCORDIUS HEALTH AT LYNCHBURG LLC | Naftali Zanziper 50% Simcha Hyman 50% | 60 | $552,100.00 | 623110 |
| 6327628608 | ACCORDIUS HEALTH AT ROSE MANOR LLC | Naftali Zanziper 50% Simcha Hyman 50% | 60 | $568,600.00 | 623110 |
| 6531908606 | ACCORDIUS HEALTH AT RIVER POINTE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 52 | $561,300.00 | 623110 |
| 6580538609 | PRINCETON KY OPCO LLC | Naftali Zanziper 50% Simcha Hyman 50% | 100 | $368,400.00 | 623110 |

| | | | | | |
|---|---|---|---|---|---|
| 6581038603 | FAIR OAKS HEALTH AND REHABILITATION LLC | Naftali Zanziper 50% Simcha Hyman 50% | 66 | $382,800.00 | 623110 |
| 7659928605 | KNOXVILLE OPCO LLC | Naftali Zanziper 50% Simcha Hyman 50% | 51 | $383,900.00 | 623110 |
| 7988958604 | ACCORDIUS HEALTH AT WINSTON SALEM LLC | Naftali Zanziper 50% Simcha Hyman 50% | 43 | $279,900.00 | 623110 |
| 8074818606 | ACCORDIUS HEALTH AT STATESVILLE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 69 | $526,800.00 | 623110 |
| 8162528602 | ACCORDIUS HEALTH AT MOORESVILLE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 54 | $487,200.00 | 623110 |
| 8192158610 | ACCORDIUS HEALTH AT MONROE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 46 | $330,100.00 | 623110 |
| 8192688605 | COUNTRYSIDE CENTER FOR REHABILITATION AND NURSING LLC | Naftali Zanziper 50% Simcha Hyman 50% | 65 | $232,800.00 | 623110 |
| 8306238609 | ACCORDIUS HEALTH AT BREVARD LLC | Naftali Zanziper 50% Simcha Hyman 50% | 51 | $525,800.00 | 623110 |
| 1682267809 | Collierville Nursing and Rehabilitation LLC | Naftali Zanziper 50% Simcha Hyman 50% | 87 | $773,379.95 | 623110 |
| 1958947803 | Accordius Health at Waynesboro LLC | Naftali Zanziper 50% Simcha Hyman 50% | 88 | $548,893.85 | 623110 |
| 2358897802 | Accordius Health at Aberdeen LLC | Naftali Zanziper 50% Simcha Hyman 50% | 91 | $573,023 | 623110 |
| 3322967802 | CV Louisville Opco I LLC | Naftali Zanziper 50% Simcha Hyman 50% | 70 | $516,710.48 | 623110 |
| 3328747807 | Accordius Health at Harrisonburg LLC | Naftali Zanziper 50% Simcha Hyman 50% | 72 | $571,549.72 | 623110 |
| 3384257807 | Emporia VA Opco LLC | Naftali Zanziper 50% Simcha Hyman 50% | 53 | $483,125.22 | 623110 |
| 4007707200 | Accordius Health LLC | Naftali Zanziper 50% Simcha Hyman 50% | 70 | $602,700.00 | 623110 |
| 4080027204 | Clearview Healthcare Management TN LLC | Naftali Zanziper 50% Simcha Hyman 50% | 17 | $142,400.00 | 531110 |
| 4300017803 | Liberty Rd Randallstown MD Opco LLC | Naftali Zanziper 50% Simcha Hyman 50% | 137 | $898,648.03 | 623110 |

USA-000690

| | | | | | |
|---|---|---|---|---|---|
| 4302027810 | Beck Mayfield KY Opco LLC | Naftali Zanziper 50% Simcha Hyman 50% | 79 | $480,046.08 | 623110 |
| 4306187809 | Pelican Health Henderson LLC | Naftali Zanziper 50% Simcha Hyman 50% | 52 | $388,978.78 | 623110 |
| 5034827800 | Accordius Health at Nans Pointe LLC | Naftali Zanziper 50% Simcha Hyman 50% | 116 | $856,804.00 | 623110 |
| 5111387804 | Dunn Loring VA Opco LLC | Naftali Zanziper 50% Simcha Hyman 50% | 139 | $1,357,873.73 | 623110 |
| 5170897804 | Carthage Opco LLC | Naftali Zanziper 50% Simcha Hyman 50% | 67 | $472,100.03 | 623110 |
| 5466647809 | The Citadel Virginia Beach LLC | Naftali Zanziper 50% Simcha Hyman 50% | 90 | $733,646.50 | 623110 |
| 5471747809 | Silver Spring MD Opco LLC | Naftali Zanziper 50% Simcha Hyman 50% | 49 | $386,872.83 | 623110 |
| 5506217401 | Accordius Health at Creekside Care LLC | Naftali Zanziper 50% Simcha Hyman 50% | 100 | $916,559.67 | 623110 |
| 5506707406 | Cherokee Park Rehabilitation LLC | Naftali Zanziper 50% Simcha Hyman 50% | 75 | $655,700.22 | 621498 |
| 5506767402 | Accordius Health at Wilmington LLC | Naftali Zanziper 50% Simcha Hyman 50% | 84 | $722,585.19 | 623312 |
| 5507767404 | Fulton Nursing and Rehabilitation LLC | Naftali Zanziper 50% Simcha Hyman 50% | 45 | $331,073.22 | 623110 |

| | | | | | |
|---|---|---|---|---|---|
| 5507917401 | Accordius Health at Scotland Manor LLC | Naftali Zanziper 50% Simcha Hyman 50% | 41 | $337,440.70 | 623110 |
| 5508087403 | Westwood Nursing and Rehabilitation LLC | Naftali Zanziper 50% Simcha Hyman 50% | 86 | $580,074.21 | 623110 |
| 5699257800 | Fayetteville GA Opco LLC | Naftali Zanziper 50% Simcha Hyman 50% | 117 | $873,710.00 | 623110 |
| 7130027806 | THE CITADEL MOORESVILLE LLC | Naftali Zanziper 50% Simcha Hyman 50% | 81 | $548,802.50 | 623110 |
| 7808967800 | Accordius Health at Roanoke LLC | Naftali Zanziper 50% Simcha Hyman 50% | 62 | $425,563.45 | 623110 |
| 3606887401 | Midtown Center for Health and Rehabilitation LLC | Naftali Zanziper 50% Simcha Hyman 50% | 129 | $1,083,227.87 | 623110 |
| 4445407204 | The Portopiccolo Group LLC | Naftali Zanziper 50% Simcha Hyman 50% | 64 | $475,600.00 | 623110 |
| 5506547406 | Accordius Health at Salisbury LLC | Naftali Zanziper 50% Simcha Hyman 50% | 91 | $785,943.87 | 623110 |
| 5507417404 | Birchwood Nursing and Rehabilitation LLC | Naftali Zanziper 50% Simcha Hyman 50% | 61 | $460,066.65 | 623110 |
| | | **TOTALS** | **5889** | **$39,035,172.31** | |

**Addendum 2**

USA-000692

# Fwd: PPP Loans Affiliated with Naftali Zanziper and Simcha Hyman

 David Canet <dcanet@cnob.com>
To ● Jenkins, Christopher C (Contractor)

 Reply | Reply All | → Forward | ...

Wed 1/26/2022 3:09 PM

(i) Click here to download pictures. To help protect your privacy, Outlook prevented automatic download of some pictures in this message.

CAUTION - The sender of this message is external to the SBA network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@sba.gov.

Hi Chris,

Please see below for the ownership information. All 50%/50%. I also wanted to confirm our two other discussion points; so they are included.

Kind Regards,

**David Canet**
Managing Director | SBA Lending Group
ConnectOne Bank
*a better place to be*
ConnectOneBank.com
@ConnectOneBank | Facebook | LinkedIn

Direct: 201.551.0903

715 Route 304 | Bardonia, NY 10954

---------- Forwarded message ----------
From: **Aaron Abramczyk** <AaronA@theportopiccologroup.com>
Date: Wed, Jan 26, 2022 at 2:10 PM
Subject: RE: PPP Loans Affiliated with Naftali Zanziper and Simcha Hyman
To: Yossie Neiman <YNeiman@theportopiccologroup.com>, David Canet <dcanet@cnob.com>, Batya Gorelick <batya@theportopiccologroup.com>
Cc: Lee Ehudin <lehudin@cnob.com>

David,

Nice speaking with you.

As discussed,

1. DRE refers to Disregarded Entity; please confirm. – Confirmed

2. For entities listed with DRE reflected in the NAICS Column; are these all real estate holding entities – the DREs with "Propco" or "PPG" in the name are all real estate entities, all others would be nursing home related ( NAICS code 623000).

3. Please complete the ownership for the entities below. All the below entities are equally owned by Simcha Hyman and Naftali Zanziper at 50% each.

| SBA Loan # | Borrower | Ownership | |
|---|---|---|---|
| 3124028601 | ACCORDIUS HEALTH AT GREENSBORO LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 3200798601 | ACCORDIUS HEALTH AT CHARLOTTE LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 6531908606 | ACCORDIUS HEALTH AT RIVER POINTE LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 6580538609 | PRINCETON KY OPCO LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 7659928605 | KNOXVILLE OPCO LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 8192158610 | ACCORDIUS HEALTH AT MONROE LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 7988958604 | ACCORDIUS HEALTH AT WINSTON SALEM LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 8192688605 | COUNTRYSIDE CENTER FOR REHABILITATION AND NURSING LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 3383808800 | CAROLINA PINES AT ASHEVILLE LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 6327628608 | ACCORDIUS HEALTH AT ROSE MANOR LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 6581038603 | FAIR OAKS HEALTH AND REHABILITATION LLC | Simcha Hyman 50% | Naftali Zanziper 50% |
| 8306238609 | ACCORDIUS HEALTH AT BREVARD LLC | Simcha Hyman 50% | Naftali Zanziper 50% |

Thanks,

**Aaron Abramczyk**
**Controller**
The Portopiccolo Group
311 Blvd of the Americas, Suite 503
Lakewood, NJ 08701
O: 732-714-5240
W: ThePortopiccoloGroup.com

## Addendum 3

| Borrower | EIN | PPP Loan | NAICS Code | TNW | ANI |
|---|---|---|---|---|---|
| Accordius Health at Aberdeen LLC | ██████ | X | 623000 | ($25,727.00) | ($106,747.00) |
| Aberdeen NC Propco LLC | ██████ | | | | |
| Accordius Health at Asheville LLC | ██████ | X | 623000 | ($511,092.00) | ($353,241.00) |
| Asheville Two Propco LLC | ██████ | | 531110 | ($1,626,176.00) | ($313,819.50) |
| Accordius Health at Bay Pointe LLC | ██████ | X | 623000 | ($355,154.00) | ($350,456.00) |
| Bay Pointe VA Propco LLC | ██████ | | 623000 | ($6,475,150.00) | ($593,998.00) |
| Accordius Health at Brevard LLC | ██████ | X | 623000 | ($1,036,185.00) | ($402,633.00) |
| Brevard Propco LLC | ██████ | | 531110 | ($3,770,907.00) | ($725,883.50) |
| Accordius health at Charlotte LLC | ██████ | X | 623000 | $87,266.00 | ($323,019.00) |
| Charlotte Propco LLC | ██████ | | 531110 | ($3,233,387.00) | ($232,740.50) |
| Accordius Health at Clemmons LLC | ██████ | X | 623000 | ($468,505.00) | ($9,581.50) |
| Accordius Health at Clemmons Propco LLC | ██████ | | 531110 | ($3,570,202.00) | ($427,542.00) |
| Accordius Health at Concord LLC | ██████ | X | 623000 | $385,871.00 | ($564,665.00) |
| Concord NC Propco LLC | ██████ | | 531110 | ($4,097,076.00) | ($625,992.00) |
| Accordius Health at Creekside Care LLC | ██████ | X | 623000 | $1,193,503.00 | $638,985.00 |
| Accordius Health at Creekside Care Propco LLC | ██████ | | | | |
| Emporia VA Opco LLC | ██████ | X | 623000 | ($216,540.00) | ($216,540.00) |
| Emporia VA Propco LLC | ██████ | | 623000 | ($4,497,007.00) | ($818,340.00) |
| Accordius Health at Gastonia LLC | ██████ | X | 623000 | $70,333.00 | $22,262.00 |
| Gastonia Propco LLC | ██████ | | 531110 | ($1,951,392.00) | $7,526.50 |
| Down East Living & Health Rehab Center, LLC | ██████ | X | 623000 | $230,852.00 | $235,800.00 |
| Ultra Care at Down East Propco LLC | ██████ | | | | |
| Accordius Health at Greensboro LLC | ██████ | X | 623000 | $860,304.00 | $68,046.00 |
| Greensboro Two Propco LLC | ██████ | | 531110 | ($1,943,171.00) | ($365,311.50) |
| Accordius Health at Harrisonburg LLC | ██████ | X | 623000 | ($908,768.00) | ($905,129.00) |
| Harrisonburg VA Propco LLC | ██████ | | 623000 | ($5,523,544.00) | ($406,095.00) |
| Accordius Health at Hendersonville LLC | ██████ | X | 623000 | ($309,326.00) | ($127,513.00) |
| Mountain Home Propco LLC | ██████ | | 531110 | ($2,847,372.00) | ($850,017.00) |

USA-000695

| | | | | | |
|---|---|---|---|---|---|
| Accordius Health at Lexington LLC | ■■■■ | X | 623000 | ($736,657.00) | ($510,711.50) |
| Lexington Propco LLC | ■■■■ | | 531110 | ($1,395,247.00) | $63,349.50 |
| Accordius Health at Lynchburg LLC | ■■■■ | X | 623000 | ($657,324.00) | ($657,324.00) |
| Lynchburg VA Propco LLC | ■■■■ | | 623000 | ($5,714,228.00) | ($465,562.00) |
| Accordius Health at Midwood LLC | ■■■■ | X | 623000 | ($80,482.00) | ($286,624.00) |
| Midwood Propco LLC | ■■■■ | | 531110 | ($2,595,650.00) | ($129,670.00) |
| | | | | | |
| Accordius Health at Monroe LLC | ■■■■ | X | 623000 | $118,420.00 | ($269,113.00) |
| Monroe Propco LLC | ■■■■ | | 531110 | ($2,012,354.00) | ($148,492.00) |
| Accordius Health at Mooresville LLC | ■■■■ | X | 623000 | ($376,638.00) | ($525,338.50) |
| Mooresville Propco LLC | ■■■■ | | 531110 | ($3,571,645.00) | ($237,151.00) |
| Accordius Health at Nansemond Pointe LLC | ■■■■ | X | 623000 | ($161,772.00) | ($158,352.00) |
| Accordius Health at Nansemond AL LLC | ■■■■ | | 623000 | $139,363.00 | $139,363.00 |
| Nansemond Pointe VA Propco LLC | ■■■■ | | 623000 | ($10,272,200.00) | ($715,328.00) |
| Accordius Health at River Pointe LLC | ■■■■ | X | 623000 | ($1,770,105.00) | ($1,770,105.00) |
| River Pointe VA Propco LLC | ■■■■ | | 623000 | ($7,715,807.00) | ($469,387.00) |
| Accordius Health at Roanoke LLC | ■■■■ | X | 623000 | ($2,164,117.00) | ($1,080,858.50) |
| Roanoke Propco LLC | ■■■■ | | 623000 | ($4,480,796.00) | ($409,564.50) |
| Accordius Health at Rose Manor LLC | ■■■■ | X | 623000 | $442,065.00 | ($435,867.00) |
| Rose Manor Propco LLC | ■■■■ | | 531110 | ($6,266,750.00) | ($1,304,249.00) |
| Accordius Health at Salisbury LLC | ■■■■ | X | 623000 | ($655,026.00) | ($288,735.00) |
| Salisbury Propco LLC | ■■■■ | | 531110 | ($3,517,243.00) | ($329,464.50) |
| Accordius Health at Scotland Manor LLC | ■■■■ | X | 623000 | ($102,981.00) | $34,712.50 |
| Accordius Health at Scotland Manor Propco LLC | ■■■■ | | DRE | N/A DRE | N/A DRE |
| Accordius Health at St Mary Propco LLC | ■■■■ | | 531110 | $1,191,769.00 | ($118,997.00) |
| Accordius Health at Statesville LLC | ■■■■ | X | 623000 | $199,496.00 | ($149,441.00) |
| Statesville Propco LLC | ■■■■ | | 531110 | ($3,933,281.00) | ($300,220.00) |
| Accordius Health at Waynesboro LLC | ■■■■ | X | 623000 | ($846,116.00) | ($845,371.00) |
| Waynesboro VA Propco LLC | ■■■■ | | 623000 | ($4,852,485.00) | ($84,947.00) |
| Accordius Health at Wilkesboro LLC | ■■■■ | X | 623000 | $184,136.00 | ($373,673.00) |

| | | | | |
|---|---|---|---|---|
| Wilkesboro NC Propco LLC | | 531110 | ($4,097,076.00) | ($775,992.00) |
| Accordius Health at Wilmington LLC | X | 623000 | $64,353.00 | $120,543.00 |
| | | | | |
| Wilmington Propco LLC | | 531110 | ($1,864,912.00) | ($73,814.50) |
| Accordius Health at Wilson LLC | X | 623000 | $142,677.00 | ($251,015.00) |
| Wilson NC Propco LLC | | 531110 | ($3,756,088.00) | ($713,143.00) |
| Accord ius Health at Winston Salem LLC | X | 623000 | ($266,190.00) | ($677,972.50) |
| Accordius Health at Winston Salem Propco LLC | | 531110 | ($2,192,970.00) | ($359,934.00) |
| Westwood Nursing and Rehabi lit at i on LLC | X | 623000 | $9,623.00 | ($63,466.00) |
| Westwood Glasgow Propco LLC | | 531110 | ($2,332,639.00) | ($152,616.50) |
| 300 Westwood Consulting LLC | | 561110 | ($67,300.00) | ($5,811.00) |
| Hopkinsville KY Opco LLC | | | $126,514.00 | ($160,296.00) |
| | | | | |
| Hopkinsville KY Propco LLC | X | 623000 | ($3,232,882.00) | ($660,547.00) |
| Carolina Pines at Asheville LLC | | 531110 | ($356,961.00) | ($203,845.00) |
| Asheville One Propco LLC | X | 623000 | ($2,957,842.00) | ($222,720.00) |
| Carolina Pines at Greensboro LLC | | 531110 | $886,180.00 | ($146,122.00) |
| Greensboro One Propco LLC | X | 623000 | ($2,330,816.00) | ($494,339.00) |
| Cherokee Park Rehabilitation LLC | | 531110 | $590,191.00 | $23,190.00 |
| Millvale Road Propco LLC | X | 623000 | ($3,391,456.00) | ($380,155.00) |
| CPR Consulting LLC | | 531110 | $52,945.00 | $49,745.00 |
| Birchwood Nursing and Rehabilitat ion LLC | | 561110 | ($96,000.00) | ($295,818.50) |
| Padgett Clinton Propco LLC | X | 623000 | ($1,274,661.00) | $118,062.50 |
| 106 Padgett Consulting LLC | | 531110 | ($68,153.00) | ($26,500.00) |
| Collierville Nursing and Rehabilitat ion LLC | | 561110 | $632,641.00 | ($592,804.50) |
| Collierville Propco LLC | X | 623000 | ($1,214,323.00) | ($42,089.00) |
| Anderson SC Opco LLC | | 531110 | ($134,701.00) | ($854,526.00) |
| Anderson SC Propco LLC | X | 623000 | ($3,792,602.00) | ($620,763.00) |
| Fayetteville GA Opco LLC | | 531110 | $458,395.00 | ($514,772.00) |
| Fayetteville GA Propco LLC | | 623000 | | |
| Countryside Center for Rehabilitati on and Nursing LLC | | | $632,641.00 | $213,875.00 |
| Countryside Propco LLC | X | 623000 | $373,161.00 | $65,623.00 |

| | | | | | |
|---|---|---|---|---|---|
| Countryside Consulting LLC | | | 623000 | $45,033.00 | $74,075.00 |
| Knoxville Opco LLC | | | 561110 | ($346,170.00) | ($346,170.00) |
| Knoxville Propco LLC | | X | 623000 | ($3,465,437.00) | ($510,133.00) |
| Russellville KY Opco LLC | | | 623000 | $191,825.00 | ($159,042.00) |
| Russellville KY Propco LLC | | X | 623000 | ($3,361,410.00) | ($686,081.00) |
| Maryville Fairpark Opco LLC | | | 531110 | ($312,344.00) | ($312,344.00) |
| Maryville Fairpark Propco LLC | | X | 623000 | ($2,654,033.00) | ($218,343.00) |
| Maryville Jamestown Opco LLC | | | 623000 | ($21,696.00) | ($21,658.00) |
| Maryville Jamestown Propco LLC | | X | 623000 | ($6,850,551.00) | ($842,514.00) |
| Silver Spring MD Opco LLC | | | 623000 | ($872,958.00) | ($872,958.00) |
| Silver Spring MD Propco LLC | | X | 623000 | | |
| Silver Spring MD Holdco LLC | | | | ($3,513,224.00) | ($529,046.00) |
| Fulton Nursing and Rehabilitation LLC | | | 551110 | ($300,541.00) | ($207,484.50) |
| Holiday Fulton Propco LLC | | X | 623000 | ($1,098,542.00) | $72,981.50 |
| 1004 Holiday Consulting LLC | | | 531110 | ($46,633.00) | ($26,957.00) |
| Dunn Loring VA Opco LLC | | | 561110 | ($1,232,832.00) | ($1,232,832.00) |
| Dunn Loring VA Propco LLC | | X | 623000 | | |
| Dunn Loring VA Holdco LLC | | | | ($15,489,198.00) | ($6,171,998.00) |
| Jeffersontown Opco LLC | | | 623000 | ($197,689.00) | ($289,011.50) |
| Jeffersontown Propco LLC | | X | 623000 | ($1,824,711.00) | $3,929.50 |
| 3500 GSW Consulting LLC | | | 531110 | ($23,070.00) | $54,154.00 |
| Madisonville Health and Rehabilitation LLC | | | 561110 | $694,533.00 | $150,965.50 |
| Madisonville Propco LLC | | X | 623000 | ($1,805,421.00) | ($48,248.50) |
| 419 NSS Consulting LLC | | | 531110 | ($36,785.00) | $44,825.00 |
| Covington TN Opco LLC | | | 561110 | ($1,027,019.00) | $354,736.50 |
| Covington TN Propco LLC | | X | 623000 | ($3,912,099.00) | ($800,965.00) |
| Greenville KY Opco LLC | | | 531110 | ($247,592.00) | ($247,571.00) |
| Greenville KY Propco LLC | | X | 623000 | ($3,469,547.00) | ($320,711.00) |
| Greenville KY Consulting LLC | | | 623000 | $11,250.00 | $233,750.00 |
| Mayfield KY Opco LLC | | | 561110 | ($81,990.00) | ($81,990.00) |
| Mayfield KY Propco LLC | | X | 623000 | ($3,294,540.00) | ($503,896.00) |
| Mayfield KY Consulting LLC | | | 623000 | $9,500.00 | $110,500.00 |
| Midtown Center for Health and Rehabilitation LLC | | | 561110 | $1,842,302.00 | $1,691,340.00 |
| Midtown Propco LLC | | X | 623000 | ($5,623,524.00) | ($641,252.00) |

| | | | | | |
|---|---|---|---|---|---|
| MC Consulting LLC | | | 531110 | ($106,323.00) | $78,885.00 |
| Beck Mayfield KY Opco LLC | | | 561110 | $351,737.00 | ($54,028.00) |
| Beck Mayfield KY Propco LLC | | X | 623000 | ($3,169,162.00) | ($647,779.00) |
| Pelican Health at Asheville LLC | | | 531110 | $291,614.00 | ($820,440.00) |
| Swannanoa NC Propco LLC | | X | 623000 | ($2,424,007.00) | ($675,275.00) |
| Pelican Health at Charlotte LLC | | | 531110 | ($191,408.00) | ($923,443.00) |
| Charlotte One Propco LLC | | X | 623000 | ($2,737,868.00) | $451,859.00 |
| Pelican Health Henderson LLC | | | 531110 | $174,857.00 | ($259,982.00) |
| Henderson NC Propco LLC | | X | 623000 | ($3,686,737.00) | ($850,471.00) |
| Pelican Health Randolph LLC | | | 531110 | $36,172.00 | ($162,224.00) |
| Randolph Charlotte NC Propco LLC | | X | 623000 | ($3,415,106.00) | ($6,491,858.00) |
| Pelican Health Reidsville LLC | | X | 623000 | $27,791.00 | ($289,099.00) |
| Reidsville NC Propco LLC | | | 531110 | ($3,756,088.00) | ($713,142.00) |
| Pelican Health Thomasville LLC | | X | 623000 | $25,896.00 | ($243,013.00) |
| Thomasville NC Propco LLC | | | 531110 | ($4,097,077.00) | ($778,128.00) |
| Princeton KY Opco LLC | | X | 623000 | $97,038.00 | $54,121.00 |
| Princeton KY Propco LLC | | | 531110 | ($3,361,585.00) | ($686,073.00) |
| Loudon Opco LLC | | X | 623000 | ($693,238.00) | ($687,218.00) |
| Loudon Propco LLC | | | 623000 | ($6,644,573.00) | ($798,916.00) |
| Carthage Opco LLC | | X | 623000 | $336,921.00 | $339,207.00 |
| Carthage Propco LLC | | | 623000 | ($4,685,129.00) | ($528,217.00) |
| Leitchfield KY Opco LLC | | X | 623000 | $185,059.00 | $94,066.00 |
| Leitchfield KY Propco LLC | | | 531110 | ($3,168,317.00) | ($647,777.00) |
| Paducah Center for Health and Reh abilitation LLC | | X | 623000 | $1,170,733.00 | $162,895.50 |
| Paducah Propco LLC | | | 623000 | $252,141.00 | $185,870.50 |
| Paducah Consulting LLC | | | 561110 | $2,738.00 | $85,225.00 |
| CV Louisville Opco I LLC | | X | 623000 | ($623,877.00) | ($537,801.50) |
| CV Louisville Propco I LLC | | | 623000 | ($1,904,373.00) | ($133,620.50) |
| | | | | | |
| 2141 Sycamore Consulting LLC | | | 561110 | $5,512.00 | $80,350.00 |
| The Citadel Elizabeth City LLC | | X | 623000 | ($122,507.00) | ($904,359.00) |
| Elizabeth City Propco LLC | | | 531110 | ($1,689,575.00) | ($728,425.00) |
| The Citadel at Myers Park LLC | | X | 623000 | $94,699.00 | ($157,674.00) |
| Myers Park Propco LLC | | | 531110 | ($3,354,098.00) | ($226,421.00) |
| The Citadel Virginia Beach LLC | | X | 623000 | ($1,040,879.00) | ($1,035,755.00) |

| | | | | | |
|---|---|---|---|---|---|
| Citadel Virginia Beach Propco LLC | | | 623000 | ($4,663,210.00) | ($1,125,210.00) |
| The Citadel at Winston Salem | | X | 623000 | $523,166.00 | ($459,608.00) |
| Winston Salem One Propco LLC | | | 531110 | ($8,156,622.00) | ($255,789.00) |
| Red Boiling Springs TN Opco LLC | | X | 623000 | $89,817.00 | ($174,276.00) |
| Red Boiling Springs TN Propco LLC | | | 531110 | ($1,717,712.00) | ($607,301.00) |
| Accordius NC Trio Propcos LLC | | | 551110 | $195,706.00 | ($384,559.00) |
| Accordius NC5 Propcos LLC | | | 551110 | - | - |
| Farthing Mayfield KY Opco LLC | | X | 623000 | ($113,012.00) | ($113,012.00) |
| Farthing Mayfield KY Propco LLC | | | 531110 | ($1,974,285.00) | ($457,956.00) |
| Mount Pleasant TN Opco LLC | | X | 623000 | ($82,625.00) | ($82,625.00) |
| Mount Pleasant TN Propco LLC | | | 531110 | ($3,359,908.00) | ($468,859.00) |
| Pelican Health Rutherfordton LLC | | X | 623000 | ($95,125.00) | ($95,125.00) |
| Rutherfordton Propco LLC | | | 623000 | ($1,324,246.00) | ($11,579.00) |
| Lenoir City TN Opco LLC | | | 623000 | ($101,896.00) | ($87,991.00) |
| Lenoir City TN Propco LLC | | | 623000 | ($400,000.00) | $0.00 |
| Pelican Health Norfolk LLC | | X | 623000 | ($89,927.00) | ($89,927.00) |
| Norfolk VA Propco LLC | | | 623000 | ($2,470,459.00) | ($386,103.00) |
| Accordius Health LLC | | X | 541600 | $880,792.00 | $259,095.50 |
| Clearview Healthcare Management TN LLC | | X | 541600 | ($632,193.00) | ($598,838.00) |
| Clearview Healthcare Management KY LLC | | X | 541600 | ($566,601.00) | ($360,481.00) |
| Happy Bear Asheville LLC | | | 531110 | - | - |
| Heel Give Plant LLC | | | 531390 | - | - |
| The Portopiccolo Group LLC | | X | 541990 | ($73,896.00) | - |
| PPG Fund I LLC | | | 561110 | ($759,867.00) | $2,851,850.00 |
| PPG Fund II LLC | | | 561110 | $6,389,239.00 | $10,227,056.00 |
| PPG Fund Ill LLC | | | 561110 | - | - |
| PPG Fund IV LLC | | | 561110 | - | - |
| PPG Hampton Investment Hold ing s LLC | | | 551112 | ($67,585.00) | ($63,574.00) |
| PPGRX North Carolina LLC | | | 551112 | $491,846.00 | ($840,132.00) |
| PPG Therapy Holdco LLC | | | 551112 | ($6,047,494.00) | ($6,121,611.00) |
| PPGNL North Caro lina LLC | | | 551112 | $174,112.00 | ($202,287.00) |
| Springdale Atlanta propco LLC | | | 531110 | ($3,469,768.00) | ($1,204,323.50) |
| Accordius Health NC Office LLC | | | | | N/A DRE |
| KY Derby Propcos LLC | | | 531110 | - | - |
| JAMESTOWN KY PROPCO LLC | | | 531110 | - | - |

| | | | | | |
|---|---|---|---|---|---|
| Deer Lodge MT Propco LLC | | | 531110 | - | - |
| Great Falls MT Propco LLC | | | 531110 | - | - |
| FAIR OAKS HEALTH AND REHABILITATION LLC | | X | 623000 | - | - |
| Liberty Rd Randallstown MD Opco LLC | | X | 623000 | - | - |
| LIBERTY RD RANDALLSTOWN MD PROPCO LLC | | | 531110 | - | - |
| MOORESVILLE TWO NC PROPCO LLC | | | 531110 | - | - |
| PPG VITAE NC LLC | | | 551112 | - | - |
| SALISBURY TWO NC PROPCO LLC | | | 531110 | - | - |
| THE CITADEL MOORESVILLE LLC | | X | 623000 - | | |
| The Citadel Salisbury LLC | | | 623000 | | |
| WILKENS AVE BALTIMORE MD OPCO LLC | | | 623000 | | |
| WILKENS AVE BALTIMORE MD PROPCO LLC | | | 531110 | | |
| PPG SNF Operations LLC | | | 623000 | | |
| Abingdon VA Opco LLC | | | 623000 | | |
| Annandale VA Opco LLC | | | 623000 | | |
| Bedford KY Opco LLC | | | 623000 | | |
| Brynwood Operations LLC | | | DRE | | |
| Catonsville MD Opco LLC | | | 623000 | | |
| CHESTERTOWN MD OPCO LLC | | | 623000 | | |
| Clearwater FL Opco LLC | | | DRE | | |
| COURTLAND VA OPCO LLC | | | 623000 | | |
| DAYTONA BEACH FL OPCO LLC | | | 623000 | | |
| DENTON MD OPCO LLC | | | 623000 | | |
| Douglas Ml  Opco LLC | | | 623000 | | |
| EASTON MD OPCO LLC | | | 623000 | | |
| GAINESVILLE FL OPCO LLC | | | 623000 | | |
| Glen Oaks Operations LLC | | | DRE | | |
| Heritage Park Operations LLC | | | DRE | | |
| KEY WEST FL OPCO LLC | | | DRE | | |
| Lake Placid Operations LLC | | | DRE | | |
| Longwood Operations LLC | | | DRE | | |

| | | | | |
|---|---|---|---|---|
| McMinnville TN Opco LLC | | | 623000 | |
| NAPLES FL OPCO LLC | | | 623000 | |
| Nassawadox VA Opco LLC | | | 623000 | |
| New Port Richey FL Opco LLC | | | DRE | |
| Niles Ml Opco LLC | | | 623000 | |
| Oakbrook Operations LLC | | | DRE | |
| Oaks of Kissimmee Operations LLC | | | DRE | |
| OCALA FL OPCO LLC | | | DRE | |
| Oldsmar FL Opco LLC | | | DRE | |
| PALM BAY FL OPCO LLC | | | 623000 | |
| PALM HARBOR FL OPCO LLC | | | DRE | N/A DRE | N/A DRE |
| POCOMOKE CITY MD OPCO LLC | | | 623000 | |
| River Falls WI Opco LLC | | | 623000 | |
| Riverchase Operat ions LLC | | | I N/A DRE | |
| ROCKLEDGE FL OPCO LLC | | | 623000 | |
| Royal IVlanor Operations LLC | | | IN/A DRE | |
| Salerno Bay Operations LLC | | | I N/A DRE | |
| Sarasota FL Opco LLC | | | 623000 | |
| Soddy-Daisy TN Opco LLC | | | 623000 | |
| St. Petersburg FL Opco LLC | | | I N/A DRE | |
| Stanadardsville VA Opco LLC | | | 623000 | |
| SYKESVILLE MD OPCO LLC | | | 623000 | |
| TAKOMA PARK MD OPCO LLC | | | 623000 | |
| Three Rivers Ml Opco LLC | | | 623000 | |
| VENICE FL OPCO LLC | | | 623000 | |
| Ventura Operations LLC | | | IN/A DRE | |
| Vero Beach FL Opco LLC | | | I N/A DRE | |
| Virginia Beach VA Opco LLC | | | 623000 | |
| WAVERLY VA OPCO LLC | | | 623000 | |
| Windsor Center Operations LLC | | | I N/A DRE | |

| | | | | |
|---|---|---|---|---|
| WINTER PARK FL OPCO LLC | | | 623000 | | |
| Brynwood Operat_i_ons Holdings LLC | | | IN/A DRE | | |
| Clearwater FL Holdco LLC | | | 623000 | | |
| Glen Oaks Operations Holdings LLC | | | IN/A DRE | | |
| Heritage Park Operations Holdings LLC | | | I N/A DRE | | |
| Lake Plac id Operations Holdings LLC | | | I N/A DRE | | |
| Longwood Operations Holdings LLC | | | I N/A DRE | | |
| New Port Richey FL Holdco LLC | | | 623000 | | |
| Oakbrook Operations Holdings LLC | | | I N/A DRE | | |
| Oaks of Kissimmee Operations Holdings LLC | | | IN/A DRE | | |
| Ocala FL Holdco LLC | | | 623000 | | |
| Oldsmar FL Holdco LLC | | | 623000 | | |
| Palm Harbor FL Holdco LLC | | | 623000 | | |
| Riverchase Operations Holdings LLC | | | | | |
| - Royal Manor Operations Holdings LLC | | | | | |
| Salerno Bay Operations Holdings LLC | | | | | |
| St . Petersburg FL Holdco LLC | | | 623000 | | |
| Ventura Operations Holdings LLC | | | | | |
| Vero Beach FL Holdco LLC | | | 623000 | | |
| Windsor Center Operations Holdings LLC | | | | | |
| 9113 LIBERTY ROAD RANDAL LSTOWN MD LLC | | | 531110 | | |
| Accordius Health 4 Management L LC | | | 541600 | | |
| Clearview Health Management Mid west LLC | | | 541600 | | |
| Daisy Staffing LLC | | | 623000 | | |
| Geese Pool Advisors LLC | | | 531390 | ($133,056.00) | ($28,349.00) |
| KEY WEST FL HOLDCO LLC | | | 623000 | | |
| Lilac Health Group LLC | | | 541600 | | |

| | | | | |
|---|---|---|---|---|
| ORCHID COVE HEALTH GROUP LLC | | | 541600 | |
| PPG BEKTEK INVESTMENT LLC | | | 551112 | |
| PPG Captive LLC | | | 551112 | |
| PPG Fund V LLC | | | 561110 | |
| PPG GENESIS ACQ LLC | | | 551112 | |
| PPG GLOBAL FUND LLC | | | 551112 | |
| PPG GS INVESTMENTS LLC | | | 551112 | |
| PPG Hedge Fund Holdings LLC | | | 551112 | |
| PPG Lending LLC | | | 551112 | |
| PPG Nanue Falls LLC | | | 551112 | |
| PPG QBH LLC | | | 551112 | |
| PPG Renal Care KY LLC | | | 551112 | |
| PPG Renal Care TN LLC | | | 551112 | |
| PPG Renal Care VA LLC | | | 551112 | |
| PPG VENTURES LLC | | | 551112 | |
| READ! TRANSPORT NC LLC | | | 485990 | |
| PPG G6 PROPCOS LLC | | | 551110 | |
| PPG GC OPCOS LLC | | | 623000 | |
| PPG GC Propcos LLC | | | 551112 | |
| -   PPG LHP FL LLC | | | 551112 | |
| PPG LHP NC LLC | | | 551112 | |
| PPG MDS HOLDCO LLC | | | 531110 | |
| PPG ZS PROPCO PARTNERS LLC | | | 551110 | |
| PPG RE Bristol NJ LLC | | | | |
| PPG RE Chicopee MA LLC | | | | |
| PPG RE CT4 LLC | | | | |
| PPG RE Highview NJ LLC | | | | |
| PPG RE Westminster MD LLC | | | | |
| PPG RE WINDWARD FOREST GA LLC | | | | |
| PPG REAL ESTATE INVESTMENTS LLC | | | 551112 | |
| PPG VBF Realty Partners LLC | | | | |
| PPG WHALE BUILDING LLC | | | | |
| PPG PREQ INV LLC | | | 551112 | |
| Abingdon VA Propco LLC | | | 623000 | |

| | | | | | |
|---|---|---|---|---|---|
| Annandale VA Propco LLC | | | 623000 | | |
| Bedford KY Propco LLC | | | 531110 | | |
| Catonsville MD Propco LLC | | | | | |
| CHESTERTOWN MD PROPCO LLC | | | | | |
| COURTLAND VA PROPCO LLC | | | 623000 | | |
| DAYTONA BEACH FL PROPCO LLC | | | 531110 | | |
| DENTON MD PROPCO LLC | | | | | |
| | | | | | |
| Douglas Ml Propco LLC | | | 531110 | | |
| EASTON MD PROPCO LLC | | | | | |
| GAINESVILLE FL PROPCO LLC | | | 531110 | | |
| KEY WEST FL PROPCO LLC | | | 531110 | | |
| McMinnville TN Propco LLC | | | 531110 | | |
| NAPLES FL PROPCO LLC | | | | | |
| Nassawadox VA Propco LLC | | | 623000 | | |
| Niles Ml Propco LLC | | | 531110 | | |
| PALM BAY FL PROPCO LLC | | | 531110 | | |
| POCOMOKE CITY MD PROPCO LLC | | | | | |
| River Falls WI Propco LLC | | | | | |
| ROCKLEDGE FL PROPCO LLC | | | DRE | | |
| Sarasota FL Propco LLC | | | DRE | | |
| Soddy-Daisy TN Propco LLC | | | 531110 | | |
| St. Petersburg FL Propco LLC | | | 531110 | | |
| Stanardsville VA Propco LLC | | | 623000 | | |
| SYKESVILLE MD PROPCO LLC | | | DRE | | |
| TAKOMA PARK MD PROPCO LLC | | | DRE | | |
| Three Rivers Ml Propco LLC | | | 531110 | | |
| VENICE FL PROPCO LLC | | | DRE | | |
| Vero Beach FL Propco LLC | | | 531110 | | |
| Virginia Beach VA Propco LLC | | | 623000 | | |
| WAVERLY VA PROPCO LLC | | | 623000 | | |
| WINTER PARK FL PROPCO LLC | | | 531110 | | |
| **TOTAL** | | | | ($265,289,399) | ($58,881,910) |

# I. Case Summary

| | |
|---|---|
| Case Number: | The Citadel Tavern at Virginia Beach LLC |
| Borrower's Name: | |
| Loan Number: | 5836498807 |
| Borrower's ID: | |
| Loan Disbursement Date: | 340 Lynn Shores Drive |
| Borrower's Address: | Virginia Beach, VA 23452 |
| Loan Amount: | $2,824,646.50 |
| Authorized Representative: | |
| Number of Employees: | 90 per Loan Application |
| | Average Monthly 158.61 |
| | 90 per Forgiveness Application |
| Loan Forgiveness Application Date: | Simcha Hyman |
| Loan Owners: | August 2021 |
| | Shlomo Zanziper 50% |
| Forgiveness Amount: | $813,646.50 |
| # Alerts: | |
| Lender ID: | 17652p Congressional Name: |
| Level 1 Reviewer Name: | Level 2 Reviewer Joseph Rashad Name: |
| Level 2 Review Completed Date: | May 2022 |

Rule
17

Case
RFA
Disposition

Alert
Description

Borrower
Relationship
with
Disqualified
Individual

## II. Executive Summary

This is the primary Case Memo for related cases group RC4003377200A which consists of 84 Paycheck Protection Pr
(PPP) loans totaling $44,983,180.44 for 84 borrowers.

The borrower of this loan is one of eighty-four affiliated entities which obtained eighty-four 1st Draw PPP loans totaling
approximately $45 million. Eighty of these affiliated entities obtained 1st Draw PPP loans after 04/30/2020, which is the
which the SBA implemented the $20 million aggregate loan limitation on affiliated entity groups. Analysis determined th
affiliated group met the $20 million aggregate loan limit on 05/30/2020. Based on the date of issue and the loan limit th
L2R analysis determined the borrower and fifty affiliated entities obtained loans after 05/30/2020, and exceeded the $2
aggregate loan threshold by approximately $25 million.
.
This Primary Loan (Loan #5466647809) and Loans 2, 4, 8, 11-14, 16-18 and 20-84 associated with related cases
group RC4003377200A, are being referred to the SBA for further action (RFA) due to the borrowers potentially exceed
maximum allowed aggregate loan amount of $20,000,000 for an affiliate group.

Loans, 3, 5-7, 9-10, 15 and 19 were closed auto-RFA to the SBA on either 10/01/2021 or 03/02/2022.

Searches were performed in ETRAN on the respective Principal Person and Borrower. No additional loans other than t
listed below were identified.

| | Borrower | Case # | Loan # | Loan Type | Loan Disbursed Date | Loan Amount | Lender | Loan Status | Forgiveness Status | Alerts/Flags | Dispositi |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Primary Loan | THE CITADEL VIRGINIA BEACH LLC | 16172355466647809 | 1st Draw (2020) | 5/30/2020 | $733,646.50 | Congressional Bank | Paid in Full | Auto-Forgiven | 17 | RFA |
| Loan 2 | ACCORDIUS HEALTH LLC | 60623214007707200 | 1st Draw (2020) | 4/27/2020 | $602,700.00 | ConnectOne Bank | Paid in Full | Loan Forgiven | - | RFA |
| Loan 3 | CLEARVIEW HEALTHCARE MANAGEMENT KY LLC | 18727164037827202 | 1st Draw (2020) | 4/27/2020 | $229,800.00 | ConnectOne Bank | Disbursed Current | Pending Forgiveness | - | SBA Referra (Closed |
| Loan 4 | CLEARVIEW HEALTHCARE MANAGEMENT TN LLC | 18727174080027204 | 1st Draw (2020) | 4/27/2020 | $142,400.00 | ConnectOne Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 5 | THE PORTOPICCOLO GROUP LLC | 19337554445407204 | 1st Draw (2020) | 4/27/2020 | $475,600.00 | ConnectOne Bank | Disbursed Current | Pending Forgiveness | - | SBA Referra (Closed |
| Loan 6 | MIDTOWN CENTER FOR HEALTH AND REHABILITATION | 16361293606887401 | 1st Draw (2020) | 5/7/2020 | $1,083,227.87 | Cross River Bank | Delinquent Disbursed | Pending Forgiveness | 17 | SBA Referra (Closed |
| Loan 7 | ACCORDIUS HEALTH AT | 18582885506827407 | 1st Draw | 5/12/2020 | $587,560.85 | Cross River | Disbursed | Pending | | SBA Referra |

USA-000708

| | Borrower | Loan Number | Draw | Date | Amount | Bank | Status | Forgiveness | | Referral |
|---|---|---|---|---|---|---|---|---|---|---|
| Loan 8 | ACCORDIUS HEALTH AT CREEKSIDE CARE LLC | 18582895506217401 | 1st Draw (2020) | 5/12/2020 | $916,559.67 | Cross River Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 9 | ACCORDIUS HEALTH AT GASTONIA LLC | 18582905506687402 | 1st Draw (2020) | 5/12/2020 | $675,300.49 | Cross River Bank | Delinquent Disbursed | Pending Forgiveness | | SBA Referral (Closed |
| Loan 10 | ACCORDIUS HEALTH AT SALISBURY LLC | 15940795506547406 | 1st Draw (2020) | 5/12/2020 | $785,943.87 | Cross River Bank | Disbursed Current | Pending Forgiveness | 17 | SBA Referral (Closed |
| Loan 11 | ACCORDIUS HEALTH AT SCOTLAND MANOR LLC | 18582945507917401 | 1st Draw (2020) | 5/12/2020 | $337,440.70 | Cross River Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 12 | ACCORDIUS HEALTH AT WILMINGTON LLC | 18582965506767402 | 1st Draw (2020) | 5/12/2020 | $722,585.19 | Cross River Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 13 | BIRCHWOOD NURSING AND REHABILITATION LLC | 16503595507417404 | 1st Draw (2020) | 5/12/2020 | $460,066.65 | Cross River Bank | Disbursed Current | Loan Forgiven | 17 | RFA |
| Loan 14 | CHEROKEE PARK REHABILITATION LLC | 16252655506707406 | 1st Draw (2020) | 5/12/2020 | $655,700.22 | Cross River Bank | Paid in Full | Auto-Forgiven | 17 | RFA |
| Loan 15 | DOWN EAST LIVING AND REHAB CENTER LLC | 18791935507807403 | 1st Draw (2020) | 5/12/2020 | $338,230.72 | Cross River Bank | Disbursed Current | Pending Forgiveness | - | SBA Referral (Closed |
| Loan 16 | FULTON NURSING AND REHABILITATION LLC | 18852665507767404 | 1st Draw (2020) | 5/12/2020 | $331,073.22 | Cross River Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 17 | JEFFERSONTOWN OPCO LLC | 18946215507307406 | 1st Draw (2020) | 5/12/2020 | $534,492.86 | Cross River Bank | Disbursed Current | Pending Forgiveness | - | RFA |
| Loan 18 | WESTWOOD NURSING AND REHABILITATION LLC | 16196185508087403 | 1st Draw (2020) | 5/12/2020 | $580,074.21 | Cross River Bank | Paid in Full | Auto-Forgiven | 17 | RFA |
| Loan 19 | ACCORDIUS HEALTH AT LEXINGTON LLC | 18582925727427409 | 1st Draw (2020) | 5/13/2020 | $784,804.12 | Cross River Bank | Disbursed Current | Pending Forgiveness | - | SBA Referral (Closed |
| Loan 20 | COLLIERVILLE NURSING AND REHABILITATION LLC | 16796231682267809 | 1st Draw (2020) | 5/21/2020 | $773,379.95 | Congressional Bank | Paid in Full | Auto-Forgiven | 17 | RFA |
| Loan 21 | ACCORDIUS HEALTH AT ABERDEEN LLC | 15940772358897802 | 1st Draw (2020) | 5/22/2020 | $573,023.00 | Congressional Bank | Paid in Full | Auto-Forgiven | 17 | RFA |
| Loan 22 | ACCORDIUS HEALTH AT WAYNESBORO | 18582951958947803 | 1st Draw (2020) | 5/22/2020 | $548,893.85 | Congressional Bank | Paid in Full | Auto-Forgiven | | RFA |
| Loan | THE CITADEL | | 1st | | | Congressional | Paid in | Not | | |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Loan 24 | ACCORDIUS HEALTH AT HARRISONBURG LLC | 18582913328747807 | 1st Draw (2020) | 5/26/2020 | $571,549.72 | Congressional Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 25 | CV LOUISVILLE OPCO LLC | 16266593322967802 | 1st Draw (2020) | 5/26/2020 | $516,710.48 | Congressional Bank | Paid in Full | Auto-Forgiven | 17 | RFA |
| Loan 26 | EMPORIA VA OPCO LLC | 16014973384257807 | 1st Draw (2020) | 5/26/2020 | $483,125.22 | Congressional Bank | Paid in Full | Auto-Forgiven | 17 | RFA |
| Loan 27 | BECK MAYFIELD KY OPCO LLC | 18650834302027810 | 1st Draw (2020) | 5/28/2020 | $480,046.08 | Congressional Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 28 | LIBERTY RD RANDALLSTOWN MD OPCO LLC | 16883134300017803 | 1st Draw (2020) | 5/28/2020 | $898,648.03 | Congressional Bank | Paid in Full | Auto-Forgiven | 7, 8, 9, 18 | RFA |
| Loan 29 | PELICAN HEALTH HENDERSON LLC | 19155624306187809 | 1st Draw (2020) | 5/28/2020 | $388,978.78 | Congressional Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 30 | ACCORDIUS HEALTH AT NANS POINTE LLC | 18582935034827800 | 1st Draw (2020) | 5/29/2020 | $856,804.00 | Congressional Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 31 | CARTHAGE OPCO LLC | 18699515170897804 | 1st Draw (2020) | 5/29/2020 | $472,100.03 | Congressional Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 32 | DUNN LORING VA OPCO LLC | 16008985111387804 | 1st Draw (2020) | 5/29/2020 | $1,357,873.73 | Congressional Bank | Paid in Full | Auto-Forgiven | 17 | RFA |
| Loan 33 | FAYETTEVILLE GA OPCO LLC | 16558495699257800 | 1st Draw (2020) | 5/30/2020 | $873,710.00 | Congressional Bank | Paid in Full | Auto-Forgiven | 9 | RFA |
| Loan 34 | Silver Spring MD Opco LLC | 19262675471747809 | 1st Draw (2020) | 5/30/2020 | $386,872.83 | Congressional Bank | Paid in Full | Auto-Forgiven | - | RFA |
| Loan 35 | THE CITADEL MOORESVILLE LLC | 16979397130027806 | 1st Draw (2020) | 6/3/2020 | $548,802.50 | Congressional Bank | Paid in Full | Auto-Forgiven | 9 | RFA |
| Loan 36 | ACCORDIUS HEALTH AT ROANOKE LLC | 15940787808967800 | 1st Draw (2020) | 6/4/2020 | $425,563.45 | Congressional Bank | Paid in Full | Auto-Forgiven | 9, 17 | RFA |
| Loan 37 | ACCORDIUS HEALTH AT ASHEVILLE LLC | 60179174336458510 | 1st Draw (2021) | 2/25/2021 | $355,800.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan | ACCORDIUS HEALTH AT BAY | 60178533123528607 | 1st Draw (2021) | 3/16/2021 | $462,700.00 | ConnectOne | Disbursed | Not | Flag 37 | |

USA-000710

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Loan 39 | ACCORDIUS HEALTH AT CHARLOTTE LLC | 60178133200798601 | 1st Draw (2021) | 3/16/2021 | $593,100.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 40 | ACCORDIUS HEALTH AT CONCORD LLC | 60179313015918609 | 1st Draw (2021) | 3/16/2021 | $544,600.00 | ConnectOne Bank | Disbursed Current | Loan Forgiven | Flag 37 | RFA |
| Loan 41 | ACCORDIUS HEALTH AT GREENSBORO LLC | 60179333124028601 | 1st Draw (2021) | 3/16/2021 | $448,200.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 42 | CAROLINA PINES AT GREENSBORO LLC | 60178543097548608 | 1st Draw (2021) | 3/16/2021 | $431,300.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 43 | THE CITADEL ELIZABETH CITY LLC | 60178523308138604 | 1st Draw (2021) | 3/16/2021 | $439,100.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 44 | ACCORDIUS HEALTH AT HENDERSONVILLE LLC | 60178585169688603 | 1st Draw (2021) | 3/20/2021 | $428,600.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 45 | ACCORDIUS HEALTH AT LYNCHBURG LLC | 60178145975278603 | 1st Draw (2021) | 3/20/2021 | $552,100.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 46 | ACCORDIUS HEALTH AT MIDWOOD LLC | 60178575035908602 | 1st Draw (2021) | 3/20/2021 | $473,900.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 47 | COVINGTON TN OPCO LLC | 60179364967028604 | 1st Draw (2021) | 3/20/2021 | $640,700.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 48 | ACCORDIUS HEALTH AT RIVER POINTE LLC | 60178176531908606 | 1st Draw (2021) | 3/23/2021 | $561,300.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 49 | ACCORDIUS HEALTH AT ROSE MANOR LLC | 60179396327628608 | 1st Draw (2021) | 3/23/2021 | $568,600.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 50 | FAIR OAKS HEALTH AND REHABILITATION LLC | 60179386581038603 | 1st Draw (2021) | 3/23/2021 | $382,800.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 51 | PRINCETON KY OPCO LLC | 60178596580538609 | 1st Draw (2021) | 3/23/2021 | $368,400.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 52 | ACCORDIUS HEALTH AT BREVARD LLC | 60178618306238609 | 1st Draw (2021) | 3/24/2021 | $525,800.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan | ACCORDIUS HEALTH AT | 60177758192158610 | 1st Draw | 3/24/2021 | $330,100.00 | ConnectOne Bank | Disbursed | Not | Flag 37 | |

USA-000711

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Loan 54 | ACCORDIUS HEALTH AT MOORESVILLE LLC | 60179438162528602 | 1st Draw (2021) | 3/24/2021 | $487,200.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 55 | ACCORDIUS HEALTH AT STATESVILLE LLC | 60179418074818606 | 1st Draw (2021) | 3/24/2021 | $526,800.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 56 | ACCORDIUS HEALTH AT WINSTON SALEM LLC | 60179407988958604 | 1st Draw (2021) | 3/24/2021 | $279,900.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 57 | COUNTRYSIDE CENTER FOR REHABILITATION AND NURSING LLC | 60179428192688605 | 1st Draw (2021) | 3/24/2021 | $232,800.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 58 | KNOXVILLE OPCO LLC | 60178627659928605 | 1st Draw (2021) | 3/24/2021 | $383,900.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 59 | ACCORDIUS HEALTH AT WILKESBORO LLC | 60179501946638705 | 1st Draw (2021) | 3/27/2021 | $438,938.00 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 60 | ACCORDIUS HEALTH AT WILSON LLC | 60177771825438708 | 1st Draw (2021) | 3/27/2021 | $418,140.80 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 61 | LOUDON OPCO LLC | 60178201383928704 | 1st Draw (2021) | 3/27/2021 | $752,898.52 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 62 | MADISONVILLE HEALTH AND REHABILITATION LLC | 60178191472948701 | 1st Draw (2021) | 3/27/2021 | $512,810.29 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 63 | MARYVILLE FAIRPARK OPCO LLC | 60177911470638709 | 1st Draw (2021) | 3/27/2021 | $350,000.00 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 64 | MAYFIELD KY OPCO LLC | 60624731635078706 | 1st Draw (2021) | 3/27/2021 | $333,877.40 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 65 | MOUNT PLEASANT TN OPCO LLC | 60177921703648703 | 1st Draw (2021) | 3/27/2021 | $350,636.04 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 66 | PADUCAH CENTER FOR HEALTH AND REHABILITATION LLC | 60178671299808700 | 1st Draw (2021) | 3/27/2021 | $427,250.95 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 67 | PELICAN HEALTH AT ASHEVILLE LLC | 60178632056778704 | 1st Draw (2021) | 3/27/2021 | $445,659.00 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan | PELICAN HEALTH AT CHARLOTTE LLC | 60179481325888707 | 1st Draw (2021) | 3/27/2021 | $512,810.29 | Signature Bank | Disbursed | | Flag 37 | RFA |

USA-000712

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Loan 69 | PELICAN HEALTH NORFOLK LLC | 60179511819628710 | 1st Draw (2021) | 3/27/2021 | $277,550.79 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 70 | PELICAN HEALTH RANDOLPH LLC | 60179491535178704 | 1st Draw (2021) | 3/27/2021 | $493,178.00 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 71 | PELICAN HEALTH REIDSVILLE LLC | 60178651581268708 | 1st Draw (2021) | 3/27/2021 | $527,832.47 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 72 | PELICAN HEALTH RUTHERFORDTON LLC | 60177761729098702 | 1st Draw (2021) | 3/27/2021 | $423,579.91 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 73 | PELICAN HEALTH THOMASVILLE LLC | 60178661935708707 | 1st Draw (2021) | 3/27/2021 | $415,094.00 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 74 | RED BOILING SPRINGS TN OPCO LLC | 60624741993548705 | 1st Draw (2021) | 3/27/2021 | $375,647.92 | Signature Bank | Disbursed Current | Not Requested | N/A | RFA |
| Loan 75 | RUSSELLVILLE KY OPCO LLC | 60179471484288701 | 1st Draw (2021) | 3/27/2021 | $483,437.20 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 76 | MARYVILLE JAMESTOWN OPCO LLC | 60178212382638703 | 1st Draw (2021) | 3/28/2021 | $585,448.81 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 77 | GREENVILLE KY OPCO LLC | 60178642614148709 | 1st Draw (2021) | 3/30/2021 | $518,970.00 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 78 | HOPKINSVILLE KY OPCO LLC | 60178182614318701 | 1st Draw (2021) | 3/30/2021 | $497,500.00 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 79 | LEITCHFIELD KY OPCO LLC | 60179522617258702 | 1st Draw (2021) | 3/30/2021 | $409,421.52 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 80 | ANDERSON SC OPCO LLC | 60179612869798805 | 1st Draw (2021) | 4/13/2021 | $895,000.00 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 81 | FARTHING MAYFIELD KY OPCO LLC | 60179622971158808 | 1st Draw (2021) | 4/13/2021 | $338,718.92 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan 82 | THE CITADEL AT MYERS PARK LLC | 60177792780028801 | 1st Draw (2021) | 4/13/2021 | $718,000.00 | Signature Bank | Disbursed Current | Not Requested | Flag 37 | RFA |
| Loan | THE CITADEL AT WINSTON SALEM | 60178772986638802 | 1st Draw (2021) | 4/13/2021 | $1,248,367.79 | Signature | Disbursed | Not | Flag 37 | RFA |

USA-000713

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Loan 84 | CAROLINA PINES AT ASHEVILLE LLC | 60179633383808800 | 1st Draw (2021) | 4/14/2021 | $516,400.00 | ConnectOne Bank | Disbursed Current | Not Requested | Flag 37 | RFA |

## III.  Results of Review

<table>
<tr><td colspan="9" style="background:black;color:white;text-align:center"><strong>Review Information Table</strong></td></tr>
<tr>
<td></td>
<td><strong>Borrower</strong></td>
<td><strong>Industry/Bus Type</strong></td>
<td><strong>Disclosed Principal(s)</strong></td>
<td><strong>Project Address</strong></td>
<td><strong>Employee Count (Loan App)</strong></td>
<td><strong>Stated Monthly Payroll</strong></td>
<td><strong>NAICS</strong></td>
<td></td>
</tr>
<tr>
<td>Primary Loan</td>
<td>THE CITADEL VIRGINIA BEACH LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>340 Lynn Shores Drive, Virginia Beach, VA 23452</td>
<td>90</td>
<td>$293,458.61</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 2</td>
<td>ACCORDIUS HEALTH LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632</td>
<td>70</td>
<td>$241,105.00</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 3</td>
<td>CLEARVIEW HEALTHCARE MANAGEMENT KY LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632</td>
<td>29</td>
<td>$91,926.00</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 4</td>
<td>CLEARVIEW HEALTHCARE MANAGEMENT TN LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632</td>
<td>17</td>
<td>$56,970.00</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 5</td>
<td>THE PORTOPICCOLO GROUP LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632</td>
<td>64</td>
<td>$190,243.00</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 6</td>
<td>MIDTOWN CENTER FOR HEALTH AND REHABILITATION LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>141 N. Mclean Blvd., Memphis, TN 38104</td>
<td>129</td>
<td>$433,291.15</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 7</td>
<td>ACCORDIUS HEALTH AT CLEMMONS LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>3905 Clemmons Rd., Clemmons, NC 27012</td>
<td>76</td>
<td>$235,024.34</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 8</td>
<td>ACCORDIUS HEALTH AT CREEKSIDE CARE LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>604 Stokes St. E., Ahoskie, NC 27910</td>
<td>100</td>
<td>$366,623.87</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 9</td>
<td>ACCORDIUS HEALTH AT GASTONIA LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>416 N. Highland St., Gastonia, NC 28052</td>
<td>74</td>
<td>$270,120.20</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 10</td>
<td>ACCORDIUS HEALTH AT SALISBURY LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>635 Statesville Blvd., Salisbury, NC 28144</td>
<td>91</td>
<td>$314,377.55</td>
<td>623110</td>
<td></td>
</tr>
<tr>
<td>Loan 11</td>
<td>ACCORDIUS HEALTH AT SCOTLAND MANOR LLC</td>
<td>Nursing Care Facilities (Skilled Nursing Facilities)</td>
<td>Simcha Hyman: 50% Naftali Zanziper: 50%</td>
<td>920 Jr High School Rd., Scotland Neck, NC 27874</td>
<td>41</td>
<td>$134,976.31</td>
<td>623110</td>
<td></td>
</tr>
</table>

USA-000714

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Loan 13 | BIRCHWOOD NURSING AND REHABILITATION LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 106 Padgett Drive, Clinton, KY 42031 | 61 | $184,026.66 | 623110 | |
| Loan 14 | CHEROKEE PARK REHABILITATION LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 2100 Millvale Road, Louisville, KY 40205 | 75 | $262,280.09 | 623110 | |
| Loan 15 | DOWN EAST LIVING AND REHAB CENTER LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 38 Carters Rd., Gatesville, NC 27938 | 39 | $135,292.29 | 623110 | |
| Loan 16 | FULTON NURSING AND REHABILITATION LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 1004 Holiday LN., Fulton, KY 42041 | 45 | $132,429.29 | 623110 | |
| Loan 17 | JEFFERSONTOWN OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 3500 Good Samaritan Way, Jeffersontown, KY 40299 | 71 | $213,797.15 | 623110 | |
| Loan 18 | WESTWOOD NURSING AND REHABILITATION LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 300 Westwood Street, Glasgow, KY 42141 | 86 | $232,029.69 | 623110 | |
| Loan 19 | ACCORDIUS HEALTH AT LEXINGTON LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 279 Brian Center Drive Lexington, NC 27292 | 80 | $313,921.65 | 623110 | |
| Loan 20 | COLLIERVILLE NURSING AND REHABILITATION LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 490 West Poplar Avenue, Collierville, TN 38017 | 87 | $309,351.99 | 623110 | |
| Loan 21 | ACCORDIUS HEALTH AT ABERDEEN LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 915 Pee Dee Rd., Aberdeen, NC 28315 | 91 | $229,209.21 | 623110 | |
| Loan 22 | ACCORDIUS HEALTH AT WAYNESBORO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 1221 Rosser Ave., Waynesboro, VA 22980 | 88 | $219,557.55 | 623110 | 5 |
| Loan 23 | THE CITADEL SALISBURY LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 710 Julian Rd., Salisbury, NC 28147 | 92 | $226,009.22 | 623110 | 1 |
| Loan 24 | ACCORDIUS HEALTH AT HARRISONBURG LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 94 South Avenue, Harrisonburg, VA 22801 | 72 | $228,619.90 | 623110 | 5 |
| Loan 25 | CV LOUISVILLE OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 2141 Sycamore Avenue, Louisville, KY 40206 | 111 | $206,684.20 | 623110 | |
| Loan 26 | EMPORIA VA OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 200 Weaver Avenue, Emporia, VA 23847 | 53 | $193,250.10 | 623110 | 9 |
| Loan 27 | BECK MAYFIELD KY OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 500 Beck Ln., Mayfield, KY 42066 | 79 | $192,018.44 | 623110 | |
| Loan 28 | LIBERTY RD RANDALLSTOWN | Nursing Care Facilities (Skilled | Simcha Hyman: 50% Naftali Zanziper: 50% | 9109 Liberty Road, Randallstown, MD | 137 | $359,459.22 | 623110 | |

USA-000715

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Loan 29 | PELICAN HEALTH HENDERSON LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 280 South Beckford Dr. Henderson, NC 27536 | 52 | $155,591.52 | 623110 | |
| Loan 30 | ACCORDIUS HEALTH AT NANS POINTE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 200 West Constance Road, Suffolk, VA 23434 | 116 | $342,721.61 | 623110 | 5 |
| Loan 31 | CARTHAGE OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 112 Healthcare Drive, Carthage, TN 37030 | 67 | $188,840.02 | 623110 | 5 |
| Loan 32 | DUNN LORING VA OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 8000 Iliff Drive, Dunn Loring, VA 22027 | 139 | $543,149.50 | 623110 | 6 |
| Loan 33 | FAYETTEVILLE GA OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 110 Brandywine Blvd., Fayetteville, GA 30214 | 117 | $349,484.01 | 623110 | |
| Loan 34 | SILVER SPRING MD OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 2015 East West Highway, Silver Spring, MD 20910 | 49 | $154,749.14 | 623110 | |
| Loan 35 | THE CITADEL MOORESVILLE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Naftali Zanziper - 50% | 550 Glenwood Dr., Mooresville, NC 28115 | 81 | $219,521.01 | 623110 | 1 |
| Loan 36 | ACCORDIUS HEALTH AT ROANOKE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 324 King George Avenue SW, Roanoke, VA 24016 | 62 | $170,225.39 | 623110 | 1 |
| Loan 37 | ACCORDIUS HEALTH AT ASHEVILLE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 500 Beaverdam Rd., Asheville, NC 28804 | 50 | $142,347.00 | 623110 | 0 |
| Loan 38 | ACCORDIUS HEALTH AT BAY POINTE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 1148 First Colonial Rd., Virginia Beach, VA 23454 | 63 | $185,110.00 | 623110 | 5 |
| Loan 39 | ACCORDIUS HEALTH AT CHARLOTTE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 63 | $237,278.00 | 623110 | 6 |
| Loan 40 | ACCORDIUS HEALTH AT CONCORD LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 515 Lake Concord Rd. NE, Concord, NC 28025 | 54 | $217,857.00 | 623110 | 0 |
| Loan 41 | ACCORDIUS HEALTH AT GREENSBORO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 55 | $179,295.00 | 623110 | 1 |
| Loan 42 | CAROLINA PINES AT GREENSBORO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 109 S Holden Rd., Greensboro, NC 27407 | 100 | $172,544.00 | 623110 | 1 |
| Loan 43 | THE CITADEL ELIZABETH CITY LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 901 Halstead Blvd., Elizabeth City, NC 27909 | 67 | $175,653.00 | 623110 | 4 |
| Loan 44 | ACCORDIUS HEALTH AT HENDERSONVILLE | Nursing Care Facilities (Skilled | Simcha Hyman: 50% Naftali Zanziper: 50% | 200 Heritage Cir., Hendersonville, NC | 39 | $171,473.00 | 623110 | 0 |

USA-000716

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Loan 45 | ACCORDIUS HEALTH AT LYNCHBURG LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 2081 Langhorne Rd., Lynchburg, VA 24501 | 60 | $220,847.00 | 623110 | 5 |
| Loan 46 | ACCORDIUS HEALTH AT MIDWOOD LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 76 | $189,583.00 | 623110 | 6 |
| Loan 47 | COVINGTON TN OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 1992 Highway 51 S., Covington, TN 62906 | 95 | $256,296.00 | 623110 | |
| Loan 48 | ACCORDIUS HEALTH AT RIVER POINTE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 4142 Bonney Rd., Virginia Beach, VA 23452 | 52 | $224,545.00 | 623110 | 5 |
| Loan 49 | ACCORDIUS HEALTH AT ROSE MANOR LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 4230 N Roxboro St., Durham, NC 27704 | 60 | $227,459.00 | 623110 | 0 |
| Loan 50 | FAIR OAKS HEALTH AND REHABILITATION LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 1 Sparks Avenue, Jamestown, KY 42629 | 66 | $153,141.00 | 623110 | |
| Loan 51 | PRINCETON KY OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 100% | 1333 W. Main St., Princeton, KY 42445 | 100 | $147,390.00 | 623110 | 0 |
| Loan 52 | ACCORDIUS HEALTH AT BREVARD LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 51 | $210,337.00 | 623110 | 0 |
| Loan 53 | ACCORDIUS HEALTH AT MONROE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 46 | $132,051.00 | 623110 | 6 |
| Loan 54 | ACCORDIUS HEALTH AT MOORESVILLE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 752 E. Center Avenue, Mooresville, NC 28115 | 54 | $194,916.00 | 623110 | 0 |
| Loan 55 | ACCORDIUS HEALTH AT STATESVILLE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 520 Valley St., Statesville, NC 28677 | 69 | $210,753.00 | 623110 | 0 |
| Loan 56 | ACCORDIUS HEALTH AT WINSTON SALEM LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 4911 Brian Center Ln., Winston Salem, NC 27106 | 43 | $111,983.00 | 623110 | 0 |
| Loan 57 | COUNTRYSIDE CENTER FOR REHABILITATION AND NURSING LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 47 Margo Avenue, Bardwell, KY 42023 | 65 | $93,142.00 | 623110 | |
| Loan 58 | KNOXVILLE OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 3300 N Broadway St., Knoxville, TN 37917 | 51 | $153,599.00 | 623110 | 5 |
| Loan 59 | ACCORDIUS HEALTH AT WILKESBORO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 1000 College St., Wilkesboro, NC 28697 | 59 | $175,575.38 | 623110 | 9 |

USA-000717

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Loan 61 | LOUDON OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 1520 Grove St., Loudon, TN 37774 | 93 | $301,159.41 | 623110 5 |
| Loan 62 | MADISONVILLE HEALTH AND REHABILITATION LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 465 Isbill Rd., Madisonville, TN 37354 | 68 | $205,124.12 | 623110 |
| Loan 63 | MARYVILLE FAIRPARK OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 65 | $140,000.00 | 623110 5 |
| Loan 64 | MAYFIELD KY OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 401 Indiana Avenue, Mayfield, KY 42066 | 49 | $133,551.00 | 623110 5 |
| Loan 65 | MOUNT PLEASANT TN OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 904 Hidden Acres Avenue, Mount Pleasant, TN 38474 | 46 | $140,254.42 | 623110 |
| Loan 66 | PADUCAH CENTER FOR HEALTH AND REHABILITATION LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 4747 Alben Barkley Dr., Paducah, KY 42001 | 68 | $170,900.38 | 623110 |
| Loan 67 | PELICAN HEALTH AT ASHEVILLE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 48 | $178,263.79 | 623110 |
| Loan 68 | PELICAN HEALTH AT CHARLOTTE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 2616 E 5th St., Charlotte, NC 28204 | 68 | $205,124.12 | 623110 3 |
| Loan 69 | PELICAN HEALTH NORFOLK LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 42 | $111,020.32 | 623110 |
| Loan 70 | PELICAN HEALTH RANDOLPH LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 4801 Randolph Rd., Charlotte, NC 28211 | 42 | $197,271.21 | 623110 |
| Loan 71 | PELICAN HEALTH REIDSVILLE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 543 Maple Avenue, Reidsville, NC 27320 | 76 | $211,132.99 | 623110 9 |
| Loan 72 | PELICAN HEALTH RUTHERFORDTON LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 62 | $169,431.97 | 623110 |
| Loan 73 | PELICAN HEALTH THOMASVILLE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 1028 Blair St # 540N, Thomasville, NC 27360 | 35 | $166,037.83 | 623110 9 |
| Loan 74 | RED BOILING SPRINGS TN OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 60 | $150,259.17 | 623110 |
| Loan 75 | RUSSELLVILLE KY OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 87 | $193,374.88 | 623110 |
| | MARYVILLE | Nursing Care | | 1012 Jamestown | | | |

USA-000718

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Loan 77 | GREENVILLE KY OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 515 Greene Dr., Greenville, KY 42345 | 87 | $207,588.07 | 623110 | |
| Loan 78 | HOPKINSVILLE KY OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 950 Highpoint Dr., Hopkinsville, KY 42240 | 66 | $199,000.00 | 623110 | |
| Loan 79 | LEITCHFIELD KY OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 718 Goodwin Ln., Leitchfield, KY 42754 | 53 | $163,768.61 | 623110 | |
| Loan 80 | ANDERSON SC OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 132 | $358,000.00 | 623110 | |
| Loan 81 | FARTHING MAYFIELD KY OPCO LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 440 Sylvan Avenue, Suite 240, Englewood Cliffs, NJ 07632 | 48 | $135,487.57 | 623110 | |
| Loan 82 | THE CITADEL AT MYERS PARK LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 300 Providence Rd., Charlotte, NC 28207 | 70 | $287,227.30 | 623110 | |
| Loan 83 | THE CITADEL AT WINSTON SALEM LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman: 50% Naftali Zanziper: 50% | 1900 W 1st St., Winston Salem, NC 27104 | 135 | $499,347.12 | 623110 | 3 |
| Loan 84 | CAROLINA PINES AT ASHEVILLE LLC | Nursing Care Facilities (Skilled Nursing Facilities) | Simcha Hyman - 50% | 91 Victoria Rd., Asheville, NC 28801 | 65 | $206,591.00 | 623110 | |

Simcha Hyman (SH) and/or Naftali Zanziper (NZ) are reported as the Borrower principals for all eighty-four e
this affiliated loan group.

The affiliation of all eighty-four entities is based on common ownership, control, and management as reflecte
Secretary of State (SOS) registrations, LexisNexis (LN) data, Uniform Commercial Code (UCC) filings, and o
public source information.  Form 3511, Addendum A (A2), contains a list of all affiliated entities, as well as the
Alternative Size Standard information. Form 3511 is signed by the Borrower principal (SH) for all 84 entities.

A. **Reason for Disposition**

   **Reason for RFA**

   <u>Potentially Exceeds Maximum Allowed Aggregate Loan Amount of $20 Million</u>

   1 . The Citadel Virginia Beach LLC, Loan # 5466647809 /Case 1617235
   2 . Accordius Health at Roanoke LLC, Loan # 7808967800 /Case 1594078

   3 . The Citadel Mooresville LLC, Loan # 7130027806 /Case 1697939

   4 . Accordius Health at Charlotte LLC, Loan # 3200798601 /Case 6017813

   5 . Accordius Health at Concord LLC, Loan # 3015918609 /Case 6017931

   6 . Accordius Health at Greensboro LLC, Loan # 3124028601 /Case 6017933

   7 . Accordius Health at Hendersonville LLC, Loan # 5169688602 /Case 6017858

Case 1:23-cv-00129-MR   Document 24-3   Filed 11/28/23   Page 219 of 300

USA-000719

9 . Accordius Health at Midwood LLC, Loan # 5035908602 /Case 6017857

10 . Accordius Health at Monroe LLC, Loan # 8192158610 /Case 6017775

11 . Accordius Health at Mooresville LLC, Loan # 8162528602 /Case 6017943

12 . Accordius Health at River Pointe LLC, Loan # 6531908606 /Case 6017817

13 . The Citadel Elizabeth City LLC, Loan # 3308138604 /Case 6017852

14 . Accordius Health at Rose Manor LLC, Loan # 6327628608 /Case 6017939

15 . Accordius Health at Statesville LLC, Loan # 8074818606 /Case 6017941

16 . Accordius Health at Wilkesboro LLC, Loan # 1946638705 /Case 6017950

17 . Accordius Health at Wilson LLC, Loan # 1825438708 /Case 6017777

18 . Accordius Health at Winston Salem LLC, Loan # 7988958604 /Case 6017940

19 . Anderson Sc Opco LLC, Loan # 2869798805 /Case 6017961

20 . Carolina Pines at Asheville LLC, Loan # 3383808800 /Case 6017963

21 . Carolina Pines at Greensboro LLC, Loan # 3097548608 /Case 6017854

22 . Countryside Center For Rehabilitation and Nursing LLC, Loan # 8192688605 /Case 6017942

23 . Covington Tn Opco LLC, Loan # 4967028604 /Case 6017936

24 . Fair Oaks Health and Rehabilitation LLC, Loan # 6581038603 /Case 6017938

25 . Farthing Mayfield Ky Opco LLC, Loan # 2971158808 /Case 6017962

26 . Greenville Ky Opco LLC, Loan # 2614148709 /Case 6017864

27 . Hopkinsville Ky Opco LLC, Loan # 2614318701 /Case 6017818

28 . Knoxville Opco LLC,Loan # 7659928605 /Case 6017862

29 . Leitchfield Ky Opco LLC, Loan # 2617258702 /Case 6017952

30 . Loudon Opco LLC,Loan # 1383928704 /Case 6017820

31 . Madisonville Health and Rehabilitation LLC, Loan # 1472948701 /Case 6017819

32 . Maryville Fairpark Opco LLC, Loan # 1470638709 /Case 6017791

33 . Maryville Jamestown Opco LLC, Loan # 2382638703 /Case 6017821

34 . Mayfield Ky Opco LLC, Loan # 1635078706 /Case 6062473

35 . Mount Pleasant Tn Opco LLC, Loan # 1703648703 /Case 6017792

36 . Paducah Center For Health and Rehabilitation LLC, Loan # 1299808700 /Case 6017867

USA-000720

38 . Pelican Health at Charlotte LLC, Loan # 1325888707 /Case 6017948

39 . Pelican Health Norfolk LLC, Loan # 1819628710 /Case 6017951

40 . Pelican Health Randolph LLC, Loan # 1535178704 /Case 6017949

41 . Pelican Health Reidsville LLC, Loan # 1581268708 /Case 6017865

42 . Pelican Health Rutherfordton LLC, Loan # 1729098702 /Case 6017776

43 . Pelican Health Thomasville LLC, Loan # 1935708707 /Case 6017866

44 . Princeton Ky Opco LLC, Loan # 6580538609 /Case 6017859

45 . Red Boiling Springs Tn Opco LLC, Loan # 1993548705 /Case 6062474

46 . Russellville Ky Opco LLC, Loan # 1484288701 /Case 6017947

47 . The Citadel at Myers Park LLC, Loan # 2780028801 /Case 6017779

48 . The Citadel at Winston Salem LLC, Loan # 2986638802 /Case 6017877

49 . Accordius Health at Bay Pointe LLC, Loan # 3123528607 /Case 6017853

50 . Accordius Health at Brevard LLC, Loan # 8306238609 /Case 6017861

51 . Accordius Health at Asheville LLC, Loan # 4336458510 /Case 6017917

Per SBA Guidance, the 51 referenced loans have been identified as the loans exceeding the maximum allowed ag
loan amount of $20,000,000. The borrower and affiliates' aggregate loan amount of $44,983,180.44 exceeded the
allowed aggregate loan amount of $20,000,000 by $24,983,180.44.

B.  **Alert(s) and/or Flag(s) Dispositions**

**Accordius Health at Roanoke LLC, Loan #7808967800 / Case 1594078**

1. Rule 9 - In Operation After February 15, 2020 is resolved. The Secretary of State records indicated the entity w
registered on December 16, 2018 and is in active status. (A4) Due to the SOS filing considered to be a more accu
depiction of the entity, this alert is resolved.

2. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. This alert triggered due to the 1
risk indicators association with the principal, Naftali Zanziper (Zanziper), and is resolved as follows:

10-The input phone number is a mobile number: Phone number is not a required entry on the PPP appli
this         issue, without any other confirmed risk indicators, is not indicative of fraud.

27-Unable to verify phone number: Phone number is not a required entry on the PPP application and thi
without any other confirmed risk indicators, is not indicative of fraud.

38-The input SSN is associated with multiple last names: A query of the SSN in LN only revealed Zanziper i
search results (A5). Additionally, the LN report for Zanziper does not show another individual associated wit
███████████ other than Zanziper (A6). Therefore this alert has been resolved.

81-The input date-of-birth was missing or incomplete: Date of birth is not a required entry on the PPP ap
and this issue, without any other confirmed risk indicators, is not indicative of fraud.

fraud.

## Fayetteville GA Opco LLC, Loan #5699257800 / Case 1655849
1. Rule 9 - In Operation After February 15, 2020 is resolved. The Secretary of State records indicated the entity wa
registered on July 31, 2019 and is in active status (A7). Due to the SOS filing considered to be a more accurate de
the entity, this alert is resolved.

## The Citadel Mooresville LLC, Loan #7130027806 / Case 1697939
1. Rule 9 - In Operation After February 15, 2020 is resolved. The Secretary of State records indicated the entity wa
registered on November 18, 2019 and is in active status (A8). Due to the SOS filing considered to be a more accu
depiction of the entity, this alert is resolved.

## Liberty Rd Randallstown MD Opco LLC, Loan #4300017803 / Case 1688313
1. Rule 7 – Mismatch of TIN (EIN/SSN/ITIN) and Rule 8 – Mismatch of Entity Name are resolved. The alerts trigge
the entity's name as provided on the loan application not matching information found in LexisNexis (LN). Per the lo
application data, the entity name provided was listed as Liberty Rd Randallstown MD Opco LLC (Liberty Rd) with
██████████ Searches conducted in LN confirmed an exact name and TIN match for Liberty Rd (A9).

2. Rule 18 - Aggregate Data Mismatch is resolved. This alert was likely triggered by the above alerts for Rules 7 a
are resolved. Accordingly, this alert is resolved.

3. Rule 9 - In Operation After February 15, 2020 is resolved. The Secretary of State records indicated the entity wa
registered on October 25, 2019 and is in active status (A10). Due to the SOS filing considered to be a more accur
depiction of the entity, this alert is resolved.

## The Citadel Salisbury LLC, Loan #1964527802 / Case 1644181

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at Roa
Loan # 7808967800 /Case 1594078, item #2)

2. Flag 33 - D&B - Potential Affiliation Issue - is resolved.

3. SBA Hold Flag 37 - Potential Affiliation Issue - is resolved. This alert was triggered because the loan applicatio
indicated the borrower had potential affiliations. A review of the affiliated group's employee count totaled 5,930 an
84 entities with NAICS codes 623110 - Nursing Care Facilities and 623312 - Assisted Living Facilities for the Elde
Per the SBA Form 3511, the borrower and affiliates qualified for its PPP loans based on the Alternative Size Stand
Pg 2). Per ETRAN, The Citadel Salisbury LLC, Loan 22 #1964527802 was disbursed 05/22/2020 (A3). As of 05/2
loans had been funded totaling $12,703,880.47 which did not exceed the maximum allowed aggregate loan amou
$20,000,000. Therefore, the PPP's baseline eligibility rule has been met for The Citadel Salisbury LLC, Loan 22
#1964527802 and this flag is mitigated.

## Accordius Health at Aberdeen LLC, Loan #2358897802 / Case 1594077

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at
LLC, Loan # 7808967800 /Case 1594078, item #2)

## Birchwood Nursing and Rehabilitation LLC, Loan #5507417404 / Case 1650359

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at
LLC, Loan # 7808967800 /Case 1594078, item #2)

## Cherokee Park Rehabilitation LLC, Loan #5506707406 / Case 1625265

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at
LLC, Loan # 7808967800 /Case 1594078, item #2)

## Collierville Nursing and Rehabilitation LLC, Loan #6822678809 / Case 1670623

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at

USA-000722

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at LLC, Loan # 7808967800 /Case 1594078, item #2)

**Dunn Loring VA Opco LLC, Loan #5111387804 / Case 1600898**

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at LLC, Loan # 7808967800 /Case 1594078, item #2)

**Emporia VA Opco LLC, Loan #3384257807 / Case 1601497**

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at LLC, Loan # 7808967800 /Case 1594078, item #2)

**The Citadel Salisbury LLC, Loan #1964527802 / Case 1644181**

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at LLC, Loan # 7808967800 /Case 1594078, item #2)

**The Citadel Virginia Beach LLC, Loan #5466647809 / Case 1617235**

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at LLC, Loan # 7808967800 /Case 1594078, item #2)

**Westwood Nursing and Rehabilitation LLC, Loan #5508087403 / Case 1619618**

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at LLC, Loan # 7808967800 /Case 1594078, item #2)

**Accordius Health at Salisbury LLC, Loan #5506547406 / Case 1594079**

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at LLC, Loan # 7808967800 /Case 1594078, item #2)

**Midtown Center for Health and Rehabilitation LLC, Loan #3606887401 / Case 1636129**

1. Rule 17 - Borrower Relationship with Disqualified Individual is resolved. (Refer to Accordius Health at LLC, Loan # 7808967800 /Case 1594078, item #2)

There were no rules or flags alerted for the following cases and without any other confirmed risk indicators th indication of fraud.

**Accordius Health at Nans Pointe LLC, Loan #5034827800 / Case 1858293**

**Accordius Health at Scotland Manor LLC, Loan #5507917401 / Case 1858294**

**Accordius Health at Waynesboro LLC, Loan #1958947803 / Case 1858295**

**Accordius Health at Wilmington LLC, Loan #5506767402 / Case 1858296**

**Beck Mayfield KY Opco LLC, Loan #4302027810 / Case 1865083**

**Carthage Opco LLC, Loan #5170897804 / Case 1869951**

**Clearview Healthcare Management KY LLC, Loan #4037827202 / Case 1872716**

7274600723

**Deans East Healthcare Management LLC, Loan #5507807402 / Case 1873717**

**Pelican Health Henderson LLC, Loan #4306187809 / Case 1915562**

**Silver Spring MD Opco LLC, Loan #5471747809 / Case 1926267**

**The Portopiccolo Group LLC, Loan #4445407204 / Case 1933755**

**Accordius Health LLC, Loan #4007707200 / Case 6062321**

C. **Other Facts**

1. LN and public record searches were performed for the borrower and the borrower's principal owners (SH and N
did not identify any disqualifying criminal record, bankruptcy, foreclosures, or debt default that affected eligibility.

SH reported address in Suffern, NY is consistent with public source records. SH has no identifiable criminal recor

NZ reported address in Brooklyn, NY is associated with NZ in public source records. SH has the following crimina
03/24/2020  Careless Driving - Florida
08/31/2015  Failure to Stop - Florida
Unspecified and undated North Carolina criminal offense

LN and Google searches were also utilized to verify the reported business activity and no adverse news that affec
was found.

2. Open source research included reviewing the following:

A .Google (C1-171,B11-13)
B. Lexis Nexis (B85-170)
C. ETRAN (B171-172)
D. GA Secretary of State (B1)
E. KY Secretary of State (B2-16, B55-57, B63-64, B70)
F. MD Secretary of State (B17-18)
G. NC Secretary of State (B19-53, B59, B61, B84)
H. SC Secretary of State (B54)
H. TN Secretary of State (B58,B62, B65-69, B71-73)
H. VA Secretary of State (B60, B74-83)

IV. **Requests and Responses to RFPs and Documents Reviewed**

A review of the documents requested did not reveal any inconsistencies (A4).

V. **Conclusion**

The Primary Loan (#5466647809) and Loans 2, 4, 8, 11-14, 16-18 and 20-84 that comprise related cases
group RC4003377200A, are being referred to the SBA for further action due to the borrower's potentially exceeding the
maximum allowed aggregate loan amount of $20,000,000 for first draw loans.

**Appendix A – RFP Documentation**

USA-000724

N/A



Confidential-Subject to Attorney Client Privilege

| | |
|---|---|
| **TO:** | The Portopiccolo Group |
| **FROM:** | Frederick N. Widen |
| **DATE:** | August 4, 2021 (revised) / January 20, 2022 |
| **RE:** | **Paycheck Protection Program ("PPP"): Regulatory Limit On Corporate Group Loans** |

ISSUE:  Are entities affiliated with The Portopiccolo Group restricted to a maximum of $20 million in loans under the PPP?

SUMMARY ANSWER:

Based upon your representations as set forth in the excel spreadsheet furnished to me on July 27, 2021, it appears that all of The Portopiccolo Group companies listed in the spreadsheet are brother-sister companies and there is no common parent ownership of the companies, then those companies should not be subject to a corporate group limitation on the amount of PPP loans that may be borrowed. We are assuming that the ownership of said entities is as set forth in the spreadsheet.

BACKGROUND INFORMATION:

The Paycheck Protection Program ("PPP") was created under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), as of March 27, 2020.  On December 27, 2020, Title III of Division M of the Appropriations Act, the "Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act" ("Economic Aid Act") became law, amending the PPP.

Nothing in CARES Act imposes a maximum $20 million limit on the amount of PPP loans that a corporate group may obtain.  However, the U.S. Treasury Department ("Treasury") issued Interim Final Rule [Docket Number SBA- 2020-0023], effective May 4, 2020 (the "IFR MAX"), limiting any single corporate group to no more than $20 million of PPP loans in the aggregate. Arguably, Treasury exceeded their authority when it imposed IFR MAX.  It is worth noting that nothing in the Economic Aid Act imposes a maximum $20 million limit on the amount of PPP loans that a corporate group may obtain.

The Portopiccolo Group has informed us they have reviewed the various affiliation rules and criteria under the Economic Aid Act and are comfortable that they and their affiliated companies satisfy the Alternative Size Test.  Therefore we have not examined the affiliate rules when applied to the The Portopiccolo Group companies regarding eligibility for a PPP loan.

<u>DISCUSSION</u>:

1.  <u>Maximum PPP Loan Cap</u>.  IFR MAX was first released on April 30, 2020, and after publication in the Federal Register, was given an effective date of May 4, 2020.  The final comment period on IFR MAX ended June 3, 2020.

In IFR MAX, Treasury states that a:

> "…single corporate group shall in no event receive more than $20,000,000 of PPP loans in aggregate.  For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent."

Moreover, Treasury stated that it is the responsibility of the loan applicant to notify the lender if the applicant has applied for or received PPP loans in excess of $20 million, and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with IFR MAX.  To emphasize Treasury's intent (and threat), IFR MAX states:

> "Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness."

Accordingly, corporate groups having <u>a</u> <u>common</u> <u>parent</u> <u>with</u> <u>majority</u> <u>ownership</u> may only obtain an aggregate total of $20 million PPP loans.

While making significant changes to the PPP in passing the Economic Aid Act, Congress decided (once again) not to include any PPP loan limitation on corporate groups within the text of the new legislation.  But Treasury has spoken again on the maximum amount of PPP loans a corporate group may obtain.  On January 6, 2021, Treasury issued a new Interim Final Rule (Part B.4.f.), reiterating the limitation set forth in IFR Max.  As before, the Interim Final Rule (Part B.4.f) failed to define what "common parent" means for purpose of the Corporate Group limit.

2.  <u>Analysis of IFR MAX</u>.

The key issue appears to be whether a group of entities is deemed a "corporate group".  For purposes of the IFR MAX $20 million PPP limit, a single corporate group is one that is "*majority owned, directly or indirectly, by a common parent*" (emphasis added).

Treasury appears to have announced a whole new test, requiring a common parent with majority ownership of other companies.  That new control test includes both direct and indirect ownership.  Thus, a common parent is required, and if there is no common parent, then IFR MAX would not apply.

Treasury does not define what they mean by "common parent".  When speaking of a common parent in a corporate group context, it is reasonable and logical to presume Treasury meant a common parent corporation or common parent holding company.  Treasury could have used more generic language such as an "individual, concern or entity" having voting or equity control (as appears in the normal affiliate rules).  Instead, they expressly used the words "common parent" in a corporate group context.

Confidential- Subject to Attorney Client Privilege

It is also reasonable and logical to conclude that Treasury intended to create a new "common parent ownership test", because they made no reference to the well-established affiliate rules under 13 CFR 121.301(f) in determining control. Since Treasury makes no mention of those well-established affiliate rules, The Portopiccolo Group should be justified in interpreting the words "common parent" literally, in applying the new corporate group test requiring a common parent with majority ownership.

I have reviewed the current ownership structure provided to me by The Portopiccolo Group and have determined that The Portopiccolo Group companies are brother-sister companies, and there is no common parent entity that holds majority ownership in any of the companies, directly or indirectly. Where there is no common parent with majority ownership, then the $20 million PPP loan limit under IFR MAX should not apply to The Portopiccolo Group. None of the changes to PPP under the Economic Aid Act change the analysis.

If after further analysis, you determine that a sub-set of The Portopiccolo Group companies do have a common parent with majority ownership over that sub-set of entities, then that sub-set may be part of a corporate group subject to the IFR MAX limitation.

CONCLUSION:

On its face, IFR MAX prevents a corporate group from obtaining more than $20 million PPP loans in the aggregate. There must be a common parent with majority ownership over entities in the corporate group for IFR MAX to apply. If more than $20 million is obtained by such a corporate group of entities, and those borrowers have not advised the lender of the excess amounts, those loans may not be forgivable. Based upon the forgoing, it is our opinion that the $20 million PPP loan limit under IFR MAX should not apply to The Portopiccolo Group. None of the changes to PPP under the Economic Aid Act change the analysis.

As previously noted, The Portopiccolo Group has informed us they are comfortable that they and their affiliated companies satisfy the Alternative Size Test, and therefore we have not examined the affiliate rules when applied to the The Portopiccolo Group companies regarding eligibility for a PPP loan.

3 | P a g e
USA-000727
Confidential- Subject to Attorney Client Privilege
Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 227 of 300

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**Accordius Health at Asheville LLC et al.**

    **APPELLANT**

Appealed from:

**SBA PPP Loan Number 4336458510**

Issued: **January 3, 2023**

Docket No. **PPP-4336458510**

## ORDER - STIPULATIONS & CONSENT ADMINISTRATIVE RECORD

On January 3, 2023, an Order was issued providing that in the interest of judicial economy, this and the 37 appeals set forth in the attached Exhibit A were consolidated for the purpose of the filing of any party motions or briefs, and for any Orders issued by the undersigned. This appeal, Accordius Health at Asheville LLC PPP No. 4336458510, was ordered the "lead case" for any motions, briefs, and/or Orders.

On February 6, 2023, the Parties filed Consent Stipulations, as follows:

1) SBA denied Appellants' loan forgiveness applications finding, in part, that each of the Appellants "is part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate." (Decision Letter)
2) Appellants' appeals of the denial decisions were timely filed.
3) 84 entities, owned equally by individuals Simcha Hyman and Naftali Zanziper, received first-draw PPP loans.
4) The SBA forgave the first-draw PPP loans for 36 of these entities.
5) The SBA denied forgiveness for the first-draw PPP loans of the 48 other entities.[1]
6) Appellants disclosed their ownership by Simcha Hyman and Naftali Zanziper in their Paycheck Protection Program Borrower applications.
7) Appellants complied with SBA's requests for information.
8) Whether Appellants satisfied SBA's alternative size standard is not at issue in this appeal.
9) The parties have agreed to submission of a limited record in this consolidated appeal.

---

[1] The 48 appeals were apportioned between two Administrative Law Judges: 38 were assigned to ALJ Haring, and 10 were assigned to ALJ Trunick.

The undersigned acknowledges and **ACCEPTS** the Parties Stipulations, as set forth above.

On February 6, 2023, the Parties filed a joint Motion for leave to file a stipulated, limited Administrative Record in this consolidated appeal. The parties agree the proposed limited Administrative Record does not contain all documents pertaining to the Appellants, it does contain the documents SBA considered when making its final loan review decisions pursuant to 13 C.F.R. § 134.1207(b) that are relevant to the issue in this consolidated appeal.

Based upon the requirements set forth in 13 C.F.R. § 134.1207(b) and the agreement of the Parties, the Administrative Record proposed by the Parties is **ACCEPTED**. SBA shall file the proposed Administrative Record within the OHA on-line portal under Docket No. PPP-4336458510. The Administrative Record filed therein shall apply as the Administrative Record in the 37 appeals set forth in the attached Exhibit A.

**SO ORDERED.**

_____

**BRIAN J. HARING**
U.S. Administrative Law Judge

**EXHIBIT A**

| APPELLANT | PPP Loan No./<br>OHA Docket No. PPP- |
|---|---|
| Accordius Health at Bay Pointe LLC | 3123528607 |
| Accordius Health at Brevard LLC | 8306238609 |
| Accordius Health at Charlotte LLC | 3200798601 |
| Accordius Health at Concord LLC | 3015918609 |
| Accordius Health at Greensboro LLC | 3124028601 |
| Accordius Health at Hendersonville LLC | 5169688603 |
| Accordius Health at Lynchburg LLC | 5975278603 |
| Accordius Health at Midwood LLC | 5035908602 |
| Accordius Health at Monroe LLC | 8192158610 |
| Accordius Health at Mooresville LLC | 8162528602 |
| Accordius Health at River Pointe LLC | 6531908606 |
| Accordius Health at Rose Manor LLC | 6327628608 |
| Accordius Health at Statesville LLC | 8074818606 |
| Accordius Health at Wilkesboro LLC | 1946638705 |
| Accordius Health at Wilson LLC | 1825438708 |
| Accordius Health at Winston Salem LLC | 7988958604 |
| Anderson SC OPCO LLC | 2869798805 |
| Carolina Pines at Asheville LLC | 3383808800 |
| Caroline Pines at Greensboro LLC | 3097548608 |
| Covington TN OPCO LLC | 4967028604 |
| Farthing Mayfield KY OPCO LLC | 2971158808 |
| Greenville KY OPCO LLC | 2614148709 |
| Hopkinsville KY OPCO LLC | 2614318701 |
| Knoxville OPCO LLC | 7659928605 |
| Leitchfield KY OPCO LLC | 2617258702 |
| Loudon OPCO LLC | 1383928704 |
| Madisonville Health and Rehabilitation LLC | 1472948701 |
| Maryville Fairpark OPCO LLC | 1470638709 |
| Maryville Jamestown OPCO LLC | 2382638703 |
| Mayfield KY OPCO LLC | 1635078706 |
| Mount Pleasant TN OPCO LLC | 1703648703 |
| Paducah Center for Health and Rehabilitation | 1299808700 |
| Pelican Health Randolph LLC | 1535178704 |
| Pelican Health Reidsville LLC | 1581268708 |
| Pelican Health Thomasville LLC | 1935708707 |
| Princeton KY OPCO LLC | 6580538609 |
| Red Boiling Springs TN OPCO LLC | 1993548705 |

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**Accordius Health at Asheville LLC et al.**

    **APPELLANT**

Appealed from:

.**SBA PPP Loan Number 4336458510**...............

Issued: **February 6, 2023**

Docket No. **PPP-4336458510**

## ORDER - STIPULATIONS & CONSENT ADMINISTRATIVE RECORD

On January 3, 2023, an Order was issued providing that in the interest of judicial economy, this and the 37 appeals set forth in the attached Exhibit A were consolidated for the purpose of the filing of any party motions or briefs, and for any Orders issued by the undersigned. This appeal, Accordius Health at Asheville LLC PPP No. 4336458510, was ordered the "lead case" for any motions, briefs, and/or Orders.

On February 6, 2023, the Parties filed Consent Stipulations, as follows:

1) SBA denied Appellants' loan forgiveness applications finding, in part, that each of the Appellants "is part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate." (Decision Letter)
2) Appellants' appeals of the denial decisions were timely filed.
3) 84 entities, owned equally by individuals Simcha Hyman and Naftali Zanziper, received first-draw PPP loans.
4) The SBA forgave the first-draw PPP loans for 36 of these entities.
5) The SBA denied forgiveness for the first-draw PPP loans of the 48 other entities.[1]
6) Appellants disclosed their ownership by Simcha Hyman and Naftali Zanziper in their Paycheck Protection Program Borrower applications.
7) Appellants complied with SBA's requests for information.
8) Whether Appellants satisfied SBA's alternative size standard is not at issue in this appeal.
9) The parties have agreed to submission of a limited record in this consolidated appeal.

---

[1] The 48 appeals were apportioned between two Administrative Law Judges: 38 were assigned to ALJ Haring, and
10 were assigned to ALJ Trunick.

USA-000731

The undersigned acknowledges and **ACCEPTS** the Parties Stipulations, as set forth above.

On February 6, 2023, the Parties filed a joint Motion for leave to file a stipulated, limited Administrative Record in this consolidated appeal. The parties agree the proposed limited Administrative Record does not contain all documents pertaining to the Appellants, it does contain the documents SBA considered when making its final loan review decisions pursuant to 13 C.F.R. § 134.1207(b) that are relevant to the issue in this consolidated appeal.

Based upon the requirements set forth in 13 C.F.R. § 134.1207(b) and the agreement of the Parties, the Administrative Record proposed by the Parties is **ACCEPTED**. SBA shall file the proposed Administrative Record within the OHA on-line portal under Docket No. PPP-4336458510. The Administrative Record filed therein shall apply as the Administrative Record in the 37 appeals set forth in the attached Exhibit A.

**THIS ORDER IS AMENDED TO REFLECT THE CORRECT DATE OF ISSUANCE**. The prior Order incorrectly listed the same as January 3, 2023.

**SO ORDERED.**

_____

**BRIAN J. HARING**
U.S. Administrative Law Judge

**EXHIBIT A**

| APPELLANT | PPP Loan No./ OHA Docket No. PPP- |
|---|---|
| Accordius Health at Bay Pointe LLC | 3123528607 |
| Accordius Health at Brevard LLC | 8306238609 |
| Accordius Health at Charlotte LLC | 3200798601 |
| Accordius Health at Concord LLC | 3015918609 |
| Accordius Health at Greensboro LLC | 3124028601 |
| Accordius Health at Hendersonville LLC | 5169688603 |
| Accordius Health at Lynchburg LLC | 5975278603 |
| Accordius Health at Midwood LLC | 5035908602 |
| Accordius Health at Monroe LLC | 8192158610 |
| Accordius Health at Mooresville LLC | 8162528602 |
| Accordius Health at River Pointe LLC | 6531908606 |
| Accordius Health at Rose Manor LLC | 6327628608 |
| Accordius Health at Statesville LLC | 8074818606 |
| Accordius Health at Wilkesboro LLC | 1946638705 |
| Accordius Health at Wilson LLC | 1825438708 |
| Accordius Health at Winston Salem LLC | 7988958604 |
| Anderson SC OPCO LLC | 2869798805 |
| Carolina Pines at Asheville LLC | 3383808800 |
| Caroline Pines at Greensboro LLC | 3097548608 |
| Covington TN OPCO LLC | 4967028604 |
| Farthing Mayfield KY OPCO LLC | 2971158808 |
| Greenville KY OPCO LLC | 2614148709 |
| Hopkinsville KY OPCO LLC | 2614318701 |
| Knoxville OPCO LLC | 7659928605 |
| Leitchfield KY OPCO LLC | 2617258702 |
| Loudon OPCO LLC | 1383928704 |
| Madisonville Health and Rehabilitation LLC | 1472948701 |
| Maryville Fairpark OPCO LLC | 1470638709 |
| Maryville Jamestown OPCO LLC | 2382638703 |
| Mayfield KY OPCO LLC | 1635078706 |
| Mount Pleasant TN OPCO LLC | 1703648703 |
| Paducah Center for Health and Rehabilitation | 1299808700 |
| Pelican Health Randolph LLC | 1535178704 |
| Pelican Health Reidsville LLC | 1581268708 |
| Pelican Health Thomasville LLC | 1935708707 |
| Princeton KY OPCO LLC | 6580538609 |
| Red Boiling Springs TN OPCO LLC | 1993548705 |

## UNITED STATES SMALL BUSINESS ADMINISTRATION
## OFFICE OF HEARINGS AND APPEALS

| | | |
|---|---|---|
| | ) | |
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | |
| | ) | |
| Accordius Health at Asheville LLC *et al.* | ) | Docket No.  PPP-4336458510 |
| | ) | |
|     Appellant | ) | |
| | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 4336458510 | ) | |
| | ) | |

## U.S. SMALL BUSINESS ADMINISTRATION'S RESPONSE TO APPEAL OF ACCORDIUS HEALTH AT ASHEVILLE LLC *et al.*

COMES NOW, the United States Small Business Administration ("SBA"), by and through its undersigned counsel, and pursuant to the Notice and Order entered January 3, 2023, ("Order") responds to the consolidated appeals ("Appeals") filed by the appellants identified in the attached Exhibit A ("Appellants").  As demonstrated below, Appellants failed to meet their burden of proof to demonstrate that the final SBA loan review decisions ("Final Decisions") were based on a clear error of fact or law.  Therefore, OHA should affirm SBA's Final Decisions. In support thereof, SBA submits as follows:

## PROCEDURAL BACKGROUND

SBA denied Appellants' loan forgiveness applications, finding that Appellants were ineligible for loan forgiveness because Appellants were "part of a corporate group" that received "more than $20,000,000 of First Draw PPP loans in the aggregate."[1]  (Decision Letter)[2]

Appellants timely filed appeals from the Final Decisions.  SBA filed a consent motion to consolidate the appeals, which was granted.  (ORDER- Consolidation)

---

[1] The Final Decisions are identical among all consolidated appeals.
[2] All citations are to the docket of the lead case, Accordius Health at Asheville, LLC.  The citations are to the name of the document as reflected in the OHA Portal.

USA-000734

SBA timely filed a stipulated Administrative Record ("Record" or "AR") on February 6, 2023. (Stipulated AR) Simultaneously with the Record, the parties also filed a joint stipulation to certain facts. (Joint Stipulation + Motion) Appellants did not object to the Record, and the time to object has expired.

**FACTUAL BACKGROUND**

On March 27, 2020, the Coronavirus Aid, Recovery and Economic Security Act ("CARES Act") became law. P.L.116-136 (March 27, 2020). The Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act ("EAA") became law on December 27, 2020. P.L.116-260 (December 27, 2020).  Appellants applied for and received PPP loans between February 23, 2021 and April 12, 2021. (Stipulated AR 2-638)[3] Between June 28, 2022 and September 7, 2022, Appellants executed PPP Loan Forgiveness Applications requesting forgiveness of the full amount of their loans. (*Id.*) SBA reviewed Appellants' loans to determine whether Appellants were part of a corporate group that received more than $20,000,000 in PPP loans, the maximum allowed aggregate loan amount for a corporate group. (Stipulated AR 693) During SBA's review, Appellants complied with SBA's requests for additional information. (Joint Stipulation + Motion)

After reviewing the information provided by Appellants, SBA determined that Appellants were affiliated with 343 other entities commonly owned, directly or indirectly, by Simcha Hyman ("Hyman") and Naftali Zanziper ("Zanziper") (collectively "common parent Hyman/Zanziper").  (Stipulated AR 649) SBA further determined that although this affiliated group exceeded the employee-based size standard of 500 employees, it met the alternative size standard requirement to be eligible for a PPP loan. (Stipulated AR 649-50) Nevertheless, SBA

---

[3] The Administrative Record that has been filed with OHA in PDF format begins with a Table of Contents listing the location of each document for the reader's convenience.  As the pages of the record are not numbered, citations to the Administrative Record herein will be to the PDF viewing page.

concluded that Appellants were ineligible for PPP loan forgiveness because they were part of a corporate group, with the common parent Hyman/Zanziper, and all of Appellants' loans funded after the corporate group had reached the $20 million limit. (Stipulated AR 651-52) In other words, when the PPP loans for each of the Appellants funded, other entities within the corporate group had already received more than $20 million in PPP loans. Appellants timely filed their appeals.

## STANDARD OF REVIEW

Title 13 C.F.R. § 134.1210, Standard of review, is whether the final SBA loan review decisions were based on clear error of fact or law. Appellants have the burden of proof. *Id.*

## ARGUMENT

The Record, Appeal, and applicable authorities demonstrate that (1) SBA had the authority to limit the amount of PPP funds a "corporate group" could obtain; (2) Appellants were part of a corporate group with common parent Hyman/Zanziper that received over $20 million in PPP loans in the aggregate, (3) Appellants' loans funded after the January 2021 IFR and after other borrowers within the corporate group had already received more than $20 million in PPP loans; and (4) Appellants were thus ineligible for PPP loan forgiveness. Therefore, OHA should affirm the SBA Final Decisions.

### A. The CARES Act and EAA Provided SBA Authority to Make Rules and Regulations to Implement the PPP Loan Program

Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," *id.* § 633(d). That background authority naturally extends to the PPP lending program. *See Camelot Banquet Rooms, Inc., et al. v. SBA*, No. 21-2589, 2022 WL 221616 (7th Cir. 2022) (noting that first round PPP legislation "gave the SBA considerable discretion to

decide eligibility for the Program.")

SBA's policy of limiting the amount of PPP loans to borrowers in a single corporate group is wholly consistent with the CARES and EAA Acts and their aims. While there is no question that Congress wanted to protect American workers from unemployment through the CARES and EAA Acts, it does not follow that Congress expected that objective to be pursued to the exclusion of all other considerations and lending criteria. Indeed, the CARES Act made the PPP part of SBA's 7(a) Loan Program and subject to the policies and regulations applicable to the 7(a) Loan Program (*see* CARES Act § 1102, 134 Stat. at 287 (codified at 15 U.S.C. § 636(a)(36)(B)), which excludes businesses from participation for many reasons, including, for example, the nature of the business, or the existence of prior defaulted federal loans (*see* 13 C.F.R. § 120.110).

Pursuant to her authority under the CARES Act, the Administrator determined that to "preserve the limited resources available to the PPP program" and in light of "the high demand for PPP loans," businesses that are part of a single corporate group could not receive over $20,000,000 in PPP loans in the aggregate:

> The Administrator, in consultation with the Secretary, determined that limiting the amount of PPP loans that a single corporate group may receive will promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act. The Administrator has concluded that a limitation of $20,000,000 strikes an appropriate balance between broad availability of PPP loans and program resource constraints.

85 Fed. Reg. at 26325.

The Administrator applied this same rationale in promulgating the IFR issued on January 14, 2021, following the enactment of the EAA, explaining that "To preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers, the Administrator, in consultation with the Secretary, has determined that an aggregate limitation on loans to a single corporate group is necessary and appropriate." 86 Fed. Reg. at 3702, fn 59.

Appellants argue that the IFRs cannot serve as a basis to impose limits on the amount of PPP funds a corporate group could receive because they did not comply with the notice and comment procedures set forth in the Administrative Procedure Act. However, Appellants overlook the fact that the CARES Act and the EAA explicitly allowed the SBA to dispense with notice requirements in promulgating regulations to carry out Title I of the Act, which created the PPP. CARES Act § 1114, 134 Stat. at 312; EAA, § 303, 134 Stat. at 1993. Specifically, section 303 of the EAA, titled "Emergency Rulemaking Authority" states that "[n]ot later than 10 days after the date of enactment of this Act, the Administrator shall issue regulations to carry out this Act and the amendments made by this Act *without regard to the notice requirements under section 553(b) of title 5, United States Code.*" *Id.* (emphasis added); *see also* 86 Fed. Reg. at 3694 (setting forth a good cause justification for immediate implementation and stating "This interim final rule is being issued without advance notice and public comment because section 303 of the Economic Aid Act authorizes SBA to issue regulations to implement the Economic Aid Act without regard to notice requirements.")

In any event, Administrative Law Judges (ALJs) are bound by SBA regulation and interpretation of its governing statutes and regulations as they do not have constitutionally based judicial power. *See Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953) OHA has recognized the limited scope of its authority and has repeatedly held that it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. § 134.102.")

Based on the above, OHA should uphold SBA's decision to limit the amount of PPP funds available to a single corporate group. SBA's Final Decisions denying Appellants'

forgiveness requests are consistent with Congressional intent, the plain language of the CARES Act and the EAA, and the regulations and rules promulgated thereunder.

### B. Appellants Are Members of a Corporate Group That Received More Than $20,000,000 in PPP Funds and Appellants' Loans Funded After the Corporate Group Reached That Limit.

The applicable IFR of January 14, 2021 ("January 2021 IFR")[4] provides that,

> businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. *For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent.*

86 Fed Reg. 3702.[5] (Emphasis added.)

Appellants have two owners, each owning 50%: Simcha Hyman and Naftali Zanziper. (Joint Stipulation + Motion). Hyman and Zanziper (combined), are also majority owners of 343 other entities, 84 of which received PPP loans totaling $44,983,180.44 – more than double the corporate group limit. (Stipulated AR 639; Joint Stipulation + Motion) Hyman and Zanziper are the common parent for this corporate group of 343 entities, which includes Appellants. While Appellants contend that a common parent is limited to a corporation or holding company, no such limitation appears in the regulations, and Appellants offer no support for that position. A plain reading of common parent encompasses a situation like this where two individuals own a majority of 343 entities and improperly obtained $44,983,180.44 in PPP funds.

SBA issued the January 2021 IFR to address the exact issued raised by Appellants' corporate group. The Administrator wanted "[t]o preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers" so "in consultation with the Secretary, [she] has determined that an aggregate limitation on loans to a single corporate group is necessary and

---

[4] SBA published multiple IFRs that are not relevant here. https://home.treasury.gov/policy-issues/coronavirus/assistance-for-small-businesses/paycheck-protection-program

[5] A subsequent IFR was implemented for loans approved on or after March 11, 2021 and that IFR made revisions consistent with the American Rescue Plan Act, but did not alter the Corporate Group limitation. *See* 86 FR 15083 (March 22, 2021)

USA-000730

appropriate." 86 Fed. Reg. at 3702, fn 59. The Administrator did not want the Hyman/Zanziper corporate group to obtain $44,983,180.44 in finite PPP funds and thus deplete available funds for other small businesses. The Administrator, in her broad discretion, determined that a limit of $20,000,000 in PPP for any corporate group, including the corporate group with common parent Hyman/Zanziper, was reasonable. Therefore, because Appellants' PPP loans funded after this corporate group had already received more than $20 million in PPP loans and well after SBA issued the January 2021 IFR, Appellants' loans are not eligible for forgiveness. (Stipulated AR 2-638)

Another way to look at the Hyman/Zanziper common parent issue, which ALJs Mehle and Sturek adopted when affirming SBA's final loan decisions on the common parent issue in other PPP appeals, is to find that Hyman and Zanziper are partners-in-fact. Hyman and Zanziper, both residents of New York (Stipulated AR 2), are partners-in-fact because they are two persons associating to carry on as co-owners of a business for profit. *See* Uniform Partnership Act of 1914, Part II, § 6; *Hammond v. Smith*, 151 A.D.3d 1896, 1897 (N.Y. 2017) (defining partnership). The *de facto* Hyman and Zanziper partnership is the common parent of the 343 entity corporate group, which includes Appellants.

The 84 PPP loans made to this corporate group total $44,983,180.44 in the aggregate, more than double the $20,000,000 limit. (Stipulated AR 639) As members of this corporate group, Appellants were subject to the January 2021 IFR and are ineligible for PPP loan forgiveness because their loans funded after the corporate group reached the $20 million limit and after the January 2021 IFR.

C. **Appellants Are Ineligible For PPP Loan Forgiveness.**

Appellants' membership in a single corporate group and receipt of PPP loans after the corporate group reached the $20 million limit rendered them ineligible for PPP loan forgiveness. The January 2021 IFR provides that:

> It is the responsibility of an applicant for a PPP loan to notify the lender if the applicant has applied for or received PPP loans in excess of the amount permitted by this interim final rule and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule. Failure by the applicant to do so will be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness.

86 Fed Reg. 3702. Prior to the disbursement of Appellants' loans, entities in the Hyman/Zanziper corporate group had already obtained at least 36 loans totaling more than the $20,000,000 limitation. (Stipulated AR 639-44) Therefore, Appellants, as part of a corporate group that had already received more than $20,000,000 in aggregate PPP loans, were required to notify their Lenders of the excess amount and request cancellation of their pending PPP loan applications and all other pending PPP loan applications for the corporate group. Appellants did not do that. Therefore, in accordance with the January 2021 IFR, the use of PPP funds for these PPP loans was for unauthorized purposes, and the loans are not eligible for forgiveness in accordance with the January 2021 IFR.

## **CONCLUSION**

Appellants failed to meet their burden to show that SBA's Final Decisions denying forgiveness were a clear error of law or fact. Thus, OHA should affirm the decisions.

Respectfully submitted,

SAMEENA NABIJEE
Digitally signed by SAMEENA NABIJEE
Date: 2023.03.03 11:28:38 -06'00'

Sameena Nabijee
Attorney for SBA

**UNITED STATES SMALL BUSINESS ADMINISTRATION**
**OFFICE OF HEARINGS AND APPEALS**

| | |
|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) ) |
| Accordius Health at Asheville LLC *et al.* | ) Docket No. PPP-4336458510 ) |
| Appellant | ) ) ) |
| Appealed from SBA PPP Loan No. 4336458510 | ) ) ) ) |

## CERTIFICATE OF SERVICE

     I certify that on March 3, 2023, I filed a copy of the above response in the OHA Case Portal.

Respectfully submitted,

SAMEENA NABIJEE
Digitally signed by SAMEENA NABIJEE
Date: 2023.03.03 11:28:10 -06'00'

Sameena Nabijee
Attorney for SBA
U.S. Small Business Administration
332 S. Michigan Ave., Suite 600
Chicago, IL 60604
Phone: (312) 353-8614

| APPELLANT | DOCKET NUMBER |
|---|---|
| Accordius Health at Asheville LLC | 4336458510 |
| Accordius Health at Bay Pointe LLC | 3123528607 |
| Accordius Health at Brevard LLC | 8306238609 |
| Accordius Health at Charlotte LLC | 3200798601 |
| Accordius Health at Concord LLC | 3015918609 |
| Accordius Health at Greensboro LLC | 3124028601 |
| Accordius Health at Hendersonville LLC | 5169688603 |
| Accordius Health at Lynchburg LLC | 5975278603 |
| Accordius Health at Midwood LLC | 5035908602 |
| Accordius Health at Monroe LLC | 8192158610 |
| Accordius Health at Mooresville LLC | 8162528602 |
| Accordius Health at River Pointe LLC | 6531908606 |
| Accordius Health at Rose Manor LLC | 6327628608 |
| Accordius Health at Statesville LLC | 8074818606 |
| Accordius Health at Wilkesboro LLC | 1946638705 |
| Accordius Health at Wilson LLC | 1825438708 |
| Accordius Health at Winston Salem LLC | 7988958604 |
| Anderson SC OPCO LLC | 2869798805 |
| Carolina Pines at Asheville LLC | 3383808800 |
| Caroline Pines at Greensboro LLC | 3097548608 |
| Covington TN OPCO LLC | 4967028604 |
| Farthing Mayfield KY OPCO LLC | 2971158808 |

| | |
|---|---|
| Greenville KY OPCO LLC | 2614148709 |
| Hopkinsville KY OPCO LLC | 2614318701 |
| Knoxville OPCO LLC | 7659928605 |
| Leitchfield KY OPCO LLC | 2617258702 |
| Loudon OPCO LLC | 1383928704 |
| Madisonville Health and Rehabilitation LLC | 1472948701 |
| Maryville Fairpark OPCO LLC | 1470638709 |
| Maryville Jamestown OPCO LLC | 2382638703 |
| Mayfield KY OPCO LLC | 1635078706 |
| Mount Pleasant TN OPCO LLC | 1703648703 |
| Paducah Center for Health and Rehabilitation | 1299808700 |
| Pelican Health Randolph LLC | 1535178704 |
| Pelican Health Reidsville LLC | 1581268708 |
| Pelican Health Thomasville LLC | 1935708707 |
| Princeton KY OPCO LLC | 6580538609 |
| Red Boiling Springs TN OPCO LLC | 1993548705 |

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION
PROGRAM APPEAL OF:

**Accordius Health at Asheville LLC et al.**

   **APPELLANTS**

Appealed from:

 **SBA PPP Loan Number 4336458510**

Issued: **March 8, 2023**

Decision No. **PPP-4336458510**

Appearances:

  Frederick N. Widen, Joshua Klarfeld, & Sara S. Dorland, Ulmer & Berne LLP, for Appellants.
  Sameena Nabijee, Attorney for the Small Business Administration.

## CONSOLIDATED DECISION

   After carefully considering the evidence and arguments presented in the Administrative Records, the appeal petitions of Accordius Health at Asheville LLC, et. al. (Appellants) are **DENIED**. For the reasons discussed below, the final SBA loan review decisions are **AFFIRMED**.

## PROCEDURAL HISTORY

   The Appellants (Borrowers) submitted Paycheck Protection Program (PPP) Borrower Applications. The Appellants were approved for individual First Draw PPP loans through authorized PPP lenders (Lender) and received the loan proceeds. The Appellants submitted PPP Loan Forgiveness Applications through the Lender that subsequently issued lender decisions concerning loan forgiveness.

   The U.S. Small Business Administration (SBA) Office of Capital Access issued final PPP loan review decisions finding Appellants ineligible for their respective PPP loans and any subsequent loan forgiveness.

   On December 6 & 7, 2022, the Appellants filed appeal Petitions from the final SBA loan review decisions. Appellants argue the final SBA loan review decisions are clearly erroneous, and request the Office of Hearings and Appeals (OHA) reverse them, and find the Appellants eligible for PPP loan forgiveness.

   On December 13, 2022, Notice and Orders were issued under their individual appeals requiring the filing of the Administrative Records (AR) by January 3, 2023, providing for the Appellants to file Objections to the same by January 12, 2023, and allowing for SBA to file Responses to the Petitions by January 27, 2023.

USA-000745

On December 22, 2022, SBA filed a Consent Motion to consolidate the Appellant's Petitions, as set forth in the attached and incorporated Exhibit A and designate appeal PPP-4336458519 as the "lead case". The Motion further sought an extension of time to file the ARs, Objections, and Responses.

On January 3, 2023, an Order of Consolidation was issued naming Accordius Health at Asheville LLC PPP No. 4336458510, as the "lead case" for any motions, briefs, and orders.

On January 13, 2023, an Amended Notice and Order was issued requiring the filing of the ARs by February 6, 2023, providing for the Appellants to file Objections to the same by February 17, 2023, and allowing for SBA to file Responses to the Petitions by March 3, 2023

On February 6, 2023, SBA filed Joint Stipulation and Motion for Leave to File Consolidated Administrative Record, an Order and Amended Order were issued granting the parties Joint Motion for Leave to File the Stipulations and limited AR for the consolidated appeal, and the AR was filed. The Appellants did not file an Objection to the AR and SBA did not file a Response to the Petitions. The AR was closed on March 3, 2023.

## ISSUES

Whether the final SBA loan review decisions contain clear errors of law or fact to allow Appellants PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.      Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed. PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes. In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals. 15 U.S.C. § 636(a)(36)(D).

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan. SBA implements the program and guarantees 100% of PPP loans in the event of default. As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments. PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States. Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

Generally, a small-business concern shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(1) and (2)(A)&(B).

SBA established its initial small business size standards on January 1, 1957. 21 Fed. Reg. 9709-9714, December 7, 1956.

Except for small agricultural cooperatives, a business concern eligible for assistance from SBA as a small business is a business entity organized for profit, with a place of business located in the United States, and which operates primarily within the United States or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor. A business concern may be in the legal form of an individual proprietorship, partnership, limited liability company, corporation, joint venture, association, trust or cooperative, except that where the form is a joint venture there can be no more than 49 percent participation by foreign business entities in the joint venture. 13 C.F.R. § 121.105(a)(1) and (b).

The Administrator has established SBA's size standards to define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800) 553-6847 or 1(703) 605-6000; or via the Internet at http://www.ntis.gov/products/naics.aspx. The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.201.

Except for the Business Loan and Disaster Loan Programs, a business concern's average annual receipts are calculated by determining the total receipts of the concern over its most recently *completed* 5 fiscal years divided by 5, or over its most recently completed 3 fiscal years divided by 3. 13 C.F.R. § 121.104(c)(1). For the Business Loan and Disaster Loan Programs, annual receipts of a concern that has been in business for three or more completed fiscal years means the total receipts of the concern over its most recently completed three fiscal years divided by three. The Business Loan Programs consist of the 7(a) Loan Program. 13 C.F.R. § 121.104(c)(4). Completed fiscal year means a taxable year including any short year. "Taxable year" and "short year" have the meanings attributed to them by the IRS. 13 C.F.R. § 121.104(b).

The Federal income tax return and any amendments filed with the IRS on or before the date of self-certification must be used to determine the size status of a concern. SBA will not use tax returns or amendments filed with the IRS after the initiation of a size determination. When a concern has not filed a Federal income tax return with the IRS for a fiscal year which must be included in the period of measurement, SBA will calculate the concern's annual receipts for that year using any other available information, such as the concern's regular books of account, audited financial statements, or information contained in an affidavit by a person with personal knowledge of the facts. 13 C.F.R. § 121.104(a)(1-2).

Section 1116 of the Small Business Jobs Act of 2010 directed SBA to establish a new temporary[1] alternative size standard based on tangible net worth and net income for determining size eligibility for its 7(a) and 504 loan programs, as follows: The Administrator shall establish an alternative size standard for applicants for business loans under section 636(a) of this title that uses maximum tangible net worth and average net income as an alternative to the use of industry standards. *See* 15 U.S.C. § 632(a)(5)(A).

This alternative size standard provides a business concern is a small business , if: 1) The maximum tangible net worth of the business concern is not more than $15,000,000; and 2) The average net income after Federal income taxes (excluding any carry-over losses) of the business concern for the 2 full fiscal years before the date of the application is not more than $5,000,000. 15 U.S.C. § 632(a)(5)(B)(i-ii).

Effective September 27, 2010, the new statutory alternative size standard replaced and superseded the existing alternative size standard, based on tangible net worth and net income, for SBA's 7(a) and 504 loan programs set forth in 13 C.F.R. § 121.301(b)(2). This new statutory alternative size standard is effective until such time as SBA establishes a permanent alternative size standard for the 7(a) and 504 loan programs through the rulemaking authority granted the Administrator under §636(a) of the Small Business Act.

A business concern is eligible for a First or Second Draw PPP loan if, on its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, AND together with its affiliates, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. *See* 13 C.F.R. § 121.301(a and f) and SBA FAQ Questions 2, 4, 5, and/or 63 (in relevant part, below).

## PAYCHECK PROTECTION PROGRAM LOANS
Frequently Asked Questions (FAQs)[2]

2. **Question**: Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers for First Draw PPP Loans?[3]

---

[1] https://www.sba.gov/sites/default/files/files/bank_5000-1175_0.pdf
[2] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf
[3] Question 2 published April 6, 2020 and revised March 3, 2021 to reflect the consolidated interim final rule

**Answer**: No. Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Go to www.sba.gov/size for the industry size standards.

*Additionally, a business can qualify for a First Draw PPP* Loan as a small business concern *if it met both tests in SBA's "alternative size standard" as of March 27, 2020:* (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million. *(Emphasis added)….*

4. **Question**: Are lenders required to make an independent determination regarding applicability of affiliation rules under 13 C.F.R. 121.301(f) to borrowers?[4]
   **Answer**: No. It is the responsibility of the borrower to determine which entities (if any) are its affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications….

5. **Question**: Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?[5]
   **Answer**: Yes. *Borrowers must apply the affiliation rules*, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. A borrower must certify on the applicable Borrower Application Form that the borrower is eligible to receive a PPP loan. For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, *or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable*. *(Emphasis added)*.

63. **Question**: May applicants use SBA's established size standards (either revenue-based or employee-based) or SBA's alternative size standard to qualify for a Second Draw PPP Loan?
    **Answer**: No. Applicants may not use SBA's established size standards (either revenue based or employee-based) or the alternative size standard to qualify for a Second Draw PPP Loan. In general, the size eligibility requirement for Second Draw PPP Loans are narrower than the size eligibility requirement for First Draw PPP Loans. With some

---

implementing updates to the PPP. This FAQ applies only to First Draw PPP Loans. Different eligibility requirements apply to Second Draw PPP Loans. See FAQ #63 and subsection (c) of the interim final rule for Second Draw PPP Loans.

[4] Question 4 published April 6, 2020.

[5] Question 5 published April 6, 2020 and revised March 3, 2021 to conform to subsections B.1.g.v., B.1.g.vii., and B.1.g.viii of the consolidated interim final rule implementing updates to the PPP and subsection (c) of the interim final rule on Second Draw PPP Loans.

exceptions, an applicant is eligible for a Second Draw PPP Loan only if it, together with its affiliates (if applicable), employs no more than 300 employees. The only exceptions are if an Applicant:
• Is assigned a NAICS code beginning with 72 and employs no more than 300 employees per physical location, or
• Is a news organization that is majority owned or controlled by a business concern that is assigned NAICS code 511110 or a NAICS code beginning with 5151 or is a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, and, in either case, employs no more than 300 employees per physical location.

The size status of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by SBA. 13 C.F.R. § 121.302.

On May 4, 2020, SBA issued Interim Final Rule #7 (IFR #7), which provides that in order to "preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020." 85 Fed. Reg. 26324, 26325 (May 4, 2020).

On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) P.L.116-260, was enacted, extending the authority to make PPP loans through March 31, 2021, revising certain PPP requirements, and permitting Second Draw PPP Loans. 86 Fed. Reg. 8283. Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

## II. PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(e), § 636m(e)(3), § 636m(f), and § 636m(b).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g).

Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower: 1) Was ineligible for a PPP loan; 2) Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses; 3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or, 4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. The Lender must provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[6]. 13 C.F.R. §134.1201(b)(1)-(4).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1210 and 13 C.F.R. § 134.1203.

## FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire AR and pleadings, a preponderance of the evidence establishes:

The parties jointly stipulate the following facts:

1) SBA denied Appellants' loan forgiveness applications finding, in part, that each of the Appellants "is part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate."
2) Appellants' appeals of the denial decisions were timely filed.
3) 84 entities, owned equally by individuals Simcha Hyman and Naftali Zanziper, received first-draw PPP loans.
4) The SBA forgave the first-draw PPP loans for 36 of these entities.
5) The SBA denied forgiveness for the first-draw PPP loans of the 48 other entities.[7]

---

[6] SBA PPP lender notices are available from **SBA.gov** at https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.
[7] The 48 appeals were apportioned between two Administrative Law Judges: 38 were assigned to ALJ Haring, and 10 were assigned to ALJ Trunick.

6) Appellants disclosed their ownership by Simcha Hyman and Naftali Zanziper in their Paycheck Protection Program Borrower applications.
7) Appellants complied with SBA's requests for information.
8) Whether Appellants satisfied SBA's alternative size standard is not at issue in this appeal.
9) The parties have agreed to submission of a limited record in this consolidated appeal. (Joint Stipulations).

On March 27, 2020, the CARES Act became law. P.L.116-136. On or about March of 2021, the Appellants submitted First Draw PPP Borrower Application Forms 2483 to the Lender. (Petitions – Denial Justification Document).

The Appellants are owned equally by Simcha Hyman and Naftali Zanziper. The Appellants were approved for PPP loans by the Lender and received the loan proceeds. (Joint Stipulations and Motion for Leave to File Consolidated Administrative Record).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. 15 U.S.C. § 636m(e). Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. 15 U.S.C. § 636m(e)(3). Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(b), (e) and (f). Here, the Appellants the same to the Lender.

Next, the Lender must review the Loan Forgiveness Application Forms (SBA Form 3508) and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). On or about June 29, 2022, the Lenders determined the Appellants should receive full loan forgiveness. (Petitions – "Denial Justification Document").

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision. 13 C.F.R. § 134.1201(b)(2)&(3).

SBA notified the Lender it was reviewing the Appellants' PPP loans. SBA requested the documentation used to secure the loan and justify the Lender's forgiveness decision. Appellants complied with SBA's requests for information. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

On or about November 11, 2022, SBA issued final loan review decisions providing the Appellants with $0.00 of PPP loan forgiveness, finding the Appellants "part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate." This

rendered the Appellants ineligible for the PPP loans and precluded them from loan forgiveness. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

The parties agree and stipulate that SBA determined the Appellants (including the 10 entities with appeals pending before OHA Judge Trunick) were small-business concerns eligible to receive the PPP loans under SBA's alternative size standard test. Based upon the same, the Appellants' small business status is not at issue. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of both first and second draw PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(b). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification. 15 U.S.C. § 636m(f).

The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g). Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b).

Thus, the loan forgiveness process includes a dual SBA review of the Appellant's underlying loan eligibility during the covered period for the amount of PPP loan received and documentation to support loan forgiveness.

Through written statements, the Appellants argue in favor of full loan forgiveness, as follows: Appellants are separate and distinct operating companies from each other. No Appellant is itself, a holding or parent company. Each Appellant is owned by two individuals, Simcha Hyman and Naftali Zanziper, neither of which holds a majority of the membership interests in any Appellant. No Appellant has a parent company, thus, no Appellant can share a common parent company with any of the other 47 Appellants for which SBA is denying PPP loan forgiveness. Because none of the Appellants has a "common parent," they are not a "single corporate group" for purposes of any purported $20,000,000 limitation on PPP loans. The Appellant essentially argues clear error exists

in the final SBA loan review decisions, as none of the Appellant entities was owned at any time by a corporation or any other type of entity.

The Appellants argue three points for the proposition: 1 ) SBA's issuance of IFR #7 violates the notice and comment rule-making requirement under the Administrative Procedure Act (APA); 2) Nothing in the CARES Act or the Economic Aid Act imposes a $20,000,000.00 PPP loan limitation on corporate groups; and 3) Even if the rule-making requirements of the APA are overlooked, SBA has not issued any guidance on how it interprets the $20,000,000.00 PPP loan limitation, and more specifically, how SBA defines the terms 'single corporate group"/"common parent'. Each argument is individually below.

All three arguments rely upon the language contained in SBA's Interim Final Rule (Docket Number SBA-2020-0023) of April 30, 2020 (IFR #7), which "placed a $20,000,000 limitation on the amount of PPP loans that businesses in a single corporate group can receive", as follows:

> To preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. **For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent**. (Emphasis added in Petition).

'

## Argument #1 - SBA's issuance of IFR #7 violates the notice and comment rule-making requirement under the Administrative Procedure Act (APA)

The Appellants argue this provision cannot be used to deny any of the Appellants PPP Loan Forgiveness Applications, as the same was issued outside of the APA's statutorily mandated processes.

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1). SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b). 15 U.S.C. § 9012.

The APA is codified in 5 U.S.C. §§ 551–559 and applies to all agencies of the federal government. The APA provides the general procedures for various types of rulemaking. Agencies promulgate rules in a variety of methods that requiring notice-and-comment. 5 U.S.C. § 553.

Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the PPP lending program. *See* Camelot Banquet Rooms, Inc., et al. v. SBA, No. 21-2589, 2022 WL 221616 (7th Cir. 2022). Section 1114 of the CARES Act required the SBA Administrator to issue regulations to govern PPP and granted the SBA Administrator emergency rulemaking authority to carry out PPP. The CARES Act specifically waived the SBA Administrators notice and comment requirements under the APA. 15 U.S.C. § 9012. As such, the Appellants' argument that SBA's issuance of the IFR #7 was in violation of the APA is without merit.

### <u>Argument #2</u> - Nothing in the CARES Act or the Economic Aid Act imposes a $20,000,000.00 PPP loan limitation on corporate groups

The Appellants note the Administrator issued IFR #7 imposing a $20,000,000.00 limitation on a corporate group, owned directly or indirectly, by a common parent, where the CARES Act (and subsequent amendments) do not contain this limitation. The argument raised by the Appellants concerns the Administrators authority to issue IFR #7.

OHA assigns all cases subject to the Administrative Procedure Act ("APA"), 5 U.S.C. 551 et seq., to an Administrative Law Judge ("ALJ") and assigns all other cases before OHA to either an ALJ or an Administrative Judge ("AJ"), or, if the AA of OHA is a duly licensed attorney, to himself or herself. Except as otherwise limited by regulation or by statute, an ALJ, AJ, and the AA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case. This authority includes, but is not limited to, the authority to administer oaths and affirmations and to subpoena and examine witnesses. 13 C.F.R. § 134.218.

ALJs have no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v.

*Bowen,* 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert, denied*, 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. § 81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee. The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. § 556(c).

OHA ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized such challenges as being improper and recognized the limited scope of its authority. OHA has repeatedly held it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. § 134.102."); *accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc.,* SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); *Nations Incorporated, Appellant re: Technical and Management Services Corporation*, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); *International Ordinance, Inc., Appellant*, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Appellant is beyond the limited jurisdiction of this Office.")

ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's First IFR available at the time, which states "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 . . . ." 85 Fed. Reg. 20,812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. § 120.110. *See* CARES Act § 1102, 134 Stat. at 287; 15 U.S.C. § 636(a)(36)(B).

Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule. Thus, the Interim Final Rule has the force and effect of a Final Rule and Regulation. *See* 5 U.S.C. § 553; "A Guide to the Rulemaking Process", p. 8. Therefore, the CARES Act placed the PPP within the SBA 7(a) Loan Program.

The Administrator, in consultation with the Secretary of the Treasury, determined that limiting the amount of PPP loans that a single corporate group may receive will promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act. The Administrator concluded that a limitation of $20,000,000 strikes an appropriate balance between broad availability of PPP loans and program resource constraints. The Appellants argument fails,

as the Administrator has established a well-defined rule (IFR #7) and policy interpretation, for which OHA and the undersigned are without authority to invalidate.

**Argument #3** - **Even if the rule-making requirements of the APA are overlooked, SBA has not issued any guidance on how it interprets the $20,000,000.00 PPP loan limitation, and more specifically, how SBA defines the terms 'single corporate group'/"common parent'.**

As noted above, the Administrator, in consultation with Secretary of the Treasury, issued IFR #7, which imposed a $20,000,000.00 PPP maximum loan limitation for any corporate group. The Appellants, along with 46 other affiliated entities (84 PPP loans total) received $44,983,180.44 in aggregate PPP loan proceeds. Prior to the disbursement of Appellants' loans, entities affiliated with the Appellants under 13 C.F.R. § 121.301 had already obtained funding for at least 36 PPP loans totaling more than $20,000,000. (Stipulated AR pp. 639-44)

Within IFR #7, the Administrator set forth the authority to create a corporate group maximum loan limitation under the CARES Act grant of authority to create ''such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in him by or pursuant to'' 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act. The Administrator explained that Section 1102 of the CARES Act "provides that the Administrator 'may' guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a 'maximum'—but not a minimum—loan amount." *See* 15 U.S.C. 636(a)(36)(B), (E); *see* also CARES Act section 1106(k) (authorizing SBA to issue regulations to govern loan forgiveness).

The Administrator further stated that in order to "preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers, the Administrator, in consultation with the Secretary, has determined that an aggregate limitation on loans to a single corporate group is necessary and appropriate." (IFR #7, footnote 1).

It became the responsibility of an applicant for a PPP loan to notify the lender if the applicant applied for or received PPP loans in excess of the amount permitted by IFR #7 and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule. SBA specifically stated that failure by a PPP applicant to do would be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness. Additionally, a PPP lender was authorized to rely on an PPP applicant's representation (certification within the PPP Borrower Application Form 2483) concerning the applicant's compliance with IFR #7.

SBA has denied loan forgiveness finding the Appellants are part of a corporate group and the recipients of PPP loan proceeds exceeding the $20,000,000.00 limitation. The Appellants argue that they do not meet the definition of a corporate group, the $20,000,000.00 limitation does not apply to them, and loan forgiveness is proper. The Appellants rely on Bostock v. Clayton Cnty., Georgia, 140 S. Ct. 1731, 1738 (2020) and Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) to assert that due the CARES Act and IFR #7's silence in defining corporate group, the ordinary public meaning for the terms 'corporate group' and 'common parent'

must be applied. The Appellants focus on the term common parent and argue the ordinary public meaning is "a common parent corporation or common parent holding company." The Appellants argue that none of Appellants are a common parent holding company and none have a common parent corporation.

SBA argues the AR, Petition, and applicable authorities demonstrate that (1) SBA had the authority to limit the amount of PPP funds a "corporate group" could obtain; (2) Appellants were part of a corporate group with common parent Hyman/Zanziper that received over $20 million in PPP loans in the aggregate, (3) Appellants' loans funded after the January 2021 IFR and after other borrowers within the corporate group had already received more than $20 million in PPP loans; and (4) Appellants were thus ineligible for PPP loan forgiveness. (SBA Response).

The CARES Act subjected PPP borrowers to SBA's 7(a) program affiliation rules, as set forth in 13 C.F.R. § 121.301(f).[8] Of note, Section 1102(e) of the CARES Act permanently rescinded the SBA's February 2020 amendment to 13 C.F.R. § 121.301, thus PPP borrowers are subject to SBA's 2019 version of 13 C.F.R. § 121.301. (*see* 81 Fed. Reg. 41423).

Each PPP applicant must aggregate its own number of employees or revenue with that of all of its affiliates for the purposes of determining eligibility for a PPP loan. PPP applicants are eligible for a First Draw PPP loan, when the applicant: (1) Qualifies as a small business concern as defined in section 3 of the Small Business Act, 15 U.S.C. § 632; (2) Along with its affiliates, have 500 or fewer employees whose principal place of residence is in the United States; (3) Along with its affiliates meet the SBA employee-based size or revenue standards for the industry in which they operate, (including the "alternative standard"; or (4) Is a nonprofit organization, veterans organization, or Tribal business concern as outlined in Section 1102(a)(i) of the CARES Act.[9]

The 2019 version of 13 C.F.R. § 121.301(f)(1-4) sets forth four principles that can establish an affiliate relationship between a PPP borrower and another entity: 1) Equity ownership; 2) Stock options, convertible securities, and agreements to merge; 3) Management; and 4) Identity of interest, as follows:

1) Any entity that owns or has the power to control more than 50 percent of the borrower's voting equity is considered an affiliate of the borrower. Further, SBA deems a minority shareholder exercises "negative control" if it has the ability, under the borrower's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders. If no such entity owns 50 percent of the equity, SBA will deem the Board of Directors, President, or CEO (or other officers, managing members, or partners who control the management of the concern) to be in control of the borrower. 13 C.F.R. § 121.301(f)(1).

2) SBA will consider stock options, convertible securities, and agreements to merge, as though the rights granted have been exercised, for purposes of determining whether an entity owns 50 percent of the borrower,. 13 C.F.R. § 121.301(f)(2).

---

[8] PPP Loan FAQs, No. 5. While § 121.103 governs the SBA's general principles of affiliation, § 121.103(a)(8) states that "applicants in SBA's Business Loan [including the PPP], Disaster Loan, and Surety Bond Guarantee Programs" are to use "the size standards and bases for affiliation . . . set forth in § 121.301."

[9] PPP Loan FAQs, No. 3. Our understanding of FAQ No. 3 is that it does not expand eligibility beyond the basic eligibility requirements for all applicants for SBA business loans outlined in 13 C.F.R. § 120.100, but we await further guidance clarifying this point.

3) Affiliation arises where the President or CEO (or other officers, managing members, or partners who control the management of the concern) of the PPP applicant also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern, or entity controls management of the borrower through a management agreement. 13 C.F.R. § 121.301(f)(3).

4) Where close relatives share identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area), those concerns are affiliated. 13 C.F.R. § 121.301(f)(4).

PPP's affiliation rules provide direct policy interpretation concerning what entities are associated with each and count towards the small-business concern size standard. Here, the parties agree the affiliation rules associate the Appellants due to the common ownership existing for all Appellants through Simcha Hyman and Naftali Zanziper. IFR #7 explicitly subjects corporate groups to a $20,000,000.00 maximum loan limitation and takes care to note that this limitation applies, even if, the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

Under the Small Business Act, a small-business concern includes, but is not limited to, enterprises that are engaged in the business of production of food and fiber, ranching and raising of livestock, aquaculture, and all other farming and agricultural related industries, shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. 15 U.S.C. § 632(a)(1).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800) 553-6847 or 1(703) 605-6000; or via the Internet at http://www.ntis.gov/products/naics.aspx. The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A business is eligible for PPP loan if, on its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, **AND together with its affiliates**, **it meets the size standard** (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. (Emphasis added). *See* 13 C.F.R. § 121.301(a-b).

The size status of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by SBA. 13 C.F.R. § 121.302.

SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small. The size standards described in 13 C.F.R. § 121.201 apply to all SBA programs unless otherwise specified within Title 13, Ch. 1, Part 121, Subpart A. 13 C.F.R. § 121.201.

Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists. Affiliation under any of the circumstances described in 13 C.F.R. § 121.301(f)(1-4) is sufficient to establish affiliation for applicants for SBA's Business Loan Programs, which includes the 7(a) Loan Program. 13 C.F.R. § 121.301(f).

It is the responsibility of the borrower to determine which entities (if any) are the borrower's affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications.[10] Lenders may accept and rely on signatures from a single individual who is authorized to sign on behalf of the borrower.[11] Here, the Appellants certified their PPP eligibility on the PPP Borrower Application Forms 2483 submitted to the Lender. (AR pp. 1-637).

The joint stipulations of the parties reflect the collective Appellants were deemed a small-business concern after application of SBA's alternative size standards. This means the Appellants, as a group, were eligible for one of SBA's 7(a) loan programs, to-wit: PPP. The sole issue in dispute is whether the $20,000,000.00 PPP corporate group maximum loan limitation is applicable to the Appellants.

On April 3, 2020, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program" to assist PPP applicants/borrowers in understanding the application of SBA's use of affiliation within PPP.[12] SBA explicitly noted the four of the affiliation tests set forth in 13 C.F.R. § 121.301(f) "based on control apply to participants" in PPP.[13] It was clear, prior to submitting borrower applications, the Appellants were subject to at least four of SBA's 7(a) loan program affiliation rules.

---

[10] PPP Loan FAQs, No. 4.

[11] PPP Loan FAQs, No. 11.

[12] https://www.sba.gov/sites/default/files/2020-06/Affiliation%20rules%20overview%20%28for%20public%29%20v2-508.pdf

[13] Of note, the four tests applicable to PPP are the same as appearing in 13 C.F.R. § 121.301(f)(1-4).

Since 1996, SBA policy has been that the aggregate amount of the SBA portions of all loans to a single Borrower, including the Borrower's affiliates as defined in 13 C.F.R. § 121.301(f), must not exceed a guaranty amount as otherwise authorized by statute for a specific program. 13 C.F.R. § 120.151 ( *See* 61 FR 3235, Jan. 31, 1996, as amended at 68 FR 51680, Aug. 28, 2003; 76 FR 63546, Oct. 12, 2011; 81 FR 41428, June 27, 2016). In furtherance of this policy, SBA's SOP (effective April 1, 2019) addresses how maximum loan limitation amounts are determined for a small-business concern with affiliates. Specifically, SBA policy states: "**If affiliation exists, SBA's loan maximums apply to the Applicant, including all affiliates, as if all were a single business**." (Emphasis added). SOP 50 10 5(K), Part 2, Section B, Ch. 3, 2.a.[14][15]

Here, the CARES Act created a general maximum loan limitation for individual borrowers, but also authorized the Administrator to set SBA's guaranty of PPP loans. It is important to note that the Administrator's express authority under Section 1102 of the CARES Act to guarantee PPP loans is marked by the term **"may".** The Administrator exercised this authority within IFR #7 and created a $20,000,000.00 corporate group maximum loan limitation, as otherwise authorized by statute.

SBA has denied the Appellants loan forgiveness applications by applying the existing 7(a) loan program policy wherein applicants that are affiliated to meet the definition of a small-business concern remain together, as a group, in applying a maximum loan limitation. Through IFR #7, SBA has identified this grouping as a corporate group. The Appellants should have been aware, through review of existing SBA 7(a) loan program regulations/policy, that by qualifying as a small-business concern after application of the affiliation rules, the loan limitations set forth in IFR #7 would be applied to them, as a group. Here, that limitation was set at $20,000,000.00. As such, the meaning of corporate group in IFR #7 has the same meaning as affiliate under existing 7(a) loan program policy.

The final SBA loan review decision relied upon this existing policy. Prior to issuing the decision, SBA found "the 'Naftali Simcha Family et al' (Appellants) are one single corporate group via the 100% common ownership of Naftali Zanziper and Simcha Hyman (50% for each Appellant). SBA interpreted the term corporate group to mean where a majority ownership by a common parent occurs either directly or indirectly. SBA finds that a common parent, for the purposes of PPP financing, can be defined as a being a corporation, trust or person(s.) When a corporation or trust has ownership, an in-depth review of the ownership of the corporation or trust should be completed to determine if an individual(s) has an indirect ownership that establishes a corporate group. Naftali Zanziper and Simcha Hyman each own 50% of each business directly or indirectly and combined they have a majority ownership for the corporate group which overlaps in all 84 loans. While the affiliated group of Naftali Zanziper and Simcha Hyman are eligible for PPP financing based on the Alternative Size Standard, they exceed the limit of $20,000,000 for a single corporate group established in IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and NonInsured Depository Institution Lenders." (AR pg. 649).

---

[14] SBA's Standard Operating Procedures (SOP) are issued and revised by SBA from time to time. SOPs are publicly available on SBA's Web site at http://www.sba.gov. 13 C.F.R. § 120.10.
[15] https://www.sba.gov/sites/default/files/2019-02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20paste.pdf

The AR reflects the Appellants, as affiliated under 13 C.F.R. § 121.301(f) with 46 other entities (84 PPP loans total) received $44,983,180.44 in aggregate PPP loan proceeds. Prior to the disbursement of Appellants' loans, entities affiliated with the Appellants had already obtained funding of at least 36 PPP loans totaling more than $20,000,000. (AR pp. 639-644).

As it directly relates to the Appellants argument, SBA did not explicitly define the term corporate group within IFR #7 (or any other PPP related publication), but the meaning of the term can easily be derived from other SBA 7(a) loan program policy existing prior to the Appellants receipt of these PPP loans. This policy can be seen through a plain reading of SOP 50 10 5(K) and Section 1102 of the CARES Act. When put together, the same clearly provide that when a 7(a) loan program applicant is required to affiliate entities to meet the definition of a small-business concern, the affiliated group of entities is carried forward when considering if any authorized maximum loan limitation has been reached.

Given the Appellants eligibility under affiliation rules, as defined in 13 C.F.R. § 121.301(f), for these PPP loans, the aggregation of the Appellants, as affiliates, is carried forward in evaluating whether the Appellants reached the $20,000,000.00 PPP corporate group maximum loan limitation. The AR and Joint Stipulations reflect these Appellants had already received $20,000,000.00 in PPP funds, thus were ineligible for the loans at issue.

Overall, the Appellants are affiliates of each other, as defined by 13 C.F.R. § 121.301(f)(1-4). As of the date of applying for the PPP loans at issue, together with its affiliates, the Appellants met the small-business concern alternative size standard. 13 C.F.R. § 121.301(a-b). (Joint Stipulations). The Administrator created a maximum loan limitation for PPP by limiting SBAs guarantee of PPP loans exceeding $20,000,000.00 for corporate groups. Section 1102 of the CARES Act. As affiliation exists among the Appellants, the PPP $20,000,000.00 corporate group maximum loan limitation applies to each Appellant, as if all Appellants were a single business, to-wit: a corporate group. SOP 50 10 5(K), Part 2, Section B, Ch 1: Basic 7(a) Loans, 1.c. At the time of applying for the PPP loans, the aggregate amount of the SBA portions of all PPP loans to the Appellants, including all affiliates as defined in 13 C.F.R. § 121.301(f), exceeded the $20,000,000.00 maximum loan limitation otherwise authorized by IFR #7. *See* 15 U.S.C. 636(a)(36)(E)(ii). The Appellants are a corporate group and were ineligible for the PPP loans at issue.

It was the responsibility of the Appellants to determine which entities (if any) were their affiliates and certify the same to the Lender. The Appellants did determine its affiliates, certified the same to the Lender, and met the definition of small-business concern. The Lender properly relied on the Appellants certifications contained in the PPP Borrower Application Forms 2483 and 3508. Under IFR #7, it was also the Appellants responsibility to notify the Lender if they had applied for or received PPP loans in excess of the $20,000,000.00 maximum loan limitation. The Appellants determined the $20,000,000.00 corporate group maximum loan limitation was not applicable. This led the Appellant to not execute the options available under IFR #7 to withdraw or request cancellation of any pending PPP loan applications or approved PPP loans not in compliance with the maximum loan limitation. SBA specifically advised the Appellants that failure to do so would be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness.

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . ."); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

The final SBA loan review decision held the Appellants were ineligible for the PPP loans received having exceeded the $20,000,000.00 PPP corporate maximum loan limitation and precluded from loan forgiveness. Given the foregoing, the final SBA loan review decision did not commit error in determining the Appellants were ineligible for the PPP loans and subsequently precluded from loan forgiveness. SBA did not commit error in denying loan eligibility or forgiveness. The final SBA loan review decisions are well supported by the records and devoid of any clear errors of law or fact. As such, the final SBA loan review decisions are **AFFIRMED**.

## CONCLUSION OF LAW

The Appellants are a corporate group that was ineligible for PPP Loan Numbers 3123528607, 8306238609, 3200798601, 3015918609, 3124028601, 5169688603, 5975278603, 5035908602, 8192158610, 8162528602, 6531908606, 6327628608, 8074818606, 1946638705, 1825438708, 7988958604, 2869798805, 3383808800, 3097548608, 4967028604, 2971158808, 2614148709, 2614318701, 7659928605, 2617258702, 1383928704, 1472948701, 1470638709, 2382638703, 1635078706, 1703648703, 1299808700, 1535178704, 1581268708, 1935708707, 6580538609, & 1993548705 at the time of applying for each PPP loan. The Appellants are ineligible for PPP loan forgiveness. The final SBA loan review decision is not based on clear error of fact or law.

## ORDER

For the reasons discussed above, this appeal petition is **DENIED**. The Appellant is only entitled to PPP loan forgiveness in the amount established by the final SBA loan review decisions. I direct SBA to process the loan forgiveness requests in accordance with this decision.

**SO ORDERED.**

_____

**Brian J. Haring**
U.S. Administrative Law Judge

**EXHIBIT A**

| APPELLANT | PPP Loan No./OHA Docket No. PPP- |
|---|---|
| Accordius Health at Bay Pointe LLC | 3123528607 |
| Accordius Health at Brevard LLC | 8306238609 |
| Accordius Health at Charlotte LLC | 3200798601 |
| Accordius Health at Concord LLC | 3015918609 |
| Accordius Health at Greensboro LLC | 3124028601 |
| Accordius Health at Hendersonville LLC | 5169688603 |
| Accordius Health at Lynchburg LLC | 5975278603 |
| Accordius Health at Midwood LLC | 5035908602 |
| Accordius Health at Monroe LLC | 8192158610 |
| Accordius Health at Mooresville LLC | 8162528602 |
| Accordius Health at River Pointe LLC | 6531908606 |
| Accordius Health at Rose Manor LLC | 6327628608 |
| Accordius Health at Statesville LLC | 8074818606 |
| Accordius Health at Wilkesboro LLC | 1946638705 |
| Accordius Health at Wilson LLC | 1825438708 |
| Accordius Health at Winston Salem LLC | 7988958604 |
| Anderson SC OPCO LLC | 2869798805 |
| Carolina Pines at Asheville LLC | 3383808800 |
| Caroline Pines at Greensboro LLC | 3097548608 |
| Covington TN OPCO LLC | 4967028604 |
| Farthing Mayfield KY OPCO LLC | 2971158808 |
| Greenville KY OPCO LLC | 2614148709 |
| Hopkinsville KY OPCO LLC | 2614318701 |
| Knoxville OPCO LLC | 7659928605 |
| Leitchfield KY OPCO LLC | 2617258702 |
| Loudon OPCO LLC | 1383928704 |
| Madisonville Health and Rehabilitation LLC | 1472948701 |
| Maryville Fairpark OPCO LLC | 1470638709 |
| Maryville Jamestown OPCO LLC | 2382638703 |
| Mayfield KY OPCO LLC | 1635078706 |
| Mount Pleasant TN OPCO LLC | 1703648703 |
| Paducah Center for Health and Rehabilitation | 1299808700 |
| Pelican Health Randolph LLC | 1535178704 |
| Pelican Health Reidsville LLC | 1581268708 |
| Pelican Health Thomasville LLC | 1935708707 |
| Princeton KY OPCO LLC | 6580538609 |
| Red Boiling Springs TN OPCO LLC | 1993548705 |

### NOTICE OF APPEAL RIGHTS AND PROCEDURES

**An OHA INITIAL DECISION shall become the final decision of SBA 30 calendar days after its service**. Either SBA or the Appellant may request reconsideration of an initial decision by filing with the Judge and serving a petition of reconsideration within ten (10) calendar days after service of the initial decision. The Judge may also reconsider an initial decision on his or her own initiative within 20 calendar days after service of the initial decision. 13 C.F.R. § 134.1211(b) and (c)(1-2).

A RECONSIDERED INITIAL DECISION becomes the FINAL DECISION of SBA 30 calendar days after service unless the SBA Administrator decides to review or reverse the reconsidered decision under 13 C.F.R. § 134.1211(d). 13 C.F.R. § 134.1211(c)(3).

In the event the SBA Administrator elects to review and/or reverse an initial OHA decision and a timely reconsideration request is also filed by Appellant pursuant to 13 C.F.R. § 134.1211(c)(1), the Administrator will consider the reconsideration request. 13 C.F.R. § 134.1211(d). The discretionary authority of the SBA Administrator does not create any additional appeal rights for Appellant not otherwise specified in the applicable SBA regulations at Title 13, Part 134, Subpart L. 13 C.F.R. § 134.1211(c)(3).

Within 30 calendar days after service of an initial OHA decision or reconsidered initial OHA decision, the SBA Administrator, solely within the Administrator's discretion, may elect to review and/or reverse an initial decision or reconsidered initial decision. 13 C.F.R. § 134.1211(d).

# UNITED STATES SMALL BUSINESS ADMINISTRATION
## OFFICE OF HEARINGS AND APPEALS

| | | |
|---|---|---|
| In the Matte of the Application of: | ) | Administrative Proceeding |
| | ) | SBA Loan No. 4336458510 |
| ACCORDIUS HEALTH AT ASHEVILLE | ) | |
| LLC | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |
| For Review of Decision by: | ) | |
| | ) | |
| The U.S. Small Business Administration | | |

---

## APPELLANT'S REQUEST FOR RECONSIDERATION OF
## MARCH 8, 2023 DECISION

Pursuant to 13 CFR § 134.1211(c), Appellant Accordius Health at Asheville LLC ("Accordius") requests reconsideration of the March 8, 2023 Consolidated Decision (the "March 8 Decision"). This request for reconsideration is brought within "10 calendar days after service of the" March 8 Decision and, therefore, is timely pursuant to § 134.1211(c)(1). As grounds for this request, Accordius states as follows:

In the March 8 Decision, this Court stated that "[t]he sole issue in dispute is whether the $20,000,000.00 PPP corporate group maximum loan limitation is applicable to the Appellants." (March 8 Decision, p. 16.) Consistent with that Decision, in an order dated March 15, 2023 (the "March 15 Order"), in a related series of cases raising issues identical to those presented here, Senior Administrative Law Judge John Trunick granted appellants leave to file a reply brief (and SBA to file a sur-reply). (March 15 Order attached as Exhibit 1.) In that order, Judge Trunick recognized as follows:

> The cases turn on whether the Appellants fall within the definition of a "corporate group" and thus have an aggregate maximum loan amount of $20,000,000 in PPP loans. The Final SBA Loan Review Decision identifies this as the critical issue.

USA-000766

However, this issue in turn may depend on whether ownership by two individuals satisfies the "common parent" definition of related Interim Final Rules. This particular matter is within the scope of the "corporate group" issue and the Final SBA Loan Review Decision, but is not specifically identified in the Final SBA Loan Review Decision but, rather, this narrow issue has become a focus of the case during the proceedings.

(*Id*.)

The issue Judge Trunick identified in the cases pending before him is equally determinative of the issue pending in these consolidated cases. For the same reasons appellants will present in their forthcoming reply brief before Judge Trunick, Accordius respectfully requests that the March 8 Decision be reconsidered and reversed, as explained in more detail below.[1]

Specifically, among other arguments here, SBA argued – and this Court agreed – that Accordius is part of a "corporate group" and thus limited to $20,000,000 in PPP funds because a "plain" reading of "common parent," as set forth in Interim Final Rule #7 (the "IFR") would apply here to permit a finding that Accordius' ownership by two individuals satisfies the "common parent" requirement of the IFR.

Respectfully, SBA's argument, and the March 8 Decision is premised on a clearly erroneous conclusion of law that is material to that Decision. Specifically, this Court erred in applying SBA's affiliation rules to the definition of "corporate parent." Nothing in the IFR or other guidance suggests that the affiliation rules apply to the IFR. Nor does the IFR or any related guidance suggest that SBA's Standard Operating Procedures 50 10 5 (f), Part 2, Section B, Ch. 3, 2.a. applies to the IFR (as the Court suggests in the March 8 Decision) or dictates that the affiliation rules should apply in determining the definition of "common parent" here. It appears to be the Court's position that simply by virtue of the fact that Appellant had to apply the SBA's affiliation

---

[1] To be clear, Appellants preserve for appeal all of the issue raised in their appellate petition in these cases, and intend to raise all of them on appeal if the March 8 decision is not reversed by virtue of this request for reconsideration. However, for expediency purposes, Appellants focus this request for reconsideration on that single issue.

rules to meet the alternative size test somehow means that Appellant should have assumed the affiliation rules would apply to the definition of "corporate group" as used in the IFR. In sum, there is no guidance on the definition of "common parent" as used in the IFR.[2] Nor for that matter, is there any basis in law to conclude that two individuals each with 50% ownership interest in multiple companies meets the definition of "common parent." For the reasons set forth in Accordius' Appeal Petition, Appellant is not part of a "corporate group" with a "common parent" and thus, not subject to the $20,000,000 limitation.

For the foregoing reasons, Appellant Accordius Health at Asheville LLC respectfully requests that the March 8 Decision be reconsidered and reversed.

Respectfully submitted,

*/s/ Frederick N. Widen*
Frederick N. Widen (OH-0029223)
Joshua A. Klarfeld (OH-0079833)
Sara S. Dorland (OH-0095682)
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113
(216) 583-7000 (Office)
(216) 583-7001 (Fax)
Email:  fwiden@ulmer.com
jklarfeld@ulmer.com
sdorland@ulmer.com

*Attorneys for Appellant Accordius Health at Asheville LLC*

---

[2] Nor is the SBA correct that ownership by two individuals constitutes a "*de facto* partnership" and that a *de facto* partnership constitutes a "common parent" under the IFR. First, SBA failed to point to evidence to support the factors a court considers in finding a *de facto* partnership—i.e., the intent of the parties, whether there was a sharing of profits and losses, and whether there was joint control and management of the business. *See Barone v. Barone*, 54 Misc. 3d 1218(A), 54 N.Y.S.3d 609 (N.Y. Sup. 2017). Second, SBA failed to cite to any sources finding that a de facto partnership is a "common parent" under the IFR.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2023 I caused a copy of the foregoing to be uploaded to

the OHA Case Portal.

Respectfully submitted,

*/s/ Frederick N. Widen*
Frederick N. Widen (OH 0029223)

*One of the Attorneys for Appellant*

# United States Small Business Administration
## Office of Hearings and Appeals

PETITION FOR RECONSIDERATION:

**Accordius Health at Asheville LLC**

    Petitioner

RE: *PPP Appeal of Accordius Health at Asheville LLC et al.*, SBA No. PPP-4336458510 (2023)

Issued: **March 20, 2023**

Docket No. **PFR-4336458510**

## NOTICE OF CONSOLIDATION & ORDER

The U.S. Small Business Administration (SBA) Office of Hearings and Appeals (OHA) hereby notifies all currently known parties that it received a Petition for Reconsideration (PFR) in the above-captioned matter on March 17, 2023. The PFR was assigned to Administrative Law Judge Brian J. Haring for adjudication. OHA conducts Paycheck Protection Program (PPP) appeals under the authority of 13 C.F.R. part 134 subpart L.

### I. Notice to All Parties

I find the PFR to have been timely filed following issuance of Decision No. PPP-4336458510 on March 8, 2023. To prevail on a PFR, the petitioner must clearly show an error of fact or law material to the decision. 13 C.F.R. § 134.1211(c).

### II. Instructions to Respondent SBA

SBA may respond to the PFR. Any such response must be filed and served no later than **April 4, 2023.**

### III. Filing and Service Instructions

A party seeking to file and serve any pleading or other submission in a PPP case must do so by utilizing the OHA Case Portal.

USA-000770

## **IV. Order of Consolidation**

The undersigned notes that this matter was consolidated with 37 other PPP appeals and a consolidated OHA Initial Decision issued. Further, all 38 Administrative Records were filed as consent Administrative Records and the parties made joint stipulations of fact. All 38 appeals have been assigned to the undersigned for reconsideration adjudication.

In the interest of judicial economy, this and the 37 appeals set forth in the attached Exhibit A are consolidated for the purpose of the filing of any party motions or briefs, any Orders, and Decision issued by the undersigned. The consent Administrative Records and joint stipulations of fact remain accepted.

This appeal, Accordius Health at Asheville LLC PPP No. 4336458510, shall be treated as the "lead case" for any motions, briefs, Orders, and Decision.

**SO ORDERED.**

_____
**BRIAN J. HARING**
Administrative Law Judge

**EXHIBIT A**

| APPELLANT | PPP Loan No./<br>OHA Docket No. PFR- |
|---|---|
| Accordius Health at Bay Pointe LLC | 3123528607 |
| Accordius Health at Brevard LLC | 8306238609 |
| Accordius Health at Charlotte LLC | 3200798601 |
| Accordius Health at Concord LLC | 3015918609 |
| Accordius Health at Greensboro LLC | 3124028601 |
| Accordius Health at Hendersonville LLC | 5169688603 |
| Accordius Health at Lynchburg LLC | 5975278603 |
| Accordius Health at Midwood LLC | 5035908602 |
| Accordius Health at Monroe LLC | 8192158610 |
| Accordius Health at Mooresville LLC | 8162528602 |
| Accordius Health at River Pointe LLC | 6531908606 |
| Accordius Health at Rose Manor LLC | 6327628608 |
| Accordius Health at Statesville LLC | 8074818606 |
| Accordius Health at Wilkesboro LLC | 1946638705 |
| Accordius Health at Wilson LLC | 1825438708 |
| Accordius Health at Winston Salem LLC | 7988958604 |
| Anderson SC OPCO LLC | 2869798805 |
| Carolina Pines at Asheville LLC | 3383808800 |
| Caroline Pines at Greensboro LLC | 3097548608 |
| Covington TN OPCO LLC | 4967028604 |
| Farthing Mayfield KY OPCO LLC | 2971158808 |
| Greenville KY OPCO LLC | 2614148709 |
| Hopkinsville KY OPCO LLC | 2614318701 |
| Knoxville OPCO LLC | 7659928605 |
| Leitchfield KY OPCO LLC | 2617258702 |
| Loudon OPCO LLC | 1383928704 |
| Madisonville Health and Rehabilitation LLC | 1472948701 |
| Maryville Fairpark OPCO LLC | 1470638709 |
| Maryville Jamestown OPCO LLC | 2382638703 |
| Mayfield KY OPCO LLC | 1635078706 |
| Mount Pleasant TN OPCO LLC | 1703648703 |
| Paducah Center for Health and Rehabilitation | 1299808700 |
| Pelican Health Randolph LLC | 1535178704 |
| Pelican Health Reidsville LLC | 1581268708 |
| Pelican Health Thomasville LLC | 1935708707 |
| Princeton KY OPCO LLC | 6580538609 |
| Red Boiling Springs TN OPCO LLC | 1993548705 |

# UNITED STATES SMALL BUSINESS ADMINISTRATION
## OFFICE OF HEARINGS AND APPEALS

|  |  |
|---|---|
| PAYCHECK PROTECTION PROGRAM APPEAL OF: | ) ) ) |
| Accordius Health at Asheville LLC *et al.* | ) Docket No. PPP-4336458510 ) |
| Appellant | ) ) |
| Appealed from SBA PPP Loan No. 4336458510 | ) ) ) ) |

## U.S. SMALL BUSINESS ADMINISTRATION'S RESPONSE
## TO PETITION FOR RECONSIDERATION OF ACCORDIUS HEALTH AT ASHEVILLE LLC *et al.*

COMES NOW, the United States Small Business Administration ("SBA"), by and through its undersigned counsel, and pursuant to the Notice and Order issued on March 20, 2023, ("Order") timely responds to the Petitions for Reconsideration ("Petitions") filed by the appellants in these consolidated appeals ("Appellants"), seeking review of the Initial Consolidated Decision issued by the Office of Hearings and Appeals ("OHA") on March 8, 2023. In the Initial Consolidated Decision, OHA correctly upheld SBA's final agency loan review decisions ("FLRDs" or "Final Decisions") to deny forgiveness of Appellants' PPP loans finding that Appellants had not met their burden to prove that the Final Decisions were based on a clear error or fact or law. (Decision)[1] For the reasons set forth below, OHA should affirm its Initial Consolidated Decision.

## PROCEDURAL BACKGROUND

Following briefing by both parties, OHA issued its Initial Consolidated Decision on March 8, 2023. (Decision) On March 17, 2023, Appellants filed the Petitions. On March 20,

---

[1] Citations to the docket are to the name of the document as reflected in the OHA Portal.

2023, OHA issued the Order setting an April 4, 2023 deadline for SBA to file an optional response to the Petitions.

## STANDARD OF REVIEW

Title 13 C.F.R. § 134.1211(c)(1) requires Appellants to clearly show an error of fact or law material to the Initial Consolidated Decision to prevail on its Petition for Reconsideration. This is a rigorous standard. *See Size Appeal of Envtl. Prot. Certification Co., Inc.*, SBA No. SIZ-4935 at 2 (2008). Appellants have not met their burden. Importantly, a petition for reconsideration is not intended to give an additional opportunity for an unsuccessful party to argue its case. *Matter of Hazzard's Excavating and Trucking Co.*, SBA No. BDP-364, at 2 (2010). A petition for reconsideration is "appropriate only in limited circumstances, such as situations where OHA has misunderstood a party, or has made a decision outside the adversarial issues presented by the parties." *Size Appeal of KVA Elec, Inc.,* SBA No. SIZ-5057 at 2 (2009). A petitioner will not prevail on a motion for reconsideration if it merely repeats arguments OHA already considered in the original decision, or seeks rehearing based upon evidence previously presented. *Size Appeal of Luke & Assocs., Inc.,* SBA No. SIZ-4993 at 2 (2008). *CVE Protest of Alpha4 Solutions, LLC, (PFR),* SBA No. CVE-137-P, at 3 (2019)

## ARGUMENT

Appellants concede that OHA identified the correct legal issue in the Initial Consolidated Decision, they just don't like the result, which is not grounds for a successful petition for reconsideration. Appellants quoted OHA's statement that "[t]he sole issue in dispute is whether the $20,000,000.00 PPP corporate group maximum loan limitation is applicable to the Appellants" and don't dispute the accuracy of that statement. (Accordius Asheville Appeal Petition) Appellants' issue is with OHA's interpretation of "common parent" as used in Interim Final Rule #7. SBA argued that the plain meaning of "common parent" can include two individuals who together

own a majority of a group of entities. Appellants, without any citation to support its position, argue that the plain meaning of "common parent" is limited to a "common parent corporation" or "common holding company." (Accordius Asheville Appeal Petition at p.7) When faced with two competing arguments as to the "plain" meaning of "common parent" OHA did its job. It considered Appellants' arguments and found that the rationale in SBA's FLRDs and Stipulated AR was not clear error material to the decision.

More importantly, it is improper for Appellants to attempt to relitigate this issue on a petition for reconsideration. Appellants made their unsupported argument setting forth an unreasonably narrow interpretation of "common parent" to solely include a corporation or holding company, without any support or explanation of how such a narrow interpretation could have supported the stated goal of Interim Final Rule #7 to "preserve the limited resources available to the PPP program." OHA correctly found that SBA's plain reading of "common parent" to include two individuals who together own a majority of a group of entities is appropriate within the context and goal of Interim Final Rule #7 – to preserve limited PPP fund resources.

Here, OHA neither misunderstood the issue nor made a decision outside the issue presented by the parties. There was no clear error material to OHA's decision. At issue was whether Appellants were part of a corporate group that received over the regulatory limit in PPP funds. OHA answered that question in the affirmative, finding that Appellants were majority owned by the common parent Hyman and Zanziper, and as such, were part of a corporate group. Appellants have not shown that this finding was based upon a manifest error of law or fact.

For these reasons, OHA did not clearly err in finding that SBA correctly concluded that Appellants were part of a corporate group, with the common parent Hyman and Zanziper, that received double the $20,000,000 corporate group limit in finite First Draw PPP funds.

## **CONCLUSION**

Based on the foregoing, Appellants clearly failed to show an error of fact or law material to the Initial Consolidated Decision. To the contrary, the Stipulated AR and all material evidence show that OHA's Initial Consolidated Decision should be upheld. Therefore, OHA should deny Appellants' Petitions.

Respectfully submitted,

SAMEENA NABIJEE

Digitally signed by
SAMEENA NABIJEE
Date: 2023.04.04
09:59:13 -05'00'

Sameena Nabijee
Attorney for SBA

# UNITED STATES SMALL BUSINESS ADMINISTRATION
## OFFICE OF HEARINGS AND APPEALS

|  |  |  |
|---|---|---|
| PAYCHECK PROTECTION PROGRAM | ) | |
| APPEAL OF: | ) | |
|  | ) | |
| Accordius Health at Asheville LLC *et al.* | ) | Docket No.  PPP-4336458510 |
|  | ) | |
|      Appellant | ) | |
|  | ) | |
| Appealed from | ) | |
| SBA PPP Loan No. 4336458510 | ) | |
|  | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 4, 2023, I filed a copy of the above response in the OHA Case Portal.

Respectfully submitted,

SAMEENA NABIJEE
Digitally signed by SAMEENA NABIJEE
Date: 2023.04.04 09:59:58 -05'00'

Sameena Nabijee
Attorney for SBA
U.S. Small Business Administration
332 S. Michigan Ave., Suite 600
Chicago, IL 60604
Phone: (312) 353-8614

# United States Small Business Administration
## Office of Hearings and Appeals

PAYCHECK PROTECTION PROGRAM
**APPEAL OF**:

**Accordius Health at Asheville LLC et al.**

      Petitioners

RE: *PPP Appeal of Accordius Health at Asheville LLC et al.*, SBA No. PPP-4336458510 et al. (2023)

Issued:  **April 10, 2023**

Decision No. **PFR-4336458510**

Appearances:
  Frederick N. Widen, Joshua Klarfeld, & Sara S. Dorland, Ulmer & Berne LLP, for Appellants.
  Sameena Nabijee, Attorney for the Small Business Administration.

## RECONSIDERATION DECISION

After carefully considering the evidence and arguments presented in the Administrative Records, Requests for Reconsideration, and Consolidated Decision No. PPP-4336458510, the appeal petitions of Accordius Health at Asheville LLC et al. (Petitioners/Appellants) remain **DENIED**.  For the reasons discussed below, Petitioners are not entitled to loan forgiveness.

## PROCEDURAL HISTORY

The Petitioners (Borrowers/Appellants) submitted Paycheck Protection Program (PPP) Borrower Applications, which were approved for individual First Draw PPP loans through authorized PPP lenders (Lender) and each received their respective loan proceeds.   The Petitioners submitted PPP Loan Forgiveness Applications through the Lender that received individual lender decisions concerning loan forgiveness.

The U.S. Small Business Administration (SBA) Office of Capital Access issued final PPP loan review decisions finding Petitioners ineligible for their respective PPP loans and any precluded from loan forgiveness.

On December 6 & 7, 2022, the Petitioners filed appeal Petitions from their final SBA loan review decisions.  Petitioners argued the final SBA loan review decisions were clearly erroneous, and requested the Office of Hearings and Appeals (OHA) reverse them, and find the Petitioners eligible for PPP loan forgiveness.

USA-000778
Case 1:23-cv-00129-MR    Document 24-3    Filed 11/28/23    Page 278 of 300

On December 13, 2022, Notice and Orders were issued under their individual appeals requiring the filing of the Administrative Records (AR) by January 3, 2023, providing for the Petitioners to file Objections to the same by January 12, 2023, and allowing for SBA to file Responses to the Petitions by January 27, 2023.

On December 22, 2022, SBA filed a Consent Motion to consolidate the Petitioner's Petitions, as set forth in the attached and incorporated Exhibit A and designate appeal PPP-4336458519 as the "lead case". The Motion further sought an extension of time to file the ARs, Objections, and Responses.

On January 3, 2023, an Order of Consolidation was issued naming Accordius Health at Asheville LLC PPP No. 4336458510, as the "lead case" for any motions, briefs, and orders.

On January 13, 2023, an Amended Notice and Order was issued requiring the filing of the ARs by February 6, 2023, providing for the Petitioners to file Objections to the same by February 17, 2023, and allowing for SBA to file Responses to the Petitions by March 3, 2023

On February 6, 2023, SBA filed Joint Stipulation and Motion for Leave to File Consolidated Administrative Record, for which an Order and Amended Order were issued granting the parties Joint Motion for Leave to File the Stipulations and limited AR for the consolidated appeal.  The Consolidated AR was then received.  The Petitioners did not file an Objection to the AR and SBA did not file a Response to the Petitions.  The AR was closed at 5:00 PM Eastern on March 3, 2023.

On March 8, 2023, a Consolidated OHA Initial Decision was issued affirming the final SBA loan review decisions for each Petitioner.

On March 17, 2023, the Petitioner filed a Request for Reconsideration alleging errors of both fact and law in Consolidated Decision No. PPP-4336458510 et al.

On March 20, 2023, the undersigned issued a Notice of Consolidation & Order allowing for SBA to file a response to the Request for Reconsideration no later than April 4, 2023.  The Order further consolidated the Petitioner's Petitions for Reconsideration for the filing of any party motions or briefs, any Orders, and Decision issued by the undersigned.

SBA filed a Response on April 4, 2023, and the AR was closed at 5:00 PM Eastern that day.

## ISSUES

Whether the final SBA loan review decision and/or OHA Decision No. PPP-4336458510 et al.  contains clear error of law or fact to allow the Petitioners their requested PPP loan forgiveness?

## APPLICABLE LAW AND POLICY

### I.     Paycheck Protection Program

PPP is a temporary SBA 7(a) Loan Program designed to provide emergency assistance to certain small businesses during the COVID-19 crisis, for the purposes of helping businesses keep their workers paid and employed.  PPP was established under section 1102 of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (Pub. L. 116–136), which was signed into law on March 27, 2020, and subsequently was revised and expanded by other statutes. In general, PPP was open to all American small businesses with 500 or fewer employees, including sole proprietorships, independent contractors, and self-employed individuals.  15 U.S.C. § 636(a)(36)(D).

Under PPP, borrowers obtain loans through an SBA-approved lender, rather than from SBA itself, and the lender services the PPP loan.  SBA implements the program and guarantees 100% of PPP loans in the event of default.  As a condition for obtaining a PPP loan, a borrower was required to certify that PPP funds would be used to retain workers and maintain payroll or to make mortgage, lease, and utility payments.  PPP funds could not be used for compensation of employees whose principal place of residence was outside the United States.  Further, salary expenditures were capped at no more than $100,000 annually per employee. 15 U.S.C. § 636(a)(36)(G) and (A)(viii)(II).

Generally, a small-business concern shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(1) and (2)(A)&(B).

SBA established its initial small business size standards on January 1, 1957. 21 Fed. Reg. 9709-9714, December 7, 1956.

Except for small agricultural cooperatives, a business concern eligible for assistance from SBA as a small business is a business entity organized for profit, with a place of business located in the United States, and which operates primarily within the United States or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.  A business concern may be in the legal form of an individual proprietorship, partnership, limited liability company, corporation, joint venture, association, trust or cooperative, except that where the form is a joint venture there can be no more than 49 percent participation by foreign business entities in the joint venture. 13 C.F.R. § 121.105(a)(1) and (b).

The Administrator has established SBA's size standards to define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for

"small business" concerns.  Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS).  NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800) 553-6847 or 1(703) 605-6000; or via the Internet at http://www.ntis.gov/products/naics.aspx. The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small. 13 C.F.R. § 121.201.

Except for the Business Loan and Disaster Loan Programs, a business concern's average annual receipts are calculated by determining the total receipts of the concern over its most recently *completed* 5 fiscal years divided by 5, or over its most recently completed 3 fiscal years divided by 3. 13 C.F.R. § 121.104(c)(1). For the Business Loan and Disaster Loan Programs, annual receipts of a concern that has been in business for three or more completed fiscal years means the total receipts of the concern over its most recently completed three fiscal years divided by three.  The Business Loan Programs consist of the 7(a) Loan Program. 13 C.F.R. § 121.104(c)(4).  Completed fiscal year  means a taxable year including any short year. "Taxable year" and "short year" have the meanings attributed to them by the IRS. 13 C.F.R. § 121.104(b).

The Federal income tax return and any amendments filed with the IRS on or before the date of self-certification must be used to determine the size status of a concern. SBA will not use tax returns or amendments filed with the IRS after the initiation of a size determination. When a concern has not filed a Federal income tax return with the IRS for a fiscal year which must be included in the period of measurement, SBA will calculate the concern's annual receipts for that year using any other available information, such as the concern's regular books of account, audited financial statements, or information contained in an affidavit by a person with personal knowledge of the facts. 13 C.F.R. § 121.104(a)(1-2).

Section 1116 of the Small Business Jobs Act of 2010 directed SBA to establish a new temporary[1] alternative size standard based on tangible net worth and net income for determining size eligibility for its 7(a) and 504 loan programs, as follows: The Administrator shall establish an alternative size standard for applicants for business loans under section 636(a) of this title that uses maximum tangible net worth and average net income as an alternative to the use of industry standards. *See* 15 U.S.C. § 632(a)(5)(A).

---

[1] https://www.sba.gov/sites/default/files/files/bank_5000-1175_0.pdf

This alternative size standard provides a business concern is a small business , if: 1) The maximum tangible net worth of the business concern is not more than $15,000,000; and 2) The average net income after Federal income taxes (excluding any carry-over losses) of the business concern for the 2 full fiscal years before the date of the application is not more than $5,000,000. 15 U.S.C. § 632(a)(5)(B)(i-ii).

Effective September 27, 2010, the new statutory alternative size standard replaced and superseded the existing alternative size standard, based on tangible net worth and net income, for SBA's 7(a) and 504 loan programs set forth in 13 C.F.R. § 121.301(b)(2). This new statutory alternative size standard is effective until such time as SBA establishes a permanent alternative size standard for the 7(a) and 504 loan programs through the rulemaking authority granted the Administrator under §636(a) of the Small Business Act.

A business concern is eligible for a First or Second Draw PPP loan if, on its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, AND together with its affiliates, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. *See* 13 C.F.R. § 121.301(a and f) and SBA FAQ Questions 2, 4, 5, and/or 63 (in relevant part, below).

### PAYCHECK PROTECTION PROGRAM LOANS
Frequently Asked Questions (FAQs)[2]

2. **Question**: Are small business concerns (as defined in section 3 of the Small Business Act, 15 U.S.C. 632) required to have 500 or fewer employees to be eligible borrowers for First Draw PPP Loans?[3]

    **Answer**: No. Small business concerns can be eligible borrowers for First Draw PPP Loans even if they have more than 500 employees, as long as they satisfy the existing statutory and regulatory definition of a "small business concern" under section 3 of the Small Business Act, 15 U.S.C. 632. A business can qualify if it meets the SBA employee-based or revenue-based size standard corresponding to its primary industry. Go to www.sba.gov/size for the industry size standards.

    ***Additionally, a business can qualify for a First Draw PPP*** Loan as a small business concern ***if it met both tests in SBA's "alternative size standard" as of March 27, 2020:*** (1) maximum tangible net worth of the business is not more than $15 million; and (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million. ***(Emphasis added)***....

---

[2] https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf
[3] Question 2 published April 6, 2020 and revised March 3, 2021 to reflect the consolidated interim final rule implementing updates to the PPP. This FAQ applies only to First Draw PPP Loans. Different eligibility requirements apply to Second Draw PPP Loans. See FAQ #63 and subsection (c) of the interim final rule for Second Draw PPP Loans.

4. **Question**: Are lenders required to make an independent determination regarding applicability of affiliation rules under 13 C.F.R. 121.301(f) to borrowers?[4]

   **Answer**: No. It is the responsibility of the borrower to determine which entities (if any) are its affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications....

5. **Question**: Are borrowers required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)?[5]

   **Answer**: Yes. ***Borrowers must apply the affiliation rules***, including any applicable exceptions or affiliation waivers, set forth in SBA's Interim Final Rule on Affiliation, Interim Final Rule on Treatment of Entities with Foreign Affiliates, the consolidated interim final rule implementing updates to the PPP, and the interim final rule for Second Draw PPP Loans. A borrower must certify on the applicable Borrower Application Form that the borrower is eligible to receive a PPP loan. For a First Draw PPP Loan, that certification means that the borrower has no more than 500 employees, is a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632) that meets the applicable SBA employee-based or revenue-based size standard, ***or meets the tests in SBA's alternative size standard, after applying the affiliation rules, if applicable***. *(Emphasis added)*.

63. **Question**: May applicants use SBA's established size standards (either revenue-based or employee-based) or SBA's alternative size standard to qualify for a Second Draw PPP Loan?

    **Answer**: No. Applicants may not use SBA's established size standards (either revenue based or employee-based) or the alternative size standard to qualify for a Second Draw PPP Loan. In general, the size eligibility requirement for Second Draw PPP Loans are narrower than the size eligibility requirement for First Draw PPP Loans. With some exceptions, an applicant is eligible for a Second Draw PPP Loan only if it, together with its affiliates (if applicable), employs no more than 300 employees. The only exceptions are if an Applicant:

    • Is assigned a NAICS code beginning with 72 and employs no more than 300 employees per physical location, or

    • Is a news organization that is majority owned or controlled by a business concern that is assigned NAICS code 511110 or a NAICS code beginning with 5151 or is a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, and, in either case, employs no more than 300 employees per physical location.

The size status of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by SBA. 13 C.F.R. § 121.302.

---

[4] Question 4 published April 6, 2020.

[5] Question 5 published April 6, 2020 and revised March 3, 2021 to conform to subsections B.1.g.v., B.1.g.vii., and B.1.g.viii of the consolidated interim final rule implementing updates to the PPP and subsection (c) of the interim final rule on Second Draw PPP Loans.

On May 4, 2020, SBA issued Interim Final Rule #7 (IFR #7), which provides that in order to "preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent. This limitation shall be immediately effective with respect to any loan that has not yet been fully disbursed as of April 30, 2020." 85 Fed. Reg. 26324, 26325 (May 4, 2020).

On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (Economic Aid Act) P.L.116-260, was enacted, extending the authority to make PPP loans through March 31, 2021, revising certain PPP requirements, and permitting Second Draw PPP Loans. 86 Fed. Reg. 8283. Businesses applying for a second PPP loan were required to demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37)(A)(iv).

## II.    PPP Loan Forgiveness

PPP loans could be used for payroll and employee benefits costs, as well as other operating expenses, including mortgage interest payments (not principal), rent and lease payments, and utilities. 15 U.S.C. § 636(a)(36)(F).

To be eligible for loan forgiveness, at least 60 percent of the PPP loan must have been used to fund payroll and employee benefits costs. The remaining portion (up to 40 percent) of the loan may have been used for mortgage interest, rent, and other eligible expenses. Subject to certain exceptions, the amount that can be forgiven may be reduced in proportion to any reductions in the number of full-time equivalent employees, or if employee salary or wages were reduced by more than 25%. 15 U.S.C. § 636m(d)(8) and § 636m(d)(2-3).

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). 15 U.S.C. § 636m(e), § 636m(e)(3), § 636m(f), and § 636m(b).

The lender reviews the application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(g).

Following issuance of an initial decision, Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower: 1) Was ineligible for a PPP loan; 2)

Was ineligible for the PPP loan amount received or used PPP loan proceeds for unauthorized uses; 3) Is ineligible for PPP loan forgiveness in the amount determined by the lender in its full approval or partial approval decision issued to the SBA; and/or, 4) Is ineligible for PPP loan forgiveness in any amount when the lender issued a full denial decision to SBA. The Lender is required to provide a copy of the final SBA loan review decision to the borrower within five (5) business days of the date of the decision (SBA Procedural Notice #5000-20077, effective January 15, 2021[6]. 13 C.F.R. §134.1201(b)(1)-(4).

OHA conducts PPP appeals under the authority of 13 C.F.R. part 134 Subpart L. The Appellant has the burden of proving all elements of the appeal. Specifically, the Appellant must prove the final SBA loan review decision was based upon a clear error of fact or law. Only a borrower on a loan, or its legal successor in interest, has standing to appeal a final SBA loan review decision. 13 C.F.R. § 134.1210 and 13 C.F.R. § 134.1203.

### III.    Reconsideration

An initial decision of the Judge may be reconsidered. If a request for reconsideration is filed and the SBA Administrator does not exercise discretion to review or reverse the initial decision under paragraph (d) of this section, OHA will decide the request for reconsideration and OHA's decision on the request for reconsideration is a reconsidered initial OHA decision. A reconsidered initial OHA decision becomes the final decision of SBA 30 calendar days after its service unless the SBA Administrator, solely within the Administrator's discretion, decides to review or reverse the reconsidered initial OHA decision under paragraph (d) of this section. The discretionary authority of the Administrator does not create any additional rights of appeal on the part of an appellant not otherwise specified in SBA regulations in this chapter. 13 C.F.R. §134.1211(c)(3).

### FINDINGS OF FACT AND ANALYSIS

After careful consideration of the entire record, including all pleadings, a preponderance of the evidence establishes:

### I.    Background
### The CARES Act & EAA

On March 27, 2020, the CARES Act became law. P.L.116-136. It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1). SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

---

[6] SBA PPP lender notices are available from **SBA.gov** at https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/ppp-lender-information#section-header-4.

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. §636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b) (15 U.S.C. § 9012).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

Unless otherwise provided by 15 U.S.C. § 636(a)(36), SBA guarantees covered PPP loans under the same terms, conditions, and processes as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

The CARES Act set forth the following definitions: 'Covered Loan' means a loan made under the PPP; 'Covered Period' means the period beginning on February 15, 2020 and ending on June 30, 2021; & 'Eligible Recipient' means an individual or entity eligible to receive a covered loan. 15 U.S.C. § 636(a)(36)(A)(ii-iv).

The CARES Act provides forgiveness of PPP loans to an eligible recipient on a covered loan in an amount equal to the sum of the costs incurred/payments as defined by the CARES Act made during the covered period. 15 U.S.C. § 636(a)(36) & (37)(J).

In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination). PPP loan forgiveness is prohibited without appropriate supporting documentation, or without the required certification.. The Lender reviews the PPP loan forgiveness application and makes an initial decision regarding loan forgiveness. 15 U.S.C. § 636m(b), (f), and (g).

Following issuance of an initial decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which reviews the PPP loan and finds a borrower was ineligible for the PPP

loan amount received or used PPP loan proceeds for unauthorized uses. 13 C.F.R. § 134.1201(b)(2).

Thus, the loan forgiveness process includes a two-step review by SBA of the Petitioner's underlying qualification during the covered period for the amount of PPP loan proceeds received (eligibility) and documentation to support approved use of the proceeds (forgiveness).

On December 27, 2020, the EAA became law. P.L.116-260 (December 27, 2020).

## Joint Stipulations

The parties jointly stipulated to the following:

1) SBA denied Petitioners' loan forgiveness applications finding, in part, that each of the Petitioners "is part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate."
2) Petitioners' appeals of the denial decisions were timely filed.
3) 84 entities, owned equally by individuals Simcha Hyman and Naftali Zanziper, received first-draw PPP loans.
4) The SBA forgave the first-draw PPP loans for 36 of these entities.
5) The SBA denied forgiveness for the first-draw PPP loans of the 48 other entities.[7]
6) Petitioners disclosed their ownership by Simcha Hyman and Naftali Zanziper in their Paycheck Protection Program Borrower applications.
7) Petitioners complied with SBA's requests for information.
8) Whether Petitioners satisfied SBA's alternative size standard is not at issue in this appeal.
9) The parties have agreed to submission of a limited record in this consolidated appeal. (Joint Stipulations).

## Petitioner's PPP Loan Application and Lender Approval

On or about March of 2021, the Petitioners submitted PPP Borrower Application Forms 2483 through the Lender. (Petitions – Denial Justification Document)

The Petitioners are owned equally by Simcha Hyman and Naftali Zanziper. The Petitioners were approved for PPP loans by the Lender and individually received their PPP loan proceeds. 84 entities, owned equally by individuals Hyman and Zanziper, received first-draw PPP loans. (Joint Stipulations and Motion for Leave to File Consolidated Administrative Record).

---

[7] The 48 appeals were apportioned between two Administrative Law Judges: 38 were assigned to ALJ Haring, and
10 were assigned to ALJ Trunick.

**Petitioner's PPP Loan Forgiveness Application and SBA Review**

To seek loan forgiveness, a PPP borrower must submit a Loan Forgiveness Application (Form 3508) to its lender, with supporting documentation of its expenditures. Within the application, the borrower must certify that PPP funds were utilized for authorized purposes, and that all documentation provided is true and correct. Forgiveness is prohibited without appropriate supporting documentation, or without the required certification. In general, a PPP borrower may obtain forgiveness, up to the full amount of its loan, for eligible expenses made during the loan's "covered period" (typically, 24 weeks from the date of loan origination).

The Petitioners submitted PPP Loan Forgiveness Application Forms 3508, along with some documentation and the required certifications concerning the validity of expenses through the Lender.

The Lender must review the Loan Forgiveness Application (Form 3508) and make an initial decision regarding loan forgiveness. On or about June 29, 2022, the Lenders determined the Petitioners should receive full loan forgiveness. (Petitions – "Denial Justification Document").

Following issuance of a lender decision, the SBA Office of Capital Access may issue a final SBA loan review decision, which is an official written decision issued by the SBA Office of Capital Access which may find the Appellant was ineligible for the PPP loan amount received or is ineligible for PPP loan forgiveness in the amount determined by the Lender in its full or partial initial decision.

SBA notified the Lender it was reviewing the Appellants' PPP loans. SBA requested the documentation used to secure the loan and justify the Lender's forgiveness decision. Appellants complied with SBA's requests for information. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

On or about November 11, 2022, SBA issued final loan review decisions providing the Petitioners with $0.00 of PPP loan forgiveness, finding the Petitioners "part of a corporate group [that] has received more than $20,000,000 of First Draw PPP loans in the aggregate." This rendered the Appellants ineligible for the PPP loans and precluded them from loan forgiveness. Of note, SBA forgave the first-draw PPP loans for 36 of these entities affiliated with the Petitioners. (Joint Stipulation and Motion for Leave to File Consolidated Administrative Record).

**Petitioner's Argument in Favor of Loan Forgiveness**

The Petitioner had the burden of proving all elements of the appeal and had to prove the final SBA loan review decision was based upon a clear error of fact or law. 13 C.F.R. § 134.1210. Through written statement, the Petitioner argued in favor of full loan forgiveness, as follows:

Petitioners are separate and distinct operating companies from each other. No Petitioner is itself, a holding or parent company. Each Petitioner is owned by two individuals, Simcha Hyman and Naftali Zanziper, neither of which holds a majority of the membership interests in any Petitioner. No Petitioner has a parent company, thus, no Petitioner can share a common parent company with any of the other 47 Petitioners for which SBA is denying PPP loan forgiveness. Because none of the Petitioners has a "common parent," they are not a "single corporate group" for purposes of any purported $20,000,000 limitation on PPP loans. The Petitioners essentially argue clear error exists in the final SBA loan review decisions, as none of the Petitioner entities was owned at any time by a corporation or any other type of entity.

The Petitioners argue three points for the proposition: 1 ) SBA's issuance of IFR #7 violates the notice and comment rule-making requirement under the Administrative Procedure Act (APA); 2) Nothing in the CARES Act or the Economic Aid Act imposes a $20,000,000.00 PPP loan limitation on corporate groups; and 3) Even if the rule-making requirements of the APA are overlooked, SBA has not issued any guidance on how it interprets the $20,000,000.00 PPP loan limitation, and more specifically, how SBA defines the terms 'single corporate group"/"common parent'. Each argument is individually below.

All three arguments rely upon the language contained in SBA's Interim Final Rule (Docket Number SBA-2020-0023) of April 30, 2020 (IFR #7), which "placed a $20,000,000 limitation on the amount of PPP loans that businesses in a single corporate group can receive", as follows:

> To preserve the limited resources available to the PPP program, and in light of the previous lapse of PPP appropriations and the high demand for PPP loans, businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate. **For purposes of this limit, businesses are part of a single corporate group if they are majority owned, directly or indirectly, by a common parent**. (Emphasis added in Petition).

## OHA Initial Decision

On March 8, 2023, an OHA Initial Decision was issued denying the Petitioner PPP loan forgiveness finding the Petitioners were ineligible for their respective PPP loans having exceeded the $20,000,000.00 PPP corporate maximum loan limitation and precluded from loan forgiveness. The Petitioners requests for Reconsideration uniformly raise assignments of legal and factual error in the prior decision, each addressed below.

## II.    Errors of Fact Asserted by the Petitioner

The Petitioner asserts assignments of error in the final SBA loan review decision and OHA Initial Decision, as follows:

> SBA's argument, and the March 8 Decision is premised on a clearly erroneous conclusion of law that is material to that Decision. Specifically, this Court erred in applying SBA's affiliation rules to the definition of "corporate parent." Nothing in the IFR or other guidance suggests that the affiliation rules apply to the IFR. Nor does the IFR or any related guidance suggest that SBA's Standard Operating Procedures 50 10 5 (f), Part 2, Section B, Ch. 3, 2.a. applies to the IFR (as the Court suggests in the March 8 Decision) or dictates that the affiliation rules should apply in determining the definition of "common parent" here. It appears to be the Court's position that simply by virtue of the fact that Appellant had to apply the SBA's affiliation rules to meet the alternative size test somehow means that Appellant should have assumed the affiliation rules would apply to the definition of "corporate group" as used in the IFR. In sum, there is no guidance on the definition of "common parent" as used in the IFR.2 Nor for that matter, is there any basis in law to conclude that two individuals each with 50% ownership interest in multiple companies meets the definition of "common parent." For the reasons set forth in Accordius' Appeal Petition, Appellant is not part of a "corporate group" with a "common parent" and thus, not subject to the $20,000,000 limitation. (Petition for Reconsideration).

## III.    PPP Loan Eligibility and Forgiveness

SBA denied the Petitioner's loan forgiveness application by holding the Petitioner's having exceeded the $20,000,000.00 PPP corporate maximum loan limitation and precluded from loan forgiveness.  The Petitioners argue this decision (and the OHA Initial Decision upholding the same) was in error, based upon the misapplication of the "common parent" to the Petitioners.  The Petitioners remain with three arguments in favor of loan eligibility and forgiveness, each addressed below.

## <u>Argument #1</u> - SBA's issuance of IFR #7 violates the notice and comment rule-making requirement under the Administrative Procedure Act (APA)

The Petitioners argue this provision cannot be used to deny any of the Petitioners PPP Loan Forgiveness Applications, as the same was issued outside of the APA's statutorily mandated processes.

The APA is codified in 5 U.S.C. §§ 551–559 and applies to all agencies of the federal government.  The APA provides the general procedures for various types of rulemaking. Agencies promulgate rules in a variety of methods that requiring notice-and-comment. 5 U.S.C. § 553.

It is the declared policy of Congress that the Federal Government, through the SBA Administrator, in cooperation with the Department of Commerce (DOC) and other relevant State and Federal agencies, should aid and assist small business, as defined by the Small Business Act. 15 U.S.C. § 631(b)(1). SBA carries out the policies of the Small Business Act. 15 U.S.C. § 633(a). The SBA Administrator makes rules and regulations to carry out the Small Business Act. 15 U.S.C. § 634(b)(6).

Section 7(a) of the Small Business Act authorizes SBA to make loans to qualified small businesses. 15 U.S.C. § 636(a). For the purposes of the Small Business Act, a small business concern is one which is independently owned and operated, not dominant in its field of operation, and meets the size standards set by the Administrator. 15 U.S.C. § 632(a)(1)-(2)(A)-(B); 15 U.S.C. § 636e(6); 13 C.F.R. §§ 121.101(a), 121.102(a) and 121.201.

Section 1102 of the CARES Act amended Section 7(a) of the Small Business Act to establish the PPP and Section 1106 of the CARES Act amended Section 7 of the Small Business Act to establish PPP loan forgiveness. P.L. 116-36, §§ 1102 and 1106.

Section 1114 of the CARES Act grants the Administrator emergency rulemaking authority and provides no later than fifteen (15) days after March 27, 2020, the Administrator shall issue regulations to carry out the Act and amendments made to the Act without regard to the notice requirements of 5 U.S.C. § 553(b). 15 U.S.C. § 9012.

Congress has given SBA broad authority to make rules and regulations, to take actions that "are necessary or desirable in making . . . loans," 15 U.S.C. § 634(b)(6)-(7), and to establish general policies to "govern the granting and denial of applications for financial assistance by the Administration," id. § 633(d). That background authority naturally extends to the PPP lending program. *See* Camelot Banquet Rooms, Inc., et al. v. SBA, No. 21-2589, 2022 WL 221616 (7th Cir. 2022). Section 1114 of the CARES Act required the SBA Administrator to issue regulations to govern PPP and granted the SBA Administrator emergency rulemaking authority to carry out PPP. The CARES Act specifically waived the SBA Administrators notice and comment requirements under the APA. 15 U.S.C. § 9012. As such, the Petitioners' argument that SBA's issuance of the IFR #7 was in violation of the APA is without merit.

## **Argument #2 - Nothing in the CARES Act or the Economic Aid Act imposes a $20,000,000.00 PPP loan limitation on corporate groups**

The Petitioners note the Administrator issued IFR #7 imposing a $20,000,000.00 limitation on a corporate group, owned directly or indirectly, by a common parent, where the CARES Act (and subsequent amendments) do not contain this limitation. The argument raised by the Petitioners concerns the Administrators authority to issue IFR #7.

OHA assigns all cases subject to the Administrative Procedure Act ("APA"), 5 U.S.C. 551 et seq., to an Administrative Law Judge ("ALJ") and assigns all other cases before OHA to either an ALJ or an Administrative Judge ("AJ"), or, if the AA of OHA is a duly licensed attorney, to himself or herself. Except as otherwise limited by regulation or by statute, an

ALJ, AJ, and the AA has the authority to take all appropriate action to ensure the efficient, prompt, and fair determination of a case. This authority includes, but is not limited to, the authority to administer oaths and affirmations and to subpoena and examine witnesses. 13 C.F.R. § 134.218.

ALJs have no constitutionally based judicial power, *see Ramspeck v. Federal Trial Examiners Conference,* 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir.), *cert, denied,* 493 U.S. 813 (1989); *Mullen* v. *Bowen,* 800 F.2d 535, 540- 41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert, denied,* 479 U.S. 985 (1986); *Goodman* v. *Svahn,* 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc.* v. *Heckler,* 594 F. Supp. 1132, 1141 (D.D.C. 1984); *c f D'Amico* v. *Schweiker,* 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. § 81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency).

ALJs do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee. The APA explicitly provides the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency: 5 U.S.C. § 556(c).

OHA ALJs are bound by SBA regulation and interpretation of its governing statutes and regulations. OHA has consistently recognized such challenges as being improper and recognized the limited scope of its authority. OHA has repeatedly held it "is not the proper forum for a challenge to the validity of a regulation." *Matter of Cognitive Professional Services, Inc.*, Case No. BDPE-545 at *3 (March 10, 2015) ("Questions about the validity or constitutionality of regulations do not fall within the jurisdiction of the Office of Hearings and Appeals, and I may not consider them. *See* 13 C.F.R. § 134.102."); *accord Jim Plunkett, Inc. re: E.S. Edwards & Sons, Inc.,* SBA No. 3838 at *2 (October 4, 1993) (finding complaint challenging SBA's regulations as overly complex to be "beyond the jurisdiction of this Office."); *Nations Incorporated, Petitioner re: Technical and Management Services Corporation*, SBA No. 3611 at *8 (April 24, 1992) ("[A]ny question concerning the validity of a regulation is beyond this delegated authority."); *International Ordinance, Inc., Petitioner*, SBA No. 3319 at *4 (August 6, 1990) ("The constitutional challenge of these regulations by the Petitioner is beyond the limited jurisdiction of this Office.")

ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's First IFR available at the time, which states "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 . . . ." 85 Fed. Reg. 20,812 (April 15, 2020), as well as SBA's interpretation that the CARES Act includes application of SBA regulation at 13 C.F.R. § 120.110. *See* CARES Act § 1102, 134 Stat. at 287; 15 U.S.C. § 636(a)(36)(B).

Section 1114 of the CARES Act waived the notice and comment requirement for the Interim Final Rule. Thus, the Interim Final Rule has the force and effect of a Final Rule and Regulation. *See* 5 U.S.C. § 553; "A Guide to the Rulemaking Process", p. 8. Therefore, the CARES Act placed the PPP within the SBA 7(a) Loan Program.

The Administrator, in consultation with the Secretary of the Treasury, determined that limiting the amount of PPP loans that a single corporate group may receive will promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act. The Administrator concluded that a limitation of $20,000,000 strikes an appropriate balance between broad availability of PPP loans and program resource constraints. The Petitioners argument fails, as the Administrator has established a well-defined rule (IFR #7) and policy interpretation, for which OHA and the undersigned are without authority to invalidate.

**Argument #3** - **Even if the rule-making requirements of the APA are overlooked, SBA has not issued any guidance on how it interprets the $20,000,000.00 PPP loan limitation, and more specifically, how SBA defines the terms 'single corporate group'/"common parent'.**

As noted above, the Administrator, in consultation with Secretary of the Treasury, issued IFR #7, which imposed a $20,000,000.00 PPP maximum loan limitation for any corporate group. The Petitioners, along with 46 other affiliated entities (84 PPP loans total) received $44,983,180.44 in aggregate PPP loan proceeds. Prior to the disbursement of Petitioners' loans, entities affiliated with the Petitioners under 13 C.F.R. § 121.301 had already obtained funding for at least 36 PPP loans totaling more than $20,000,000. (Stipulated AR pp. 639-44)

Within IFR #7, the Administrator set forth the authority to create a corporate group maximum loan limitation under the CARES Act grant of authority to create ''such rules and regulations as [the Administrator] deems necessary to carry out the authority vested in him by or pursuant to'' 15 U.S.C. Chapter 14A, including authorities established under section 1102 of the CARES Act. The Administrator explained that Section 1102 of the CARES Act "provides that the Administrator 'may' guarantee loans under the terms and conditions set forth in section 7(a) of the Small Business Act, and those conditions specify a 'maximum'— but not a minimum—loan amount." *See* 15 U.S.C. 636(a)(36)(B), (E); *see* also CARES Act section 1106(k) (authorizing SBA to issue regulations to govern loan forgiveness).

The Administrator further stated that in order to "preserve finite appropriations for PPP loans and ensure broad access for eligible borrowers, the Administrator, in consultation with the Secretary, has determined that an aggregate limitation on loans to a single corporate group is necessary and appropriate." (IFR #7, footnote 1).

It became the responsibility of an applicant for a PPP loan to notify the lender if the applicant applied for or received PPP loans in excess of the amount permitted by IFR #7 and withdraw or request cancellation of any pending PPP loan application or approved PPP loan not in compliance with the limitation set forth in this rule. SBA specifically stated that failure by a PPP applicant to do would be regarded as a use of PPP funds for unauthorized purposes,

and the loan will not be eligible for forgiveness. Additionally, a PPP lender was authorized to rely on an PPP applicant's representation (certification within the PPP Borrower Application Form 2483) concerning the applicant's compliance with IFR #7.

SBA has denied loan forgiveness finding the Petitioners are part of a corporate group and the recipients of PPP loan proceeds exceeding the $20,000,000.00 limitation. The Petitioners argue that they do not meet the definition of a corporate group, the $20,000,000.00 limitation does not apply to them, and loan forgiveness is proper. The Petitioners rely on Bostock v. Clayton Cnty., Georgia, 140 S. Ct. 1731, 1738 (2020) and Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) to assert that due the CARES Act and IFR #7's silence in defining corporate group, the ordinary public meaning for the terms 'corporate group' and 'common parent' must be applied. The Petitioners focus on the term common parent and argue the ordinary public meaning is "a common parent corporation or common parent holding company." The Petitioners argue that none of Petitioners are a common parent holding company and none have a common parent corporation.

SBA argues the AR, Petition, and applicable authorities demonstrate that (1) SBA had the authority to limit the amount of PPP funds a "corporate group" could obtain; (2) Petitioners were part of a corporate group with common parent Hyman/Zanziper that received over $20 million in PPP loans in the aggregate, (3) Petitioners' loans funded after the January 2021 IFR and after other borrowers within the corporate group had already received more than $20 million in PPP loans; and (4) Petitioners were thus ineligible for PPP loan forgiveness. (SBA Response).

The CARES Act subjected PPP borrowers to SBA's 7(a) program affiliation rules, as set forth in 13 C.F.R. § 121.301(f).[8] Of note, Section 1102(e) of the CARES Act permanently rescinded the SBA's February 2020 amendment to 13 C.F.R. § 121.301, thus PPP borrowers are subject to SBA's 2019 version of 13 C.F.R. § 121.301. (see 81 Fed. Reg. 41423).

Each PPP applicant must aggregate its own number of employees or revenue with that of all of its affiliates for the purposes of determining eligibility for a PPP loan. PPP applicants are eligible for a First Draw PPP loan, when the applicant: (1) Qualifies as a small business concern as defined in section 3 of the Small Business Act, 15 U.S.C. § 632; (2) Along with its affiliates, have 500 or fewer employees whose principal place of residence is in the United States; (3) Along with its affiliates meet the SBA employee-based size or revenue standards for the industry in which they operate, (including the "alternative standard"; or (4) Is a nonprofit organization, veterans organization, or Tribal business concern as outlined in Section 1102(a)(i) of the CARES Act.[9]

---

[8] PPP Loan FAQs, No. 5. While § 121.103 governs the SBA's general principles of affiliation, § 121.103(a)(8) states that "applicants in SBA's Business Loan [including the PPP], Disaster Loan, and Surety Bond Guarantee Programs" are to use "the size standards and bases for affiliation . . . set forth in § 121.301."

[9] PPP Loan FAQs, No. 3. Our understanding of FAQ No. 3 is that it does not expand eligibility beyond the basic eligibility requirements for all applicants for SBA business loans outlined in 13 C.F.R. § 120.100, but we await further guidance clarifying this point.

The 2019 version of 13 C.F.R. § 121.301(f)(1-4) sets forth four principles that can establish an affiliation relationship between a PPP borrower and another entity: 1) Equity ownership; 2) Stock options, convertible securities, and agreements to merge; 3) Management; and 4) Identity of interest, as follows:

1) Any entity that owns or has the power to control more than 50 percent of the borrower's voting equity is considered an affiliate of the borrower. Further, SBA deems a minority shareholder exercises "negative control" if it has the ability, under the borrower's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders. If no such entity owns 50 percent of the equity, SBA will deem the Board of Directors, President, or CEO (or other officers, managing members, or partners who control the management of the concern) to be in control of the borrower. 13 C.F.R. § 121.301(f)(1).

2) SBA will consider stock options, convertible securities, and agreements to merge, as though the rights granted have been exercised, for purposes of determining whether an entity owns 50 percent of the borrower,. 13 C.F.R. § 121.301(f)(2).

3) Affiliation arises where the President or CEO (or other officers, managing members, or partners who control the management of the concern) of the PPP applicant also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one of more other concerns. Affiliation also arises where a single individual, concern, or entity controls management of the borrower through a management agreement. 13 C.F.R. § 121.301(f)(3).

4) Where close relatives share identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area), those concerns are affiliated. 13 C.F.R. § 121.301(f)(4).

PPP's affiliation rules provide direct policy interpretation concerning what entities are associated with each and count towards the small-business concern size standard. Here, the parties agree the affiliation rules associate the Petitioners due to the common ownership existing for all Petitioners through Simcha Hyman and Naftali Zanziper. IFR #7 explicitly subjects corporate groups to a $20,000,000.00 maximum loan limitation and takes care to note that this limitation applies, even if, the businesses are eligible for the waiver-of-affiliation provision under the CARES Act or are otherwise not considered to be affiliates under SBA's affiliation rules.

Under the Small Business Act, a small-business concern includes, but is not limited to, enterprises that are engaged in the business of production of food and fiber, ranching and raising of livestock, aquaculture, and all other farming and agricultural related industries, shall be deemed to be one which is independently owned and operated and which is not dominant in its field of operation. 15 U.S.C. § 632(a)(1).

In addition to the criteria specified in 15 U.S.C. § 632(a)(1), the Administrator may specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of the Small Business Act or any other act. The standards specified by the Administrator may utilize number of employees, dollar volume of

business, net worth, net income, a combination thereof, or other appropriate factors. 15 U.S.C. § 632(a)(2)(A)&(B).

SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS). NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800) 553-6847 or 1(703) 605-6000; or via the Internet at http://www.ntis.gov/products/naics.aspx. The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes. A full table matching a size standard with each NAICS Industry or U.S. Industry code is also published annually by SBA in the Federal Register. 13 C.F.R. § 121.101(a-b).

A business is eligible for PPP loan if, on its own, it meets the size standard (employee-based or receipts-based) established by SBA for the NAICS code applicable to its primary industry, **AND together with its affiliates**, **it meets the size standard** (employee-based or receipts-based) established by SBA for the NAICS code applicable to either its primary industry or the primary industry of itself and its affiliates on a combined basis, whichever standard is higher. (Emphasis added). *See* 13 C.F.R. § 121.301(a-b).

The size status of an applicant for SBA financial assistance is determined as of the date the application for financial assistance is accepted for processing by SBA. 13 C.F.R. § 121.302.

SBA size standards are expressed either in number of employees or annual receipts in millions of dollars, unless otherwise specified. The number of employees or annual receipts indicates the maximum allowed for a concern and its affiliates to be considered small. The size standards described in 13 C.F.R. § 121.201 apply to all SBA programs unless otherwise specified within Title 13, Ch. 1, Part 121, Subpart A. 13 C.F.R. § 121.201.

Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists. Affiliation under any of the circumstances described in 13 C.F.R. § 121.301(f)(1-4) is sufficient to establish affiliation for applicants for SBA's Business Loan Programs, which includes the 7(a) Loan Program. 13 C.F.R. § 121.301(f).

It is the responsibility of the borrower to determine which entities (if any) are the borrower's affiliates and determine the employee headcount of the borrower and its affiliates. Lenders are permitted to rely on borrowers' certifications.[10] Lenders may accept and rely on signatures from a

---

[10] PPP Loan FAQs, No. 4.

single individual who is authorized to sign on behalf of the borrower.[11] Here, the Petitioners certified their PPP eligibility on the PPP Borrower Application Forms 2483 submitted to the Lender. (AR pp. 1-637).

The joint stipulations of the parties reflect the collective Petitioners were deemed a small-business concern after application of SBA's alternative size standards. This means the Petitioners, as a group, were eligible for one of SBA's 7(a) loan programs, to-wit: PPP. The sole issue in dispute is whether the $20,000,000.00 PPP corporate group maximum loan limitation is applicable to the Petitioners.

On April 3, 2020, SBA published "Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program" to assist PPP applicants/borrowers in understanding the application of SBA's use of affiliation within PPP.[12] SBA explicitly noted the four of the affiliation tests set forth in 13 C.F.R. § 121.301(f) "based on control apply to participants" in PPP.[13] It was clear, prior to submitting borrower applications, the Petitioners were subject to at least four of SBA's 7(a) loan program affiliation rules.

Since 1996, SBA policy has been that the aggregate amount of the SBA portions of all loans to a single Borrower, including the Borrower's affiliates as defined in 13 C.F.R. § 121.301(f), must not exceed a guaranty amount as otherwise authorized by statute for a specific program. 13 C.F.R. § 120.151 ( *See* 61 FR 3235, Jan. 31, 1996, as amended at 68 FR 51680, Aug. 28, 2003; 76 FR 63546, Oct. 12, 2011; 81 FR 41428, June 27, 2016). In furtherance of this policy, SBA's SOP (effective April 1, 2019) addresses how maximum loan limitation amounts are determined for a small-business concern with affiliates. Specifically, SBA policy states: "**If affiliation exists, SBA's loan maximums apply to the Applicant, including all affiliates, as if all were a single business**." (Emphasis added). SOP 50 10 5(K), Part 2, Section B, Ch. 3, 2.a.[14][15]

Here, the CARES Act created a general maximum loan limitation for individual borrowers, but also authorized the Administrator to set SBA's guaranty of PPP loans. It is important to note that the Administrator's express authority under Section 1102 of the CARES Act to guarantee PPP loans is marked by the term **"may".** The Administrator exercised this authority within IFR #7 and created a $20,000,000.00 corporate group maximum loan limitation, as otherwise authorized by statute.

SBA has denied the Petitioners loan forgiveness applications by applying the existing 7(a) loan program policy wherein applicants that are affiliated to meet the definition of a small-business concern remain together, as a group, in applying a maximum loan limitation.

---

[11] PPP Loan FAQs, No. 11.

[12] https://www.sba.gov/sites/default/files/2020-06/Affiliation%20rules%20overview%20%28for%20public%29%20v2-508.pdf

[13] Of note, the four tests applicable to PPP are the same as appearing in 13 C.F.R. § 121.301(f)(1-4).

[14] SBA's Standard Operating Procedures (SOP) are issued and revised by SBA from time to time. SOPs are publicly available on SBA's Web site at http://www.sba.gov. 13 C.F.R. § 120.10.

[15] https://www.sba.gov/sites/default/files/2019-02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20paste.pdf

Through IFR #7, SBA has identified this grouping as a corporate group. The Petitioners should have been aware, through review of existing SBA 7(a) loan program regulations/policy, that by qualifying as a small-business concern after application of the affiliation rules, the loan limitations set forth in IFR #7 would be applied to them, as a group. Here, that limitation was set at $20,000,000.00. As such, the meaning of corporate group in IFR #7 has the same meaning as affiliate under existing 7(a) loan program policy.

The final SBA loan review decision relied upon this existing policy. Prior to issuing the decision, SBA found "the 'Naftali Simcha Family et al' (Petitioners) are one single corporate group via the 100% common ownership of Naftali Zanziper and Simcha Hyman (50% for each Petitioner). SBA interpreted the term corporate group to mean where a majority ownership by a common parent occurs either directly or indirectly. SBA finds that a common parent, for the purposes of PPP financing, can be defined as a being a corporation, trust or person(s.) When a corporation or trust has ownership, an in-depth review of the ownership of the corporation or trust should be completed to determine if an individual(s) has an indirect ownership that establishes a corporate group. Naftali Zanziper and Simcha Hyman each owns 50% of each business directly or indirectly and combined they have a majority ownership for the corporate group which overlaps in all 84 loans. While the affiliated group of Naftali Zanziper and Simcha Hyman are eligible for PPP financing based on the Alternative Size Standard, they exceed the limit of $20,000,000 for a single corporate group established in IFR #7 - Interim Final Rule on Corporate Groups and Non-Bank and Nonlnsured Depository Institution Lenders." (AR pg. 649).

The AR reflects the Petitioners, as affiliated under 13 C.F.R. § 121.301(f) with 46 other entities (84 PPP loans total) received $44,983,180.44 in aggregate PPP loan proceeds. Prior to the disbursement of Petitioners' loans, entities affiliated with the Petitioners had already obtained funding of at least 36 PPP loans totaling more than $20,000,000. (AR pp. 639-644).

As it directly relates to the Petitioners argument, SBA did not explicitly define the term corporate group within IFR #7 (or any other PPP related publication), but the meaning of the term can easily be derived from other SBA 7(a) loan program policy existing prior to the Petitioners receipt of these PPP loans. This policy can be seen through a plain reading of SOP 50 10 5(K) and Section 1102 of the CARES Act. When put together, the same clearly provide that when a 7(a) loan program applicant is required to affiliate entities to meet the definition of a small-business concern, the affiliated group of entities is carried forward when considering if any authorized maximum loan limitation has been reached.

Given the Petitioners eligibility under affiliation rules, as defined in 13 C.F.R. § 121.301(f), for these PPP loans, the aggregation of the Petitioners, as affiliates, is carried forward in evaluating whether the Petitioners reached the $20,000,000.00 PPP corporate group maximum loan limitation. The AR and Joint Stipulations reflect these Petitioners had already received $20,000,000.00 in PPP funds, thus were ineligible for the loans at issue.

Overall, the Petitioners are affiliates of each other, as defined by 13 C.F.R. § 121.301(f)(1-4). As of the date of applying for the PPP loans at issue, together with its affiliates, the Petitioners met the small-business concern alternative size standard. 13 C.F.R. § 121.301(a-

b). (Joint Stipulations). The Administrator created a maximum loan limitation for PPP by limiting SBAs guarantee of PPP loans exceeding $20,000,000.00 for corporate groups. Section 1102 of the CARES Act. As affiliation exists among the Petitioners, the PPP $20,000,000.00 corporate group maximum loan limitation applies to each Petitioner, as if all Petitioners were a single business, to-wit: a corporate group. SOP 50 10 5(K), Part 2, Section B, Ch 1: Basic 7(a) Loans, 1.c. At the time of applying for the PPP loans, the aggregate amount of the SBA portions of all PPP loans to the Petitioners, including all affiliates as defined in 13 C.F.R. § 121.301(f), exceeded the $20,000,000.00 maximum loan limitation otherwise authorized by IFR #7. *See* 15 U.S.C. 636(a)(36)(E)(ii). The Petitioners are a corporate group and were ineligible for the PPP loans at issue.

It was the responsibility of the Petitioners to determine which entities (if any) were their affiliates and certify the same to the Lender. The Petitioners did determine its affiliates, certified the same to the Lender, and met the definition of small-business concern. The Lender properly relied on the Petitioners certifications contained in the PPP Borrower Application Forms 2483 and 3508. Under IFR #7, it was also the Petitioners responsibility to notify the Lender if they had applied for or received PPP loans in excess of the $20,000,000.00 maximum loan limitation. The Petitioners determined the $20,000,000.00 corporate group maximum loan limitation was not applicable. This led the Petitioner to not execute the options available under IFR #7 to withdraw or request cancellation of any pending PPP loan applications or approved PPP loans not in compliance with the maximum loan limitation. SBA specifically advised the Petitioners that failure to do so would be regarded as a use of PPP funds for unauthorized purposes, and the loan will not be eligible for forgiveness.

SBA regulations provide that an ineligible borrower would not receive loan forgiveness under the CARES Act. *See* e.g. CARES Act § 1106(b), 134 Stat. at 298 (codified at 15 U.S.C. § 636(b))("An eligible recipient shall be eligible for forgiveness . . . .); Paycheck Protection Program-Requirements-Loan Forgiveness, 85 Fed. Reg. 33004, 33005 (May 28, 2020) ("If SBA determines in the course of its review that the borrower was ineligible for the Wells Fargo Loan . . . the loan will not be eligible for loan forgiveness."); Paycheck Protection Program-Loan Forgiveness Requirements and Loan Review Procedures as Amended by Economic Aid Act, 86 Fed. Reg. 8283, 8296 (February 3, 2021) (consolidates and restates multiple PPP Interim Final Rules regarding forgiveness requirements, including requirement that ineligible borrowers will not receive loan forgiveness).

The final SBA loan review decision held the Petitioners were ineligible for the PPP loans received having exceeded the $20,000,000.00 PPP corporate maximum loan limitation and precluded from loan forgiveness. Given the foregoing, the final SBA loan review decision did not commit error in determining the Petitioners were ineligible for the PPP loans and subsequently precluded from loan forgiveness. SBA did not commit error in denying loan eligibility or forgiveness. The final SBA loan review decisions are well supported by the records and devoid of any clear errors of law or fact. As such, the final SBA loan review decisions are **AFFIRMED**.

## CONCLUSION OF LAW

The Petitioners are part of a corporate group that was ineligible for PPP Loan Numbers 3123528607, 8306238609, 3200798601, 3015918609, 3124028601, 5169688603, 5975278603, 5035908602, 8192158610, 8162528602, 6531908606, 6327628608, 8074818606, 1946638705, 1825438708, 7988958604, 2869798805, 3383808800, 3097548608, 4967028604, 2971158808, 2614148709, 2614318701, 7659928605, 2617258702, 1383928704, 1472948701, 1470638709, 2382638703, 1635078706, 1703648703, 1299808700, 1535178704, 1581268708, 1935708707, 6580538609, & 1993548705 at the time of applying for each PPP loan. The Petitioners are ineligible for PPP loan forgiveness. The final SBA loan review decisions are not based on clear error of fact or law.

## ORDER

For the reasons discussed above, the appeal petitions remain **DENIED**.

SO ORDERED.

_____
**Brian J. Haring**
U.S. Administrative Law Judge