**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CASE NO. 1:23-CV-00129-MR**

|  |  |
|---|---|
| ACCORDIUS HEALTH AT ASHEVILLE, LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

**COMBINED MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................. 1

BACKGROUND .................................................................. 2

    SBA's § 7(a) Loan Program ........................................... 2

    The CARES Act and the PPP .......................................... 2

    Forgiveness of PPP Loans ............................................ 5

    The Corporate Group Rule ............................................ 6

    The Economic Aid Act ................................................ 7

    Plaintiffs and Their Claims ......................................... 8

STANDARD OF REVIEW .......................................................... 10

ARGUMENT .................................................................... 11

I.    PLAINTIFFS' STATUTORY-AUTHORITY CLAIM LACKS MERIT ...... 11

    A.    The Corporate Group Rule Is Authorized Under the CARES Act .................................................................. 12

    B.    Plaintiffs' Reading of the Act Is Flawed and Overlooks Key Terms. ............................................................... 15

    C.    The EAA Ratified the Corporate Group Rule. .................... 21

    D.    SBA's Construction Is at Least Reasonable, Warranting Deference .......................................................... 22

II.    SBA DID NOT VIOLATE APA RULEMAKING REQUIREMENTS. ....... 23

i

III.    SBA PROPERLY APPLIED THE CORPORATE GROUP RULE. .............25

    A.    Substantial Evidence Supports SBA's Finding of a Corporate Group ...................................................................................26

    B.    Plaintiffs' Counter-Arguments Are Without Foundation. ...................31

IV.    PLAINTIFFS ARE NOT ENTITLED TO THE RELIEF THEY SEEK ......33

    A.    Injunctive Relief Against SBA Is Barred. ...........................................33

    B.    The Court Lacks Jurisdiction Over Plaintiffs' Premature EAJA Request. ..............................................................................35

CONCLUSION ..................................................................................... 35

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*3V Sigma USA, Inc. v. Richardson*,
  2021 WL 809399 (D.S.C. Mar. 3, 2021) ............................................... 33

*Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*,
  609 F.3d 338 (4th Cir. 2010) ............................................... 12

*All. For Legal Action v. U.S. Army Corps of Eng'rs*,
  314 F. Supp. 2d 534 (M.D.N.C. 2004) ............................................... 26

*Bailey v. Broder*,
  1998 WL 13827 (S.D.N.Y. Jan. 15, 1998) ............................................... 28

*Barnhart v. Peabody Coal Co.*,
  537 U.S. 149 (2003) ............................................... 24

*Bianchi v. Midtown Reporting Serv., Inc.*,
  103 A.D. 3d 1261 (N.Y. App. 2013) ............................................... 28

*Biden v. Texas*,
  597 U.S. 785 (2022) ............................................... 12

*Bro. Petroleum, LLC v. United States*,
  569 F. Supp. 3d 405 (E.D. La. 2021) ............................................... 19

*Broaddus v. U.S. Army Corps of Eng'rs*,
  380 F.3d 162 (4th Cir. 2004) ............................................... 35

*Bruckner Truck Sales, Inc. v. Guzman*,
  2023 WL 8606761 (N.D. Tex. Dec. 12, 2023), *recon. denied*, 2024 WL
  903441 (N.D. Tex. Feb. 27, 2024) ............................................... 19, 22

*CADLink Am., Inc. v. Jaddou*,
  2023 WL 8936345 (W.D.N.C. Dec. 27, 2023) ............................................... 10, 26, 33

*Capizzi v. Brown Chiarri LLP*,
  194 A.D. 3d 1457 (N.Y. App. 2021) ............................................... 27, 28

*Cela v. Garland*,
  75 F.4th 355 (4th Cir. 2023) ............................................... 12

iii

*Chevron U.S.A. Inc. v. NRDC*,
467 U.S. 837 (1984) ........................................................ 11

*Clear Sky Car Wash LLC v. City of Chesapeake, Va.*,
743 F.3d 438 (4th Cir. 2014) ........................................... 20

*Connors v. Ryan's Coal Co., Inc.*,
923 F.2d 1461 (11th Cir. 1991) ........................................ 27

*Culbertson v. Berryhill*,
139 S. Ct. 517 (2019) ...................................................... 23

*Czernicki v. Lawniczk*,
74 A.D. 3d 1121 (N.Y. App. 2010) ................................... 27

*D.V. Diamond Club of Flint, LLC v. SBA*,
960 F.3d 743 (6th Cir. 2020) ....................................... 18, 19

*DACO Investments, LLC v. SBA*,
2024 WL 750594 (W.D. La. Feb. 2, 2024) ................. 12, 13, 19

*Defy Ventures, Inc. v. SBA*,
469 F. Supp. 3d 459 (D. Md. 2020) ................................. 19

*Dep't of the Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999) ........................................................ 34

*Diocese of Rochester v. SBA*,
466 F. Supp. 3d 363 (W.D.N.Y. June 10, 2020) ............... 19

*Duncan v. Furrow Auction Co.*,
564 F.2d 1107 (4th Cir. 1977) ......................................... 34

*Ecomac USA, LLC v. USCIS*,
2018 WL 3660200 (W.D.N.C. Aug. 2, 2018) ............... 10, 11

*EEOC v. Baltimore Cnty.*,
904 F.3d 330 (4th Cir. 2018) .......................................... 16

*Entergy Corp. v. Riverkeeper, Inc.*,
556 U.S. 208 (2009) ................................................ 12, 19, 20

iv

*Expedient Servs., Inc. v. Weaver*,
   614 F.3d 56 (5th Cir. 1980) ............................................................... 34

*FEC v. Akins*,
   524 U.S. 11 (1998) ........................................................................... 34

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002) ........................................................................ 20

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*,
   559 U.S. 280 (2010) ........................................................................ 16

*Grant v. City of Roanoke*,
   265 F. Supp. 3d 654 (W.D. Va. 2017)................................................20

*Griffin Energy, Inc. v. Evans*,
   85 A.D. 3d 1564 (N.Y. App. 2011) ................................................... 27

*Holland v. Pardee Coal Co.*,
   269 F.3d 424 (4th Cir. 2001) ........................................................... 24

*Hosh. v. Lucero*,
   680 F.3d 375 (4th Cir. 2012) ........................................................... 24

*Hosp. for Special Surgery v. Becerra*,
   2023 WL 5448017 (D.D.C. Aug. 24, 2023) ...................................... 23

*In re Archbishop of Agaña*,
   2021 WL 1702311 (D. Guam Feb. 23, 2021) .................................... 19

*In re Bernard L. Madoff Inv. Sec. LLC*,
   2023 WL 5439455 (2d Cir. 2023) .................................................... 28

*In re Gateway Radiology Consultants, P.A.*,
   983 F.3d 1239 (11th Cir. 2020) ................................................. *passim*

*In re Lan Assocs. XI, L.P.*,
   192 F.3d 109 (3d Cir. 1999) ...................................................... 13, 16

*In re Penobscot Valley Hospital*,
   2020 WL 3032939 (Bankr. D. Me. June 3, 2020) ............................. 19

v

*In re Vestavia Hills, Ltd.*,
630 B.R. 816 (Bankr. S.D. Cal. 2021) ............................................................. 19

*In re Williams*,
330 F.3d 277 (4th Cir. 2003) ............................................................. 24

*INS v. Orlando Ventura*,
537 U.S. 12 (2002) ............................................................. 33

*J.C. Driskill, Inc. v. Abdnor*,
901 F.2d 383 (4th Cir. 1990) ............................................................. 34

*Lane v. Peña*,
518 U.S. 187 (1996) ............................................................. 34

*LIT Ventures, LLC v. Carranza*,
457 F. Supp. 3d 906 (D. Nev. 2020) ................................................ 14, 15, 23

*Loper Bright Enterprises v. Raimondo*,
143 S. Ct. 2429 (May 1, 2023) ............................................................. 12

*Lorillard v. Pons*,
434 U.S. 575 (1978) ............................................................. 21, 22

*Melkonyan v. Sullivan*,
501 U.S. 89 (1991) ............................................................. 35

*Montefiore Med. Ctr. v. Local 272 Welfare Fund*,
2017 WL 1194704 (S.D.N.Y. Mar. 31, 2017) ................................................ 13

*Mylan Pharms., Inc. v. U.S. Food & Drug Admin.*,
454 F.3d 270 (4th Cir. 2006) ............................................................. 11

*Nat'l Audubon Soc'y v. U.S. Army Corps of Eng'rs*,
991 F.3d 577 (4th Cir. 2021) ............................................................. 25

*Nat'l Fed'n of the Blind v. FTC*,
420 F.3d 331 (4th Cir. 2005) ............................................................. 21

*PBGC v. Beverley*,
404 F.3d 243 (4th Cir. 2005) ............................................................. 27

vi

*PDS Consultants, Inc. v. U.S.*,
907 F.3d 1345 (Fed. Cir. 2018) ................................................ 31, 32

*Perez Vasquez v. Garland*,
4 F.4th 213 (4th Cir. 2021) .................................................. 12

*Pharaohs GC, Inc. v. U.S. SBA*,
990 F.3d 217 (2nd Cir. 2021) ............................................... 18

*Prestol Espinal v. Att'y Gen.*,
653 F.3d 213 (3d Cir. 2011) ................................................. 20

*Qwest Commc'ns Corp. v. City of Greensboro*,
440 F. Supp. 2d 480 (M.D.N.C. 2006) ....................................... 20

*N. Haven Bd. of Educ. v. Bell*,
456 U.S. 512 (1982) ...................................................... 21, 22

*Santana v. Holder*,
731 F.3d 50 (1st Cir. 2013) ................................................. 20

*SBA v. McClellan*,
364 U.S. 446 (1960) ...................................................... 15

*SBA v. Roman Catholic Church of Archdiocese of Santa Fe*,
632 B.R. 816 (Bankr. D.N.M. 2021) ........................................ 19

*Springfield Hosp., Inc. v. Guzman*,
28 F.4th 403 (2d Cir. 2022) ................................................ 22

*Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*,
2023 WL 5489028 (E.D. Tex. Aug. 24, 2023) ................................. 13

*Tradeways, Ltd. v. U.S. Dep't of the Treas.*,
2020 WL 3447767 (D. Md. June 24, 2020) ..................................... 19

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*,
10 F.4th 869 (D.C. Cir. 2021) ............................................. 24, 25

*Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*,
40 F.4th 646 (D.C. Cir. 2022) ............................................. 25

vii

*Turkiye Halk Bankasi A.S. v. United States*,
598 U.S. 264 (2023) ........................................ 16

*Union Carbide Corp. v. Montell N.V.*,
1998 WL 293991 (S.D.N.Y. June 5, 1998) ..................... 28

*United States v. Texas*
599 U.S. 670 (2023) ........................................ 34

*Univs. Rsch. Ass'n, Inc. v. Coutu*,
450 U.S. 754 (1981) ........................................ 20

*Utility Air Regulatory Grp. v. EPA*,
573 U.S. 302 (2014) ........................................ 15

*W. Va. Highlands Conservancy, Inc. v. Norton*,
343 F.3d 239 (4th Cir. 2003) ............................... 34

*Appalachian Voices v. State Water Control Bd.*,
912 F.3d 746 (4th Cir. 2019) .............................. 25-26

*Webster v. Doe*,
486 U.S. 592 (1988) ........................................ 15

*Widerman Malek P.L. v. Carranza*,
2020 WL 6748083 (M.D. Fla. June 22, 2020) ............ 14, 15, 23

*Xpress Grp., Inc. v. Cuccinelli*,
2022 WL 433482 (W.D.N.C. Feb. 10, 2022) ............... 25, 26

*Young v. Barnhart*,
284 F. Supp. 2d 343 (W.D.N.C. 2003) ....................... 26

*Zander v. Lappin*,
2011 WL 2681124 (E.D.N.C. July 8, 2011) ................... 35

## STATUTES

5 U.S.C. § 553 ........................................ 4, 8, 24
5 U.S.C. § 706 ........................................ 10, 25
15 U.S.C. § 632 ........................................ 2
15 U.S.C. § 634 ........................................ 2, 14, 34

15 U.S.C. § 636 ................................................................................. *passim*

15 U.S.C. § 636m ................................................................... 5, 6, 21

15 U.S.C. § 9009 .............................................................................. 14

15 U.S.C. § 9012 .................................................................. 4, 14, 24

28 U.S.C. § 2412 .............................................................................. 35

Pub. L. No. 116-14, 134 Stat. 660 ................................................ 7

Pub. L. No. 116-136, 134 Stat. 281 .............................. *passim*

Pub. L. No. 116-139, 134 Stat. 620 ................................................ 5

Pub. L. No. 116-260, 134 Stat. 1182 .............................................. 7

Pub. L. No. 117-2, 135 Stat. 4 ........................................................ 5

NC ST § 57D-3-20 ..........................................................................30

NC ST § 57D-1-03 ..........................................................................30

NY P'ship § 10 ................................................................................27

KRS § 275.165 ................................................................................30

KRS § 275.175 .............................................................................. 30

KRS § 275.200 .............................................................................. 30

KRS § 275.205 ................................................................................30

KRS § 275.210 ................................................................................30

KRS § 275.310 .............................................................................. 30

SC Code § 33-44-101 ................................................................... 30

SC Code § 33-44-402 ....................................................................30

SC Code § 33-44-404 ................................................................... 30

SC Code § 33-44-405 ................................................................... 30

T.C.A.§ 48-249-102 ..................................................................... 30

T.C.A.§ 48-249-301 ..................................................................... 30

T.C.A.§ 48-249-305 ..................................................................... 30

T.C.A.§ 48-249-401 ......................................................................30

VA Code § 13.1-1002 ....................................................................30

VA Code § 13.1-1022 ................................................................... 30

VA Code § 13.1-1027 ................................................................... 30

VA Code § 13.1-1029 ................................................................... 30

VA Code § 13.1-1030 ................................................................... 30

## REGULATIONS

13 C.F.R. § 120.100 ......................................................................... 2

13 C.F.R. § 121.301 ........................................................................ 32

**PAGE(S)**

48 C.F.R. §§ 4.900-4.904 ........................................ 31

48 C.F.R. § 4.901 .............................................. 31, 32

85 Fed. Reg. 20,811 (Apr. 15, 2020) ....................... 3, 4

85 Fed. Reg. 26,324 (May 4, 2020) ......................... *passim*

85 Fed. Reg. 33,010 (June 1, 2020) ............................ 6

85 Fed. Reg. 38,304 (June 26, 2020) ......................... 6

## OTHER AUTHORITIES

59A Am. Jur. 2d Partnership (May 2023 Update) .................. 28

J. William Callison & Maureen A. Sullivan, Partnership Law & Practice (Nov. 2022 Update)............................................27, 28

J. William Callison & Maureen A. Sullivan, Limited Liability Companies: A State-by-State Guide to Law & Practice (Aug. 2022 Update) ....................30, 32

Nicholas G. Karambelas, Limited Liability Companies: Law, Practice & Forms (Feb. 2021 Update) ......................................29, 30, 32

x

**INTRODUCTION**

To meet extraordinarily high demand among small businesses for Paycheck Protection Program ("PPP") loans at the height of the coronavirus pandemic, the Small Business Administration ("SBA") exercised its authority under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281, to adopt its Corporate Group Rule, 85 Fed. Reg. 26,324 (May 4, 2020), to make PPP loans more broadly available to the small businesses most in need. Plaintiffs contest SBA's application of the Rule to deny forgiveness of their PPP loans, but their claims lack merit.

As discussed below, the CARES Act (and the Small Business Act) conferred ample discretionay on SBA to promote achievement of the PPP's objectives through the Corporate Group Rule. The CARES Act also conferred "emergency" authority on SBA to make rules implementing the PPP without following the time-consuming notice-and-comment procedures of the Administrative Procedure Act ("APA"). And substantial record evidence supports SBA's finding that the Plaintiffs are all part of the same corporate group, their common parent being the *de facto* partnership between Messrs. Simcha Hyman and Naftali Zanziper. Furthermore, the Small Business Act bars the injunctive relief Plaintiffs seek.

Accordingly, Defendants are entitled to judgment as a matter of law.

# BACKGROUND

## SBA's § 7(a) Loan Program

Section 7(a) of the Small Business Act ("§ 7(a)") "empower[s]" SBA to guarantee general-purpose loans to small businesses. 15 U.S.C. § 636(a). The Act also empowers SBA, "[i]n the performance of … [its] functions, powers, and duties vested" under § 7(a) to "take any and all actions" the agency "determines … are necessary or desirable in making, servicing, compromising, modifying, liquidating, or otherwise dealing with or realizing on loans[.]" *Id.* § 634(b)(7).

Ordinarily, to qualify for a § 7(a) loan an applicant must, *inter alia*, meet size standards for a "small" business set forth in the Act and SBA rules, usually stated in terms of the aggregate number of employees, or annual receipts, of the borrower and its affiliates. 15 U.S.C. § 632(a)(1), (2); 13 C.F.R. §§ 120.100(d), 121.201. The statute does not prescribe a formula for the exact amount of a § 7(a) loan, but states that § 7(a) loans shall be no greater than $5,000,000, and the amount guaranteed by SBA no greater than $3,750,000. 15 U.S.C. § 636(a)(3)(A). Typically, SBA guarantees loans by private lenders rather than disburse funds directly. *See In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1248 (11th Cir. 2020).

## The CARES Act and the PPP

The CARES Act became law on March 27, 2020, providing emergency assistance to individuals, families, businesses, and health-care providers coping with

2

the coronavirus pandemic. *See* 85 Fed. Reg. 20,811, 20,811-12 (Apr. 15, 2020). Among the Act's many measures, at issue here is the PPP, CARES Act § 1102, enacted to extend relief to small businesses experiencing economic hardship due to the pandemic. *See* 85 Fed. Reg. at 20,811.

In particular, CARES Act § 1102(a)(2) temporarily expanded SBA's business-loan authority by adding a new paragraph (36) to § 7(a), 15 U.S.C. § 636(a)(36). *See Gateway Radiology,* 983 F.3d at 1249 ("[T]he PPP was not created as a standalone program; instead it was added into § 7(a)[.]"). Subparagraph 636(a)(36)(B) stated that "[e]xcept as otherwise provided in this paragraph, the [SBA] *may* guarantee [PPP] loans," issued by private lenders, "under the same terms, conditions, and processes as [other] loan[s] made under" § 7(a). 15 U.S.C. § 636(a)(36)(B) (emphasis added); *see id.* § 636(a)(36)(F)(ii). The statute then detailed the ways in which PPP loans were to differ from other § 7(a) loans. *Id.* § 636(a)(36)(D)-(W).

Among these differences, the PPP authorized SBA to guarantee loans to nonprofits, veterans groups, Tribal concerns, and self-employed persons, in addition to small-business concerns, *id.* § 636(a)(36)(D)(i), (ii); and relaxed size limitations to allow businesses with as many as 500 employees (or more, in certain industries) to receive assistance, *id.* § 636(a)(36)(D)(i)(I). The CARES Act also enlarged the $5,000,000 cap applicable to other § 7(a) loans, providing that the "*maximum amount*" of a PPP loan was to be "*the lesser of*" (1) the borrower's average monthly

3

payroll costs for the preceding year, multiplied by 2.5, plus the balance of the borrower's eligible SBA disaster loans (hereinafter, the "payroll-based formula," or "amount"); or (2) $10,000,000. *Id.* § 636(a)(36)(E) (emphasis added).

Congress initially authorized SBA to guarantee up to $349 billion in PPP loans by June 30, 2020. CARES Act § 1102(b)(1); 15 U.S.C. § 636(a)(36)(A)(ii)-(iii), (B). To ensure that SBA could make such an enormous sum available to small businesses in so short a time, Congress instructed SBA to issue rules implementing the PPP "[n]ot later than 15 days after" the CARES Act's enactment, 15 U.S.C. § 9012, described as "warp speed for regulatory action," *Gateway Radiology*, 983 F.3d at 1262.[1] To make that feat possible, Congress also instructed SBA to issue these rules without regard to APA notice-and-comment procedures. 15 U.S.C. § 9012 (citing 5 U.S.C. § 553(b)). Exercising this emergency authority, SBA issued 25 sets of rules between April 15 and October 19, 2020, to ensure the PPP's immediate launch and thereafter to timely address issues of importance to borrowers and lenders, and to the program's fiscal integrity, as they emerged in real time. *See* Exh. A, hereto.[2]

---

[1] To that end Congress also situated the PPP within the existing § 7(a) infrastructure, rather than construct a new program from the ground up; directed that additional non-§ 7(a) lenders be allowed to participate in the PPP; and mandated that all PPP lenders be given "delegated authority" to make and approve PPP loans without prior SBA review. *Id.* § 636(a)(36)(F)(ii)(I), (iii).

[2] In light of Congress's clear intent and the needs of small businesses for immediate assistance, SBA also established a highly streamlined PPP loan-origination process based on borrower self-certifications of eligibility. *See* 85 Fed. Reg. at 20,812, 20,814-16; SBA

4

SBA launched the PPP on April 3, 2020. SBA Press Release No. 20-30. Although the program's termination date was June 30, 2020, CARES Act § 1102(b), so great was the demand for PPP financing that the entire $349 billion authorized by Congress was exhausted in less than two weeks' time, by April 16, 2020. *See* SBA Press Release No. 20-32; *see also* SBA, Paycheck Protection Program (PPP) Report 2 (May 30, 2020) (showing PPP lenders processed nearly 4.5 million loans in just the first two months of the program). Congress authorized another $310 billion in PPP loans on April 24, 2020. Pub. L. No. 116-139, 134 Stat. 620, § 101(a)(1). Ultimately Congress authorized SBA to guarantee more than $813 billion in PPP loans, Pub. L. No. 117-2, 135 Stat. 4, § 5001(d)(1), and nearly 12 million PPP loans were approved.

**Forgiveness of PPP Loans**

CARES Act § 1106 also provides for the forgiveness of PPP loans, stating that "[a]n eligible recipient" of a PPP loan "shall be eligible for forgiveness" "in an amount equal to" the sum of its covered payroll costs and other allowable expenses, 15 U.S.C. § 636m(b), but not to exceed the principal amount of the loan, *id.* § 636m(d)(1). To obtain forgiveness, an eligible borrower submits an application

---

Form 2483 (Exh. B, hereto). Because borrowers' applications and supporting documentation were maintained by lenders, not sent to SBA, *see* 85 Fed. Reg. at 20,814, SBA did not (and as a practical matter could not) make independent PPP borrower-eligibility determinations at the loan-origination stage.

5

and supporting documentation to its lender, which then determines if the borrower is entitled to forgiveness under the Act, and, if so, submits a request for payment to SBA. 15 U.S.C. § 636m(g); *see* 85 Fed. Reg. 38,304, 38,306 (June 26, 2020). SBA then remits the appropriate amount to the lender—subject, however, to any SBA review of the loan. 15 U.S.C. § 636m(c)(3); 85 Fed. Reg. at 38,306.

The simplified PPP loan application process, n.2, *supra*, combined with the large number of first-time SBA borrowers and lenders lacking familiarity with SBA rules, created a heightened risk of loans being erroneously sought and approved. To maintain the PPP's fiscal integrity, SBA implemented a system of PPP loan review. If the agency determines during a review that "an action by the borrower has resulted in its receipt of a PPP loan that did not meet program requirements," it denies forgiveness of the loan. 85 Fed. Reg. 33,010, 33,012-13 (June 1, 2020)).

### The Corporate Group Rule

Among the 25 sets of rules SBA issued under CARES Act authority, on May 4, 2020, SBA published the so-called "Corporate Group Rule" at issue here. 85 Fed. Reg. 26,324 (May 4, 2020). Under the Rule, "businesses that are part of a single corporate group shall in no event receive more than $20,000,000 of PPP loans in the aggregate." *Id.* 26,325. The Rule defines a "corporate group" as businesses "owned, directly or indirectly, by a common parent." *Id.* The Rule advised borrowers that loans received in disregard of its terms "will not be eligible for forgiveness." *Id.*

6

SBA explained the Rule's purpose was to "preserve the limited resources available to the PPP … in light of the previous lapse of PPP appropriations and the high demand for PPP loans[.]" *Id.* SBA "determined that limiting the amount of PPP loans that a single corporate group may receive w[ould] promote the availability of PPP loans to the largest possible number of borrowers, consistent with the CARES Act." *Id.* SBA concluded that it had authority to issue an "aggregate limitation" on the amount of PPP loans issued to a single corporate group, because the terms of the CARES Act "specify a 'maximum'—but not a minimum—loan amount" for each borrower that SBA "may" guarantee. *Id.* n. 1 (citing 15 U.S.C. § 636(a)(36)(B), (E)).

**The Economic Aid Act**

The PPP expired on August 8, 2020, *see* Pub. L. No. 116-14, 134 Stat. 660, but the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act, (Consolidated Appropriations Act, 2021, Div. N, Title III, Pub. L. No. 116-260, 134 Stat. 1182, 1993-2052) (Dec. 27, 2020)) (the "Economic Aid Act," or "EAA"), reauthorized and extended the program to March 31, 2021, and added another $147.5 billion in loan authority. EAA § 323(a)(1). The EAA also made changes concerning eligibility and uses of loan proceeds,[3] and it prescribed a "maximum loan amount" calculation for PPP loans issued to farmers and ranchers, similar to the payroll-based

---

[3] *See* EAA § 304(a), (b)(2) (adding to the permissible uses of loan proceeds); *id.* § 310 (clarifying and adding to limitations on borrower eligibility); *id.* §§ 316-18 (extending eligibility to housing cooperatives, news organizations, and destination marketing organizations; *id.* § 319 (prohibiting use of loan proceeds for lobbying activities).

7

formula under § 636(a)(36)(E). *Id.* § 313(a)(2) (adding 15 U.S.C. § 636(a)(36)(V)). The EAA also authorized SBA to guarantee so-called "second-draw" PPP loans to certain businesses that obtained "first-draw" PPP loans under the CARES Act, EAA § 311(a) (adding 15 U.S.C. § 636(a)(37)), under the same terms and conditions as first-draw loans, except as the EAA otherwise provided. 15 U.S.C. § 636(a)(37) (B). The EAA established a "maximum loan amount" for second-draw PPP loans based on the CARES Act's payroll-based formula for first-draw loans, but with a smaller cap of $2,000,000. *Id.* § 636(a)(37)(C).

The EAA also conferred "emergency rulemaking authority" on SBA, directing it to issue regulations implementing the EAA's amendments "[n]ot later than 10 days after" the EAA's enactment, without regard to the notice-and-comment requirements of § 553(b). EAA § 303. Between January 14 and September 16, 2021, SBA issued an additional seven (7) sets of PPP rules under this authority. *See* Exh. A, hereto.

**Plaintiffs and Their Claims**

Plaintiffs in these cases are 48 limited liability companies operating in five states as skilled nursing facilities. Each is owned in equal measure (50 percent each) by two individuals, Simcha Hyman and Naftali Zanziper. Administrative Record, Docs. 24-26 ("AR") 673-75. Plaintiffs, however, are part of a larger agglomeration of 343 limited liability companies owned by Messrs. Hyman and Zanziper. *See id.* 680, 695-705. Among these companies is the Portopiccolo Group, LLC, *see id.* 672,

8

which according to its website (*https://theportopiccolo group.com/what-we-do/*) is a business-investment company committed to "realizing the growth potential" of the companies in its "portfolio," including providers of "healthcare services." Mr. Hyman is the "CEO" of the Portopiccolo Group, and Mr. Zanziper its President. *See* AR 1116. Eighty-four of these Hyman-Zanziper companies, including Plaintiffs, applied for and received first-draw PPP loans, totaling almost $45 million. AR 670, 672-75, 708. All 84 applied for loan-forgiveness. *See id.* 670. SBA granted forgiveness of the first 36 loans; but concluding that the Hyman-Zanziper family of companies constituted a single corporate group, SBA denied forgiveness of the 48 loans issued to Plaintiffs, because they exceeded the aggregate $20 million limit allowed under the Corporate Group Rule. *Id.* 10-11, 670-71, 680-81.

All 48 Plaintiffs appealed to SBA's Office of Hearings and Appeals ("OHA"), which consolidated 38 of the appeals in one proceeding and the remaining 10 in another. *Id.* 23-24, 822-23. The administrative law judges in both proceedings denied Plaintiffs' appeals. *Id.* 745-63, 1081-97. Plaintiffs then brought 48 separate suits in ten district courts across their five home states, including this Court, seeking review of SBA's decisions. Following transfer of the out-of-district cases here, the court consolidated all 48 actions with the instant case. Doc. 29.

In support of summary judgment, Plaintiffs argue (1) that the Corporate Group Rule exceeds SBA's statutory authority, Pls.' Mem. (Doc. 33) 8-16; (2) that SBA

9

improperly issued the Rule without following APA notice-and-comment procedures, *id.* 16-17; and (3) that Plaintiffs are not part of a corporate group within the Rule's meaning, *id.*, 17-24. As discussed below, these arguments should be rejected.

## STANDARD OF REVIEW

"Under the APA, a court may hold unlawful and set aside agency action only if it finds the agency's action to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *CADLink Am., Inc. v. Jaddou*, 2023 WL 8936345, at *1 (W.D.N.C. Dec. 27, 2023) (quoting 5 U.S.C. § 706(2)(A)).[4] The court "does not resolve factual questions, but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* at *2. Therefore, summary judgment "serves as the mechanism" for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Ecomac USA, LLC v. USCIS*, 2018 WL 3660200, at **1-2 (W.D.N.C. Aug. 2, 2018).

## ARGUMENT

## I. PLAINTIFFS' STATUTORY-AUTHORITY CLAIM LACKS MERIT.

Plaintiffs first contend that the ceiling on PPP loans set by § 636(a)(36)(E) means "every statutorily qualified business concern was eligible for a PPP loan, up to $10 million." Pls.' Mem. 10. They conclude, therefore, that they are entitled to

---

[4] Internal citations and quotation marks are omitted throughout this brief unless noted.

forgiveness of their PPP loans, regardless of the Corporate Group Rule. *Id.* That contention is mistaken in at least three respects. First, it ignores the discretionary nature of SBA's authority to guarantee PPP loans under § 636(a)(36)(B). Second, it misconstrues the § 636(a)(36)(E) loan "maximum" that SBA "may" authorize under § 636(a)(36)(B) as an entitlement to receive the payroll-based loan amount, up to $10 million. And third, it mistakes the Corporate Group Rule as a limitation on PPP *eligibility* that contravenes the size criteria of § 636(a)(36)(D)(i).

When reviewing an agency's interpretation of a statute it is charged with administering, the court applies the *Chevron U.S.A.*, *Inc. v. NRDC*, 467 U.S. 837 (1984), framework. *See, e.g.*, *Mylan Pharms., Inc. v. U.S. Food & Drug Admin.*, 454 F.3d 270, 274-75 (4th Cir. 2006). First, the court must determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. But if "the statute is silent or ambiguous with respect to the specific issue," then the court proceeds to step two, where the question "is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. The agency's "view governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed most reasonable by the court[ ]."

*Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009); *see Perez Vasquez v. Garland*, 4 F.4th 213, 220 n.5 (4th Cir. 2021).[5]

## A.     The Corporate Group Rule Is Authorized Under the CARES Act.

Here, the plain terms of § 636(a)(36)(B) and (E) provide ample authority for SBA to adopt a regulation such as the Corporate Group Rule.

SBA's authority to guarantee PPP loans is located in § 636(a)(36)(B), which provides that SBA "*may* guarantee [PPP] loans under the same terms [and] conditions" as other § 7(a) loans, "[e]xcept as otherwise provided" in the ensuing provisions of § 636(a)(36) (emphasis added).  The word "may" in a statute "*clearly* connotes discretion."  *Biden v. Texas*, 597 U.S. 785, 802 (2022); *see also Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 342 (4th Cir. 2010) ("'[M]ay' typically indicates authorization without obligation" and "sometimes means 'won't.'").  Thus, just as SBA generally "is empowered" but not required to make or guarantee § 7(a) loans, 15 U.S.C. § 636(a); *see supra* at 2, the CARES Act grants SBA discretion, but does not require it, to guarantee PPP loans meeting the Act's criteria.  *See Gateway Radiology*, 983 F.3d at 1257 ("[T]he permissive word

---

[5] Plaintiffs remark that in *Loper Bright Enterprises v. Raimondo*, No. 22-451, 143 S. Ct. 2429 (May 1, 2023), the Supreme Court may this Term address the scope or validity of the *Chevron* framework.  Pls.' Mem. 9 n.4. That observation is of no consequence here, as the Fourth Circuit has continued to apply that framework even after the Supreme Court's grant of *certiorari* in *Loper Bright.  See Cela v. Garland*, 75 F.4th 355, 361 (4th Cir. 2023).

12

'may' vests the SBA with discretionary authority."); *DACO Investments, LLC v. SBA*, 2024 WL 750594, at *9 n.96 (W.D. La. Feb. 2, 2024) (same).

Among those criteria is § 636(a)(36)(E), providing that "the *maximum* [PPP] loan amount shall be *the lesser of*" a borrower's payroll-based amount or $10 million (emphasis added). Thus, § 636(a)(36)(E) does not mean that a PPP loan must be *equal to* the borrower's payroll-based amount, or $10 million, whichever is less. "A '[m]aximum' means 'the 'highest value or extreme limit,' ... or the 'highest *possible* magnitude or quantity of something ...'" *Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 2023 WL 5489028 at *8 (E.D. Tex. Aug. 24, 2023) (quoting Maximum, Oxford Eng. Dictionary Online (Dec. 2022 ed.)) (emphasis added); *see also Montefiore Med. Ctr. v. Local 272 Welfare Fund*, 2017 WL 1194704, at *5 (S.D.N.Y. Mar. 31, 2017) ("[t]he greatest possible quantity or degree," "[t]he highest attainable magnitude or quantity (of something)"; "[t]he greatest in quantity or value attainable in a given case") (citations omitted).

Thus, a statute setting a maximum award does not of its own force mean that such an award must always be made or even presumed correct. *See, e.g.*, *In re Lan Assocs. XI, L.P.*, 192 F.3d 109, 116 (3d Cir. 1999) (cap on bankruptcy trustee compensation "is not to be construed as an entitlement to the maximum fee specified"); *see also United States v. Modes, Inc.*, 17 C.I.T. 627, 635 (Ct. Int'l Trade 1993) (construing civil penalty statute that "establishes only a *maximum* penalty, but

makes no provision for a minimum penalty").  Hence, SBA correctly observed that § 636(a)(36)(E) "specified a 'maximum'—*but not a minimum*—[PPP] loan amount."  85 Fed. Reg. at 26,325 n.1 (emphasis added).

Read together, § 636(a)(36)(B) and (E) must be understood as establishing a ceiling—not a floor—on the size of the PPP loans that SBA is permitted—but not required—to authorize to any given borrowers.  The statute thus conferred on SBA ample discretion to exercise its rulemaking authority under 15 U.S.C. § 9012 to set a lower aggregate ceiling for borrowers constituting a single corporate group.  *See Widerman Malek P.L. v. Carranza*, 2020 WL 6748083 at *4 (M.D. Fla. June 22, 2020) (agreeing with *LIT Ventures, LLC v. Carranza*, 457 F. Supp. 3d 906, 911 (D. Nev. 2020), that the CARES Act, by using the phrase "shall be not more than" "in prescribing the amount of an EIDL grant afford[ed] the SBA discretion in awarding these advances as Congress only prescribed a cap on the amount rather than … a specific amount") (citing 15 U.S.C. § 9009(e)(3)).

Reinforcing that conclusion is 15 U.S.C. § 634(b)(7).  As noted above, at 2, § 634(b)(7) vests SBA with authority to "take any and all actions" it "determines … are necessary or desirable in  making …or otherwise dealing with" § 7(a) loans, which include loans made under the PPP.  *See Gateway Radiology,* 983 F.3d at 1256 (because "the PPP was not created as a standalone program but was added into the existing § 7(a) program," it is "subject[ ] … [to] existing SBA authority" under

14

§ 7(a)).  Thus, by situating the PPP within § 7(a), the CARES Act contemplated that SBA would exercise substantial discretion in fashioning "necessary or desirable" rules for "making" or "otherwise dealing with" PPP loans.  Indeed, by authorizing any rules that SBA "determines" are "desirable," and not simply rules rather that are objectively "necessary," Congress adopted a standard that "fairly exudes deference" to the agency.  *Webster v. Doe*, 486 U.S. 592, 600 (1988); *see SBA v. McClellan*, 364 U.S. 446, 447 (1960) (Congress conferred "extraordinarily broad powers" on SBA).

SBA's adoption of the Corporate Group rule as "necessary and appropriate" "[t]o preserve finite appropriations for PPP loans and [to] ensure broad access for eligible borrowers," "in light of the previous lapse of … appropriations and the high demand for PPP loans," 85 Fed. Reg. at 26,325 & n.1, fell easily within the broad discretion that Congress conferred in §§ 636(a)(36)(B) and (E), and § 634(b)(7). Boiled down to its essence, the Rule was an "unremarkable" exercise of discretion to "adopt policies to prioritize [agency] expenditures within the bounds established by Congress."  *Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 327 (2014).[6]

## B. Plaintiffs' Reading of the Act Is Flawed and Overlooks Key Terms.

Plaintiffs assert that the Corporate Group Rule "limits PPP loans in a way that is contrary to the CARES Act," contending that the Act precludes SBA from capping

---

[6] *See also Widerman Malek*, 2020 WL 6748083 at *4  (agreeing with *LIT Ventures*, 457 F. Supp. 3d at 911, that the CARES Act contemplated SBA's  exercise of similar discretion in administering the Economic Injury Disaster Loan program).

15

loans to individual borrowers at any amount less than $10 million. Pls.' Mem. 8-14. That contention is founded on isolated provisions that Plaintiffs misconstrue and take out of context, and is therefore incorrect.[7]

Plaintiffs first argue that § 636(a)(36)(E), read together with the criteria for size eligibility in § 636(a)(36)(D)(i), means that "*every* statutorily qualified business concern was eligible for a PPP loan, up to $10 million," and therefore that Plaintiffs are each entitled to full forgiveness of their PPP loans, regardless of the Corporate Group Rule. Pls.' Mem. 10 (emphasis added). Plaintiffs misread both provisions.

*First*, Plaintiffs misconstrue § 636(a)(36)(E). Although the statute provides that "the *maximum* … amount" of a PPP loan "shall be the lesser of" the payroll-cost amount, or $10 million (emphasis added), Plaintiffs read it to mean that a loan must be *equal to* a borrower's payroll-cost amount (though no more than $10 million), leaving SBA no discretion to set a lower aggregate cap for loans to a single corporate group. But, as explained above, at 13-14, that is plainly incorrect. A statute placing a cap on a fee, grant, or other award of funds is not naturally "construed as an entitlement to the maximum [amount] specified." *In re Lan Assocs.*, 192 F.3d at 116.

---

[7] *See Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023) (a court "must read the words Congress enacted in their context and with a view to their place in the overall statutory scheme"); *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 289-90 (2010) ("Courts have a duty to construe statutes, not isolated provisions."); *EEOC v. Baltimore Cnty.*, 904 F.3d 330, 333 (4th Cir. 2018) ("we read statutes as a whole").

16

That is all the more so when § 636(a)(36)(E) is read in tandem with § 636(a)(36)(B) and § 634(b)(7).  As discussed above, at 12-13, § 636(a)(36)(B), providing that SBA "may" but is not required to guarantee PPP loans, further rebuts Plaintiffs' reading of the CARES Act as a mandate that loans shall be no less than a borrower's payroll-cost amount (up to $10 million).  And the discretion conferred on SBA by § 634(b)(7) to "take any and all actions" the agency deems "necessary or desirable" in "making … or otherwise dealing with" § 7(a) loans, including PPP loans, also gave the agency leeway to set a cap on the aggregate amount in PPP loans that may be issued to a single corporate group.  *Supra* at 14-15.  Plaintiffs would simply have this Court ignore these provisions.

*Second*, the meaning of § 636(a)(36)(E) is unaltered  by 15 U.S.C. § 636(a)(36)(D)(i), which Plaintiffs also misconstrue.  Pls.' Mem. 11-12.   Clause 636(a)(36)(D)(i) provides that "in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business concern … shall be eligible to receive a [PPP] loan" if it employs no more than 500 individuals or meets the SBA size standard  for the applicant's industry.  According to Plaintiffs, § 636(a)(36)(D)(i) means that all businesses meeting its size criteria are eligible for a PPP loan, without leaving SBA discretion to deny loans to members of a corporate group that has exceeded the Rule's $20 million maximum.  Pls.' Mem. 11.

17

This argument confuses "eligib[ility] to receive a [PPP] loan," 15 U.S.C. § 636(a)(36)(D)(i), with a cap on the loan amount an eligible borrower may receive. A dollar limit on a loan is not a restraint on borrower eligibility. Likewise, the Corporate Group Rule is not a condition on PPP loan eligibility. Thus, if Messrs. Hyman and Zanziper had exercised restraint, and limited the size of the PPP loans each of their 84 companies requested so as to remain within the $20 million cap, then all of them (including Plaintiffs) could have been granted full loan forgiveness (assuming they otherwise satisfied loan-forgiveness requirements).

Moreover, the Second and Eleventh Circuits have persuasively rejected the argument, echoed here by Plaintiffs, that § 636(a)(36)(D)(i) impliedly precludes application of other SBA eligibility rules to the PPP, an argument those courts of appeals determined is "not tenable" and "illogical." *Pharaohs GC, Inc. v. SBA*, 990 F.3d 217, 227 (2d Cir. 2021); *Gateway Radiology*, 983 F.3d at 1258. Disregarding those cases, Plaintiffs misconstrue § 636(a)(36)(D)(i) by ignoring other CARES Act provisions and the context of the statutory scheme as a whole. Taken in context, § 636(a)(36)(D)(i) is properly understood not as setting forth the *exclusive* eligibility criteria for PPP loans, but only as expanding by size and type the class of entities to which SBA is authorized—but not required—to make PPP loans. *See Pharaohs GC*, 990 F.3d at 228; *Gateway Radiology*, 983 F.3d at 1256. Although Plaintiffs urge reliance on an interlocutory ruling by a divided Sixth Circuit motions panel in *D.V.*

18

*Diamond Club of Flint, LLC v. SBA*, 960 F.3d 743 (6th Cir. 2020), *see* Pls.' Mem. 11-12, the Second and Eleventh Circuit's contrary decisions represent the greater weight of authority on the proper understanding of § 636(a)(36)(D)(i). [8]

Plaintiffs next assert that Congress "did not give SBA discretion to decide on some lower maximum amount" because Congress "did not speak of a $20 million loan maximum for corporate groups." Pls.' Mem. 12. That "silence," they contend, is "determinative." *Id.* Again, Plaintiffs' argument overlooks the difference between a "maximum" amount and an entitlement, and neglects § 636(a)(36)(B) and § 634(b)(7), which expressly endowed SBA with broad discretion in administering the PPP, and equally broad authority to issue rules it deemed "necessary or desirable" to promote the program's purposes. It is on those expressions of congressional intent that the Corporate Group Rule is based, not legislative "silence."

Moreover, the precedents cited by Plaintiffs for the principle that legislative "silence is determinative," Pls.' Mem. 12-13, teach the opposite. For example,

---

[8] *See Tradeways, Ltd. v. U.S. Dep't of the Treas.*, 2020 WL 3447767 at *13 (D. Md. June 24, 2020); *Defy Ventures, Inc. v. SBA*, 469 F. Supp. 3d 459, 473-74, 476 (D. Md. 2020); *see also DACO Investments, LLC v. SBA*, 2024 WL 750594 at **6-11 (W.D. La. Feb. 22, 2024); *Bruckner Truck Sales, Inc. v. Guzman*, 2023 WL 8606761 at **4, 6 (N.D. Tex. Dec. 12, 2023) ("*Bruckner I*"), *reconsideration denied*, 2024 WL 903441 (N.D. Tex. Feb. 27, 2024) ("*Bruckner II*"); *accord Bro. Petroleum, LLC v. United States*, 569 F. Supp. 3d 405, 411-12 (E.D. La. 2021); *Diocese of Rochester v. SBA*, 466 F. Supp. 3d 363, 375-78 (W.D.N.Y. June 10, 2020); *SBA v. Archdiocese of Santa Fe*, 632 B.R. 816 (Bankr. D.N.M. 2021); *In re Vestavia Hills, Ltd.*, 630 B.R. 816 (Bankr. S.D. Cal. 2021); *In re Penobscot Valley Hospital*, 2020 WL 3032939 (Bankr. D. Me. June 3, 2020); *In re Archbishop of Agaña*, 2021 WL 1702311 (D. Guam Feb. 23, 2021).

19

*Entergy Corp.* 556 U.S. at 223, did not state that "statutory silence, when viewed in context, is best interpreted as limiting agency discretion." Pls.' Mem. 12. *Entergy Corp.* explained that "*sometimes* statutory silence, when viewed in context, is best interpreted as limiting agency discretion." 556 U.S. at 223 (emphasis added). And the Court construed the silence of the provision contested there not as denying discretion, but as a "refusal to tie the agency's hand." *Id.* at 222.

Plaintiffs also cite cases for the proposition that statutes "unambiguously" conferring "unequivocal" rights on individuals leave agencies no discretion, Pls.' Mem. 13 (citing *Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013) and *Prestol Espinal v. Att'y Gen.*, 653 F.3d 213 (3d Cir. 2011)), but those cases are inapt here. Subparagraph 636(a)(36)(E) confers on PPP borrowers no absolute right or entitlement to the "maximum loan amount." In analogous contexts, the Supreme Court has held that to confer "rights" a statute must contain "rights-creating" language "phrased with an unmistakable focus on the benefited class," rather than terms phrased as "a directive" to a federal agency "for the distribution of public funds."[9] Subparagraph 636(a)(36)(E) is clearly of the latter ilk. In conjunction with § 636(a)(36)(B), the statement in § 636(a)(36)(E) prescribing what the "maximum

---

[9] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002); *Grant v. City of Roanoke*, 265 F. Supp. 3d 654, 667–68 (W.D. Va. 2017); *see also Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438, 443 (4th Cir. 2014); *Qwest Commc'ns Corp. v. City of Greensboro*, 440 F. Supp. 2d 480, 487, 489 (M.D.N.C. 2006).

20

loan amount shall be" is properly understood as a directive to SBA that it "may" authorize no loan greater than the lesser of the borrower's payroll-based amount, or $10 million. *Compare* 15 U.S.C. § 636m(b) ("An *eligible recipient shall be eligible for forgiveness of* [a PPP] loan in an amount *equal to* the sum of the following costs incurred and payments …") (emphasis added).

Plaintiffs' contention that the CARES Act sets a *minimum* amount to which PPP borrowers are entitled cannot be squared with the Act's terms.

## C.     The EAA Ratified the Corporate Group Rule.

Even if the CARES Act left any question about authorization for the Corporate Group Rule, Congress later confirmed the Rule's validity in the Economic Aid Act. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *see also N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 535 (1982) ("Where an agency's statutory construction has been fully brought to the attention of the public and the Congress, and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned."); *Nat'l Fed'n of the Blind v. FTC*, 420 F.3d 331, 337 (4th Cir. 2005).

That is the case here. As discussed above, at 7-8, in December 2020 the EAA re-authorized (and refunded) the PPP, which had expired in August 2020. EAA

§ 323(a)(1). In doing so, the EAA made a number of amendments to the CARES Act affecting borrower eligibility, and permissible uses of loan proceeds, *see supra* at 7 n.3, but made no change to the maximum loan amount calculation for first-draw PPP loans. To the contrary, the EAA added maximum loan amount calculations for loans to farmers and ranchers, and for second-draw PPP loans, that are both modeled on the same payroll-based formula as in § 636(a)(36)(E). EAA §§ 311, 313 (adding 15 U.S.C. § 636(a)(36)(V), (37)(B)). Yet at the same time the EAA in no way "purport[ed] to restrict SBA's authority" to impose an aggregate corporate-group limit on any of these categories of loans. On that point "the SBA's approach *was left completely untouched*." *Cf. Bruckner I*, 2023 WL 8606761 at *5 (similar analysis as to SBA's loan-forgiveness rule). The appropriate inference under *Lorillard*, 434 U.S. at 580, and *Bell*, 456 U.S. at 535, is that the EAA "represents Congress's affirmative decision to ratify the SBA's conclusion that it had statutory authority to" impose the Corporate Group Rule. *Bruckner I*, 2023 WL 8606761 at *5; *Bruckner II*, 2024 WL 903441 at *4 & n.8; *see also Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 426-27 (2d Cir. 2022) (applying similar analysis of the EAA).

### D. SBA's Construction Is at Least Reasonable, Warranting Deference

For the reasons stated above, it is SBA's interpretation of the plain language of the CARES Act, not Plaintiffs' contrary position, that is "supported by the structure of the [CARES Act] and its other provisions." *Culbertson v. Berryhill*, 139

22

S. Ct. 517, 522 (2019). At a minimum, it would be erroneous to conclude, as do Plaintiffs, *see* Pls.' Mem. 15, that the CARES Act provisions on which Plaintiffs focus *unambiguously* deny SBA authority to limit the aggregate amount in PPP loans to a single corporate group to $20 million. Thus, SBA's construction is at least a permissible one, warranting *Chevron* deference.

Plaintiffs err in contending that the Rule does not merit deference because it contravenes the worker-protection "intent" of Congress. Pls.' Mem. 14-15. The Corporate Group Rule made PPP loans more broadly available to smaller businesses without the financial resources (including access to credit) available to businesses belonging to large corporate groups. That decision fell easily within the range of the discretion that the CARES Act, and the Small Business Act, conferred on SBA in distributing PPP funds during the pandemic.[10]

## II. SBA DID NOT VIOLATE APA RULEMAKING REQUIREMENTS.

Plaintiffs next contend that the Corporate Group Rule is invalid because SBA issued the Rule without following APA notice-and-comment procedures. Pls.' Mem. 16-17; *see* 5 U.S.C. § 553(b). As noted above, at 4, Congress granted SBA "emergency rulemaking authority" for the PPP, directing that "[n]ot later than 15

---

[10] *See, e.g.*, *Widerman Malek*, 2020 WL 6748083 at *4; *LIT Ventures*, 457 F. Supp. 3d at 911; *cf. Hosp. for Special Surgery v. Becerra*, 2023 WL 5448017 at *11 (D.D.C. Aug. 24, 2023) (rejecting challenge to SBA's funding decision, because nothing in the CARES Act "dictated how the funds should be distributed among eligible providers or that" SBA "needed to compensate all health care providers at the same rate[.]").

23

days after" the CARES Act becoming law (on March 27, 2020), SBA "shall issue regulations to carry out [the PPP] without regard to [APA] notice requirements[.]" 15 U.S.C. § 9012. Plaintiffs contend, though, that once 15 days passed this authority expired, and so the Corporate Group Rule (published May 4, 2020) is procedurally invalid. Pls.' Mem. 17. That contention is incorrect under binding precedent.

Instructions that an agency "'shall' act within a specified time, without more," are not treated as "jurisdictional limit[s] precluding action later." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003); *Holland v. Pardee Coal Co.*, 269 F.3d 424, 432 (4th Cir. 2001). Where a statute "does not specify a consequence for non-compliance with statutory timing provisions"—the situation here—"the federal courts will not in the ordinary course impose their own coercive sanction." *Barnhart*, 537 U.S. at 159; *Hosh. v. Lucero*, 680 F.3d 375, 381 (4th Cir. 2012); *In re Williams*, 330 F.3d 277, 280 (4th Cir. 2003). Thus, issuing a rule after a deadline set by Congress "does not require vacating the rule." *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 874 (D.C. Cir. 2021). Under *Barnhart*, a rulemaking deadline simply indicates "that the agency should move with dispatch," and "[t]he ordinary remedy for tardiness" is an action to "compel agency action … unreasonably delayed." *Id.* (citing 5 U.S.C. § 706(1)); *see also Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 40 F.4th 646, 665-61 (D.C. Cir. 2022).

24

In short, Plaintiffs contend that SBA's "emergency rulemaking authority" expired in just two weeks' time, at the height of the crisis; that Congress, after directing a "warp speed" launch of the PPP, also meant SBA to address all further exigencies using time-consuming notice-and-comment procedures; and that the Corporate Group Rule, and 31 other sets of SBA rules issued under the CARES Act and the EAA for the effective administration of the PPP, are invalid. Those contentions defy precedent, and common sense, and should be rejected.

## III. SBA PROPERLY APPLIED THE CORPORATE GROUP RULE.

Plaintiffs also challenge as arbitrary and capricious SBA's finding that they are a part of a single corporate group. Pls.' Mem. 17-24.

Arbitrary-and-capricious review is "narrow," "highly deferential," and presumes agency action valid. *Nat'l Audubon Soc'y v. U.S. Army Corps of Eng'rs*, 991 F.3d 577, 583 (4th Cir. 2021); *Xpress Grp., Inc. v. Cuccinelli*, 2022 WL 433482, at *2 (W.D.N.C. Feb. 10, 2022). The court's role is to "consider whether the agency considered the relevant factors and whether a clear error of judgment was made." *Appalachian Voices v. St .Water Control Bd.*, 912 F.3d 746, 753 (4th Cir. 2019). If the agency articulates "a rational connection between the facts found and the choice made," the court may not "substitute its judgment for that of the agency." *Id*. "The agency's factual findings and conclusions are reviewed under the substantial evidence standard." *Xpress Grp.*, 2022 WL 433482, at *3. Substantial evidence is

25

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which is "something less than the weight of the evidence." *See id.* "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence," *id.*; *CADLink*, 2023 WL 8936345, at *2 (cleaned up), "[e]ven if [a court] were to find that a preponderance of the evidence weighed against the [agency's] decision[.]" *Young v. Barnhart*, 284 F. Supp. 2d 343, 350–51 (W.D.N.C. 2003).

It is the challenger's burden to show that the agency's decision was arbitrary and capricious. *All. For Legal Action v. U.S. Army Corps of Eng'rs*, 314 F. Supp. 2d 534, 541 (M.D.N.C. 2004). Plaintiff has not made that showing here.

### A. Substantial Evidence Supports SBA's Finding of a Corporate Group.

Plaintiffs principally maintain that SBA erred in finding they are majority-owned by a "common parent entity," as the Corporate Group Rule requires. Pls.' Mem. 20-21, 23-24. To the contrary, SBA argued before OHA that Messrs. Hyman and Zanziper formed a partnership-in-fact to co-own, operate, and profit from over 300 limited-liability companies, including Plaintiffs, said partnership being the common parent of the entire group. AR 740, 1048. That conclusion is reasonable and supported, at the least, by substantial evidence.

26

"A partnership is an association of two or more persons to carry on as co-owners a business for profit." N.Y. P'SHIP § 10;[11] *Capizzi v. Brown Chiarri LLP*, 194 A.D. 3d 1457, 1458 (N.Y. App. 2021). Formation of a partnership requires "no written partnership agreement." *See Capizzi*, 194 A.D. 3d at 1458; *Czernicki v. Lawniczk,* 74 A.D. 3d 1121, 1125 (N.Y. App. 2010); J. William Callison & Maureen A. Sullivan, PARTNERSHIP LAW & PRACTICE, § 5.7 (Nov. 2022 Update) ("P'SHIP LAW & PRAC."). Rather, in the absence of such an instrument, courts "look to the parties' conduct, intent, and relationship to determine whether a partnership exist[s] in fact." *Capizzi*, 194 A.D. 3d at 1458; *Griffin Energy, Inc. v. Evans*, 85 A.D. 3d 1564, 1565 (N.Y. App. 2011); *Czernicki*, 74 A.D. at 1124. "The relevant factors are"

> (1) the parties' intent, whether express or implied; (2) whether there was joint control and management of the business; (3) whether the parties shared both profits and losses; and (4) whether the parties combined their property, skill, or knowledge[.]

*Capizzi*, 194 A.D. 3d at 1458; *Bianchi v. Midtown Reporting Serv., Inc.*, 103 A.D. 3d 1261, 1261-62 (N.Y. App. 2013); *cf. In re Bernard L. Madoff Inv. Sec. LLC*, 2023 WL 5439455 at *4 (2d Cir. 2023) (summary order). "No single factor is

---

[11] Citations to "N.Y. P'ship § ___" refer to McKinney's Consolidated Laws of New York Annotated, Chapter 39, Partnership Law. Where a case turns on the application of federal laws or regulations, the "question whether a business relationship qualifies as a partnership is ultimately one of federal law," but a court "may look to state law for guidance." *See PBGC v. Beverley*, 404 F.3d 243, 251-52 & nn.12-13 (4th Cir. 2005); *see also Connors v. Ryan's Coal Co., Inc.*, 923 F.2d 1461, 1467 n.37 (11th Cir. 1991) (state law is "instructive"). Defendants cite New York Law herein because Messrs. Hyman and Zanziper are both residents of that State. *See AR 740.*

27

determinative; a court considers the parties' relationship as a whole." *Capizzi*, 194

A.D. 3d at 158; *Bianchi*, 103 A.D. 3d at 1262.  All of the relevant factors indicative

of a Hyman-Zanziper partnership find ample support in the administrative record.

As to the first factor, numerous facts reflect the intent of Messrs. Hyman and

Zanziper to associate with one another to carry on a business enterprise for profit.[12]

Together they have acquired and now co-own not just the 48 Plaintiffs here, but a

conglomerate of over 340 limited liability companies (LLCs).  AR 670, 680.  That

conglomerate did not form by happenstance, but reflects a conscious design.

The record also indicates that the Hyman-Zanziper LLCs are not run as

independent businesses, but are part of the "portfolio" that Messrs. Hyman and

Zanziper manage through the Portopiccolo Group, the business-investment firm they

also own and control.  *See supra* at 8-9.  Although Plaintiffs are located in Kentucky,

North and South Carolina, Tennessee, and Virginia, 20 of the 48 Plaintiffs' PPP loan

applications give as their address the same Englewood Cliffs, New Jersey, address

as the Portopiccolo Group.[13]  Additionally, 23 of the Plaintiffs' applications name

---

[12] The intent required is not knowingly to form a partnership, but "to do the acts that in law constitute partnership."  59A AM. JUR. 2D PARTNERSHIP, §§ 48, 51, 137, 138 (May 2023 Update); *see* P'SHIP LAW & PRAC. §§ 5.1, 5.7 (courts "consider[ ] persons meeting the definition to be partners regardless of their subjective intentions"); *see also Bailey v. Broder*, 1998 WL 13827, at *1 (S.D.N.Y. Jan. 15, 1998); *Union Carbide Corp. v. Montell N.V.*, 1998 WL 293991, at *6 (S.D.N.Y. June 5, 1998).

[13] AR 33, 67, 84, 118, 142, 169, 186, 210, 263, 310, 320, 342, 369, 376, 386, 648, 909, 939, 954, 969; *see* AR 1116 (PPP application of the Portopiccolo Group).

Mr. Hyman as their "primary contact," using the e-mail address of a Portopiccolo Group employee.[14]  The remaining 25 Plaintiffs name that same Portopiccolo Group employee as their primary contact.[15]  Mr. Hyman signed 47 of the 48 Plaintiffs' loan applications as their "authorized representative" or "manager."[16]

Moreover, Plaintiffs submitted to SBA a memorandum of counsel opining on whether they and other companies "affiliated with The Portopiccolo Group" constitute a single corporate group.  AR 725, 1039.  The memorandum is addressed to "The Portopiccolo Group" and repeatedly refers to Plaintiffs and other Hyman-Zanziper companies collectively as "the Portopiccolo companies."  *Id.* 725, 727.

The second factor indicative of partnership, joint control of the business, and the third factor, sharing profits and losses, are inherent in the structure of the Hyman-Zanziper companies as LLCs.  In the parlance of the state laws under which LLCs are established, persons such as Messrs. Hyman and Zanziper who own interests in an LLC are referred to as "members."[17]  Generally speaking, LLC members receive

_____

[14] AR 33, 50, 67, 84, 101, 118, 135, 152, 169, 186, 203, 230, 247, 303, 335, 352, 369, 431, 622, 663, 828, 875, 892.

[15] AR 273, 288, 320, 386, 401, 416, 457, 472, 487, 517, 532, 547, 562, 577, 592, 617, 655, 852, 867, 916, 931, 946, 961.

[16] AR 36, 53, 70, 87, 104, 138, 155, 172, 189, 206, 233, 250, 276, 291, 306, 323, 338, 355, 372, 389, 404, 419, 434, 460, 475, 490, 505, 520, 535, 550, 565, 580, 595, 610, 625, 651, 831, 848, 863, 878, 895, 912, 927, 942, 957, 972.

[17]  Nicholas G. Karambelas, Ltd. Liability Cos.:  Law, Practice & Forms, § 6.4 (Feb. 2021 Update) ("LLC Law & Prac.").

"membership interests" that entitle them to various financial and managerial rights. LLC Law & Prac. § 8.3. These include rights vested in members by state law to participate jointly in the management of the company's internal affairs and the operation of its business, with power usually allocated in proportion to the members' capital contributions.[18] Under state LLC laws, members are also generally entitled to share in distributions of profits and capital, and they share in losses.[19]

The fourth factor, combination of the parties' property, skill, or knowledge, is also present. Generally speaking LLC members receive interests in a company in exchange for contributions of cash, property, or services.[20] And as CEO and President, respectively, of the Portopiccolo Group, the firm through which Plaintiffs and the other "Portopiccolo Companies" (AR 225, 227) are overseen, presumably Messrs. Hyman and Zanziper continue to offer their time and talents to achieving the success of the business enterprise on which they have together embarked.

---

[18] J. William Callison & Maureen A. Sullivan, Ltd. Liability Cos.: A State-by-State Guide to Law & Practice (Aug. 2022 Update) § 8.3 ("Ltd. Liability Cos."); LLC Law & Prac. §§ 8.3, 8.4; NC ST § 57D-3-20; KRS § 275.165, 275.175; SC Code § 33-44-404; T.C.A.§§ 48-249-102(13), 48-249-401; VA Code § 13.1-1022(A). Defendants cite herein as illustrative the state LLC laws of Kentucky, North Carolina, South Carolina, Tennessee, and Virginia, the five states where Plaintiffs are located.

[19] Ltd. Liability Co. §§ 7.1, 7.5; LLC Law & Prac. §§ 8.3, 8.4; NC ST § 57D-1-03(10), (25); KRS §§ 275.205, 275.210, 275.310; SC Code §§ 33-44-101(5), 33-44-405; T.C.A.§§ 48-249-102(11), 249-305(a); VA Code §§ 13.1-1002 ("Distribution," "Membership interest"), 13.1-1029, 13.1-1030.

[20] See LLC Law & Prac. §§ 6.4(7), 8.2; KRS § 275.200; SC Code § 33-44-402; T.C.A.§ 48-249-301(a); VA Code § 13.1-1027(A).

30

At the very least, substantial evidence supports the conclusion that Messrs. Hyman and Zanziper mutually agreed to carry on as the co-owners of a business venture involving their mutual acquisition of multiple limited liability companies and co-managing them for profit. It is a plan they have executed over 340 times, and at law constitutes a partnership. SBA reasonably concluded that this partnership is the "common parent," 85 Fed. Reg. at 26,325, of the Plaintiffs and the 36 other Hyman-Zanziper companies that received PPP loans, and thus that Plaintiffs and those 36 companies are part of the same corporate group.

## B. Plaintiffs' Counter-Arguments Are Without Foundation.

Plaintiffs' principal argument to the contrary is that the Federal Acquisition Regulation ("FAR"), namely 48 C.F.R. § 4.901, defines "common parent" to mean a "corporate entity that owns or controls an affiliated group of corporations[.]" Pls.' Mem. 19-20. The argument fails. FAR § 4.901 defines "common parent" solely for purposes of obtaining taxpayer-identification information from government contractors that may be used for debt collection and reporting to the IRS. 48 C.F.R. §§ 4.900-4.904. Plaintiffs cite *PDS Consultants, Inc. v. U.S.*, 907 F.3d 1345, 1350–51 (Fed. Cir. 2018), for the proposition that § 4.901 "applies to SBA government contracts." Pls.' Mem. 19. But what *PDS Consultants* (which does not cite § 4.901) actually stated is that the FAR sets "policies and procedures for government acquisition of supplies and services," to which end it implements, *inter alia*, the

small-business set-aside requirements of the Small Business Act.  907 F.3d at 1349, 1351.  This case does not concern SBA contracts to acquire supplies and services *from* small businesses, but rather SBA-guaranteed loans *to* small businesses.  FAR § 4.901 has no bearing on interpretation of the Corporate Group Rule.[21]

Plaintiffs also contend that SBA "arbitrarily" denied them forgiveness by "incorrectly equat[ing]" "common parent" with the term "affiliate" as defined by SBA rules for making small-business size determinations.  Pls.' Mem. 21-23; *see* 13 C.F.R. § 121.301(f).  But while all agree that Plaintiffs are affiliated with one another under § 121.301(f), Pls.' Mem. 21; AR 680, at no point during review of Plaintiffs' loans, or before OHA, did SBA take the position that Plaintiffs are part of a corporate group just because they are affiliated with one another.[22]  Nor does SBA so contend now.  Tellingly, Plaintiffs provide no record citation for their assertion that SBA equated affiliation with membership in the same corporate group.[23]

---

[21]  It would also defy the terms of the Corporate Group Rule to construe it as applying only to "corporate entit[ies]," 48 C.F.R. § 4.901, as the Rule expressly applies to all "businesses," 85 Fed. Reg. at 26,325.  And it would significantly defeat the Rule's purpose, to "promote the availability of PPP loans to the largest possible number of borrowers," *id.*, if it did not extend to LLCs, the "most popular" and "dominant" form of business entity in the United States today.  LTD. LIABILITY COS. § 1.1; LLC LAW & PRAC. § 6.3.

[22]  *See* AR 10-11 (SBA notice of loan-forgiveness denial on corporate-group grounds, making no reference to Plaintiffs' affiliation); *id.* 670 (corporate-group analysis without reference to affiliation); *id.* 740, 1048 (SBA responses to Plaintiffs' OHA appeals, identifying the "Hyman and Zanziper partnership" as Plaintiffs' "common parent").

[23]  The OHA administrative law judges who upheld SBA's loan forgiveness denials relied on principles underlying SBA's affiliation rules to inform their corporate-group

## IV. PLAINTIFFS ARE NOT ENTITLED TO THE RELIEF THEY SEEK.

### A. Injunctive Relief Against SBA Is Barred.

By way of relief, Plaintiffs seek orders (1) directing SBA to forgive their PPP loans and reimburse them for loan payments already made; (2) vacating and setting aside the Corporate Group Rule;  and (3) prohibiting its use to deny Plaintiffs forgiveness.  Compl. (Doc. 1) at 24 (prayer for relief).  This relief is unavailable.

Even if the Court concluded that SBA's decision cannot be sustained, the proper remedy would be remand to SBA for further agency proceedings—not to direct SBA to forgive Plaintiffs' loans.  Where (as here) statutes place the matter for decision "primarily in agency hands[,]" a reviewing court "is not generally empowered to conduct a *de novo* inquiry into the matter … and to reach its own conclusions[.]"  *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002).  Rather, except in rare situations "it [must] set aside the agency's action and remand the case—even though the agency … might later … reach the same result for a different reason." *FEC v. Akins*, 524 U.S. 11, 25 (1998); *see also W. Va. Highlands Conservancy, Inc. v. Norton*, 343 F.3d 239, 248 (4th Cir. 2003).

---

analyses, AR 759-63, 1093-96, but that is immaterial.  Even if the ALJs' reasoning were also attributed to SBA, "[w]hen an agency offers multiple grounds for a decision, [a court] will affirm the agency so long as any one of the grounds is valid."  *CADLink*, 2023 WL 8936345, at *2; *see also 3V Sigma USA, Inc. v. Richardson*, 2021 WL 809399, at *6 (D.S.C. Mar. 3, 2021).

33

Moreover, injunctive relief vacating or setting aside the Corporate Group Rule, or compelling forgiveness of Plaintiffs' loans, would also be barred because the SBA's limited waiver of sovereign immunity, 15 U.S.C. § 634(b)(1), expressly provides that "no … injunction . . . or other similar process … shall be issued against the [SBA] or [its] property." The Fourth Circuit has applied this anti-injunction provision according to its plain terms, stating that "courts have no jurisdiction to award injunctive relief against the SBA." *J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383 (4th Cir. 1990) (citing *Duncan v. Furrow Auction Co.*, 564 F.2d 1107, 1109 (4th Cir. 1977)); *see also Expedient Servs., Inc. v. Weaver*, 614 F.3d 56, 57-58 (5th Cir. 1980) (§ 634(b)(1) prohibits all relief against SBA that is "injunctive in nature," thus precluding courts from "set[ting] aside" SBA decisions).[24]

Defendants respectfully submit in addition that the APA does not empower courts to "set aside" agency rules, in the sense of nullifying or revoking them, for essentially the reasons stated by Justice Gorsuch in *United States v. Texas*, 599 U.S. 670, 693-702 (2023) (Gorsuch, J., concurring, joined by Thomas and Barrett, JJ.).

---

[24] The Fourth Circuit's application of § 634(b)(1) is consistent with the principles that waivers of immunity must be strictly construed in favor of the sovereign, *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999), and that "[w]here a cause of action is authorized against the federal government, the available remedies are … *only* those for which sovereign immunity has been expressly waived," *Lane v. Peña*, 518 U.S. 187, 197 (1996).

34

**B. The Court Lacks Jurisdiction Over Plaintiffs' Premature EAJA Request.**

Plaintiffs' bid for fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, is premature. *See* Pls.' Mem. 25. Under that statute's narrow waiver of sovereign immunity, a fee application is due "within thirty days of final judgment in the action." *Id.* § 2412(d)(1)(B). A "final judgment" under the EAJA "can only be the judgment of a court of law," and unless and until such a judgment terminating the action issues, the court lacks authority to hear any EAJA application. *See Melkonyan v. Sullivan*, 501 U.S. 89, 94-96 (1991). At this point, there is no judgment terminating the action in Plaintiffs' favor, so any EAJA request is "premature," *Zander v. Lappin*, 2011 WL 2681124 at *2 (E.D.N.C. July 8, 2011), and should be denied without prejudice as currently outside this Court's subject-matter jurisdiction.[25]

## CONCLUSION

Defendants' motion for summary judgment should be granted, Plaintiffs' motion denied, and judgment entered for Defendants as a matter of law.

Respectfully submitted this the 7th day of March, 2024.

---

[25] Moreover, even if there were jurisdiction, Plaintiffs have made no submissions demonstrating an entitlement to EAJA fees, including evidence meeting their burden to prove their financial eligibility. *See* 28 U.S.C. § 2412(d)(2)(B); *Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 166-68 (4th Cir. 2004).

35

DENA J. KING
UNITED STATES ATTORNEY

BRIAN M. BOYNTON
Principal Deputy Ass't Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

s/*Gill P. Beck*
GILL P. BECK
Assistant United States Attorney
Chief, Civil Division
N.C. Bar No. 13175

Room 233, US Courthouse
100 Otis Street
Asheville, NC 28801
Phone: 828-271-4661
Fax: 828-271-4327
E-Mail: gill.beck@usdoj.gov

s/*James J. Gilligan*
JAMES J. GILLIGAN, T.A. (DC #422152)
INDRANEEL SUR (DC #978017)

ATTORNEYS
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, D.C. 20044
E-mail: james.gilligan@usdoj.gov
Telephone: (202) 514-3358
Fax: (202) 616-8470

*Counsel for Defendants*

36